**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumeradvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumeradvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665

*Attorneys for Plaintiff and the*
*Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., a Delaware corporation; <br><br> Defendant. | Case No: **'19CV1715 H    AHG** <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Todd Hall ("Plaintiff"), hereby brings this Action against Defendant Marriott International, Inc. ("Defendant" or "Marriott"), alleging that Defendant misleads consumers concerning the amounts they must pay for rooms at their hotels, and upon information and belief and investigation of counsel alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Defendant is a citizen of a state different from that of the Plaintiff, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2. This Court has both general and specific personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct substantial business in the State of California and County of San Diego. Marriott International, Inc. is registered with the California Secretary of State under entity number C2059637.

3. This Court has specific personal jurisdiction arising from Defendant's decision to conduct business in California. Defendant has sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State to render the exercise of jurisdiction by this Court reasonable.

4. Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district and Defendant conducts business within this judicial district.

## II. INTRODUCTION

5. This is a straight-forward price deception case. For at least the last decade, Marriott has used an unlawful trade practice called "drip pricing" in advertising its hotel rooms whereby Marriott initially hides a portion of a hotel room's daily rate from consumers. Marriott calls this hidden portion of the room rate a number of terms, including a "resort fee," "amenity fee" and a "destination fee." One key effect of this price deception is that consumers shopping for a hotel room on either Marriott's website,

CLASS ACTION COMPLAINT

or an online travel agency site ("OTA") like Priceline or Expedia, are misled into believing a Marriott hotel room is cheaper than it actually is. Marriott's motive in continuing this deceptive practice is pure profit. It has reaped hundreds of millions of dollars over the last decade from this deceptive "drip pricing." Plaintiff brings this action to force Marriott to advertise up-front to consumers the true prices of its hotel rooms.

6.     Marriott is a hotel and lodging corporation with its headquarters in Bethesda, Maryland. Marriott owns, franchises, and manages hotels throughout the United States, including approximately 60 hotel properties located in the San Diego District. Marriott conducts its hotel business through various corporate entities operating under numerous trade names.[1] It offers lodging at its hotels to California residents, including through its online reservation website and through the websites hosted by OTAs, such as Priceline and Expedia. These websites allow consumers to obtain information about Marriott's hotel rooms and allow consumers to compare Marriott's hotel room prices to that of other hotels as well as make hotel reservations.

7.     Marriott advertises and promotes its hotel rooms by advertising daily room rates on its own website and the websites operated by OTAs. Marriott's official website and the websites operated by the OTAs enable consumers to search for and sort prospective hotel accommodations by price according to the daily room rate. These search and sorting functions allow consumers, including consumers residing in the California, to compare prices among various hotels. Many consumers, including those residing in California, use the websites operated by Marriott and the OTAs to compare the price of hotel rooms offered by Marriott and other hotels and to select and book a hotel room online.

8.     Marriott charges additional mandatory fees that it refers to as "resort fees,"

---

[1] Marriott hotels operate under at least the following trade names" Starwood, St. Regis, The Luxury Collection, W, Westin, Le Méridien, Sheraton, Tribute Portfolio, Four Points by Sheraton, Aloft, Element, The Ritz-Carlton, Design Hotels, Bvlgari Hotels & Resorts, Edition, JW Marriott, Autograph Collection Hotels, Renaissance Hotels, Marriott Hotels, Delta Hotels and Resorts, Gaylord Hotels, AC Hotels by Marriott, Courtyard by Marriott, Residence Inn by Marriott, Springhill Suites by Marriott, Fairfield Inn & Suites, TownePlace Suites by Marriott, and Moxy Hotels.

CLASS ACTION COMPLAINT

"destination amenity fees," or "amenity fees" (referred to collectively hereafter as "resort fees") on a daily basis for a room at many of its hotels. However, Marriott does not include these daily, mandatory fees in the room rate it advertises on its website and does not include them in the room rate advertised by the OTAs, thereby depriving consumers of the ability to readily ascertain and compare the actual price of a room at a Marriott hotel to the price of the hotel rooms offered by Marriott's competitors and at other Marriott hotels.

9.     Beyond this initial price deception, when consumers select a room rate and provide their credit card and other personal information in order to book a room, Marriott also represents that the daily room rate at the hotel is less than it actually is because it does not include the mandatory resort fee that Marriott adds to the daily room charge. In many instances, Marriott includes the resort fee as part of a total charge called "Taxes and Fees," thereby misleading consumers to believe the additional fees they are paying are government-imposed, rather than a separate daily charge imposed by and paid to Marriott. In some instances, Marriott also represents that these resort fees cover the costs of amenities, such as parking, that Marriott either provides as complimentary or, alternatively, requires hotel guests to pay for separately, even though Marriott has required them to pay the resort fee.

10.     Plaintiff institutes this proceeding to stop Marriott from engaging in the unlawful trade practices set forth more fully below in connection with its offer and sale of hotel rooms to consumers, including its practices of (1) misleading consumers concerning the amounts they must pay for rooms at their hotels, and (2) advertising hotel rooms without the intent to supply them at advertised prices. Plaintiff seeks injunctive relief to prevent Defendant from engaging in these and similar unlawful trade practices, civil penalties to deter Defendant and others similarly situated from engaging in these and similar unlawful trade practices, and the payment of costs, attorney's fees, and restitution based on the harm consumers have experienced due to Defendant's conduct.

### III.   **PARTIES**

11.     Defendant Marriott is a multinational hospitality company that owns,

CLASS ACTION COMPLAINT

manages and franchises a broad portfolio of hotels and lodging facilities throughout the United States and abroad, including approximately 60 facilities located in the San Diego District. It is a Delaware corporation and is headquartered at 10400 Fernwood Road, Bethesda, MD 20817.

12. Marriott has, at all relevant times, engaged in trade or commerce in the California by advertising and offering hotel lodging to California consumers.

13. Plaintiff Todd Hall is a citizen of the State of California and resides in Rancho Cucamonga, California. Plaintiff Hall has stayed in various Marriott hotels and resorts within the class period, including the Marriott Marquis San Diego Marina.

## IV.   MARRIOTT'S DECEPTIVE ADVERTISING PRACTICES
### A. Defendant's Practice of Charging Resort Fees

14. The hotel industry has become highly price competitive, particularly with the increased use by consumers of OTAs, like Priceline and Expedia, that permit consumers to comparison shop across hotel brands. The Internet websites of hotels and OTAs allow consumers to review large numbers of rooms offered by hotels at the same time and to compare their prices, which the hotels typically advertise using a daily room rate.

15. At issue in this case is the growing and continued practice of hotels advertising daily room rates online but not including any mandatory resort fee charged in the initially advertised room rate. For instance, Marriott's practice is to initially advertise a room rate that does not include the resort fee, but then to include it in the final charges a consumer is required to pay. Marriott charges these additional mandatory resort fees, which can amount to as much as $95 a day at Marriott's properties, to increase its revenues without appearing to raise the room rate at its hotels. Marriott does not include these resort fees in the room rate because doing so would effectively increase the price of a hotel room and consequently make its hotels less price competitive to consumers when compared with other hotels.

16. Marriott's practice of initially advertising only part of a price and then later revealing other charges as the consumer completes the buying process has been labeled

CLASS ACTION COMPLAINT

"drip pricing" by the Federal Trade Commission ("FTC"). In November 2012, the FTC warned the hotel industry that drip pricing as it pertains to charging resort fees may violate federal consumer protection law by misrepresenting the price consumers can expect to pay for their hotel rooms. The FTC specifically warned the hotels that the largest and most prominent price for a hotel room should include the resort fee, and should be provided to the consumer up front, and not later in the checkout process, in order to avoid being deceptive drip pricing. Marriott received one of the FTC's warning letters.

17.    The FTC's Bureau of Economics then issued a report in 2017 confirming its concerns about this practice of drip pricing. That report concluded: In sum, the literature suggests that separating mandatory resort fees from posted room rates without first disclosing the total price is likely to harm consumers by artificially increasing the search costs and the cognitive costs of finding and booking hotel accommodations. Unless the total price is disclosed up front, separating resort fees from the room rate is unlikely to result in benefits that offset the likely harm to consumers.[2]

18.    Notwithstanding these warnings from the FTC, Marriott continues to advertise room prices that do not include its resort fees, both on its own website and the websites operated by OTAs. Marriott has continued this deceptive practice because it has become a key profit center for the company, as it has reaped hundreds of millions of dollars from expanding its use of resort fees over the past decade.

19.    Marriott owns, manages or franchises at least 189 properties worldwide that charge consumers resort fees ranging from $9 to as much as $95 per day. By charging consumers resort fees in addition to the daily amounts consumers must pay for their rooms, Marriott makes hundreds of millions of additional dollars in revenue without appearing to increase the price for which it initially offers its rooms. Marriott's unlawful trade practice has affected California consumers, as Marriott has charged resort fees to

---

[2] Mary W. Sullivan, Fed. Trade Comm'n, Economic Analysis of Hotel Resort Fees 37 (Jan. 2017). The report and the FTC's summary can be viewed at the following link: https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resortfees/p115503_hotel_resort_fees_economic_issues_paper.pdf

CLASS ACTION COMPLAINT

tens of thousands of California consumers over the years, charging those consumers well in excess of a million dollars.

20.     Marriott also exercises control over the resort fees its hotels charge through its resort fee policies which give it the authority to determine what fees can be charged by the hotels it owns, manages or franchises.  Although Marriott's Franchise Agreements typically allow its franchisees to set their own rates for guest room charges, these franchisees must still comply with Marriott's resort fee policy, which requires Marriott's approval and allows Marriott to control the resort fee they are permitted to charge. Moreover, under Marriott's Franchise Agreements, Marriott determines whether charges or billing practices are misleading or detrimental, including resort fees and other incremental fees or services that guests would normally expect to be included in the hotel room charge.

## B. Defendant's Misleading Advertising Practices Concerning Resort Fees

21.     When consumers search for and seek to book a hotel using Marriott's online reservation system, Marriott provides the consumers with a quoted room rate. For example, the following information appeared on Marriott's website for a room at its Marriott Marquis San Diego Marina September of 2019:

22.     At this initial stage in the process of booking a reservation online, where the hotel appears on a page with rooms at other properties, the quoted daily room rate does not include or even mention the mandatory resort fee the consumer will be required to pay. Similarly, when consumers searched at the same time for a hotel room using the reservation system operated by Expedia or another OTA, they received a similar quoted room rate that also did not include or mention the resort fee:



CLASS ACTION COMPLAINT

23.     If consumers selected the quoted rate for a room at the Marriott Marquis San Diego Marina on Marriott's online reservation system, as set forth in paragraph 21 above, they were directed to another page that provided the following information:



24.     Only at this point in the booking process does an obscure box first appear at the top of the page that states: "USD 30 daily destination amenity fee added to room rate." This statement appeared in small typeface in a shaded light blue box and was displayed less prominently than the quoted room rate of $351 for a Member Rate and $369 for a Regular Rate which appeared in a larger bolded font, and did not include the mandatory resort fee charged by Marriott for the room.

25.     Adding to consumers' confusion about the resort fee is Marriott's practice of hiding the resort fee in a larger total of charges ambiguously labeled "Taxes and fees." By combining the amounts that consumers were asked to pay for resort fees with their tax payments under a generic heading of "taxes and fees," Marriott led consumers to believe the resort fees were government-imposed charges. For example, after selecting the Regular Rate room from the screen in paragraph 22, a screen appeared that showed the "USD subtotal" of $449.65, consisting of the $369 rate for "USD/Night" plus $80.65 "USD Taxes and Fees":

//

//

//

//

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  26.    The screen shown above in paragraph 24 still does not display the resort fee.
16  Consumers are able to click "continue" and complete the booking process at this point,
17  all the while believing that they are being charged $369 for the room and $80.65 for
18  "USD Taxes and fees." In fact, consumers are encouraged to quickly continue and
19  complete the booking process, as a prominent, green banner is displayed on the top of
20  the screen, which reads "Reserve Your Room Before Time Runs Out!" Below the banner
21  is an icon of a stopwatch and words written in orange stating "Room(s) held for: 14:39."
22  This means that the consumer has only 14 minutes and thirty-nine seconds to review
23  reservation details and finish the booking process. The countdown continues for the
24  remainder of the booking process. If 14 minutes and thirty nine seconds pass, consumers
25  are taken to another page that states the following:
26  //
27  //
28  //

CLASS ACTION COMPLAINT

## Session Timeout

**Welcome Back**

While you were away, our rates may have changed. Please click the button below to rebuild your reservation and re-select a rate.

CONTINUE

27.     The screen above shows "Session Timeout" in large, bolded font. In small lettering below, the screen states "While you were away, our rates may have changed. Please click the button below to rebuild your reservation and re-select a rate." Consumers are then required to begin the booking process all over again if they did not quickly book their initial reservation.

28.     For consumers to find out that they are actually being charged a daily resort fee in addition to the quoted room rate, they are required to remain on the "Review Reservation Details" screen while being timed. They must also discover that clicking on "Summary of Charges" will reveal additional information about the charges. It is only at this point of the booking process that consumers will find out  information regarding the "Destination Amenity Fee" of $30.00, and "Estimated government taxes and fees" of $50.75:

//
//
//
//
//
//
//
//
//
//
//

CLASS ACTION COMPLAINT

29. During the reservation process, Marriott's ambiguous "added to room rate" statement regarding the resort fee, as set forth in paragraph 22 above, has often included representations to consumers about the amenities that the resort fee covers. However, Marriott further adds to consumers' confusion by stating later in the reservation process that it charges for certain amenities separately or simply provides them on a complimentary basis to its hotel guests.

30. The inconsistency and inaccuracy with which Marriott has provided

information to consumers on its websites about what is covered by the resort fee, combined with the lack of proximity of the resort fee to the quoted room rate, the smaller and lighter shaded typeface used when referring to the resort fee, the ambiguous language regarding whether the resort fee has been or will be added to the room rate, the confusing representations about what amenities are covered by the fees, and the inclusion of the resort fee with charges for taxes make it even harder for consumers to comprehend they are being charged a resort fee on top of their quoted room rate.

31.     Defendant's practices of advertising room rates that do not include mandatory daily resort fees, including the resort fee in "taxes and fees" when the resort fee is not imposed by any government agency, and representing that resort fees include amenities or services that are either provided at no cost or that the consumer must still pay for separately, are misrepresentations of material fact capable of and actually misleading consumers on a daily basis.

32.     Marriott's practices of advertising room rates for lodging at its hotels without including other daily charges required by the hotel constitutes the advertisement or offer of good or services without the intent to sell them as advertised or offered.

**C. Plaintiff's Stays at Marriott Resorts**

33.     Plaintiff Todd Hall is a resident of Rancho Cucamonga, California and has stayed at over 45 Marriott hotels and resorts during the Class Period.

34.     Specifically, Plaintiff Hall stayed at the Marriott Marquis San Diego Marina resort located at 333 West Harbor Drive San Diego, California, 92101 on May 28, 2018 to May 29, 2018 and the Sheraton Maui located at 2605 Kaanapali Parkway, Lahaina, HI 96761 on October 10, 2018 to October 12, 2018.

35.     Plaintiff Hall subsequently discovered Defendant's unlawful acts as described herein in September 2019, when he learned that Defendant misleadingly advertises its hotel room rates and charges resort fees to consumers which are disguised as "USD Taxes and fees."

36.     Plaintiff Hall was deceived by and relied upon Defendant's misleading advertising, and specifically the hidden nature of the resort fee charged to consumers.

Plaintiff purchased hotel rooms from Defendant without knowledge of the resort fee being charged, based on Defendant's deceptive advertising and hidden nature of the resort fee under a "USD Taxes and fees" category.

37.     Plaintiff, as a reasonable consumer, is not required to scrutinize advertisements, and in fact, is entitled to rely on statements that Defendant deliberately places on its website. Defendant, but not Plaintiff, knew that this advertising was in violation of federal regulations and state law.

38.     Because Plaintiff reasonably assumed that the hotel reservations would be free of unlawful or hidden charges, when they were not, he did not receive the benefit of his purchase. Instead of receiving the benefit of a quoted room rate, Plaintiff received a hotel charge that was not as advertised, in violation of federal and state regulations.

39.     Plaintiff would not have reserved the hotel room, or would not have paid as much as he had for a hotel room in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated federal and California law, Plaintiff would not have been injured.

40.     Plaintiff and the Class therefore lost money as a result of Defendant's unlawful behavior. Plaintiff and the Class altered their position to their detriment and suffered loss in an amount equal to the resort fees they paid for the hotel rooms.

41.     Plaintiff intends to, seeks to, and will purchase rooms at the Marriott when he can do so with the assurance that the advertising of the room rates are lawful and consistent with federal and California regulations.

## V.     CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

43.     **The Nationwide Class is defined as follows:**

All U.S. citizens who purchased Marriott hotel rooms and were charged an amenity or resort fee in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors,

CLASS ACTION COMPLAINT

employees, agents and affiliates, and the Court and its staff.

44. **The California Class is defined as follows:**

All California citizens who purchased Marriott hotel rooms and were charged an amenity or resort fee in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

45. During the Class Period, the quoted rates advertised by Marriott did not disclose the amenity or resort fees that would be charged to consumers. Defendant failed to advertise such charged as required by federal and California law.

46. During the Class Period, Class Members purchased misbranded hotel rooms, paying additional charges for those rooms compared to similar hotel rooms lawfully labeled.

47. The proposed Classes meet all criteria for a class action, including numerosity, commonality, typicality, predominance, superiority, and adequacy of representation.

48. This action has been brought and may properly be maintained as a class action against Defendant. While the exact number and identities of other Class Members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are hundreds of thousands of Members in the Class. The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

49. The proposed Classes satisfy typicality. Plaintiff's claims are typical of and are not antagonistic to the claims of other Class members. Plaintiff and the Class members all purchased the hotel rooms, were deceived by the false and deceptive advertising, and lost money as a result.

50. The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because it would be impractical for individual Class members to bring individual lawsuits to vindicate their

CLASS ACTION COMPLAINT

claims.

51.     Because Defendant's misrepresentations were made during the hotel room booking process, all Class members including Plaintiff were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendant can continue to deceive consumers and violate federal and California law with impunity.

52.     The proposed Class representative satisfies adequacy of representation. Plaintiff is an adequate representative of the Class as he seeks relief for the Class, his interests do not conflict with the interests of the Class members, and he has no interests antagonistic to those of other Class members. Plaintiff has retained counsel competent in the prosecution of consumer fraud and class action litigation.

53.     The proposed Classes satisfy commonality and predominance. There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

54.     Questions of law and fact common to Plaintiff and the Class include:

a. Whether Defendant failed to disclose the presence of amenity or resort fees during the booking process;

b. Whether Defendant's advertising omissions and representations constituted false advertising under California law;

c. Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

d. Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

g. Whether the statute of limitations should be tolled on behalf of the Class;

h. Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

i. Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

CLASS ACTION COMPLAINT

55.     Plaintiff will fairly and adequately protect the interests of the Class, has no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in class litigation.

56.     Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

57.     Class treatment is therefore appropriate under Federal Rule of Civil Procedure 23.

58.     Class damages will be adduced at trial through expert testimony and other competent evidence.

59.     California law holds that the excess resort fee consumers paid for the falsely-advertised rooms is a proper measure of Class damages.

60.     On information and belief, based on publicly-available information, Plaintiff alleges that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated resort fees and hotel room revenues for sales to the Class Nationwide during the proposed Class Period, exceeds $5 million.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT

### CAL. CIV. CODE §§ 1750 *ET SEQ.*

61.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

62.     The CLRA prohibits unfair or deceptive practices in connection the sale of goods or services to a consumer.

63.     Moreover, the CLRA is meant to be "[c]onstrued liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Civil Code Section 1760, *Inter alia*.

64.     The hotel rooms that Marriott provides are "Goods" as defined by the CLRA.

CLASS ACTION COMPLAINT

65.     Plaintiff and the Class Members are "Consumers" as defined by the CLRA.

66.     Each of the purchases made by the Plaintiff and the Class Members from the Defendant were "Transactions" as defined by the CLRA.

67.     Marriott's false and misleading pricing practices and other policies, acts, and practices described herein were designed to, and did, induce Plaintiff's and Class Members' purchases of Marriott hotel rooms for personal, family, or household purposes, and violated and continues to violate at least the following sections of the CLRA:

  a.  § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

  b.  § 1770(a)(20): Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but not limited to, shelf tags, displays, and media advertising in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product.

68.     Marriott violated Sections 1770(a)(9) and (20) by marketing and representing a lower hotel rental price online than what consumers were charged.

69.     Marriott never intended to sell its hotel rooms for the prices advertised online.

70.     On information and belief, Marriott's violations of the CLRA discussed above were done with the awareness that the conduct alleged was wrongful.

71.     On information and belief, Marriott committed these acts knowing it would harm Plaintiff and Class Members.

72.     Plaintiff and Class Members were injured by Marriott because Plaintiff and Class Members overpaid for a hotel room due to Marriott's false representations and advertisements.

73.     Plaintiff and Class Members were harmed as a direct and proximate result of Marriott's violations of the CLRA and are thus entitled to a declaration that Defendant violated the CLRA.

74.     Plaintiff, on behalf of himself and Class Members, seeks injunctive relief under Civil Code § 1782(d).

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.

75.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

76.     Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

77.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Marriott relating to its Hotel rooms misled consumers acting reasonably as to the cost of a hotel room rental.

78.     Plaintiff suffered injury in fact as a result of Marriott's actions as set forth herein because plaintiff purchased a hotel room in reliance on Marriott's false and misleading marketing claims that the hotel rooms were cheaper than they were.

79.     Plaintiff suffered injury in fact as a result of Marriott's actions as set forth herein because Plaintiff purchased the hotel room in reliance on Marriott's false and misleading online pricing.

80.     Marriott's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Marriott advertised its hotel rooms in a manner that is untrue and misleading, which Marriott knew or reasonably should have known.

81.     Marriott profited from its sales of the falsely and deceptively advertised hotel rooms to unwary consumers.

82.     As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff and Class Members are entitled to injunctive and equitable relief and restitution.

CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION

## VIOLATIONS OF THE UNFAIR COMPETITION LAW

## CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.

83.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

84.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

85.     The acts, omissions, misrepresentations, practices, and non-disclosures of Marriott as alleged herein constitute business acts and practices.

### FRAUDULENT

86.     A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

87.     As set forth herein, Marriott's claims relating to the online marking of its hotel rooms are likely to deceive reasonable consumers and the public.

### UNLAWFUL

88.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

### UNFAIR

89.     Marriott's conduct with respect to the advertising and sale of its hotel rooms was unfair because Marriott's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

90.     Marriott's conduct with respect to the advertising and sale of its hotel rooms was also unfair because it violated public policy as declared by specific statutory or regulatory provisions, including but not limited to the False Advertising Law.

91.     Marriott's conduct with respect to the advertising and sale of its hotel rooms was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

92.     Marriott profited from the sale of its falsely, deceptively, and unlawfully advertised hotel rooms to unwary consumers.

93.     Plaintiff and Class Members are likely to be damaged by Marriott's deceptive trade practices, as Marriott continues to disseminate, and is otherwise free to continue to disseminate misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

94.     Marriott's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members, who have suffered injury in fact as a result of Marriott's fraudulent, unlawful, and unfair conduct.

95.     In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of himself, Class Members, and the general public, seeks an order enjoining Marriott from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

96.     Plaintiff, on behalf of himself and Class Members, also seeks an order for the restitution of all monies from the sale of the falsely advertised hotel rooms. That Marriott unjustly acquired through acts of unlawful competition.

## **FOURTH CAUSE OF ACTION**

### **UNJUST ENRICHMENT**

97.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

98.     Plaintiff and the Class allege that Defendant owes money to them for the unlawful or deceptive conduct described herein.

99.     Plaintiff and Class Members paid for a hotel room at one or more of Defendant's hotels.

100.    Defendant, by charging consumers higher rates for hotel rooms than those

originally advertised, received additional money from Plaintiff and the Class.

101.   The additional money was paid by mistake, where an undue advantage was taken from the Plaintiff's and the Class's lack of knowledge of the deception, whereby money was exacted to which the Defendant had no legal right.

102.   Defendant is therefore indebted to Plaintiff and the Class in a sum certain, specifically the resort or amenity fees actually paid for the hotel rooms during the Class period as consideration for which Defendant unlawfully charged consumers.

103.   Defendant is therefore indebted to Plaintiff and the Class in a sum certain for the additional money had and received by the Defendant, which the Defendant in equity and good conscious should not retain.

104.   Defendant is therefore liable to Plaintiff and the Class in the amount of unjust enrichment or money had and received to be determined at trial.

## VII.   **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as to each and every cause of action, and the following remedies:

(a)  An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing his undersigned counsel as class counsel;

(b)  An Order requiring Marriott to bear the cost of class notice;

(c)  An Order enjoining Marriott from engaging in the unfair, unlawful, and deceptive business practices and false advertising complained of herein;

(d)  An Order compelling Marriott to conduct a corrective advertising campaign;

(e)  An Order compelling Marriott to recall and destroy all misleading and deceptive advertising materials;

(f)  An Order requiring Marriott to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

(g)  An Order requiring Marriott to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and

post-judgment interest thereon;

(h) An Order requiring Marriott to pay all actual and statutory damages permitted under the causes of action alleged herein;

(i) An award of attorneys' fees and costs; and

(j) Any other and further relief that Court deems necessary, just, or proper.

## VIII.  <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: September 9, 2019                Respectfully Submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
Lilach Halperin
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665

***Counsel for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT