**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA  92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL (SBN 127081)
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone: (866) 833-5529
Facsimile: (855) 609-6911
***Attorneys for Plaintiff and the Proposed Classes***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., a Delaware corporation; <br><br> *Defendant*. | Case No.: 3:19-cv-01715-H-AHG <br><br> <u>CLASS ACTION</u> <br> JURY TRIAL DEMANDED <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:  February 10, 2020 <br> Time:  10:30 a.m. <br> Ctrm:  15A <br> Judge:  Hon. Marilyn L. Huff <br><br> **Oral Argument Requested** |

i

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ........................................................................1

II.   BACKGROUND .........................................................................3

III.  LEGAL STANDARD ..................................................................4

IV.   ARGUMENT ..............................................................................5

  A.  Defendant's Practices as Alleged are Likely to Deceive a Reasonable
     Consumer and Did Deceive Plaintiff ....................................................5

    1.  *Defendant Omits Material Facts Regarding "Taxes and Fees" versus
       "Amenity Fees" versus "Free Hotel Services and Amenities"* ................9

    2.  *Defendant Misleads Consumers by Misrepresenting Resort Fee Amenities*
       ............................................................................................10

    3.  *Defendant Misleads Reasonable Consumers by Not Including Resort Fees
       in Rates Advertised by OTAs.* ............................................................11

  B.  Defendant Has Made Misrepresentations and Concealments in Advertising
     its Hotels ..................................................................................12

  C.  Plaintiff Satisfies Rule 9(b) ....................................................................12

  D.  Plaintiff Has Adequately Plead Reliance ..............................................14

  E.  Lodging Services and Amenities are Subject to the CLRA ....................15

  F.  Unjust Enrichment ..................................................................................18

  G.  Plaintiff's Nationwide Class Allegations are Sufficient .......................20

  H.  Plaintiff Has Standing .............................................................................22

    1.  *Defendant's Deceptive Acts Caused Plaintiff's Injuries* ....................22

    2.  *Plaintiff Has Standing to Pursue Claims Regarding Statements Made on
       OTA Websites* ...................................................................................23

    3.  *Plaintiff Has Standing to Pursue Injunctive Relief* .............................24

V.    CONCLUSION ...........................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................5

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................ 18, 19, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................4

*Branca v. Bai Brands, LLC*,
   2019 WL 1082562 (S.D. Cal. Mar. 7, 2019).....................................20

*Brazil v. Dole Food Co., Inc.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013)...............................................22

*Brown v. Starbucks Corp.*,
   Case No.: 18cv2286 JM (WVG) (S.D. Cal. Mar. 1, 2019)................23

*Burton v. Time Warner Cable Inc.*,
   2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .....................................5

*Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011). ..........................................................13

*Conley v. Gibson*,
   355 U.S. 41, 47 (1957) ........................................................................4

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ....................................................... 24, 25

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012)..............................................................6

*Davison v. Santa Barbara High School District*,
   48 F.Supp.2d 1225 (C.D. Cal. 1998)....................................................5

- ii -

*DePhillippis v. Living Essentials, LLC,*
  2018 WL 7051065,  (S.D. Cal. Nov. 29, 2018) .....................................22

*District of Columbia v. Marriott International, Inc.,*
  No. 2019 CA 4497 B (D.C. Dec. 31, 2019) ....................................2, 8

*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003) ...................................................25

*F.D.I.C. v. Dintino,*
  167 Cal. App. 4th 333 (2008) ...................................................18

*Fairbanks v. Superior Court,*
   46 Cal. 4th 56 (2009) ..........................................................16

*Forcellati v. Hylands, Inc.,*
  876 F. Supp. 2d 1155 (C.D. Cal. 2012)........................................20

*Ford v. Hotwire, Inc.,*
  2008 WL 5874305 (S.D. Cal. Feb. 25, 2008) ..................................8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,*
  528 U.S. 167 (2000) ...............................................................24

*Gottreich v. S.F. Inv. Corp.,*
  552 F.2d 866 (9th Cir. 1977) ....................................................13

*Harris v. Las Vegas Sands, L.L.C.,*
  2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) .................................8

*Hasbrouck v. Bank Am. Hous. Servs.,*
  190 F.R.D. 42 (N.D.N.Y. 1999) ..................................................5

*Hinojos v. Kohl's Corp.,*
  718 F.3d 1098 (9th Cir. 2013) ...................................................2

*In re Hyundai & Kia Fuel Econ. Litig.,*
  926 F.3d 539 (9th Cir. 2019) (en banc)........................................21

- iii -

*In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV TV Litig.*,
 758 F.Supp.2d 1077, 1096 (S.D. Cal. 2010) .......................................................20

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir. 2005) .........................................................................5

*Laster v. T-Mobile USA, Inc.*,
 407 F. Supp. 2d 1181 (S.D. Cal. 2005) .............................................................11

*Lilly v. ConAgra Foods, Inc*.,
 743 F.3d 662 (9th Cir. 2014) ...........................................................................6

*McBride v. Boughton*,
 20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004) .........................................................19

*Munoz v. MacMillan*,
 124 Cal. Rptr. 3d 664 (Cal. Ct. App. 2011) ........................................................19

*Munoz v. MacMillan*,
 195 Cal. App. 4th 648 (2011)..........................................................................18

*Owino v. CoreCivic, Inc.*,
 Case No. 17-CV-1112 JLS-NLS (S.D. Cal May 14, 2018) ..............................20

*Romero v. Securus Techs., Inc.*,
 216 F. Supp. 3d 1078 (S.D. Cal. 2016) .............................................................19

*Russ v. Apollo Group, Inc., et al.*,
 2009 WL 10674112 (C.D. Cal. Sept. 23, 2009)..................................................16

*Sagan v. Apple Computer, Inc.*,
 874 F. Supp. 1072 (C.D. Cal. 1994).................................................................5

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
 256 F.R.D. 284 (D. Conn. 2009) .....................................................................21

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir.2011) ..........................................................................5

- iv -

*State of Nebraska v. Hilton Dopco Inc.*,

   Case No. CI 19-2366 ..................................................................6

*Trade Comm'n v. Education Society*,

   302 U.S. 112 (1937) .................................................................11

*Valencia v. Volkswagen Grp. of Am. Inc*,

   2015 WL 4747533 (N.D. Cal. Aug. 11, 2015) ......................18

*Vess v. Ciba– Geigy Corp. USA*,

   317 F.3d 1097 (9th Cir. 2003) ................................................12

*Von Grabe v. Sprint PCS*

   312 F. Supp. 2d 1285 (S.D. Cal. 2003) .................................14

*Von Koenig v. Snapple Beverage Corp.*

   713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) ......................14

*Werdebaugh v. Blue Diamond Growers*,

   2013 WL 5487236 (N.D. Cal. 2013)................................ 20, 21

*Williams v. Gerber Prod. Co.*,

   552 F.3d 934 (9th Cir. 2008) ...................................................6

*Wisdom v. Eastern Diamond Sports, LLC*,

   2018 WL 6264994 (C.D. Cal 2018) ......................................20

*Wright v. Old Gringo Inc.*,

   Case No. 17-cv-1996-BAS-MSB (S.D. Cal. Aug. 13, 2019).............................19

## **Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...................................4

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ...................................4

Cal. Civ. Code § 1750, *et seq.*................................... 2, 4, 16

Cal. Civ. Code § 1760. ......................................................... 15, 16

Cal. Civ. Code § 1761(b) .................................................... 15, 16

*Hall v. Marriott International, Inc.* No. 19-cv-1715
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

Cal. Civ. Code § 1770(a) ........................................................................16

Cal. Fin. Code, Div. 1.3, §§ 4000, *et seq*. ............................................16

Cal. Ins. Code ..........................................................................................16

Nat. Consumer Act 1970 § 1.301(37) .....................................................15

National Consumer Act § 37(b) ..............................................................16

## **Other Authorities**

55 Cal. Jur. 3d Restitution § 2 .................................................................19

H.R.4489 - Hotel Advertising Transparency Act of 2019 ....................6, 8

*The Competitive Initiative and Hidden Fees*, National Economic Council
   (December 2016) .................................................................................6

## **Rules**

Fed. R. Civ. P. 8 ........................................................................................4

Fed. R. Civ. P. 8(a)(2) ............................................................................14

Fed. R. Civ. P. 8(a)(3) ............................................................................20

Fed. R. Civ. P. 8(d)(2) ............................................................................20

Fed. R. Civ. P. 8(e) ...................................................................................5

Fed. R. Civ. P. 9(b) .................................................................................12

Plaintiff Todd Hall ("Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this Memorandum of Points and Authorities in Support of Plaintiff's Opposition to the Motion to Dismiss First Amended Complaint that was filed by Defendant Marriott International, Inc. ("Defendant" or "Marriott") on January 10, 2020. (Dkt. No. 18, ("Def.'s Mot.")). For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

## I. <u>INTRODUCTION</u>

This is a consumer class action lawsuit involving the false and deceptive advertising of the amount consumers must pay for Defendant's hotel rooms, services, and amenities. The gravamen of Plaintiff's First Amended Complaint ("FAC") is that Defendant deceptively advertises a daily room rate that is less than a consumer will actually pay because it does not include the mandatory resort fees that Marriott adds to the daily room charge, and uses it to facilitate bait and switch business practices.[1] (FAC ¶ 9).

Defendant contends, "Plaintiff asks the Court to be the first in the nation to find that pre-reservation, resort fee disclosures violate consumer protection laws." (Def.'s Mot. at 1:23-25). However, Judge Fern Flanagan Saddler recently entered an order denying Defendant Marriott International, Inc.'s motion to dismiss in *District of Columbia v. Marriott International, Inc*., No. 2019 CA 4497 B (D.C. Dec. 31,

---

[1] "Bait and switch" is frequently used to describe a range of commercial behaviors, many of which meet the legal criteria for unlawful deception under federal statutes and regulations, state laws and regulation, and common law doctrines, as they do here. *See, e.g.*, 16 CFR § 233.1(a) (prohibiting advertising an artificial, inflated price for the purpose of enabling the subsequent offer of a large reduction), 16 CFR § 238.0 (prohibiting advertising an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell), Cal Bus. & Prof. Code § 17501 (prohibiting advertising the former price of anything unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement or was the "prevailing market price"), 16 CFR § 251.1 (prohibiting advertising a "free" service unless all of the terms, conditions and obligations appear in close conjunction with the offer of a "free" service unless the disclosure is made at the outset – "[f]or example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset.").

*Hall v. Marriott International, Inc.*, Case No. 19-cv-1715
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

2019). (*See* Plaintiff's Request for Judicial Notice, filed concurrently herewith ("RJN"), at Ex. 1). There, Marriott claimed, as it does here, that no reasonable consumer would be "misled by Defendant's pre-reservation disclosures" because Defendant "prominently discloses the resort fee, amenities covered by the fee, and the total price for a consumers stay before the consumer provides payment information and makes the reservation." *Id*., at *2. Judge Saddler stated that the allegations concerning Marriott's resort fee were sufficient to state a cause of action irrespective of whether the information provided to consumers was "technically accurate." *Id*., at 4. Specifically, Judge Saddler held that the plaintiff's allegations that these same deceptive practices which the Federal Trade Commission ("FTC") refers to as "drip pricing," cause consumers to believe that Defendant's hotel rooms are cheaper than they actually are, and that the additional fees are government-imposed rather than a charge imposed by Defendant, if true, would entitle the plaintiff to relief.

Defendant further argues, (i) Plaintiff has not shown that a reasonable consumer would be misled by Defendant's conduct; (ii) Plaintiff has failed to allege a misrepresentation or concealed fact; (iii) Plaintiff has not satisfied Rule 9(b)'s heightened pleading standard; (iv) Plaintiff failed to properly allege reliance; (v) the sale of hotel accommodations are not subject to California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750*, et seq*. ("CLRA"); (vi) Plaintiff's claim for unjust enrichment fails; (vii) Plaintiff's nationwide class allegations should be dismissed; and (viii) Plaintiff lacks standing. As discussed more fully below, none of Defendant's grounds for dismissal are persuasive. Other courts have previously rejected Defendant's arguments and upheld similar claims for allegations of misleading discounts and price reductions. *See District of Columbia v. Marriott International, Inc.*, No. 2019 CA 4497 B (D.C. Dec. 31, 2019) (declining to dismiss similar case involving Defendant's drip and partition pricing); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-05 (9th Cir. 2013) (sustaining CLRA, FAL

and UCL claims for false representations of marked-down and sale prices). This Court should reach a similar conclusion here, and for the reasons set forth below, deny Defendant's Motion to Dismiss in its entirety.

## II. <u>BACKGROUND</u>

Plaintiff Todd Hall originally filed the Complaint on September 9, 2019. (Dkt. No. 1). Defendant filed a Motion to Dismiss Plaintiff's Complaint on November 1, 2019. (Dkt. No. 11). Plaintiff then filed the operative First Amended Complaint on November 22, 2019. (Dkt. No. 15). Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint and a Request for Judicial Notice on January 10, 2020. (*See* Dkt. No. 18).

Plaintiff's FAC concerns Defendant's deceptive advertising of its hotel rooms and services. Specifically, Defendant misleadingly advertises a low-quoted room rate, which baits consumers into believing they are getting a bargain. However, Defendant then hides and disguises a portion of the hotel room's daily rate from consumers by adding charges at various times during the vending process. Marriott often calls the hidden portion of the room rate a number of terms, including a "resort fee," "amenity fee," or "destination fee." (FAC ¶ 5). "In some instances, these resort fees cover costs, such as parking or wi-fi service, that Marriott advertises it provides as free or complimentary or, alternatively, requires hotel guests to pay for separately, even though Marriott has required them to pay the resort fee." *Id*. "[W]hen a consumer books online, he or she cannot tell what is included in the room rate, what is included in the 'fee,' what is truly 'free' or complimentary, and what he or she will be separately charged for upon arrival and/or at checkout, and by then it is too late to make an informed consumer choice." *Id*.

Plaintiff Todd Hall "has stayed at over 45 Marriott hotels and resorts during the Class Period." (FAC ¶ 52). "Plaintiff purchased hotel rooms from Defendant in reliance on the false and deceptive bargain and bait advertising and without knowledge of the true amount being charged based on Defendant's deceptive

advertising and buried resort fees, including amounts included under the 'USD Taxes and fees' category." (FAC ¶ 56). "Because Plaintiff reasonably assumed that the hotel reservations would conform to the advertised price and be free of unlawful or hidden charges, when they were not, he did not receive the benefit of his purchase." (FAC ¶ 58). "Plaintiff would not have reserved the hotel room, and would not have paid as much as he had for a hotel room in the absence of Defendant's misrepresentations and omissions." (FAC ¶ 59).

Plaintiff alleges that Defendant has violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and Plaintiff brings further causes of action for unjust enrichment/quasi-contract; negligent and intentional misrepresentation; and concealment/non-disclosure. Plaintiff seeks to represent a class defined as "[a]ll U.S. citizens who reserved or booked a Marriott owned or franchised hotel room and stayed in any such room for overnight accommodation and were charged an amount therefore that was higher than the room rate quoted or advertised per day plus government imposed taxes … on or after January 1, 2012 and until the Class is certified, for personal use and not for resale…" (FAC ¶ 64). Plaintiff also seeks to represent a California sub-class of consumers. (FAC ¶ 65).

### III.   <u>LEGAL STANDARD</u>

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give the defendant fair notice of what the Plaintiffs' claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

When ruling on a motion to dismiss, courts accept "allegations in the

4

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a Plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB AJWX, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.f. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High School District*, 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

## IV.   ARGUMENT

### A. Defendant's Practices as Alleged are Likely to Deceive a Reasonable Consumer and Did Deceive Plaintiff

Defendant first argues, "Plaintiff's UCL, FAL, and CLRA claims fail because the statements are not likely to deceive a reasonable consumer." (Def.'s Mot. at 8:19-20 (capitalization omitted). Defendant contends that because the total "resort fee and the total price for [a consumer's] stay" is disclosed, no reasonable consumer could be misled.  (Def.'s Mot. at 10:6)  Defendant's argument fails because whether or not a reasonable consumer would be misled "is a question of fact not appropriate for

determination [on a motion to dismiss]." *See Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008); *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc*., 743 F.3d 662, 665 (9th Cir. 2014).

Notwithstanding, ten (10) members of Congress,[2] Judge Saddler, the Nebraska Attorney General,[3] the National Economic Council,[4] and the FTC (*see* FAC, at n.3) have all found that the practice of drip and partition pricing relating to resort or amenity fees in online advertising *in and of itself* is likely to deceive a reasonable consumer.  Here, Plaintiff does not simply allege that the bare imposition

---

[2] *See* H.R.4489 - Hotel Advertising Transparency Act of 2019 introduced in the House on September 25, 2019. "SEC. 2. FINDINGS.  Congress makes the following findings: (1) As of the day before the date of the enactment of this Act, hotel rooms and other places of lodging are often advertised at a rate and later in the buying process mandatory fees are disclosed that were not included in the advertised room rate. (2) The mandatory fees described in paragraph (1) are sometimes called by names such as "resort fees", "cleaning fees", or "facility fees" and they are all mandatory and charged by a place of short-term lodging in addition to advertised room rates. (3) The number of short-term lodging facilities that charged mandatory resort fees is growing.  (4) Advertising that does not reflect the true mandatory cost of a stay at a place of short-term lodging is deceptive.  (5) The Federal Trade Commission has authority under section 5 of the Federal Trade Commission Act (15 U.S.C. 45) to regulate and prohibit unfair or deceptive acts or practices in or affecting commerce.  (6) In 2012 and 2013, the Federal Trade Commission exercised its authority under that section 5 to issue warning letters to 35 hotel operators and 11 online travel agents. In those letters, the Commission cautioned hotel operators and online travel agents that mandatory resort fees could confuse consumers in violation of section 5(a)(2) of such Act (15 U.S.C. 45(a)(2)).  (7) In 2017, an economist at the Federal Trade Commission published an issue paper that found that forcing consumers to click through additional webpages to see a hotel's resort fee increases the time spent searching and learning the hotel's price, and went on to state the following: 'Separating the room rate from the resort fee increases the cognitive costs of remembering the hotel's price. When it becomes more costly to search and evaluate an additional hotel, a consumer's choice is either to incur higher total search and cognitive costs or to make an incomplete, less informed decision that may result in a more costly room, or both.'" https://www.congress.gov/bill/116th-congress/house-bill/4489/text?r=10&s=1  [Last visited January 16, 2020.]

[3] *See State of Nebraska, ex rel. Douglas J. Peterson, Attorney General v. Hilton Dopco Inc*., District Court of Lancaster County, Nebraska, Case No. CI 19-2366

[4] *The Competitive Initiative and Hidden Fees*, National Economic Council (December 2016). "*The* competitive process depends fundamentally on advertised prices that are accurate. In many industries, businesses use so-called "hidden fees" – the addition of a mandatory or quasi-mandatory fee to the advertised price of a good or service, added at some point in the transaction, to effectively raise the final price – in order to drive down the perceived price and lure consumers to make purchasing decisions based on misinformation. At their worst, such fees can be fraudulent or deceptive; at a minimum, they make prices unclear, hinder effective consumer decision making, and dull the competitive process." https://obamawhitehouse.archives.gov/sites/whitehouse.gov/files/documents/hiddenfeesreport_12282016.pdf.  [Last visited January 20, 2020.]

*Hall v. Marriott International, Inc.*, Case No. 19-cv-1715
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

of a disclosed resort fee is what is likely to deceive a consumer. Rather, Plaintiff alleges that (1) Defendant baits consumers to book Marriott hotels by initially quoting a lower room rate that does not include a mandatory resort fee; (2) Defendant omits material facts necessary to make truthful statements not misleading; (3) "Hotel Services and Amenities" charges during the reservation process are constantly changing and hidden using drip and partition pricing; and (4) there are material and misleading statements in rates advertised on OTA websites.

1. *Defendant Misleads Consumers by Initially Quoting a Lower Rate that Does Not Include a Mandatory Resort Fee*

As evidenced by its own Motion, the internet gives Marriott a unique ability to use drip and partition pricing to lure consumers in with a low price, illusory bargain, or free offer, and later lock them in to paying a higher price for the same offer, when it is too late to make an informed choice. Defendant's main contention is that "Marriott discloses the resort fee on the room-selection page." (Def.'s Mot. at 9:20). But, the room-selection page is not the first page that consumers see when they search for a hotel. Plaintiff's FAC alleges, "[w]hen consumers search for and seek to book a hotel using Marriott's online reservation system, Marriott provides the consumers with a quoted room rate" which "does not include or even mention the mandatory resort fee the consumer will be required to pay." (FAC at ¶¶ 21-22). This quoted room rate (which does not mention a resort fee) is the price consumers see along with all other advertised hotel room rates. *Id*. It is this low quoted room rate which baits and lures consumers in and causes them to select a hotel with a perceived low price. It is only after a consumer clicks on Defendant's hotel that a resort fee is mentioned. In this context, it is easy to how a reasonable consumer would be baited and misled by Defendant's advertising practices.

Marriott's practice of advertising a low-quoted room rate that does not include the mandatory resort fee or a breakdown of what is and is not included therein, is exactly what the FTC was referring to when it found that forcing consumers to click

through additional webpages to see a hotel's resort fee increases the time spent searching for and learning the hotel's price, and that "[s]eparating the room rate from the resort fee increases the cognitive costs of remembering the hotel's price. When it becomes more costly to search and evaluate an additional hotel, a consumer's choice is either to incur higher total search and cognitive costs or to make an incomplete, less informed decision that may result in a more costly room, or both." *See* H.R. 4489 - Hotel Advertising Transparency Act of 2019 introduced in the House on September 25, 2019 at fn. 1 herein. This baiting and switching as alleged in the FAC is a clear-cut case of deception, and Plaintiff's FAC should not be dismissed.

Defendant next argues, "[n]o court has ever found a pre-reservation, resort fee disclosure to violate state consumer protection laws." (Def.'s Mot. at 10:9-10). In *District of Columbia v. Marriott International, Inc.*, No. 2019 CA 4497 B (D.C. Dec. 31, 2019), Judge Saddler recently held that the allegations regarding Defendant Marriott's advertising of a low room rate and later disclosing a resort fee under a "USD taxes and fees" heading, if proven true, would entitle the plaintiff to relief under the District of Columbia's Consumer Protection Procedures Act ("CPPA"). (RJN, at Ex. 1). Defendant then relies on two unpublished cases regarding hotel resort fee disclosures: *Harris v. Las Vegas Sands, L.L.C.*, No. 12-CV-10858, 2013 WL 5291142, at *5-6 (C.D. Cal. Aug. 16, 2013) ("*Harris*") and *Ford v. Hotwire, Inc.*, No. 07-CV-1312, 2008 WL 5874305, at *4 (S.D. Cal. Feb. 25, 2008) ("*Ford*"). Neither case is persuasive here.[5] In *Harris*, the Court held that the "Grand Total" was not false or misleading because the defendant disclosed that the Grant Total did not include the resort fee and taxes. 2013 WL 5291142 at *5. Here however, Plaintiff does not simply allege that the existence of a resort fee is misleading and deceptive. Plaintiff alleges that Marriott baits consumers into booking Marriott hotel rooms,

---

[5] Neither *Harris* nor *Ford* considered the guidance provided by the FTC's warning letters on resort fee drip pricing.

*Hall v. Marriott International, Inc.*, Case No. 19-cv-1715
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

because Marriott fails to initially disclose the existence of a resort fee, and when the resort fee is finally disclosed, a consumer is unable to determine what services he or she is actually being charged for. The *Harris* case does not address this. In *Ford*, the Court held that "the amount and nature of the resort fees in question were freely accessible." 2008 WL 5874305 at *4. Here however, a consumer is unable to determine what services they are being charged for through the resort fee, as some amenities are advertised as both being complimentary and a part of the resort fee. Further, Marriott consumers are initially unaware of the amount of the resort fee, as the initial advertised room price does not include the resort fee, and consumers are thus baited to transact with Defendant before Defendant raises the price to one that includes the resort fee. Because Defendant's advertising is likely to deceive a reasonable consumer, Defendant's Motion should be denied.

1. *Defendant Omits Material Facts Regarding "Taxes and Fees" versus "Amenity Fees" versus "Free Hotel Services and Amenities"*

When Marriott consumers select a room rate and provide their credit card and other personal information in order to book a room, Marriott misrepresents that the daily room rate at the hotel is less than it actually is because it does not include the amenity fee that Marriott adds to the daily room charge.  The FAC alleges that in many instances, Marriott includes the amenity fee as part of a total charge ambiguously called "Taxes and Fees," thereby misleading consumers to believe the additional fees they are paying are entirely government-imposed taxes and fees, rather than a separate daily charge imposed by and paid to Marriott.  FAC, ¶¶ 5, 8, 9, 25-27, 30-34, 41, 46-47, 51, 55-56, 64-65. By combining the amounts that consumers were asked to pay for amenity fees with their tax payments under a generic heading of "taxes and fees," Marriott led consumers to believe the amenity fees were government-imposed charges. *Id*. In some instances, Marriott also represents that these amenity fees cover the costs of amenities, such as parking, pool, fitness classes, high speed internet, business services, etc. that Marriott either also

9

purports to provide as complimentary or, alternatively, requires hotel guests to pay for separately, even though Marriott has required them to pay a "mandatory" amenity fee.   FAC at ¶¶ 9, 29.

Defendant's practices of advertising room rates that: (a) do not include mandatory daily amenity fees, including the destination amenity fee in "taxes and fees" when the fee is not in fact imposed by any government agency; and (b) represent that amenity fees include amenities or services that Marriott states are provided at no cost, or that the consumer later finds out he or she must still pay for separately, are misrepresentations of material fact capable of misleading consumers. Marriott's practices of advertising rates for room and hotel services and amenities at its hotels without including other daily charges imposed by the hotel constitutes the advertisement or offer of good or services without the intent to sell them as advertised or offered.

## 2.   Defendant Misleads Consumers by Misrepresenting Resort Fee Amenities

Marriott falsely represents to prospective consumers that amenities will be given to them free, and that they will only pay for a hotel room at a dramatically reduced price plus "taxes and fees." For example, Marriott's Coronado Island Resort & Spa advertises "Free weights," "Fitness classes – complimentary" and "Fitness center is free of charge for hotel guests." (FAC ¶ 36). When a consumer lands on the room-selection webpage, however, a notice states that a "daily resort fee" will be added to the room rate, which includes "fitness classes and more." (FAC ¶ 35). In truth, the actual price charged to consumers is the same as the regular, standard price for a room and hotel services and amenities.  Defendant contends that its practice of representing that the resort fee covers amenities that are purportedly complimentary could not mislead reasonable consumers because "the fact that a resort fee is charged is [] disclosed to Plaintiff before purchase." (Def.'s Mot. at 14:24-26). However, Through the combination of deceptive internet advertising and drip and partition pricing, the consumer is effectively baited in, and then switched into buying a room

10

and/or hotel services and amenities when he or she is not adequately informed as to what is included in the room rate, what is included in the "amenity fee," what is truly "free" or complimentary, and what he or she will be separately charged for upon arrival and/or at checkout. Defendant's "bait and switch" whereby Marriott falsely baits consumers into believing they are getting a bargain, and then hides and disguises a portion of a hotel room's daily rate from consumers by subtly calling the amenities free when in fact they are being charged for is unlawful and misleading to consumers.

In *Trade Comm'n v. Education Society*, 302 U.S. 112 (1937) the Supreme Court upheld the Federal Trade Commission's cease and desist order prohibiting false representations to prospective purchasers that books would be given to them for free and that they would pay only for the extension service at a reduced price; whereas, in truth, the price charged to them was the same as the regular, standard price for both the books and the extension service. *Id*. The Supreme Court has made clear that the practice of promising free goods or services where no such free goods or services were intended to be given is "contrary to decent business standards. To fail to prohibit such evil practices would be to elevate deception in business and to give to it the standing and dignity of truth." *Id*. Here, if Defendant intended to sell its rooms and services as advertised, it (a) would not have changed rates midstream, (b) would have disclosed the true make up of all resort fees and taxes, and (c) would have transparently listed and differentiated in its advertising what amenities are included in the various partitioned prices versus what had to be purchased for an additional fee. Instead, Defendant profited by deceptively shifting the burden of these undisclosed and deceptively labeled charges to its customers once they had taken the time and effort to respond to the misleading advertisements. Such allegations sufficiently allege an injury in fact under the law. *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005).

3. *Defendant Misleads Reasonable Consumers by Not Including Resort Fees in*

*Rates Advertised by OTAs.*

Finally, Marriott contends that dismissal is appropriate because it "does not control the manner in which the OTAs display hotel rooms and room rates on their websites, and Plaintiff pleads no facts alleging such control. (Def.'s Mot. at 15:10-12). However, in ruling on a motion to dismiss, the Court must construe the well-pled factual allegations in the complaint as true. And in the FAC, Plaintiff specifically alleges that Marriott does control the information displayed on OTA sites. (*See* FAC ¶ 7 ("Marriott advertises and promotes its hotel rooms by advertising daily room rates on its own website and the websites operated by OTAs")). That Marriott simply disagrees with Plaintiff's allegations is not relevant on a motion to dismiss. Further, the fact that the hotels rooms are sold through the OTA's websites does not insulate Marriott against liability for knowingly advertising misleading price information, regardless of the advertising channel it uses. The FAC adequately alleges that Marriott is liable for the deceptive prices displayed by the OTAs for Marriott's hotel rooms, and Defendant's Motion should be denied.

## B. Defendant Has Made Misrepresentations and Concealments in Advertising its Hotels

Defendant next argues "[t]here is no plausible misrepresentation and/or concealment that Plaintiff can allege…" (Def.'s Mot. at 16:7-8). However, Plaintiff has described above in Section A(1)-(4) Marriott's misrepresentations and concealments with respect to its drip and partition pricing practices.

## C. Plaintiff Satisfies Rule 9(b)

Defendant's argument that the FAC fails to satisfy the heightened pleading requirements of Rule 9(b), is also incorrect. Rule 9(b) does not impose as onerous of a burden as Defendant contends. Allegations of fraud or mistake need only be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba– Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003);

*Gottreich v. S.F. Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977) (a pleading "is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.").

Here, Plaintiff alleges the "who, what, when, where and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent conduct], and why it is false." *Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). The FAC explains that Defendant (the "who") made misrepresentations of material fact and omissions to Plaintiff and the public (*see, e.g.*, FAC, ¶¶ 61,70, 75, 86-87, 119, 121, 123-124, 127, 218, 133, 135, 139-140, and 144-147), including deceptive statements about the services covered by fees, combined with the lack of disclosure of the fees, thereby misleading consumers about what fees they must pay, what charges are government-imposed taxes and fees versus Marriott fees, what services are truly free, and what else they may have to pay for on top of their quoted room rate, (the "what") (*see, e.g.*, FAC, ¶¶ 5,1 5, 18, 45, 47, 49, 51, 55-56, 66, 70, 75, 80, 88-89, 93, 99, 100, 102, 109, 111, 113, 117, 127, 129, 132, 141, and 143), from January 1, 2012 to the present (the "when") (*see, e.g.*, FAC, ¶¶ 53-54 and 64-65), on its website pages and on online travel sites like Priceline or Expedia (the "where") (*see, e.g.*, FAC, ¶¶ 5, 7, 14, 18, 21, 30, 26, 43, 45, 47-48, 53-54, 57, 127, and 143), using unlawful trade practices: (1) called "drip pricing" and "partition pricing"; (2) in advertising its hotel rooms; (3) whereby Marriott falsely baits consumers into believing they are getting a bargain, and then hides and disguises a portion of a hotel room's daily rate from consumers; (4) through practices ranging from without limitation, (i) the outright hiding of price terms, (ii) or using small print, (iii) or by mischaracterizing them, (iv) to subtler ways of calling something free when in fact it is being charged for, (v) or by adding charges at various times during the vending process (the "how") (*see, e.g.*, FAC, ¶¶ 5, 8-10, 15-16, 18, 27-28, 35-37, 41-43, 45, 47-51, 55-58, 66, 89, 93, 114, 132, 134-135, 138-139, and 144). Such allegations meet the heightened pleading

13

requirements of Rule 9(b).  *See*, *e.g.*, *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010).

Finally, courts have recognized that where alleged misrepresentations occur in printed form, the particularity requirements of Rule 9(b) may be satisfied by "identifying or attaching representative samples of [misleading] materials." *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306 n.19 (S.D. Cal. 2003). Here, the language of the misleading advertising and an example of the drip, drip, drip and partition nature of Defendant's bait and switch scheme containing misrepresentations and omissions is clearly identified in the FAC.  (*See,* e.g., FAC ¶¶ 21, 23, 25-43, 46, 49-51). The FAC provides several detailed, representative examples of misconduct and reliable indicia of fraud such that Plaintiff has clearly and sufficiently complied with Rules 8(a)(2) and 9(b).

**D. Plaintiff Has Adequately Plead Reliance**

Defendant argues that the FAC "does not allege that any misrepresentation regarding the resort fees 'caused' Plaintiff to enter the transaction." (Def.'s Mot. at 17:3-4). However, Plaintiff alleges that Marriott engaged in "bait and switch" deceptive advertising whereby Marriott baited consumers with a low quoted room rate that Marriott had no intention to sell at, and then switched to a higher price. (*See* FAC at ¶ 99 ("Plaintiff suffered injury in fact as a result of Marriott's actions as set forth herein because Plaintiff purchased a hotel room in reliance on Marriott's false and misleading marketing claims that the hotel rooms were discounted and cheaper than they were.")). The FAC further alleges "Plaintiff and the Class Members suffered a loss of money as a result of Defendant's intentional misrepresentations because they would not have purchased the hotel rooms, or would have paid less for the hotel rooms, if the truth concerning Defendant's Misrepresentations had been known." (FAC ¶ 147). Through the combination of deceptive internet advertising and drip and partition pricing, Plaintiff was inadequately informed as to what was included in the room rate, what was included in the "amenity fee," what was truly

free or complimentary, and what he would be separately charged for upon arrival and/or checkout. Plaintiff's allegations regarding the deceptive advertising upon which he relied support a cognizable legal theory such that Defendant's Motion should be denied.

**E. Lodging Services and Amenities are Subject to the CLRA**

The rule in California is that the CLRA is to be interpreted broadly. Cal. Civ. Code § 1760. The lodging and hotel industry is a service business, and Marriott itself advertises "Hotel Services and Amenities" on its website. Nonetheless, Defendant now asks this Court to find that hotel rooms and services and amenities are not considered a good or service under the CLRA. (Def.'s Mot. at 19-21). Defendant cites no authority for this proposition because there is none.

Defendant's main contention is that the California legislature deliberately omitted "hotel accommodations" when it enacted the CLRA. (Def.'s Mot. at 20:1-2). What Defendant fails to tell the Court is that the legislature *omitted every example of services* which was set forth in the National Consumer Act.

The National Consumer Act's defines services as:

(a) work, labor, and other personal services,

(b) privileges with respect to transportation, hotel and restaurant accommodations, educate, entertainment, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like, and

(c) insurance.

National Consumer Act (Nat. Consumer L. Center 1970 § 1.301(37), pgs. 23-24.

California's Civil Code Sec. 1761, on the other hand, *omits each of these examples in their entirety* and simply states,

(b) "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).

Marriott would have the Court believe that the California Legislature intended

to exclude *everything* set forth in the National Consumer Act § 37(b) from the definition of "service" in CLRA. But in fact, just the opposite is true. By removing the specific "privileges" set forth in the National Consumer Act, the California Legislature actually broadened the definition of services rather than narrowing it. This is entirely consistent with its mandate that the CLRA is to be interpreted broadly. Cal. Civ. Code § 1760.

In noting that the California legislature omitted the reference to insurance in the definition of services in the CLRA, the *Fairbanks* court ruled that the legislature intended "not to treat all insurances as a service" under the CLRA. *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009). Defendant asks that the Court apply this reasoning to find that the legislature intended to not include hotel accommodations as a "service" under the CLRA. (Def.'s Mot. at 20). However, the term "insurance" unlike the term "hotel and restaurant accommodations" was listed in a separate paragraph – paragraph (c) of the model law, and Defendant does not provide authority showing that CLRA claims are barred as a matter of law for the other categories in paragraph (b) of the model law. *See Russ v. Apollo Group, Inc.*, *et al.*, No. CV 09–904–VBF(FMOx), 2009 WL 10674112 (C.D. Cal. Sept. 23, 2009). Further, there are already separate comprehensive California regulatory schemes in place governing and protecting insurance and financial consumer rights. *See* e.g. Cal. Fin. Code, Div. 1.3, §§ 4000, *et seq.* and Cal. Ins. Code. There is no such comprehensive regulatory scheme governing consumer rights in connection with hotel services.

The plain language of the CLRA and Cal. Civ. Code § 1761(b) does not exclude or in any way limit the application of the CLRA's consumer protection mandate to hotel services and amenities. Enacted in 1970, the CLRA prohibits specified unfair and deceptive acts and practices in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The question here is whether either: (1) a hotel room; or (2) "Hotel

16

Services & Amenities" which Marriott advertises (*i.e.*, wireless, high speed internet access, fax service, copy service, secretarial service, computers, fitness center, exercise classes, full-service business center, Marriott-certified wedding planner, parking, pool, full service spa, health and beauty services, meeting services, certified meeting planner, coffee maker/tea service, coffee/tea in-room, housekeeping service, room service, valet dry-cleaning, and other advertised "Hotel Services & Amenities")[6] are subject to the act's remedial provisions.

Marriott offers services which are clearly subject to the protection of the CLRA such as day spa services, including at the San Diego Marriott Marquis where non-hotel room customers can "melt away stress and reinvigorate the body," and Marriott also advertises a "full service spa" as an amenity on its hotel room booking webpage. It would render the CLRA nonsensical to find that it protects walk-in customers who are not overnight guests, but does not protect customers who book a room for an overnight stay. Indeed, Marriott itself describes its destination amenities as a "service" which is entirely consistent with the benefits consumers actually receive.

Plaintiff and other reasonable consumers are unable to rely on Marriott's advertising representations with any certainty regarding what charges are for what services they are buying when they book a room online with Marriott. Marriott contends the "Destination Amenity Fee" is not a part of the "Room Rate" because it imposes one charge for the room and one for an "Amenity Fee" (and still other charges for other amenities). Marriott cannot have it both ways. Either the amenity fee charge is for Hotel Services and Amenities, and therefore is subject to the CLRA, or its not and it is therefore deceptive to represent to the contrary in its advertising.

Protecting California consumers from false advertising in connection with hotel rooms, services, and amenities is wholly consistent with the purpose of the

---

[6]  https://www.marriott.com/search/findHotels.mi   and   https://www.marriott.com/hotels/fact-sheet/travel/sandt-marriott-marquis-san-diego-marina/

*Hall v. Marriott International, Inc.*, Case No. 19-cv-1715
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

CLRA, as evidenced by the statute's legislative history. Defendant does not provide authority showing that CLRA claims are barred as a matter of law for the other categories in paragraph (b) of the model law, which were removed from the CLRA definition of services, such as entertainment, recreation, physical culture, and the like which, like hotel rooms and services, are not enumerated in the CLRA. Defendant's Motion regarding the CLRA's applicability should be denied.

### F. Unjust Enrichment

According to Defendant, dismissal of Plaintiff's unjust enrichment claim is warranted because (1) unjust enrichment is not a stand-alone claim, and (2) Plaintiff has not alleged facts to support a quasi-contract. (Def.'s Mot. at 21). "Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *Valencia v. Volkswagen Grp. of Am. Inc*, No. 15-CV-00887-HSG, 2015 WL 4747533, at *8 (N.D. Cal. Aug. 11, 2015). *See also Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract."). True enough, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015). "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable remedy of restitution when unjust enrichment has occurred "is an obligation (not a true contract [citation]) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money." *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

Unjust enrichment describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request' "for which "[t]he return of that benefit is the remedy 'typically sought in a quasi-

18

contract cause of action.'" *Astiana, supra* quoting 55 Cal. Jur. 3d Restitution § 2 and *Munoz v. MacMillan*, 124 Cal. Rptr. 3d 664, 675 (Cal. Ct. App. 2011). By definition, an unjust enrichment claim may proceed when there is no actual wholly integrated contract covering the subject matter at issue. *Wright v. Old Gringo Inc.*, Case No. 17-cv-1996-BAS-MSB, at *11-12 (S.D. Cal. Aug. 13, 2019).

Here, Marriott unlawfully received Plaintiff's and other consumers' business when Marriott baited consumers with a low quoted room rate that Marriott had no intention to sell at, and then switched to a higher price when it was too late for consumers to make an informed decision. Defendant does not contend there is an actual contract covering the drip and partition pricing at issue here. Additionally, even if Defendant did so contend, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 121 (Cal. Ct. App. 2004).

> "As Defendant correctly pointed out, there is not a standalone cause of action for unjust enrichment in California. <u>Durell v. Sharp Healthcare</u> , 183 Cal.App.4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010). But unjust enrichment is synonymous with restitution, and when a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.' <u>Rutherford Holdings, LLC v. Plaza Del Rey</u> , 223 Cal.App.4th 221, 231, 166 Cal.Rptr.3d 864 (2014). There are 'several potential bases for a cause of action seeking restitution.' <u>Durell</u> , 183 Cal.App.4th at 1370, 108 Cal.Rptr.3d 682. For example, 'restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct.' <u>Id.</u> Plaintiffs are free to seek restitution in the alternative to their other claims, <u>see Astiana v. Hain Celestial Grp., Inc.</u> , 783 F.3d 753, 762 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2) ), and one basis for restitution—a benefit obtained by fraud—is at issue here. Accordingly, the court denies Defendant's motion to dismiss this claim."

*Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1094 (S.D. Cal. 2016).

Fed. R. Civ. P. 8(a)(3) and 8(d)(2) allow plaintiffs to plead alternative forms of relief, and an unjust enrichment claim should not be dismissed as duplicative of a plaintiff's other claims according to Rule 8(d)(2). The issue here falls squarely under *Astiana* which interpreted California law to recognize that an unjust enrichment claim may be construed as an action in quasi-contract. *Astiana, supra* at 762. The *Astiana* court went on to hold that where a plaintiff states a claim for relief under a quasi-contract cause of action, that cause should not be dismissed as "duplicative or superfluous" to the plaintiff's other claims. *Id.* (citing Fed. R. Civ. P. 8(d)(2); *see also Owino v. CoreCivic, Inc.*, Case No. 17-CV-1112 JLS-NLS (S.D. Cal. May 14, 2018) (plaintiff sufficiently stated claim for unjust enrichment or quasi-contract as an independent cause of action where plaintiff showed defendant received and unjustly retained benefit at plaintiff's expense). Defendant's Motion should be denied.

**G. Plaintiff's Nationwide Class Allegations are Sufficient**

Defendant argues that a nationwide class is improper because "there are no claims alleged that can be sustained by non-California residents." (Def.'s Mot. at 23:2-3). Defendant is essentially asking this Court to dismiss Plaintiffs' nationwide class allegations at the pleadings stage. Yet, whether or not to certify a nationwide class is a question not appropriate for determination on a motion to dismiss. Indeed, other courts have rejected similar arguments. *See In re Sony Grand WEGA KDF–E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F.Supp.2d 1077, 1096 (S.D. Cal. 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.").[7]

---

[7] *See also Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *16 (N.D. Cal. 2013) (court declining to evaluate California's choice-of-law rules at motion to dismiss stage); *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *10 (S.D. Cal. Mar. 7, 2019) (same); *Wisdom v. Eastern Diamond Sports, LLC*, 2018 WL 6264994, at *6 (C.D. Cal 2018) ("Several California district courts have declined to perform a choice-of-law analysis at the motion to dismiss stage of class action litigation, because that analysis is premature") (citing *Forcellati v. Hylands, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012).

Notwithstanding, certification of a nationwide class is proper here because Defendant has demonstrated no conflict between California and the laws of other states. Defendant has not identified any differences between California law and the laws of other states, nor has Defendant demonstrated that California law should not apply. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 562, n. 6 (9th Cir. 2019) (en banc) (noting that a district court is not obligated to conduct a 'comprehensive survey of every state's law' when the foreign law proponent has failed to do so). Further, until the parties have explored the facts through discovery, it would be premature to speculate about whether any differences in consumer protection laws among states are material in this particular case. *See In re Clorox Consumer Litig.,* at 1237 ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims").

Moreover, "Plaintiff's intentional misrepresentation, negligent misrepresentation, and concealment/non-disclosure claims are all fraud claims." (Def.'s Mot. at 15:22-23 (capitalization omitted)). "[T]he fundamental elements of fraud are substantially similar from state to state." *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009). "Virtually every state requires that there be a misrepresentation made by the defendant, that the defendant had knowledge that it was false, the defendant intended to induce the reliance of the plaintiff, the plaintiff relied on the statement, and the plaintiff was injured as a result." *Id.* The *Spencer* Court found that "common legal issues predominate with respect to how states treat fraud claims" and the "Plaintiffs have adequately demonstrated that the elements of fraud are substantially similar from state to state." *Id.* at 301. Thus, it would be premature to dismiss Plaintiff's nationwide class allegations at this stage of the litigation. *See Werdebaugh*, 2013 WL 5487236, at *16. Therefore, Defendant's Motion to Dismiss Plaintiff's nationwide allegations should be denied.

21

1

### H. **Plaintiff Has Standing**

2      Marriott contends Plaintiff lacks standing in this case because:  (1) Plaintiff

3  was not injured by Defendant's deceptive advertising, (2) Plaintiff was not injured

4  by false statements made on the OTA sites, and (3) Plaintiff is not likely to be injured

5  again by Defendant's deceptive advertising. (Def.'s Mot. at 23-25).

6      *1.  Defendant's Deceptive Acts Caused Plaintiff's Injuries*

7      As set forth repeatedly throughout the FAC and herein, Plaintiff has

8  sufficiently alleged facts showing he suffered harm and *de facto* concrete injuries

9  from Defendant's false bait and switch advertising and business practices. (*See*

10  *generally*, FAC). Specifically, prior to the filing of this action, Plaintiff selected and

11  booked a Marriott hotel room over alternative hotel rooms in reliance on Defendant's

12  advertised room price. "Plaintiff would not have reserved the hotel room, and would

13  not have paid as much as he had for a hotel room in the absence of Defendant's

14  misrepresentations and omissions." (FAC ¶ 59). These allegations are sufficient to

15  establish injury at the pleading stage. *See DePhillippis v. Living Essentials, LLC*,

16  2018 WL 7051065, at *2  (S.D. Cal. Nov. 29, 2018) ("Plaintiff can show Article III

17  standing by alleging she purchased a product she otherwise would not have

18  purchased, or that she spent too much on such a product in reliance on the product

19  labels' representations …") (citing *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d

20  947, 960-62 (N.D. Cal. 2013). Because the court accepts these allegations as true at

21  the pleadings stage, Defendant's argument should be rejected.

22      Defendant argues "Plaintiff was aware of the total amount he paid … when

23  he made his hotel purchases on Marriott's website." (Def.'s Mot. at 24:16-18).

24  However, if you accept Marriott's proposition, no seller could ever be held liable for

25  unlawful bait and switch business practices when advertising goods or services

26  without the intent to sell them as advertised or offered. In Marriott's world, if you

27  successfully uses drip and partition pricing to effectuate unlawful free offer, bargain

28  pricing, and bait and switch business practices, you could never be held liable under

*Hall v. Marriott International, Inc.*, Case No. 19-cv-1715
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

consumer fraud laws because the consumer was informed of the "switch" price at or before he or she paid. That is not the law. The UCL, FAL, and CLRA prohibit "not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Brown v. Starbucks Corp.*, Case No.: 18cv2286 JM (WVG), at *4 (S.D. Cal. Mar. 1, 2019) citing *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951 (2002) (quoting *Leoni v. State Bar*, 39 Cal. 3d 609(1985)).

Here, Marriott's deceptive advertising, including offering "free" or complimentary amenities and quoting a low room rate when Marriott never intends to provide the amenities for free or sell the rooms for the prices advertised, baits consumers into transacting with Defendant and booking Marriott hotel rooms. Even when Marriott discloses the existence of a resort fee, Marriott fails to explain what services are included in that fee and what the consumer will have to pay extra for. "Until Marriott changes its practices, Plaintiff [and putative class members] will be unable to determine what [the] true hotel charges will be and what a specific fee covers." (FAC ¶ 60). Because the FAC establishes that Defendant's deceptive conduct caused Plaintiff to suffer a concrete and particularized injury, the Court should deny Defendant's Motion.

   2. *Plaintiff Has Standing to Pursue Claims Regarding Statements Made on OTA Websites*

Next, Defendant claims Plaintiff does not have standing because he was not injured by any alleged statement on an OTA site. (Def.'s Mot. at 24:4-10). However, there is no requirement that a plaintiff has to have seen or experienced every instance of false advertising or have been subject to every unfair business practice to have standing. While it is true that a plaintiff must demonstrate constitutional standing separately for each form of relief requested, he or she is not required to meet the constitutional standing requirements for each and every instance or location of Defendant's false advertising and unfair business practices. *See*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). It is enough to confer standing for Plaintiff's common law fraud, CLRA, FAL, and UCL causes of action to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 966 (9th Cir. May. 9, 2018) ("*Davidson II*"). Defendant's Motion regarding standing should be denied.

### 3. *Plaintiff Has Standing to Pursue Injunctive Relief*

Finally, Defendant argues that Plaintiff lacks standing to pursue injunctive relief. (*See* Def.'s Mot. at 23-25). However, the Ninth Circuit has recently resolved this issue. *See Davidson II*, *supra*, at 966-69. The *Davidson II* Court noted that "[i]t [was] an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id.* at 967. The Ninth Circuit "resolve[d] this district court split in favor of plaintiffs seeking injunctive relief" and held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969.

Defendant contends that Plaintiff lacks standing because "Plaintiff cannot be allegedly harmed again because he can no longer allege that he is not aware of the resort fees." (Def.'s Mot. at 25:15-16). However, the FAC alleges, "Plaintiff intends to, seeks to, and will purchase rooms at the Marriott when he can do so with the assurance that the advertising of the room rates are lawful and consistent with federal and California regulations." (FAC ¶ 62). Yet, Plaintiff "will not be able in the future, to effectively compare hotel prices when purchasing hotel rooms due to Marriott's

24

initial deception of advertising a room rate that is less than what a consumer will actually pay." (FAC ¶ 59). Plaintiff faces a threat of imminent or actual harm because until Marriott changes its practices, Plaintiff will be unable to rely on Marriot's advertising claims and representations, regardless of where they are made, in the future. This harm is sufficient to confer standing to seek injunctive relief. *Davidson II*, *supra* at 967.

Defendant's mantra that the FAC cannot proceed because Plaintiff is aware of the total price and the imposition of a charge labelled "Destination Amenity Fee" is misguided. Because of the shell game nature of Defendant's business practices (Is the amenity free? Is it part of the destination amenity fee? Is it part of a tax and fee? Is it being charged for elsewhere? Is the room price really a bargain?), Plaintiff is unable to rely on Marriott's advertising representations with any certainty regarding what he is getting charged for or what services he is buying when he books online with Marriott. Even if a consumer knows or believes a seller has made representations in the past that were false, being subjected to the same business practices again is an ongoing injury that confers standing sufficient to justify an order barring the same or similar false advertising practices. *Id.* Thus, Plaintiff has sufficiently alleged standing to pursue injunctive relief and Defendant's Motion should be denied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety. If the Court dismisses any portion of the FAC, Plaintiffs respectfully request leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated:  January 27, 2020

*/s/ Ronald Marron*
By: Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN
*mike@consumersadvocates.com*
LILACH HALPERIN
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA  92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, Washington  98122
Telephone: (866) 833-5529
Facsimile:  (855) 609-6911
***Attorneys for Plaintiffs and the Proposed Classes***