UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL,<br><br>          Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, Inc., a<br>Delaware Corporation,<br><br>          Defendant. | Case No.: 19-CV-1715 JLS (AHG)<br><br>**ORDER DENYING DEFENDANT MARRIOTT INTERNATIONAL, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>(ECF No. 18) |

Presently before the Court is Defendant Marriott International, Inc.'s Motion to Dismiss First Amended Class Action Complaint ("Mot.," ECF No. 18), as well as Plaintiff Todd Hall's Opposition to ("Opp'n," ECF No. 20) and Defendant's Reply in Support of ("Reply," ECF No. 22) the Motion. Following the Honorable Marilyn L. Huff's recusal, *see* ECF No. 24, this action was reassigned to the undersigned, who took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF Nos. 25, 27. Having carefully reviewed Plaintiff's First Amended Class Action Complaint ("FAC," ECF No. 15), the Parties' arguments, and the law, the Court **DENIES** Defendant's Motion.

/ / /

/ / /

This is a putative consumer class action alleging that Defendant engages in false and deceptive advertising in the way Defendant represents the prices consumers must pay for Defendant's hotel rooms, services, and amenities. *See generally* FAC. Defendant is a multinational hospitality company that owns, manages, and franchises[2] at least 189 hotels and resorts worldwide. *See id.* ¶¶ 11, 19. Defendant advertises its available rooms and daily room rates online through its own website and the websites of third-party online travel agencies ("OTAs"), such as Priceline and Expedia. *Id.* ¶ 14.

When a consumer uses Defendant's website to search for a hotel room by destination and date, Defendant's website will list various hotels and rooms with matching availability:



*Id.* ¶ 21. At this initial stage, the quoted daily room rate for each hotel does not include or mention the mandatory resort fee a consumer must pay. *Id.* ¶ 22.

Once a consumer selects a particular property, Defendant's website directs the consumer to another webpage that lists the rooms available at the selected property, along with the daily rates for those rooms. *Id.* ¶¶ 23–24. This webpage displays a light blue box at the top of the page with blue bold font that states that a "daily destination amenity fee will be added to the room rate," followed by the hours for the property's concierge lounge:

---

[1] The facts alleged in Plaintiff's First Amended Class Action Complaint are accepted as true for purposes of the Defendant's Motion. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] Though Defendant's franchise agreements typically allow franchisees to set their own rates for guest room charges, franchisees must still comply with Defendant's resort fee policy, which allows Defendant to control the resort fee charged by franchisees. FAC ¶ 20.



*Id.*

If a consumer then selects a specific room from the selected property, Defendant's website brings the consumer to a page titled, "Review Reservation Details":



*Id.* ¶ 25.  This page displays a picture of the room; the details of the reservation, such as date, number of rooms, and guests per room; and two drop-down menus at the bottom of the page, one titled "Choose Room Features" and the other titled "Summary of Charges." *Id.*  To the right of the "Summary of Charges" menu, the page shows a "USD subtotal" for the reservation consisting of the "USD/Night" added to "USD Taxes and Fees."  *Id.*  At the

top of this page is a light green box, stating, "Reserve Your Room Before Time Runs Out!," and a countdown timer of fifteen minutes. *Id.*

If the consumer clicks the "Summary of Charges" menu, this same page drops down a summary breaking down the overall costs of the reservation by room rate, "Destination Amenity Fee," and "Estimated government taxes and fees":



/ / /

/ / /

*Id.* ¶ 27.  Below the total cost listed in this drop-down menu, the page also displays, in smaller and lighter-colored font, "Additional Charges," including on-site parking and valet parking fees.  *Id.*

At some properties owned, managed, or franchised by Defendant, no amenity fee is charged at all.  *See, e.g.*, ¶ 33.  When a consumer selects a room reservation at one of these properties, Defendant's website displays the same "Review Reservation Details" page, including the same "Summary of Charges" presenting the total charge for the room consisting of the room rate plus "USD Taxes and Fees":



*Id.* Since these properties do not charge an amenity fee, however, the "USD Taxes and Fees" consists solely of government taxes and fees. *Id.* ¶ 34. Plaintiff alleges that this is misleading because Defendant's hotel room presents "USD Taxes and Fees" to represent one component of the hotel room charge, regardless of whether the "USD Taxes and Fees" includes an amenity fee or not. *See id.* ¶¶ 33–34.

Plaintiff further alleges that Defendant's website is misleading because of inconsistent representations regarding what amenities are covered by the amenity fee or are offered complimentary. *See, e.g.*, *id.* ¶ 35. For example, Defendant's hotel may indicate that the amenity fee "includes high speed Internet/resort equipment rentals/fitness classes and more":



*Id.* Nonetheless, Defendant may simultaneously advertise that fitness classes are "[c]omplimentary" and that the "[f]itness center is free of charge for hotel guests":

/ / /

/ / /

/ / /

/ / /





*Id.* ¶ 36.

Plaintiff also alleges that Defendant misleadingly fails to include resort fees in the rates advertised by OTAs. *See id.* ¶ 38. On Expedia, for example, the quoted room rate does not include or mention any resort or amenity fee:

/ / /

19-CV-1715 JLS (AHG)



*Id.* When a consumer clicks "Select your room," Expedia directs the consumer to another page containing the same quoted room rate:



*See id.* ¶ 39. Selecting the quoted price then directs the consumer to yet another page that fails to display a resort or amenity fee:

/ / /

/ / /



*See id.* ¶¶ 40–41.  Instead, the page includes only the discounted bargain price and the "Taxes and Fees," *see id.*, indicating that there is a "Mandatory property fee: Collected by property" with a link to "Details."  *Id.* ¶¶ 40, 42.  Only by clicking on "Details" does the consumer learn the amount of the resort fee and what it claims to include:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



*See id.* ¶ 42. Nonetheless, Expedia may advertise that a room includes "Free WiFi," while simultaneously indicating that the "Resort fee" includes "Internet access." *See id.* ¶ 43. Expedia also encourages consumers quickly to complete the booking process, displaying stopwatches indicating how many other people are viewing the property and how many of that room type are still available. *See id.* ¶¶ 40–41.

 Plaintiff has stayed at over forty-five Marriott hotels and resorts since January 1, 2012. *Id.* ¶ 52. Specifically, Plaintiff stayed at the Marriott Marquis San Diego Marina resort on May 28 to 29, 2018, booking his room through Defendant's website about a month before his stay. *Id.* ¶ 53. He also stayed at the Sheraton Maui between October 10 and 12, 2018, booking his rom through Defendant's website about two months prior. *Id.* ¶ 54. Plaintiff alleges that he subsequently discovered Defendant's pricing scheme in September 2019, and that he was unaware of these practices at the time he booked his rooms at various Marriott hotels and resorts. *Id.* ¶ 55. He alleges that he purchased hotel

rooms from Defendant "in reliance on the false and deceptive bargain and bait advertising and without knowledge of the true amount being charged based on Defendant's deceptive advertising and buried resort fees." *Id.* ¶ 56. He further states that he would not have reserved the hotel room and would not have paid as much as he did in the absence of Defendant's misrepresentations and omissions. *Id.* ¶ 59.

On September 9, 2019, Plaintiff filed this putative class action alleging unjust enrichment and violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq. See generally* ECF No. 1. The suit was filed on behalf of both a "Nationwide Class"—defined as "[a]ll U.S. citizens who purchased Marriott hotel rooms and were charged an amenity or resort fee in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale," *see id.* ¶ 43—and a "California Class"—defined as "[a]ll California citizens who purchased Marriott hotel rooms and were charged an amenity or resort fee in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale." *See id.* ¶ 44. Both classes "exclud[e] Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff." *Id.* ¶¶ 43–44. On November 1, 2019, Defendant moved to dismiss Plaintiff's initial complaint. *See* ECF No. 11.

In response, Plaintiff filed the operative First Amended Class Action Complaint on November 22, 2019, adding causes of action for negligent misrepresentation, concealment/non-disclosure, and intentional misrepresentation. *See generally* ECF No. 15. The First Amended Class Action Complaint was also filed on behalf of both a "Nationwide Class"—defined as "[a]ll U.S. citizens who reserved or booked a Marriott owned or franchised hotel room and stayed in any such room for overnight accommodation and were charged an amount therefore that was higher than the room rate quoted or advertised per day plus government imposed taxes and government imposed in their respective state of citizenship on or after January 1 2012 and until the Class is certified, for personal use and

not for resale," *see id.* ¶ 64—and a "California Class"—defined as "[a]ll California residents who reserved or booked a Marriott owned or franchised hotel room and stayed in any such room for overnight accommodation and were charged an amount therefore that was higher than the room rate quoted or advertised per day plus government imposed taxes and government imposed in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale." *See id.* ¶ 65. Again, both classes "exclud[e] Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff." *Id.* ¶¶ 64–65. On January 10, 2020, Defendant filed the instant Motion. *See generally* ECF No. 18.

## LEGAL STANDARDS

### I.    Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and, as such, have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." *In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *Id.* (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

### II.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted,"

generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Claims that allege fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

13

9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct).

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Plaintiff alleges that Defendant's advertising of its hotel room rates is deceptive because: (1) Defendant does not include mandatory resort fees in initially advertised room rates; (2) Defendant does not break out the cost of mandatory resort fees when later listing the summary of charges for a hotel room; (3) Defendant includes mandatory resort fees within the broader heading of "taxes and fees," which leads consumers to believe the resort fees are government-imposed charges; (4) Defendant does not inform consumers of the services included in the resort fee; (5) Defendant falsely states that certain amenities are complimentary when Defendant later describes such amenities as covered by the resort fee; and (6) Defendant provides such pricing information to consumers in an inconsistent manner across different hotels, compounding the confusion. *See generally* FAC.

Defendant argues that Plaintiff's First Amended Class Action Complaint should be dismissed with prejudice for seven reasons: (1) Plaintiff fails to allege a misrepresentation that would deceive a reasonable consumer, as required to state fraud-based claims and claims under the UCL, FAL, and CLRA; (2) Plaintiff fails to meet the heightened pleading standard under Rule 9(b); (3) Plaintiff fails to plead reliance, as required for his CLRA, UCL, FAL, intentional misrepresentation, negligent misrepresentation and

14

concealment/non-disclosure claims; (4) Plaintiff cannot state a claim under the CLRA because hotel accommodations a not a good or service for purposes of the CLRA; (5) Plaintiff cannot state a claim for unjust enrichment/quasi-contract because unjust enrichment is not a standalone claim and Plaintiff has failed to allege facts to support a quasi-contract; (6) Plaintiff cannot bring a nationwide class for out-of-state occurrences based on California statutes; and (7) Plaintiff lacks standing to bring claims based on the OTA websites or for future injunctive relief. *See* Mot. at 1–3.

## I. Rule 12(b)(1): Plaintiff's Standing

Defendant moves to dismiss the amended complaint under Rule 12(b)(1), arguing that the Court does not have subject-matter jurisdiction over Plaintiff's claims because Plaintiff lacks standing. Specifically, Defendant argues: (1) Plaintiff does not have standing to bring claims regarding statements made by third-party OTAs, (2) Plaintiff has not alleged an injury-in-fact, and (3) Plaintiff does not have standing to seek future injunctive relief. Mot. at 23–25. The Court addresses each of Defendant's arguments in turn.

As for Defendant's first argument that Plaintiff does not have standing to bring claims regarding statements made by third-party OTAs because Plaintiff himself did not rely on any OTA websites when booking a Marriott hotel room, *see* Mot. at 24, Plaintiff argues that there is no requirement for Plaintiff "to have seen or experienced every instance of false advertising" to have standing to challenge Defendant's allegedly false advertising in its entirety, so long as Plaintiff has demonstrated at least one instance where Plaintiff was injured by Defendant's false advertising. Opp'n at 23–24. The Court agrees with Plaintiff.

This suit is brought as a putative class action, meaning it is brought not only by Plaintiff, individually, but by Plaintiff on behalf of all others similarly situated. *See* Fed. R. Civ. P. 23. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). In bringing a class action, the named parties raise a "common

contention . . . capable of classwide resolution." *Id.* at 350. Here, Plaintiff's common contention is that Plaintiff and others similarly situated purchased hotel rooms belonging to Defendant that advertised prices under the same allegedly misleading pricing scheme instituted by Defendant, regardless of whether those prices were displayed directly on Defendant's website or indirectly on third-party OTAs' websites. *See, e.g.*, FAC ¶¶ 15, 18. Consequently, Defendant's argument is more appropriately addressed at class certification.[3] *See* Fed. R. Civ. P. 23(a) (requirements of numerosity, commonality, typicality, and adequate representation); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-1953-DMG-KKX, 2017 WL 4082419, at *8 (C.D. Cal. Sept. 13, 2017) ("[R]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.") (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009)), *aff'd*, 777 F. App'x 241 (9th Cir. 2019); *accord Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921 (N.D. Cal. 2012).

Defendant next argues that Plaintiff does not have standing because Plaintiff does not allege injury-in-fact. Mot. at 24. Specifically, Defendant claims that, according to the First Amended Class Action Complaint, Plaintiff was aware of the total amount he paid, including the resort fee, meaning no money was lost and no injury suffered. *Id.* But Plaintiff does allege that he lost money "in an amount equal to the resort, amenity, and other deceptively advertised fees they paid." *See* FAC ¶ 61. Plaintiff also alleges that he

---

[3] Defendant's Reply also argues that Defendant does not control how third parties display the prices for Defendant's hotel rooms. Properly reframed, Defendant could be arguing that any injury caused by third-party websites is not caused by or redressable by a suit against Defendant. Plaintiff alleges, however, that Defendant "offers lodging at its hotels to California residents, including through its online reservation website and through the websites hosted by OTAs, such as Priceline and Expedia," *see* FAC ¶ 6, and that Defendant "advertises and promotes its hotel rooms by advertising daily room rates on its website and the websites operated by the OTAs." *Id.* ¶ 7. Taking Plaintiff's factual allegations as true, as the Court must on a motion to dismiss, Plaintiff sufficiently has alleged Defendant's control over how its prices are displayed on third-party OTA websites.

"paid hotel charges that were not as advertised," *see id.* ¶ 58, and paid a higher price than he would have "in the absence of Defendant's misrepresentations and omissions." *See id.* ¶ 59. These allegations are sufficient to establish standing to bring a false advertising claim. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018) ("Because [the plaintiff] adequately alleged that she relied on the label's misrepresentations and would not have purchased the product without those misrepresentations, she has adequately alleged standing for her labeling claim."); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("Plaintiffs contend that class members paid more . . . than they otherwise would have paid, or bought it when they otherwise would not have done so, because [the defendant] made deceptive claims . . . . To the extent that class members were relieved of their money by [the defendant]'s deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'").

In *Hinojos v. Kohl's Corporation*, for example, a consumer brought a putative class action against a retailer for false advertising because the retailer marked merchandise as "on sale," falsely claiming that the merchandise was previously sold at a higher original price. 718 F.3d 1098, 1101 (9th Cir.), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). Though the consumer knew the full amount of money he would have to pay for the product, the Ninth Circuit observed that "a product's 'regular' or 'original' price matters; it provides important information about the product's worth and the prestige that ownership of that product conveys." *Id.* at 1105–06. "Misinformation about a product's 'normal' price is, therefore, significant to many consumers in the same way as a false product label would be," and the consumer had standing to pursue his false advertising claims.[4] *Id.* at 1106. A similar analysis applies here—although Plaintiff may have known the full amount of money he would be charged for his hotel room, the room's regular or
/ / /

---

[4] *Hinojos* held that the consumer satisfied both Article III standing and statutory standing under California's unfair competition and false advertising laws. 718 F.3d at 1104 n.3, 1105–06.

19-CV-1715 JLS (AHG)

baseline price matters, and the inclusion or omission of resort fees affects that consumer valuation. Consequently, Plaintiff sufficiently has alleged injury-in-fact.

Finally, Defendant claims that Plaintiff does not have standing to seek injunctive relief because Plaintiff has not demonstrated a sufficient likelihood of repeated injury. Mot. at 25. Defendant argues that because Plaintiff is now aware of the alleged misrepresentation, Plaintiff either does not intend to purchase a hotel room from Defendant or will not rely upon any alleged misrepresentations in the future because Plaintiff is now aware of where the proper information can be found.[5] *Id.* Plaintiff argues that the Ninth Circuit held otherwise in *Davidson*. Again, the Court agrees with Plaintiff.

In *Davidson*, the Ninth Circuit held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* at 969. The Ninth Circuit explained that, "[i]n some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70. This is precisely what Plaintiff alleges in his First Amended Class Action Complaint: Plaintiff alleges that, "[u]ntil Marriott changes its practices, Plaintiff will be unable to determine what his true hotel charges will be and what a specific fee covers, as some Marriott hotels do not disclose what is and is not included in which fees, and other Marriott hotels state that an amenity is both complimentary when it in fact is being charged for in a fee." FAC ¶ 60. Plaintiff further alleges that he "intends to, seeks to, and will purchase rooms at the Marriott when he can do so with the assurance that the advertising of the room rates are lawful and consistent with federal and California

---

[5] Defendant cites several district court cases finding that plaintiffs had no standing for injunctive relief for a false advertising claim because Plaintiffs had become aware of the mismatch between product and advertisement. *See* Mot. at 25 & n.7. These decisions, however, predate *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 967 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018), which "resolve[d] the district court split [on whether such plaintiffs had standing] in favor of plaintiffs seeking injunctive relief." *Id.* at 969.

regulations." *Id.* ¶ 62.  Under *Davidson*, Plaintiff has alleged sufficient facts to establish standing to seek injunctive relief.

In light of the foregoing, the Court concludes that Plaintiff has alleged sufficient facts to establish standing to sue based on alleged misrepresentations appearing on the OTAs and for future injunctive relief.  The Court therefore **DENIES** the Motion as it relates to Plaintiff's standing.

## II.    Rule 12(b)(6): Failure to State a Claim

### A.    *Consumer Protection and Misrepresentation Claims*

Plaintiff invokes three California consumer protection statutes (the "Consumer Protection Claims"): the FAL, the UCL, and the CLRA.  *See generally* FAC ¶¶ 82–117.  The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500; *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950, *as modified* (May 22, 2002).  The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Any violation of the FAL constitutes a violation of the UCL.  *In re Tobacco II Cases*, 46 Cal. 4th at 312 n.8.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  The standards for determining whether a representation is misleading under the FAL apply equally to claims under the CLRA.  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006) (citing *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003)).

Plaintiff also alleges causes of action for common law intentional misrepresentation, negligent misrepresentation, and concealment/non-disclosure (the "Misrepresentation Claims").  "The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Engalla v.Permanente Med. Grp., Inc.* 15 Cal. 4th 951, 974
/ / /

(1997) (quoting *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996)) (internal quotation marks omitted).

Defendant argues that Plaintiff's Consumer Protection and Misrepresentation Claims suffer several pleading deficiencies. *See generally* Mot. at 8–21. Specifically, Defendant contends that (1) Plaintiff fails to plead a misrepresentation or concealed fact, *see id.* at 15–16, particularly one that would deceive a reasonable consumer, *see id.* at 9–14; (2) Plaintiff fails to plead reliance, which is a necessary element for both the Consumer Protection and Misrepresentation Claims, *see id.* at 16–19; (3) Plaintiff fails to satisfy Rule 9(b)'s heightened pleading standard, *see id.* at 3, 13, 15 n.4, 17 n.5; and (4) Plaintiff cannot state a claim for violation of the CLRA because hotel accommodations are not "goods" or "services" for purposes of that statute.[6] *See id.* at 19–21.

### 1. Misrepresentations and the Reasonable Consumer

Each of Plaintiff's claims requires Plaintiff to allege a misrepresentation or concealed fact. Additionally, the Consumer Protection Claims are governed by the "reasonable consumer" test, which requires the plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal citations omitted). Defendant contends that Plaintiff's Misrepresentation Claims must be dismissed because Plaintiff has failed to allege a misrepresentation or concealed fact, *see* Mot. at 15–16, and that Plaintiff's Consumer Protection Claims must be dismissed because Plaintiff has failed to plead a plausible misrepresentation or concealment that would deceive a reasonable consumer. *See id.* at 8–15.

---

[6] Defendant also urges that Plaintiff cannot seek to hold it responsible for the statements made by OTAs because they "are independent travel agents that 'serve as intermediaries between customers and a host of travel service providers, including . . . hotels,'" Mot. at 15 (quoting *Expedia v. District of Columbia*, 120 A.3d 623, 627 (D.C. 2015)), and "Marriott does not control the manner in which the OTAs display hotel rooms and room rates on their websites, and Plaintiff pleads no facts alleging such control." *Id.* (citing FAC ¶¶ 7–8). For the reasons discussed above, *see supra* note 3, the Court disagrees. Accordingly, the Court **DENIES** Defendant's Motion to the extent it seeks to dismiss Plaintiff's claims predicated on statements on OTA websites.

Broadly speaking, Plaintiff alleges that Defendant's pricing was misleading in three ways: (1) Defendant omits the resort fee from its initial advertised price, luring customers in with an artificially low advertised rate, *see, e.g.*, FAC ¶¶ 21–22; (2) by combining the resort fee with taxes under the heading "Taxes and Fees," Defendant misleads consumers into believing that the additional fees are government-imposed, *see, e.g.*, *id.* ¶¶ 25–27; and (3) Defendant misleads consumers by representing that the resort fee covers certain amenities that are advertised as complimentary or by representing that the resort fee covers certain expenses that are charged separately. *See, e.g.*, *id.* ¶¶ 28–30. The Court addresses each of these alleged categories of misrepresentations in turn.

a.    Omission of the Resort Fee from the Advertised Price

Plaintiff's first alleged misrepresentation is based on Defendant's omission of the resort fee from the initial advertised price of its rooms. *See, e.g.*, FAC ¶¶ 21–22. Defendant notes that the consumer is twice informed of the resort fee before committing to a reservation. *See* Mot. at 9–10 (citing FAC ¶¶ 23, 25, 27). Accordingly, Defendant urges, "no reasonable consumer would believe Marriott does not charge a $30 resort fee above and beyond the $369 rate for the room at the Marriott Marquis San Diego." *Id.* at 12. As for the countdown to finalize a reservation, "[t]he consumer is clearly cautioned that should he or she choose not to proceed the rate may be lost," a practice that "is not deceptive," but rather "put[s the consumer] on notice that the rate is subject to change if booking is delayed." *Id.* at 13.

In his Opposition, Plaintiff responds that he "does not simply allege that the bare imposition of a disclosed resort fee is what is likely to deceive a consumer." Opp'n at 6–7. Rather, Plaintiff alleges that the "quoted room rate (which does not mention a resort fee) is the price consumers see along with all other advertised hotel room rates[,] . . . which baits and lures consumers in and causes them to select a hotel with a perceived low price." *Id.* at 7 (citing FAC ¶¶ 21–22). According to Plaintiff, "[t]his baiting and switching as alleged in the FAC is a clear-cut case of deception." *Id.* at 8.

/ / /

As both Parties acknowledge, *see* Mot. at 9, 11–12; Opp'n at 5–6, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014) (internal citations and quotation marks omitted). Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, as the Court must at this stage, the Court cannot conclude as a matter of law that the alleged failure to disclose the resort fee until a consumer is invested in the booking process would not deceive a reasonable consumer.

Defendant's cases do not compel a different result. In *Harris v. Las Vegas Sands L.L.C.*, No. 12-CV-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013), the Honorable Dolly M. Gee dismissed with prejudice UCL, FAL, and CLRA claims because the hotel defendant "explicitly disclosed the existence and amount of the resort fee, as well as the fact that taxes would be charged on top of it," *id.* at *5, where the "Reserve Now" page disclosed "*Total does not include applicable daily resort fee of $20 plus tax." *Id.* at *3. The plaintiff in *Harris*, however, sued on a theory that "the 'Grand Total' is a false or misleading statement because it is not the final total, including the resort fee." *Id.* at *5. Similarly, in *Ford v. Hotwire,Inc.*, No. 07-CV-1312, 2008 WL 5874305 (S.D. Cal. Feb. 25, 2008), the Honorable Marilyn L. Huff dismissed amended FAL and UCL claims where the consumer had to acknowledge agreement to Terms of Use, including that "[the OTA defendant's] rates do not include special fees charged by hotels upon check-out (e.g., . . . resort fees)," prior to purchasing a hotel room because "[the OTA defendant] states that its quoted rate does not include certain charges, such as resort fees, that a hotel may impose directly" and "the amount and nature of the resort fees in question were freely accessible from the [hotels'] website." *See id.* at *2, *4. Here, by contrast, Plaintiff contends that Defendant's initial advertising of a low price not including the resort fee is what was deceptive. *See, e.g.*, FAC ¶¶ 21–22. This is a different legal theory than those addressed by the courts in *Harris* and *Ford*.

For this reason, the Court is also unpersuaded by Defendant's supplemental authority, Memorandum Opinion and Order, *Washington v. Hyatt Hotels Corp.*, No. 1:19-

cv-04724 (N.D. Ill. Filed June 9, 2020), ECF No. 39. *See* ECF No. 28. Although the plaintiff in *Washington* asserted the same legal theory that Plaintiff does here and the defendant hotel in *Washington* employed nearly identical disclosures to those used by Defendant in this action, the court in *Washington* relied heavily on *Harris* and *Ford* in concluding that the plaintiff's "allegation of deception to be implausible." *See* ECF No. 28-1 ("*Washington*") at *11–12, *14. Consequently, with all respect to the Honorable John Robert Blakey, the Court concludes that it cannot determine as a matter of law at this stage that no reasonable consumer could be misled by Defendant's initial advertisement of artificially low nightly rates omitting applicable resort fees.

> b. Concealment of the Resort Fee in "Taxes and Fees"

Plaintiff's second alleged misrepresentation contends that Defendant misleadingly lumped the resort fee into the category of "Taxes and Fees," thereby suggesting that the resort fee is government-imposed. *See, e.g.*, FAC ¶¶ 25–27. Defendant contends that a reasonable consumer would not "believe all 'fees' are government imposed merely because '[t]axes and fees' include both taxes (necessarily imposed by a government) and fees (imposed by anyone)." Mot. at 13. "Further, Marriott's website explicitly distinguishes between government fees and other fees" because the "'Summary of Charges' . . . breaks down the [Taxes and fees] into a 'Destination Amenity Fee' of $30 and 'Estimated government taxes and fees' of $50.65." *Id.* at 14 (citing FAC ¶ 27). Plaintiff responds that, "[b]y combining the amounts that consumers were asked to pay for amenity fees with their tax payments under a generic heading of 'taxes and fees,' Marriott led consumers to believe the amenity fees were government-imposed charges." Opp'n at 9 (citing FAC ¶¶ 5, 8, 9, 25–27, 30–34, 41, 46–47, 51, 55–56, 64–65).

Although this theory is the weakest of Plaintiff's alleged misrepresentations, the Court is not prepared to conclude at this stage as a matter of law that no reasonable consumer would be misled by Defendant's inclusion of the resort fee under the generic heading of "Taxes and fees." Defendant's case, *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332 (S.D. Fla. 2015), is persuasive, but did not squarely address the issue in this case:

23

whether no reasonable consumer would be misled by the alleged concealment of a fee under "Taxes and fees."  Rather, the court in *Ray* concluded that the plaintiffs' theory was "dubious," *id.* at 1338, in the context of distinguishing another case that the plaintiffs contended was controlling as to their Racketeer Influenced and Corrupt Organizations Act claim.  *See generally id.* at 1337–38.  The Court therefore concludes that it cannot determine as a matter of law that no reasonable consumer could be misled by Defendant's inclusion of the resort fee under the heading of "Taxes and fees."

> c.   Failure to Disclose Amenities Covered by the Resort Fee

Finally, Plaintiff alleges that Defendant misleads consumers by representing that the resort fee covers certain amenities that are advertised as complimentary or by representing that the resort fee covers certain expenses that are charged separately.  *See, e.g.*, FAC ¶¶ 28–30.  Defendant contends that "it is nonsensical how such a statement can be misleading when it is clear from the allegations in the FAC that the fact that a resort fee is charged is also disclosed to Plaintiff before purchase."  Mot. at 14.  Plaintiff contends that Defendant is engaging in a "bait and switch," "whereby Marriott falsely baits consumers into believing they are getting a bargain, and then hides and disguises a portion of a hotel room's daily rate from consumers by subtly calling the amenities free when in fact they are being charged for," which "is unlawful and misleading to consumers."  Opp'n at 11.

Here, Defendant is attacking a straw man—Plaintiff's contention is not that the resort fee was not disclosed, but rather that Defendant misleadingly represents that certain amenities are offered "complimentary," whereas the consumer is really paying for them through the resort fee.  The Court cannot conclude at this stage that no reasonable consumer would be misled by these alleged tactics.  Accordingly, the Court **DENIES** Defendant's Motion to the extent it seeks dismissal of Plaintiff's Consumer Protection and Misrepresentation Claims for failure to allege misrepresentations that could deceive a reasonable consumer.

/ / /

/ / /

## 2. Reliance

Defendant urges the Court to dismiss Plaintiff's Consumer Protection and Misrepresentation Claims for failure to plead reliance. *See* Mot. at 16–19. Specifically, Defendant contends that Plaintiff "does not allege that any misrepresentation regarding the resort fees 'caused' Plaintiff to enter the transaction" because not only was there "nothing 'buried' about the resort fees," but "Plaintiff fails to plead that 'but for' the alleged misrepresentation, he 'would not, in all reasonable probability, have entered into the transaction.'" *Id.* at 17 (quoting *Cadlo v. Owens-Ill., Inc.*, 125 Cal. App. 4th 513, 519 (2004). Further, "any alleged reliance by Plaintiff is clearly not justifiable and would have been unreasonable, especially since Plaintiff knew the total amount he was paying, including what portion of that amount was contributed to the resort fee, before purchasing the hotel room." *Id.* at 18 (citing *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO, 2013 WL 5514563, at *8, 11 (N.D. Cal. Oct. 4, 2013)).

Plaintiff responds that his "allegations regarding the deceptive advertising upon which he relied support a cognizable legal theory such that Defendant's Motion should be denied." Opp'n at 15. The Court agrees. Plaintiff alleges "[Defendant]'s false and misleading pricing practices and other policies, acts, and practices described []in [the First Amended Class Action Complaint] were designed to, and did, induce Plaintiff's and Class Members' purchases of Marriott hotel rooms," FAC ¶ 88, and "Plaintiff and Class Members were injured by [Defendant] because Plaintiff and Class Members were baited and defrauded into paying more for a hotel room than was represented due to [Defendant]'s false representations and advertisements." *Id.* ¶ 93; *see also id.* ¶¶ 99–100, 115, 122, 130, 140–41, 146–47. These allegations are sufficient to survive Defendant's Motion. *See, e.g.*, *Moore v. Mars Petcare US, Inc.*, --- F.3d ---, 2020 WL 4331765, at *9 (9th Cir. July 28, 2020) (concluding that allegations that "[a]s a result of the false and fraudulent [advertisement], each Plaintiff paid more for [the product] than each Plaintiff would have paid in the absence of the [advertisement], or would never have purchased [the product]" was "sufficient . . . to survive a motion to dismiss").

Because the Court has rejected Defendant's argument concerning the reasonable consumer test, *see supra* Section II.A.1, the Court also rejects Defendant's argument that Plaintiff's alleged reliance was unreasonable. Such an inquiry is not appropriate for resolution on a motion under Rule 12(b)(6). *See, e.g.*, *Moore*, 2020 WL 4331765, at \*9 ("Whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage.") (citing *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 229 (2013)). The Court therefore **DENIES** Defendant's Motion to the extent it seeks dismissal of Plaintiff's Consumer Protection and Misrepresentation Claims for failure to plead reliance.

### 3.   Rule 9(b)

Defendant contends that "Plaintiff's FAC fails to meet the heightened pleading standard for fraud-based claims under Rule 9(b)." Mot. at 3. Specifically, "the FAC fails to articulate with the specificity required under Rule 9(b) how th[e timer on Defendant's website] is deceptive," *see id.* at 13, or "the time, manner, and specifics of the misrepresentation[s]" made by OTAs. *See id.* at 15 n.4.

Plaintiff responds that he "alleges the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'" Opp'n at 13 (quoting *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)) (alteration in original). Further, "courts have recognized that where alleged misrepresentations occur in printed form, the particularity requirements of Rule 9(b) may be satisfied by 'identifying or attaching representative samples of [misleading] materials,'" *id.* at 14 (quoting *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306 n.19 (S.D. Cal. 2003), and "[t]he FAC provides several detailed, representative examples of misconduct and reliable indicia of fraud such that Plaintiff has clearly and sufficiently complied with Rules 8(a)(2) and 9(b)." *Id.*

Defendant rejoins that "the FAC does not meet th[e Rule 9(b)] standard because Plaintiff fails to clearly allege the details of the misrepresentations and what

misrepresentations he saw when." Reply at 6. Further, "*one* of the requirements of Rule 9(b) is that the pleadings should sufficiently identify these writings, which can be done by attaching samples," but "attaching the materials alone [does not] satisfy[y] *all* Rule 9(b) requirements." *Id.* at 7 (emphasis in original) (citing *Von Grabe*, 312 F. Supp. 2d at 1306 n.19).

The Court concludes that Plaintiff has satisfied Rule 9(b)'s heightened pleading standard. As Plaintiff explains, *see* Opp'n at 13,

> The FAC explains that Defendant (the "who") made misrepresentations of material fact and omissions to Plaintiff and the public (*see, e.g.*, FAC, ¶¶ 61,70, 75, 86–87, 119, 121, 123–124, 127, 218, 133, 135, 139-140, and 144-147), including deceptive statements about the services covered by fees, combined with the lack of disclosure of the fees, thereby misleading consumers about what fees they must pay, what charges are government-imposed taxes and fees versus Marriott fees, what services are truly free, and what else they may have to pay for on top of their quoted room rate, (the "what") (*see, e.g.*, FAC, ¶¶ 5,1 5, 18, 45, 47, 49, 51, 55–56, 66, 70, 75, 80, 88–89, 93, 99, 100, 102, 109, 111, 113, 117, 127, 129, 132, 141, and 143), from January 1, 2012 to the present (the "when") (*see, e.g.*, FAC, ¶¶ 53–54 and 64–65), on its website pages and on online travel sites like Priceline or Expedia (the "where") (*see, e.g.*, FAC, ¶¶ 5, 7, 14, 18, 21, 30, 26, 43, 45, 47–48, 53–54, 57, 127, and 143), using unlawful trade practices: (1) called "drip pricing" and "partition pricing"; (2) in advertising its hotel rooms; (3) whereby Marriott falsely baits consumers into believing they are getting a bargain, and then hides and disguises a portion of a hotel room's daily rate from consumers; (4) through practices ranging from without limitation, (i) the outright hiding of price terms, (ii) or using small print, (iii) or by mischaracterizing them, (iv) to subtler ways of calling something free when in fact it is being charged for, (v) or by adding charges at various times during the vending process (the "how") (*see, e.g.*, FAC, ¶¶ 5, 8–10, 15–16, 18, 27–28, 35–37, 41–43, 45, 47–51, 55–58, 66, 89, 93, 114, 132, 134–135, 138–139, and 144).

At this stage, these allegations suffice to fulfill Rule 9(b)'s purposes, particularly "ensur[ing] that defendants accused of the conduct specified have adequate notice of what

19-CV-1715 JLS (AHG)

they are alleged to have done, so that they may defend against the accusations." *See Von Koenig*, 713 F. Supp. 2d at 1077 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009)); *see also Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011).

Further, "even though the plaintiff[] cannot specify when [he saw specific misrepresentations], [he] do[es] not need to provide such a level of specificity because the date when the [allegedly misleading practice] began [appearing online] is within [Defendant]'s knowledge, as these advertisements were for [Defendant]'s [services]." *See Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564 NC, 2017 WL 4224723, at *6 (N.D. Cal. Sept. 22, 2017) (citing *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1095 (C.D. Cal. 1999)). The Court therefore concludes that Plaintiff has met Rule 9(b)'s heightened pleading standard.

### 4. Whether Hotel Rooms Are "Goods" or "Services" for Purposes of the CLRA

Finally, Defendant contends that Plaintiff's CLRA cause of action must be dismissed because the CLRA applies only to "goods" and "services," while a hotel room qualifies as neither under the statute. *See* Mot. at 19–21. Defendant relies heavily on the California Supreme Court's decision in *Fairbanks v. Superior Court*, 46 Cal. 4th 56 (Cal. 2009), in which the Court concluded that insurance was not a good or service under the CLRA because the California Legislature deliberately excluded "insurance" from the statutory definition of services that had appeared in the National Consumer Act, on which the CLRA was modeled. *See* Mot. at 19–20. Because the California Legislature also excluded "hotel accommodations," Defendants argue, the Court should conclude that Plaintiff's CLRA claim must fail. *See id.* at 20–21.

Plaintiff responds that the CLRA is to be interpreted broadly, *see* Opp'n at 15 (citing Cal. Civ. Code § 1760), and that Defendant has failed to cite any authority directly supporting its position. *See id.* Plaintiff adds that the California Legislature "*omitted every example of services* which was set forth in the National Consumer Act," *see id.* at 15–16

(emphasis in original), and that "[p]rotecting California consumers from false advertising in connection with hotel rooms, services, and amenities is wholly consistent with the purpose of the CLRA." *Id.* at 17–18.

On this record, the Court concludes that "Defendant[] do[es] not meet [its] burden in establishing that Plaintiff['s] CLRA claim fails as a matter of law." *See Russ v. Apollo Grp., Inc.*, No. No. CV 09-904-VBF(FMOx), 2009 WL 10674112, at *2 (C.D. Cal. Sept. 23, 2009). First, as Plaintiff notes, *see* Opp'n at 15, the CLRA "shall be liberally construed and applied to promote its underlying purposes." *See* Cal. Civ. Code § 1760. Second, *Fairbanks* addressed only whether life insurance is a "good" or "service" for purposes of the CLRA, *see* 46 Cal. 4th at 61 (concluding, based on the plain language of Section 1761(a), that "life insurance . . . is not a 'good' as that term is defined in the Consumers Legal Remedies Act" or "a 'service' under the act"); it did not address hotels. Neither Defendant nor Plaintiff has cited—and the Court has not found—any cases analyzing whether hotels are "goods" or "services" for purposes of the CLRA. Third, "[a]s the Plaintiff[] assert[s], [*see* Opp'n at 15–16,] the term 'insurance' unlike the term '[hotel . . . accommodations]' was listed in a separate paragraph—paragraph (c)—of the model law" and, "if the Court were to apply the Defendant['s] reasoning, then the CLRA would bar claims related to the other terms in paragraph (b)," but "Defendant[] also do[es] not provide authority showing that CLRA claims are barred as a matter of law for the other categories in paragraph (b) of the model law." *See Russ*, 2009 WL 10674112, at *3.

Accordingly, "Defendant[] ha[s] not provided sufficient authority for the Court to find that the legislature intended to omit [hotel accommodations] or other categories in paragraph (b) of the model law from the definition of 'services.'" *See id.* The Court therefore **DENIES** Defendant's Motion as to Plaintiff's first cause of action for violation of the CLRA.

### B. *Unjust Enrichment/Quasi-Contract*

Defendant argues that Plaintiff has no claim to unjust enrichment/quasi-contract because unjust enrichment is a quasi-contractual claim and because a plaintiff cannot allege

quasi-contract where there is an actual contract governing the parties, as there is here. Mot. at 21–22. Plaintiff counters that there was no contract governing Defendant's allegedly fraudulent pricing scheme and that, even if there were a contract between the Parties, Plaintiff has alleged that such a contract was fraudulently induced. The Court declines to dismiss Plaintiff's claim for quasi-contract at this stage of the case.

In California, "there is no standalone cause of action for 'unjust enrichment,' which is synonymous with restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). When a plaintiff alleges unjust enrichment, however, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 233 Cal. App. 4th 221, 231 (2014)). To demonstrate unjust enrichment through quasi-contract, a plaintiff must prove a defendant's "receipt of a benefit and unjust retention of the benefit at the expense of another." *Prof'l Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018), *review denied* (Feb. 27, 2019).

"[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016) (quoting *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001)). "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420, *as modified on denial of reh'g* (Feb. 22, 1996). This is because quasi-contract "is an equitable theory which supplies, by implication and in furtherance of equity, implicitly missing contractual terms." *Id.* at 197. But "[c]ontractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject." *Id.*

Nonetheless, "[a] plaintiff may seek restitution on a quasi-contract theory 'where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar

conduct.'" *Price v. Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *10 (S.D. Cal. July 24, 2017) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)). That is what Plaintiff alleges here: that Defendants "charg[ed] consumers higher rates for hotel rooms than those originally advertised," thereby "receiv[ing] additional money from Plaintiff and the Class," FAC ¶ 121, which "was paid by mistake, where an undue advantage was taken from the Plaintiff's and the Class's lack of knowledge of the deception, whereby money was exacted to which the Defendant had no legal right." *Id.* ¶ 122. "These allegations are sufficient to state a quasi-contract claim for restitution." *See Price*, 2017 WL 3131700, at *11 (citing *Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016); *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255, at *10 (S.D. Cal. Apr. 26, 2017)); *see also id.* (construing unjust enrichment claim as quasi-contract claim and denying motion to dismiss where "[the p]laintiffs allege that [the d]efendants misled them by failing to adequately disclose the automatic renewal terms of the magazine subscriptions ordered by [the p]laintiffs, and that [the p]laintiffs would not have purchased the subscriptions if [the d]efendants had disclosed the terms in a clear and conspicuous manner[, which] has resulted in [the defendants'] unjust enrichment"); *Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322-CAS(MRWx), 2017 WL 440257, at *14 (C.D. Cal. Jan. 30, 2017) (denying motion to dismiss unjust enrichment claim in false advertising claim involving purchase contract where the "[p]laintiff alleges that defendants charged a higher price for the . . . Products on the basis of their wrongful acts and omissions" and "plaintiff avers that it would be inequitable for defendants to retain those unjustly obtained gains," which "adequately pleaded the elements of unjust enrichment"). The Court therefore **DENIES** Defendant's Motion as to Plaintiff's fourth cause of action for unjust enrichment/quasi contract.

### C. *Plaintiff's Nationwide Class Allegations*

Finally, Defendant argues that Plaintiff's nationwide class allegations should be dismissed because Plaintiff's claims, aside from unjust enrichment, are premised on

California statutes, which are inapplicable to non-California residents. Mot. at 22–23. Plaintiff responds that: (1) this question is better addressed at the class certification stage; (2) Defendant has demonstrated no conflict between California law and the laws of other states; and (3) Plaintiff alleges fraud, and the fundamental elements of fraud are substantially similar across all states. Opp'n at 20–21.

California courts presume that California statutes do not have extraterritorial application. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). "[T]he presumption against extraterritoriality applies to the UCL in full force." *Id.* Similarly, the FAL prohibits false or misleading statements made "before the public in this state" and "from this state before the public in any state." Cal. Bus. & Prof. Code § 17500.

But Plaintiff does not rest his claims solely upon California statutes. In addition to the UCL, FAL, CLRA, and unjust enrichment claims, Plaintiff alleges causes of action under common law claims for negligent misrepresentation, concealment or nondisclosure, and intentional misrepresentation. *See generally* FAC ¶¶ 126–147. Since non-California residents can raise these common law claims to seek relief, the Court declines to dismiss the nationwide class allegations at this time. To the extent that Defendant suggests that there may be differences in fact or law governing the claims of non-California residents, those questions are better resolved at the class certification stage. *See* Fed. R. Civ. P. 23; *see also Mazza*, 666 F.3d at 593–94 (analyzing at class certification stage whether plaintiffs could bring nationwide class under UCL, FAL, CLRA, and unjust enrichment).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

19-CV-1715 JLS (AHG)

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion (ECF No. 18).[7] Defendant **SHALL RESPOND** to Plaintiff's First Amended Class Action Complaint in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: August 14, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[7] Because the Court does not rely on any of the materials in the Parties' Requests for Judicial Notice (ECF Nos. 18-2, 20-1), the Court **DENIES** the requests.