Amy B. Alderfer (SBN 205482)
*aalderfer@cozen.com*
COZEN O'CONNOR, P.C.
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Telephone: 213-892-7941
Facsimile: 213-784-9067

Paul K. Leary, Jr. (PA Bar No. 85402)
(Admitted *Pro Hac Vice*)
*pleary@cozen.com*
COZEN O'CONNOR, P.C.
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone:  215-665-2000
Facsimile: 215-665-2013

Chad E. Kurtz (DC Bar No. 1016934)
(Admitted *Pro Hac Vice*)
*ckurtz@cozen.com*
COZEN O'CONNOR, P.C.
1200 19th Street NW, Suite 300
Washington, DC 20036
Telephone:  202-463-2521
Facsimile: 202-640-5939

Attorneys for Defendant,
Marriott International, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:19-cv-01715-H-AHG<br><br>**DEFENDANT MARRIOTT INTERNATIONAL, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>**Date:  February 26, 2021**<br>**Time: 9:30 a.m.**<br>**Courtroom: 3b**<br>**Judge: Hon. Allison H. Goddard** |

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

# Table of Contents

Page

I.    FACTUAL AND PROCEDURAL BACKGROUND ..................................... 1

II.   ARGUMENT ................................................................................................. 2

    A.   The Court should not require Marriott to comply with Plaintiffs'
    improper discovery requests .................................................................. 2

        1.   Marriott should not have to provide any revenue-related
        discovery because that discovery is not relevant .......................... 2

            a.   Discovery relating to Marriott's resort fee revenue is
            not relevant [RFP 28-31, 35-38; Rog 4-5; Topic 30-
            33]. ......................................................................................... 2

                (1)   Marriott's resort fee revenue is not relevant to
                the class-certification analysis. ............................... 2

                    (a)   Legal standard on a motion to compel
                    pre-certification discovery. ........................... 3

                    (b)   The Court should use its discretion to
                    require Plaintiffs to show that the
                    requested revenue discovery is relevant
                    to class certification, and then should
                    find that Plaintiffs fail to satisfy that
                    showing. ......................................................... 5

                    (c)   That the Court declined to bifurcate
                    discovery does not change the analysis. ...... 10

                (2)   Revenue from resort fees paid by hotel guests
                before September 9, 2015 is not relevant
                because of the applicable statutes of
                limitations. ............................................................. 12

            b.   Discovery relating to Marriott's revenues from wi-fi
            fees, parking fees, or any other non-mandatory fees
            is not relevant [RFP 32-34, 39-41; Rog 4-5; Topic
            34-36]. .................................................................................. 14

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

(1) This case has nothing to do with wi-fi fees, parking fees, or any other non-mandatory fees. ........................................................ 14

(2) Revenue from wi-fi fees, parking fees, and any other fees other than resort fees paid before September 9, 2015 is not relevant because of the applicable statute of limitations ........................................... 17

2. Marriott should not have to produce any Marriott policies beyond those already produced [RFPs 3-9, Topics 8-14]. ......... 17

3. Marriott should not have to produce any customer complaints beyond those already produced [RFPs 67-73, Topic 40]. .................................................................. 17

4. Marriott should not have to produce "all" documents and discovery from a certain D.C. litigation [RFP 48]. ................... 17

5. Marriott should not have to identify hotels that charged a resort fee before September 9, 2015 [RFPs 1-2; Rogs 1-2]. ...... 19

6. Marriott should not have to produce any OTA agreements that were not in place at any time between September 9, 2015 and the present [Rog 3]. ...................................... 20

7. Marriott should not have to testify about how it discloses the wi-fi fee, parking fee, or any other fee other than the resort fee [Topics 20-22]. .......................................... 20

B. The Court should not award fees to Plaintiffs. ...................................... 20

III. CONCLUSION ............................................................. 20

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

5    *A.A. v. County of Riverside*,
     No. 14-2556, 2016 WL 10576640 (C.D. Cal. Mar. 14, 2016) ............. 3, 4, 10, 11

6
7    *Aldapa v. Fowler Packing Co. Inc.*,
     No. 15-0420, 2019 WL 1047492 (E.D. Cal. Mar. 5, 2019) ............................ 10

8
9    *Allen v. Similasan Corp.*,
     No. 12-0376, 2014 WL 2212120, at *2 (S.D. Cal. May 27, 2014) ................... 13

10
11   *Allred v. Frito-Lay N. Am., Inc.*,
     No. 17-1345, 2019 WL 1040018 (S.D. Cal. Mar. 5, 2019) ............................ 14

12
13   *Beets v. Molina Healthcare, Inc.*,
     Slip Copy, No. 16-5642, 2019 WL 2895630, at *5 (C.D. Cal. Apr.
     9, 2019) ......................................................................................................... 11

14
15   *Chen v. Ampco Sys. Parking*,
     No. 08-0422, 2009 WL 2496729 (S.D. Cal. Aug. 14, 2009) ............................ 19

16
17   *Clark v. Hershey Co.*,
     No. 18-6113, 2019 WL 913603 (N.D. Cal. Feb. 25, 2019) ............................ 14

18
19   *In re: Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*,
     No. 14-2555, 2016 WL 6245899 (N.D. Cal. Oct. 26, 2016)............................ 7

20
21   *Comcast Corp. v. Behrend*,
     569 U.S. 27 (2013) ......................................................................................... 10

22
23   *Dawson v. HITCO Carbon Composites, Inc.*,
     No. 16-7337, 2018 WL 3815032 (C.D. Cal. June 22, 2018) ............................ 3

24
25   *Del Campo v. Kennedy*,
     236 F.R.D. 454 (N.D. Cal. 2006) ................................................................... 3

26   *In re: Facebook Privacy Litigation*,
     No. 10-2389, 2015 WL 3640518, at *1 (N.D. Cal. June 11, 2015) ................... 6

27
28   *Food Lion, LLC v. Dairy Farmers of Am., Inc.*,
     No. 20-0442, 2020 WL 6947921 (M.D.N.C. Sept. 29, 2020)............................ 18

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

iii

*Francisco v. Emeritus Corp.*,
  Slip Copy, No. 17-2871, 2017 WL 11036693, at *2 (C.D. Cal. Sept. 5, 2017) ....................................................................................... 3

*Franklin v. Ryko Corp.*,
  No. 07-2921, 2008 WL 11334493 (C.D. Cal. Oct. 22, 2008) ........................... 6

*Goro v. Flower Foods, Inc.*,
  No. 17-2580, 2019 WL 6252499 (S.D. Cal. Nov. 22, 2019) ........................... 18

*Gottesman v. Santana*,
  No. 16-2902, 2017 WL 5889765, at *5 (S.D. Cal. Nov. 29, 2017) .................. 13

*Hawkins v. Kroger Co.*,
  Slip Copy, No. 15-2320, 2019 WL 4416132, at *9 (S.D. Cal. Sept. 16, 2019) ....................................................................................... 7

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 17-2335, 2018 WL 4502348 (S.D. Cal. Sept. 20, 2018) ........................ 8, 9

*Johnson v. Sky Chefs, Inc.*,
  No. 11-5619, 2013 WL 11081261 (N.D. Cal. May 28, 2013) ........................... 6

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020) ....................................................... 5

*Luna v. Universal City Studios LLC*,
  No. 12-9286, 2015 WL 13655668 (C.D. Cal. Feb. 10, 2015) ........................... 4

*Madeira v. Converse, Inc.*,
  Slip Copy, No. 19-0154, 2019 WL 7877349, at *3 (C.D. Cal. Dec. 19, 2019) ....................................................................................... 4

*Matic v. U.S. Nutrition, Inc.*,
  No. 18-9592, 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) ...................... 13, 14

*Ms. J.P. v. Barr*,
  No. 18-6081, 2020 WL 4643928 (C.D. Cal. Jan. 17, 2020) .......................... 18

*Nelson v. Avon Prods., Inc.*,
  No. 13-2276, 2014 WL 12792596 (N.D. Cal. Sept. 3, 2014) ........................... 4

*Patient First Corp. v. Patients 1st Med. Equip. Co.*,
  Slip Copy, No. 07-0729, 2007 WL 9782590 (D. Md. Sept. 11, 2007) ............... 7

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

iv

*Pearson v. Novastar Home Mortg., Inc.*,
   No. 05-1377, 2006 WL 8435060 (M.D. La. Nov. 21, 2006) .......................... 7, 8

*Ramirez v. GEO Group, Inc.*,
   No. 18-2136, 2019 WL 950328 (S.D. Cal. Feb. 26, 2019) .............................. 11

*Red v. Kraft Foods Inc.*,
   No. 10-1028, 2011 WL 13128159 (C.D. Cal. July 25, 2011) ............................. 6

*Schneider v. Chipotle Mexican Grille, Inc.*,
   No. 16-2200, 2017 WL 1101799 (N.D. Cal. Mar. 24, 2017) ............................. 19

*Shaw v. Experian Info. Solutions, Inc.*,
   306 F.R.D. 293 (S.D. Cal. 2015) ................................................................. 3, 10

*St. Gregory Cathedral Sch. v. LG Electronics, Inc.*,
   No. 12-0739, 2013 WL 12214144 (E.D. Tex. Nov. 12, 2013) .................. *passim*

*Stoba v. Saveology.com, LLC*,
   No. 13-2925, 2016 WL 3356769, at *3 (S.D. Cal. June 3, 2016) ..................... 11

*Thomas-Byass v. Michael Kors Stores (Cali.), Inc.*,
   No. 15-0369, 2015 WL 5568609 (C.D. Cal. Sept. 22, 2015) ............................. 7

*Vasquez v. P.F. Chang's China Bistro, Inc.*,
   No. 09-1408, 2009 WL 10698477 (C.D. Cal. Oct. 8, 2009) ............................... 6

*Vind v. Prudential Ins. Co. of Am.*,
   No. 07-3564, 2009 WL 10673372 (C.D. Cal. Oct. 13, 2009) ............................. 4

*Wahl v. Am. Sec. Ins. Co.*,
   No. 08-0555, 2009 WL 3463211 (N.D. Cal. Oct. 23, 2009)........................... 3, 5

*Woodard v. Labrada*,
   Slip Copy, No. 16-0189, 2018 WL 6930767, at *4 (C.D. Cal. Jan.
   11, 2018) .......................................................................................................... 7

**Other Authorities**

Fed. R. Civ. Pro. 12(b), 12(h) ................................................................................ 12

Fed. R. Civ. Pro. 37(b)(2)(C)................................................................................. 20

Request No. 1........................................................................................................... 19

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

Rule 23 ................................................................................................ 3, 4, 5

Rule 23(a) ................................................................................................ 10

Rule 30(b)(6) ............................................................................................. 1

DEF.'S BRIEF IN OPP TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO.: 3:19-CV-01715-H-AHG

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this class action against defendant Marriott International, Inc. on September 9, 2019. The crux of the operative Second Amended Complaint, filed on January 11, 2021, is that Marriott and certain online travel agencies ("OTAs"), such as Expedia and Orbitz, engage in the practice of "drip pricing" by advertising, on their respective websites, hotel room rates that do not include a "resort fee," and then identifying the resort fee later in the online booking process.

On November 6, 2020, the Court issued a Scheduling Order, which states in part: "Fact and class discovery are not bifurcated, but class discovery must be completed by February 16, 2021." (Ex. A, ¶ 2 (emphasis omitted)). The Scheduling Order also states that the class certification motion must be filed by March 17, 2021. (*Id.*, ¶ 3). (The Court later vacated those two deadlines). Over the next week, Plaintiffs served interrogatories, documents requests, and a Rule 30(b)(6) deposition notice on Marriott, all to which Marriott later timely objected and responded. It is those responses giving rise to the instant discovery dispute.

The parties had a discovery conference with the Court on January 6, 2021. The resulting Order states that "[t]he parties shall continue to meet and confer, in an attempt to resolve the remaining disputes or narrow the issues." (Ex. B, ¶ 1). At Marriott's counsel's request, counsel had another meet-and-confer call on January 19 but were unable to narrow the disputed issues. Plaintiffs filed their Motion to Compel Discovery Responses on January 29. The motion hearing is scheduled for February 26, after which the Court intends to reset the deadlines for class discovery and the class certification motion.

COZEN O'CONNOR
6601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

## II.   **ARGUMENT**

### A.   **The Court should not require Marriott to comply with Plaintiffs' improper discovery requests.**

For the reasons explained below, Marriott should not be required to (i) provide revenue-related discovery; (ii) produce Marriott policies beyond those already produced; (iii) produce customer complaints beyond those already produced; (iv) produce "all" discovery from a pending D.C. action; (v) identify Marriott hotels charging resort fees before September 9, 2015 (the start of the limitations period); (vi) identify OTA agreements in place before September 9, 2015; or (vii) testify about how it discloses wi-fi fees, parking fees, or any other fees other than the resort fee.

#### 1.   **Marriott should not have to provide any revenue-related discovery because that discovery is not relevant.**

For the reasons set forth below, the Court should not require Marriott to produce any discovery relating to the revenue that Marriott received from resort fees, wi-fi fees, parking fees, or any other fees.

##### a.   **Discovery relating to Marriott's resort fee revenue is not relevant [RFP 28-31, 35-38; Rog 4-5; Topic 30-33].**

The Court should not require Marriott to produce any discovery relating to resort fee revenue because (i) the amount of such revenue is not relevant to class certification; and (ii) resort fees paid before the September 9, 2015 are not relevant.

###### (1)   **Marriott's resort fee revenue is not relevant to the class-certification analysis.**

The Court should exercise its broad discretion to not require Marriott to produce its revenue data before a class has been certified on the basis that such data is not relevant to the class-certification inquiry. California federal courts repeatedly have found that defendants need not produce revenue data or other damages discovery until after the class-certification phase. Also, that the Court did not bifurcate discovery generally does not prevent the Court from individually determining that revenue data

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

2

need not be produced on the ground that it is relevant only to the merits.

             **(a)**     **Legal standard on a motion to compel pre-certification discovery.**

"District courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted ... lies within the sound discretion of the trial court.'" *Francisco v. Emeritus Corp.*, Slip Copy, No. 17-2871, 2017 WL 11036693, at *2 (C.D. Cal. Sept. 5, 2017). "Where discovery is permitted, the district court also retains broad discretion to determine which issues should be deemed relevant to the certification of a class." *Id.*

"In the exercise of this discretion, the Court is called upon to balance two competing considerations: the discovery should be sufficiently broad to give the plaintiffs a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, but not so broad as to present an undue burden on the defendant." *Wahl v. Am. Sec. Ins. Co.*, No. 08-0555, 2009 WL 3463211, at *1 (N.D. Cal. Oct. 23, 2009). "Factors considered by the court in exercising its discretion include the need and time required for the requested discovery as well as the probability the discovery will provide factual information necessary for obtaining class certification." *Dawson v. HITCO Carbon Composites, Inc.*, No. 16-7337, 2018 WL 3815032, at *1 (C.D. Cal. June 22, 2018); *see also A.A. v. County of Riverside*, No. 14-2556, 2016 WL 10576640, at *3 (C.D. Cal. Mar. 14, 2016) (stating that all those factors "bear[] on the correctness of the trial court's exercise of discretion").

"Discovery in a putative class action at the pre-certification stage is generally limited to such certification issues as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class." *Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 297 (S.D. Cal. 2015); *see also Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006) ("'[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23,

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

such as numerosity, common questions, and adequacy of representation'" (citation omitted).); *Vind v. Prudential Ins. Co. of Am.*, No. 07-3564, 2009 WL 10673372, at *3 (C.D. Cal. Oct. 13, 2009) (stating that "a court may properly 'limit pre-certification discovery to evidence that, in its sound judgment, would be 'necessary or helpful' to the certification decision'""). "Thus, discovery is likely warranted where it will help resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether there are grounds for a class or subclass." *A.A.*, 2016 WL 10576640, at *3.

"[A] trial court abuses its discretion in refusing to permit class discovery where a plaintiff has either made a prima facie showing that the class action requirements of Rule 23 are satisfied, or has shown discovery is likely to substantiate the class allegations." *Madeira v. Converse, Inc.*, Slip Copy, No. 19-0154, 2019 WL 7877349, at *3 (C.D. Cal. Dec. 19, 2019). "But although it would be an abuse of discretion to deny class discovery where a plaintiff has made either showing, courts have discretion as to whether a prima facie showing is required for class discovery to proceed." *Id.* "Accordingly, while courts in the Ninth Circuit are not required to condition pre-certification discovery on a prima facie showing that class certification is appropriate, courts may require such a showing, or, in the alternative, a showing that discovery is likely to substantiate class allegations." *Luna v. Universal City Studios LLC*, No. 12-9286, 2015 WL 13655668, at *3 (C.D. Cal. Feb. 10, 2015).  Although courts have used their discretion to not require a prima facie showing that Rule 23 has been satisfied, Marriott has not been able to locate any California district court case in which a court explicitly used its discretion to not require a showing that the requested pre-certification discovery be relevant to class certification. *See Nelson v. Avon Prods., Inc.*, No. 13-2276, 2014 WL 12792596, at *2 (N.D. Cal. Sept. 3, 2014) ("Here, the court exercised its discretion and did not require the prima facie showing, … but found instead that Plaintiffs had presented an argument as to why discovery would be likely to produce evidence of class claims.").

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

4

**(b)    The Court should use its discretion to require Plaintiffs to show that the requested revenue discovery is relevant to class certification, and then should find that Plaintiffs fail to satisfy that showing.**

To guide its discretion in determining whether to allow the revenue discovery, the Court should balance the relevance of the revenue to the class-certification inquiry against the burden to compile the revenue data. *See Wahl*, 2009 WL 3463211, at *1.

Marriott's resort fee revenue is not relevant to a class-wide damages model or any other element of the class-certification inquiry. "[A]s part of the predominance inquiry under Rule 23, plaintiffs must demonstrate that 'damages are capable of measurement on a classwide basis.'" *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 575 (N.D. Cal. 2020). Plaintiffs argue that, without the amount of Marriott's resort fee revenue, they cannot create the necessary class-wide damages model. (Opening Brief, at 7). But a case Plaintiffs cite refutes that very position: "[R]evenues, along with other financial data, speak more to the amount Plaintiffs should recover if they prevail than to class-certification issues." *St. Gregory Cathedral Sch. v. LG Electronics, Inc.*, No. 12-0739, 2013 WL 12214144, at *3 (E.D. Tex. Nov. 12, 2013). Plaintiffs even admit that the revenue allows them only to calculate damages, not to develop a damages model: "The [revenue] requests are highly relevant to Plaintiff's claims because Marriott's revenue received from the relevant fees will enable Plaintiff to calculate damages on a classwide basis." *Id.*

Further, Plaintiffs already *have* a damages model. The Second Amended Complaint alleges that the "measure of Class damages" is the "excess resort, amenity, and other fees consumers paid for the falsely advertised rooms," *i.e.*, the total amount of resort fees paid by class members. (Ex. C, Second Am. Compl., ¶ 113; *see also* Opening Brief, at 7 ("[C]lasswide damages in this action will be based on the amount of the relevant fees that were charged to consumers.")). Plaintiffs thus request resort fee revenue not to create a damages model but to implement the one already created.

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

*In re: Facebook Privacy Litigation* illustrates this point: Plaintiff, on behalf of a putative class, alleged that Facebook wrongly sent user data to advertisers. No. 10-2389, 2015 WL 3640518, at *1 (N.D. Cal. June 11, 2015). Before a class was certified, plaintiff moved to compel Facebook to produce its advertising revenue. *Id.* at *4. The court denied the request because plaintiff "failed to substantiate how such information is relevant to class certification." *Id.* It reasoned that plaintiff need not calculate its damages, and thus does not need "hard numbers," at the certification stage: "Plaintiff is not … required to present a measure of damages at class certification. Rather, Plaintiff must show that she has a clear methodology capable of reliably calculating damages on a classwide basis. The law does not require her to present hard numbers, rendering Facebook … revenue information immaterial." *Id.* The court thus refused to compel Facebook to provide any revenue data. *Id.*

Other California district courts routinely have exercised their discretion to refuse to compel a defendant to provide revenue data or other damages discovery before a class is certified. *See, e.g., Red v. Kraft Foods Inc.*, No. 10-1028, 2011 WL 13128159, at *4 (C.D. Cal. July 25, 2011) ("Plaintiffs have not shown that the topics—manufacture and distribution, sales figures, profit and revenue—are relevant to the issue of class certification."); *Franklin v. Ryko Corp.*, No. 07-2921, 2008 WL 11334493, at *3 (C.D. Cal. Oct. 22, 2008) (stating that the court had ordered that "there will be no financial discovery, discovery related to damages or profits until after the motion for class certification is heard and decided"); *Johnson v. Sky Chefs, Inc.*, No. 11-5619, 2013 WL 11081261, at *2 (N.D. Cal. May 28, 2013) ("Though the requested discovery appears to be relevant to a damages calculation, or to the case generally, plaintiffs have not convinced the Court that they are entitled to the requested information prior to class certification."); *Vasquez v. P.F. Chang's China Bistro, Inc.*, No. 09-1408, 2009 WL 10698477, at *1 (C.D. Cal. Oct. 8, 2009) ("While such information … theoretically could be appropriate for … damages, Plaintiff has not made out a prima facie case showing that it is appropriate for discovery of whether

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

6

the action should be maintained as a class action."); *Thomas-Byass v. Michael Kors Stores (Cali.), Inc.*, No. 15-0369, 2015 WL 5568609, at *4 (C.D. Cal. Sept. 22, 2015) ("[W]hile the information may be relevant to calculating damages, requiring broad production of Payroll Records before certification of the class is not appropriate.").

Plaintiffs cite seven cases to support their assertion that "courts have found that production of financial information is highly relevant to class certification issues and must be produced." (Opening Brief, at 7). Those cases either do not support that proposition or are distinguishable from this action. One case is not even a class action. *See Patient First Corp. v. Patients 1st Med. Equip. Co.*, Slip Copy, No. 07-0729, 2007 WL 9782590 (D. Md. Sept. 11, 2007). In two cases, the courts found that financial information is relevant to the merits, not to class certification. *See Woodard v. Labrada*, Slip Copy, No. 16-0189, 2018 WL 6930767, at *4 (C.D. Cal. Jan. 11, 2018); *Hawkins v. Kroger Co.*, Slip Copy, No. 15-2320, 2019 WL 4416132, at *9 (S.D. Cal. Sept. 16, 2019). In another case, the court found not that revenue is relevant to class certification, but rather that "studies, analyses, and/or communications about the effects of the disputed labeling claims on their … revenues" are relevant to class certification. *See In re: Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, No. 14-2555, 2016 WL 6245899, at *7 (N.D. Cal. Oct. 26, 2016).

Plaintiffs also cite two distinguishable cases from outside the Ninth Circuit. *See Pearson v. Novastar Home Mortg., Inc.*, No. 05-1377, 2006 WL 8435060 (M.D. La. Nov. 21, 2006); *St. Gregory Cathedral Sch. v. LG Electronics, Inc.*, No. 12-0739, 2013 WL 12214144 (E.D. Tex. Nov. 12, 2013). The *Pearson* plaintiff argued that the defendant's balance sheets and profit and loss statements are relevant not to class certification, but to plaintiff's punitive damages claim, and to the extent defendant "intends to argue that certification of a class would expose it to statutory damages it could not financially withstand." 2006 WL 8435060, at *3. Although the court ordered that financial information be produced, it implicitly found the information

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

DEF.'S BRIEF IN OPP TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO.: 3:19-CV-01715-H-AHG

was *not* relevant to class certification by stating the information is "at least relevant to the issue of damages" and that "producing it at this time may not be required." *Id.*

In *St. Gregory*, plaintiffs sought revenue data for many models of defendant's HVAC units. 2013 WL 12214144, at *3. Defendant had produced sales data for models purchased by plaintiffs (but not for the other models identified in the complaint) but no revenue data. *Id.* The court acknowledged that "revenues, along with other financial data, speak more to the amount Plaintiffs should recover if they prevail than to class-certification issues." *Id.* As a result, the court did not require defendant to produce revenue data for models not purchased by plaintiffs; it required defendant to produce revenue data only for the models for which defendant already had voluntarily produced sales data. *Id.* Although the court stated that the revenue data "should be sufficient for Plaintiffs to demonstrate whether damages are capable of classwide resolution," it never explained *how* the revenue data allegedly shows that the damages are "capable of classwide resolution," *id.*, thus rendering *St. Gregory* – which is not binding on the Court – unpersuasive.

The final case, in which Plaintiffs' attorneys were involved, also is distinguishable. *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-2335, 2018 WL 4502348 (S.D. Cal. Sept. 20, 2018). There, plaintiff's damages model was based on a "retail price premium theory." (Ex. D, Ocean Spray's Opp. to Mtn. to Compel, at 3). Defendant argued its revenue was not relevant to that theory. *Id.* The court disagreed, finding plaintiff "may be able to use the wholesale numbers to determine whether a premium is being paid based upon the alleged misrepresentations." *Hilsley*, 2018 WL 4502348, at *2. The revenue was relevant to whether a premium existed, and thus to whether a viable damages model existed. Unlike in *Hilsley*, Plaintiffs do not need Marriott's revenue to develop a damages model; they need Marriott's revenue only to calculate their damages, but that need not be done at the class-certification stage.

In sum, despite Plaintiffs' assertion that financial information is "highly relevant to class certification issues," five of the seven supporting cases did not find

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

8

financial information relevant to class certification. Of the two cases finding financial information relevant to the damages model, one is distinguishable because it involved a retail price premium theory rendering revenue relevant (*Hilsley*), and the other Fifth Circuit case is not persuasive because it offers no rationale for its finding (*St. Gregory*). The Court thus should disregard all seven cases cited by Plaintiffs.

\* \* \*

The burden on Marriott to compile the requested revenue data is substantial. About 83 Marriott-managed hotels and 85 franchised hotels collect resort fees. (Ex. E, Declaration of Jennifer Aronson, ¶ 4). As a threshold matter, Marriott is unable to calculate how much resort fee revenue it has received from franchised hotels. (*Id.*, ¶¶ 7-11).

(*Id.*, ¶ 5).

(*Id.*, ¶¶ 6-7). Because the monthly payment lacks a breakdown, Marriott cannot determine what portion of it is the resort-fee component. (*Id.*, ¶¶ 7-11).

The managed hotels likewise provide Marriott with only a monthly payment with no breakdown. (*Id.*, ¶ 8). Although Marriott theoretically is capable of "reverse engineering" that monthly payment to determine what portion of it constitutes the resort-fee payment because it has access to the relevant data, it would be an incredibly arduous task requiring thousands of person-hours. (*Id.*, ¶¶ 12-24). Marriott first would need to devote a substantial amount of time merely to create a methodology enabling it to reverse engineer the monthly payments. (*Id.*, ¶¶ 13-16, 19-22). Once it did so, Marriott then would need to manually implement that methodology approximately 761 times [9.17 years (from January 2012 to February 2021) x 83 managed hotels]. (*Id.*, ¶¶ 17-18). Even if each such manual implementation took only three to five hours

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

9

(a very conservative estimate), Marriott would need to commit 2,283 to 3,805 hours to allow it to comply with Plaintiffs' discovery requests. (*Id.*, ¶¶ 23-24).

\* \* \*

Because the resort fee revenue is in no way relevant to class certification, and the burden on Marriott to compile the requested revenue data is immense, the Court should exercise its discretion to decline to require Marriott to produce this data.

### (c)   That the Court declined to bifurcate discovery does not change the analysis.

Contrary to Plaintiffs' assertion, that the Court did not implement a wholesale bifurcation of merits discovery and class discovery does not prohibit it from now making a focused, individualized assessment about the revenue-related discovery.

Courts often refuse to bifurcate discovery in class actions because merits discovery and class discovery frequently overlap. "'[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citation omitted). The "rigorous analysis" courts must perform to ensure the class-certification elements in Rule 23(a) have been satisfied "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Id.* at 33-34 (citation omitted). District courts likewise have recognized that "the merits/certification distinction is not always clear" and "there is often no clear-cut division between discovery that relates to class certification and merit-based discovery." *Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 297 (S.D. Cal. 2015); *Aldapa v. Fowler Packing Co. Inc.*, No. 15-0420, 2019 WL 1047492, at \*15 (E.D. Cal. Mar. 5, 2019).

In *A.A. v. County of Riverside*, the two scheduling orders set a class discovery cutoff, did not set a merits discovery cutoff, and did not expressly or impliedly bifurcate discovery. No. 14-2556, 2016 WL 10576640, at \*2 (C.D. Cal. Mar. 14,

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

DEF.'S BRIEF IN OPP TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO.: 3:19-CV-01715-H-AHG

2016). The court interpreted the scheduling orders to mean that a party may conduct merits discovery, but only insofar as it overlaps with class discovery:

> [T]he court's scheduling Orders are better viewed as limiting discovery at this time to discovery having some bearing on class certification, rather than taking the extreme position of prohibiting all discovery that has any bearing on the merits throughout the time period established in the court's scheduling Orders. Therefore, defendants must comply with plaintiff's discovery requests to the degree those requests are relevant to, or overlap with, issues related to class certification.

*Id.* at *3; *see Beets v. Molina Healthcare, Inc.*, Slip Copy, No. 16-5642, 2019 WL 2895630, at *5 (C.D. Cal. Apr. 9, 2019) (finding that, because the court "expressly declined to bifurcate discovery, … some leeway should be afforded with respect to merits related issues as part of the precertification discovery determination"); *Ramirez v. GEO Group, Inc.*, No. 18-2136, 2019 WL 950328, at *3 (S.D. Cal. Feb. 26, 2019) (finding that, although discovery was not bifurcated, plaintiff still had to prove discovery "is likely to produce substantiation of the class allegations"). The court thus denied plaintiff's motion to compel as to discovery that "appear to be primarily, if not exclusively, merits discovery with no bearing on class certification." *Id.* at *5.

In *Stoba v. Saveology.com, LLC*, the court's scheduling order explicitly stated that fact discovery and class discovery were not bifurcated. No. 13-2925, 2016 WL 3356796, at *3 (S.D. Cal. June 3, 2016). Nonetheless, the defendant refused to produce a certain agreement during discovery on the ground that it "ha[d] nothing to do with class certification." *Id.* at *4. The court found that plaintiff's request for the agreement was improper because, among other reasons, "it seeks discovery that is not relevant to class certification." *Id.* Accordingly, the court denied the motion, but without prejudice to plaintiffs "seeking this discovery during the merits phrase of discovery following the ruling on the class certification." *Id.*

Here, like in *A.A.*, the Court (i) expressly declined to bifurcate merits/facts discovery and class discovery, (ii) set a deadline for class discovery, and (iii) set no

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

deadline for merits/fact discovery. Marriott's resort fee revenue is not "overlapped" discovery relevant to both class certification and the merits; although some portion of the resort fee revenue is relevant to the merits/damages calculation, it has no relevance to class certification. Marriott has complied with the Court's declination to bifurcate the case by producing extensive merits-related discovery, such as resort fee policies, customer complaints, web flows relating to the making of hotel reservations, and FTC-issued letters. But where certain requests seek discovery relevant only to the merits, the Court should not require Marriott to produce the discovery at this time.

### (2) Revenue from resort fees paid by hotel guests before September 9, 2015 is not relevant because of the applicable statutes of limitations.

Plaintiffs filed suit on September 9, 2019. As Plaintiffs acknowledge, the longest applicable statute of limitations is four years (Opening Brief, at 15). Thus, the period over which class members allegedly could be reimbursed their resort fees is from September 9, 2015 to the present. Without explanation, Plaintiffs defined the class period to start on January 1, 2012, and thus seek resort fee revenue dating back to then. Because the limitations period starts on September 9, 2015, the amount of resort fees paid by guests from January 1, 2012 to September 8, 2015 is not relevant.

Plaintiffs advance a litany of conclusory, meritless arguments in support of their proposition. They suggest that their defining the class period to start on January 1, 2012 somehow trumps the statutes of limitations but cite no supporting authority. (*Id.* at 14). They argue that the applicability of the statute of limitations here is a "question of fact" but offer no supporting explanation. (*Id.* at 14-15). They suggest that Marriott's failure to raise a statute-of-limitations defense in its Motion to Dismiss somehow waived the defense, but that argument also fails. (*Id.* at 15); *see* Fed. R. Civ. Pro. 12(b), 12(h) (not including statute-of-limitations defense as a defense waived if not included in a motion to dismiss). They assert that the requested discovery "may

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

1  aid" in showing that the "discovery rule" applies but, again, fail to explain how.

2  (Opening Brief, at 16).

3     Plaintiffs cite *Allen v. Similasan Corp.* for the proposition that, "[g]enerally,

4  [statutes of limitations] do not affect discovery," and *Gottesman v. Santana* for the

5  proposition that "[t]he statute of limitations is not a rigid barrier separating

6  discoverable information from information outside the scope of discovery." No. 12-

7  0376, 2014 WL 2212120, at *2 (S.D. Cal. May 27, 2014); No. 16-2902, 2017 WL

8  5889765, at *5 (S.D. Cal. Nov. 29, 2017). Plaintiffs misunderstand the point; Marriott

9  asserts not that *all* discovery predating September 9, 2015 is irrelevant, but only that

10 certain such discovery, like revenue data, is rendered irrelevant by the applicable

11 limitations periods. Those two cases thus are inapposite.

12    Plaintiffs conclude with the continuing violation doctrine. (Opening Brief, at

13 15-16). Plaintiffs' counsel did not raise this doctrine at the discovery conference or in

14 any of the meet-and-confer telephone calls or emails preceding the conference,

15 suggesting it is a last-minute, hail-mary argument. At any rate, the doctrine, which

16 primarily applies in employment and § 1983 cases, "can toll a statute of limitations

17 when the injury alleged is the product of a series of small harms, any one of which

18 may not be actionable on its own." *Matic v. U.S. Nutrition, Inc.*, No. 18-9592, 2019

19 WL 3084335, at *3 (C.D. Cal. Mar. 27, 2019) (citations omitted). "[It] does not apply

20 … when the plaintiff alleges 'a series of discrete, independently actionable alleged

21 harms,' rather than 'a wrongful course of conduct [that] became apparent only through

22 the accumulation of a series of harms.'" *Id.*

23    The doctrine does not apply here because, every time a consumer made an

24 online reservation, the transaction allegedly constituted a "discrete, independently

25 actionable … harm[]." *See id.* Regrettably, Plaintiffs' attorneys know well that the

26 doctrine does not apply here. In at least three other false-advertising class actions,

27 Plaintiffs' attorneys argued that, under the doctrine, the start of the class period should

28 predate the beginning of the limitations period by several years. All three courts

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

13

rejected the argument. *See id.*; *Allred v. Frito-Lay N. Am., Inc.*, No. 17-1345, 2019 WL 1040018, at *6-7 (S.D. Cal. Mar. 5, 2019); *Clark v. Hershey Co.*, No. 18-6113, 2019 WL 913603, at *7 (N.D. Cal. Feb. 25, 2019).

The *Allred* plaintiffs filed suit in 2017. 2019 WL 1040018, at *2. Although the longest applicable statute of limitations was four years, plaintiffs defined the class period to start in 2011. *Id.* at *3, 7. They argued the continuing violation doctrine tolled the statutes of limitations because "the continued presence of the unlawful mislabeling of Defendants' Product first occurred outside the statute of limitations," and "Defendants' deceptive labeling of the Product has been continuous and systematic since ... 2011." *Id.* The court found the doctrine inapplicable. *Id.*

Not only does *Allred* undermine Plaintiffs' argument, but Plaintiffs inaccurately cite a prior *Allred* opinion in an apparent effort to mislead the Court. (Opening Brief, at 15-16). In 2018, the *Allred* court held that the continuing violation doctrine *did* apply. No. 17-1345, 2018 WL 1185227, at *8 (S.D. Cal. Mar. 7, 2018). But in the 2019 opinion described above, the *Allred* court clarified that the 2018 opinion intended to invoke the continuous accrual doctrine, not the continuing violation doctrine. 2019 WL 1040018, at *7. Although Plaintiffs' attorneys, as counsel of record in *Allred*, are well aware of the 2018 error and 2019 correction, they astonishingly cite the 2018 opinion as "good law." (Opening Brief, at 15-16).

### b. Discovery relating to Marriott's revenues from wi-fi fees, parking fees, or any other non-mandatory fees is not relevant [RFP 32-34, 39-41; Rog 4-5; Topic 34-36].

#### (1) This case has nothing to do with wi-fi fees, parking fees, or any other non-mandatory fees.

This case is about one fee, and one fee only: the resort fee. As Plaintiffs admit, the "crux" of the case is that Marriott uses drip pricing, in which a hotel's room rate initially is advertised without the cost of any applicable, mandatory resort fee. (Opening Brief at 7). Plaintiffs' proposed class, in relevant part, is all Marriott hotel

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

14

guests "charged an amount … higher than the room rate quoted … plus government imposed taxes and government imposed fees." (Ex. C, Second Am. Compl., ¶ 97). The proposed class thus comprises Marriott guests who paid a mandatory fee – which necessarily is a resort fee, the only mandatory fee charged at Marriott hotels – on top of the room rate and taxes. The proposed class does not reference any non-mandatory fees, such as wi-fi fees, parking fees, or any other non-mandatory fees.

Plaintiffs argue the resort fee is deceptive because it includes amenities, such as wi-fi and parking, that are either "complimentary" or "separately charged." Although this reference to certain amenities is tangential to Plaintiffs' assertion that the *resort fee* is deceptive, Plaintiffs seek to conduct extensive discovery about the specific amenities. In fact, for every single discovery request pertaining to the resort fee, Plaintiffs make identical requests pertaining to the wi-fi fee, parking fee, and any other fee other than the resort fee, respectively. This is an unquestionable fishing expedition untied to any allegation in the Second Amended Complaint.

When one goes beyond the surface of Plaintiffs' conclusory allegation that the resort fee includes "complimentary" or "separately charged" amenities, there is nothing there. Plaintiffs do not allege that *Marriott* advertised that a wi-fi fee, charged as part of a resort fee, is complimentary. Plaintiffs allege only that the Coronado Island Marriott Resort & Spa has a resort fee that covers wi-fi, but that several OTAs advertised that the wi-fi is "free." But there exists no evidence that Marriott controlled or had the right to control how OTAs describe hotel amenities, and further, no Plaintiff stayed at the Coronado hotel. Nor do Plaintiffs allege that Marriott or any OTA ever advertised that a parking fee, allegedly charged as part of a resort fee, is complimentary. Although Plaintiffs allege that Marriott's website advertised that a fitness fee at the Coronado hotel is both part of a resort fee and complimentary, no Plaintiff stayed at that hotel or took a fitness class there.

Plaintiffs do not allege that Marriott advertised that a resort fee includes wi-fi but then separately charged for wi-fi, let alone that *they* were "separately charged."

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

The only allegation about a separate wi-fi fee is that Orbitz advertises that the Coronado hotel (again, where no Plaintiff stayed) has a $15.95 wi-fi fee. But again, Marriott has no control over how OTAs advertise amenities. Further, as confirmed by a front-desk clerk at the Coronado hotel, the hotel does *not* charge a wi-fi fee; Orbitz simply is wrong. Plaintiffs thus allege no instance in which a Marriott hotel charges a wi-fi fee on top of a resort fee covering wi-fi.

Plaintiffs do not allege that Marriott advertised that a resort fee includes parking but then separately charged for parking, which Plaintiffs cannot do because no resort fee includes parking. Although plaintiff Jesse Heineken allegedly paid for parking at the Marriott Springhill Suites in Anaheim, California, Plaintiffs do not allege that Mr. Heineken paid a resort fee (the hotel does not charge one), such that he did not pay both a resort fee and parking fee. To the extent Plaintiffs assert a new theory that Mr. Heineken believed the room rate included parking, Marriott notes that (i) its website discloses the existence of a $15 parking fee at the hotel (Ex. F); (ii) Plaintiffs concede that Marriott's website disclose the existence of a parking fee before a consumer books a room (Second Am. Comp., ¶ 32); and (iii) no reasonable consumer would think a hotel's base room rate includes optional parking.

With the above context, Plaintiffs' demand that Marriott produce over nine years of revenue relating to each of the wi-fi fee, parking fee, and every other single fee charged at any of the over 5,850 Marriott U.S. hotels is, respectfully, preposterous. As shown above, Plaintiffs have no evidence that Marriott provides complimentary or for a separate charge any amenity included in a resort fee, thus rendering irrelevant all discovery relating to any fee other than the resort fee. And even if those fees somehow were relevant to this case, Plaintiffs offer zero explanation for how the revenues for all these other fees could have any conceivable relevance, particularly where their damages model is reimbursing guests for the resort fees they paid.

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

DEF.'S BRIEF IN OPP TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO.: 3:19-CV-01715-H-AHG

**(2)** **Revenue from wi-fi fees, parking fees, and any other fees other than resort fees paid before September 9, 2015 is not relevant because of the applicable statute of limitations.**

For the reasons explained in Section II.A.1.a.(2) above, the revenue relating wi-fi fees, parking fees, and all other non-mandatory fees is not relevant.

**2.** **Marriott should not have to produce any Marriott policies beyond those already produced [RFPs 3-9, Topics 8-14].**

Marriott produced 25 resort fee policies dated from September 2014 to the present, which constitute all the resort fee policies in place at any time during the limitations period of September 9, 2015 to the present. Marriott also agreed to produce a designee to testify to those policies. Plaintiffs argue Marriott also must produce (i) resort fee policies from January 2012 to September 2014; (ii) all policies relating to wi-fi fees, parking fees, and any other non-mandatory fees from January 2012 to the present; and (iii) a Marriott designee to testify to those two items. As explained in Sections II.A.1.a.(1) and (2) above, none of that requested discovery is relevant.

**3.** **Marriott should not have to produce any customer complaints beyond those already produced [RFPs 67-73, Topic 40].**

Marriott has produced all of the nearly 1,150 customer complaints relating to the disclosure of resort fees received by Marriott from September 2015 to September 2020. For the above reasons, as well as the fact that it would be cumulative and not proportional to the needs of the case, Marriott should not have to produce any of those complaints pre-dating September 2015, nor should it have to produce any complaints relating to wi-fi fees, parking fees, or any fees other than resort fees.

**4.** **Marriott should not have to produce "all" documents and discovery from a certain D.C. litigation [RFP 48].**

In addition to 72 specific document requests, Plaintiffs include a 73rd request seeking "all" discovery produced by Marriott in a certain D.C. litigation that the

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

District of Columbia filed against Marriott. Asking for "all" documents produced in another litigation, even where the issues "overlap," is improper:

> Asking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for. There could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case.

> If relevant and proportional documents exist in the custody or control of the responding party, the appropriate thing to do is to request those documents. The fact that the documents were or were not produced in other litigation is irrelevant. Moreover, compelling a responding party to do duplicate searches—one for responsive documents in their custody and control and one for all documents in their custody and control that were previously produced in other litigation—is definitionally unduly burdensome, as it would consume resources without providing any additional benefit to the propounding party.

*Goro v. Flower Foods, Inc.*, No. 17-2580, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019); *see also Ms. J.P. v. Barr*, No. 18-6081, 2020 WL 4643928, at *2 (C.D. Cal. Jan. 17, 2020) (holding that a "blanket demand" for "all documents" produced in related litigation "without regard to relevance here" is "not proportional to the needs of this case, no matter how similar related litigation may be in certain areas"). Even a case cited by Plaintiffs acknowledges that seeking "all" documents from another case is improper. *See Food Lion, LLC v. Dairy Farmers of Am., Inc.*, No. 20-0442, 2020 WL 6947921, at *4 (M.D.N.C. Sept. 29, 2020) ("The full principal [sic] disfavoring 'cloned' discovery requests described in *TravelPass* is that 'requesting *all* documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case'" (emphasis in original).).

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

Although the D.C. case and this case involve allegations of drip pricing, there exist crucial differences: (i) this action is a class action brought by individuals, and the D.C. action is an enforcement action brought by the District of Columbia, through the Office of the Attorney General; (ii) this action involves seven common law and statutory claims under California law, and the D.C. action involves a single D.C. statutory claim; and (iii) in this action, before the Court compels discovery relevant exclusively to the merits before a class has been certified, it conducts the above analysis (balancing the relevance of the discovery to class certification against the burden to Marriott) to determine whether to compel the discovery. Given these differences, Plaintiffs must make specific requests for information and documents so the Court can assess their relevance to both class certification and the merits. *See Chen v. Ampco Sys. Parking*, No. 08-0422, 2009 WL 2496729, at *3 (S.D. Cal. Aug. 14, 2009) ("Indeed, the fact that Ampco produced certain documents in the state cases does not necessarily make them discoverable in this case. … Rather, Plaintiff must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case.").

Further, Marriott should not be required to produce to Plaintiffs any deposition transcripts from the D.C. action because Marriott did not "produce[]" them in the D.C. action. *See Schneider v. Chipotle Mexican Grille, Inc.*, No. 16-2200, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017) ("Defendant is not required to produce transcripts of Defendant's deponents from the *Reilly* case because such transcripts are not encompassed by the Request; the Requests seeks documents produced by Defendant, whereas transcripts that were *created* during the litigation based on the production of witnesses by Defendant fall outside of Request No. 1.").

### 5.    Marriott should not have to identify hotels that charged a resort fee before September 9, 2015 [RFPs 1-2; Rogs 1-2].

Plaintiffs asked Marriott to identify every hotel owned or operated by it from January 1, 2012 to the present, regardless of whether the hotel charges a resort fee.

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401

Marriott soon will produce a list of the 178 hotels currently charging resort fees. For the reasons explained in Section II.A.1.a.(2), Marriott should not have to identify hotels charging resort fees before the limitations period started on September 9, 2015.

> **6.      Marriott should not have to produce any OTA agreements that were not in place at any time between September 9, 2015 and the present [Rog 3].**

Marriott produced ten OTA agreements in place at any time between September 9, 2015 and the present. For the reasons explained in Section II.A.1.a.(2), Marriott should not have to produce any earlier OTA agreements.

> **7.      Marriott should not have to testify about how it discloses the wi-fi fee, parking fee, or any other fee other than the resort fee [Topics 20-22].**

Because wi-fees, parking fees, and all other non-mandatory fees are not relevant, the means by which Marriott discloses them likewise is irrelevant.

### B.      The Court should not award fees to Plaintiffs.

The Court should decline Plaintiffs' request for $15,125 in fees. For all the above reasons, Marriott's refusal to provide the requested discovery is "substantially justified." *See* Fed. R. Civ. Pro. 37(b)(2)(C). Marriott notes that, of the four discovery disputes presented to the Court at the discovery conference, the Court said it was inclined to find in Plaintiffs' favor on only one of them.

## III.      CONCLUSION

Based on the foregoing, Marriott respectfully requests that the Court deny Plaintiffs' motion to compel and their accompanying fee request.

Dated: February 12, 2021                COZEN O'CONNOR, P.C.

                                        By:    /s/ Amy B. Alderfer
                                        Amy B. Alderfer
                                        Attorneys for Defendant

COZEN O'CONNOR
401 WILSHIRE BOULEVARD
SUITE 850
SANTA MONICA, CA 90401