**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL (SBN 127081)
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Tel: (866) 833-5529
Fax: (855) 609-6911

**BURSOR & FISHER, P.A.**
L Timothy Fisher (State Bar No. 191626)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          breed@bursor.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, KEVIN BRANCA, and GEORGE ABDELSAYED individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation;<br><br>    *Defendant*. | Case No: 3:19-cv-01715-JLS-AHG<br><br>**CLASS ACTION**<br><br>**CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Todd Hall, Kevin Branca, and George Abdelsayed ("Plaintiffs"), hereby bring this Action against Defendant Marriott International, Inc. ("Defendant" or "Marriott") for misleading consumers concerning the amounts they must pay for rooms at their hotels, and upon information and belief and investigation of counsel alleges as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendant is a citizen of a state different from that of the Plaintiffs, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2.    This Court has both general and specific personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct substantial business in the State of California and County of San Diego. Marriott International, Inc. is registered with the California Secretary of State under entity number C2059637.

3.    This Court has specific personal jurisdiction arising from Defendant's decision to conduct business in California. Defendant has sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State to render the exercise of jurisdiction by this Court reasonable.

4.    Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial district and Defendant conducts business within this judicial district.

## II.    INTRODUCTION

5.    This is a straight-forward price deception case involving, without limitation false bargain and bait advertising. For at least the last decade, Marriott has used unlawful trade practices called "drip pricing" and "partition pricing" (collectively referred to as "drip pricing") in advertising its hotel rooms whereby Marriott falsely baits a consumer

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

into believing it is getting a bargain, and then hides and disguises a portion of a hotel room's daily rate from consumers through practices ranging from without limitation, the outright hiding of price terms, or using small print, or by mischaracterizing them, to subtler ways of calling something free when in fact it is being charged for, or by adding charges at various times during the vending process, including up to and at checkout from the hotel. Marriott often calls the hidden portion of the room rate a number of terms, including a "resort fee," "amenity fee," "destination fee," or "taxes and fees." One key effect of this price deception is that consumers shopping for a hotel room on either Marriott's website, or an online travel agency site ("OTA") like Priceline or Expedia, are baited into believing a Marriott hotel room is a bargain and cheaper than it actually is. Marriott's motive in continuing these deceptive practices is pure profit. It has reaped hundreds of millions of dollars over the last decade from these deceptive practices which utilize "drip pricing." Plaintiffs bring this action to force Marriott to advertise to consumers the true prices of its hotel rooms in a manner that does not bait consumers, does not use false bargain advertising, is transparent, does not obfuscate the true price, and is not deceptive, misleading, or false, and harmful and injurious to consumers.

6.     Marriott is a hotel and lodging corporation with its headquarters in Bethesda, Maryland. Marriott owns, franchises, and manages hotels throughout the United States, including approximately 60 hotel properties located in the San Diego area. Marriott conducts its hotel business through various corporate entities operating under numerous trade names.[1] It offers lodging at its hotels to California residents, including through its online reservation website and through the websites hosted by OTAs, such as Priceline and Expedia. These websites are supposed to allow consumers to obtain accurate information about Marriott's hotel rooms and allow consumers to accurately

---

[1] Marriott hotels operate under at least the following trade names" Starwood, St. Regis, The Luxury Collection, W, Westin, Le Méridien, Sheraton, Tribute Portfolio, Four Points by Sheraton, Aloft, Element, The Ritz-Carlton, Design Hotels, Bvlgari Hotels & Resorts, Edition, JW Marriott, Autograph Collection Hotels, Renaissance Hotels, Marriott Hotels, Delta Hotels and Resorts, Gaylord Hotels, AC Hotels by Marriott, Courtyard by Marriott, Residence Inn by Marriott, Springhill Suites by Marriott, Fairfield Inn & Suites, TownePlace Suites by Marriott, and Moxy Hotels.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

compare Marriott's hotel room prices to that of other hotels as well as make hotel reservations.

7. Marriott advertises and promotes its hotel rooms by advertising daily room rates on its own website and the websites operated by OTAs. Marriott's official website and the websites operated by the OTAs enable consumers to search for and sort prospective hotel accommodations by price according to the daily room rate. These search and sorting functions are used by consumers, including consumers residing in California, to compare prices among various hotels. Many consumers, including those residing in California, use the websites operated by Marriott and the OTAs to compare the price of hotel rooms offered by Marriott and other hotels and to select and book a hotel room online.

8. Marriott charges fees that are characterized in different ways, some of which are mandatory which it refers to as "resort fees," "destination amenity fees," "amenity fees," or "taxes and fees" (referred to collectively hereafter as "resort fees") on a daily basis for a room at many of its hotels. However, Marriott does not include these daily fees in the room rate it advertises on its website and does not include them in the room rate advertised by the OTAs, thereby depriving consumers of the ability to readily ascertain and compare the actual price of a room at a Marriott hotel to the bait price of the bargain Marriott claims it is offering, or to the hotel rooms offered by Marriott's competitors and at other Marriott hotels.

9. Beyond this initial price deception, when consumers select a room rate and provide their credit card and other personal information to book a room, Marriott also represents that the daily room rate at the hotel is less than it actually is because it does not include the mandatory resort and other fees that Marriott adds to the daily room charge. In many instances, Marriott includes the resort fees as part of a total charge called "Taxes and Fees," thereby misleading consumers to believe the additional fees they are paying are government-imposed, rather than a separate daily charge imposed by and paid to Marriott. In some instances, these resort fees cover costs, such as parking or wi-fi

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

service, that Marriott advertises it provides as free or complimentary or, alternatively, requires hotel guests to pay for separately, even though Marriott has required them to pay the resort fee. Heads Marriott wins, tails the consumer loses because when a consumer books online, he or she cannot tell what is included in the room rate, what is included in the "fee," what is truly "free" or complimentary, and what he or she will be separately charged for upon arrival and/or at checkout, and by then it is too late to make an informed consumer choice.

10. Plaintiffs institute these proceedings to stop Marriott from engaging in the unlawful trade practices set forth more fully below in connection with its offer and sale of hotel rooms to consumers, including its practices of (1) fraudulent bargain and bait pricing, (2) misleading consumers concerning the amounts they must pay for rooms at their hotels, and (3) advertising hotel rooms without the intent to supply them at advertised prices. Plaintiffs seek injunctive relief to prevent Defendant from engaging in these and similar unlawful trade practices, civil penalties to deter Defendant and others similarly situated from engaging in these and similar unlawful trade practices, disgorgement of Marriott's unlawfully obtained revenue and profit, and the payment of costs, attorney's fees, damages, and restitution based on the harm consumers have experienced due to Defendant's conduct.

### III.  PARTIES

11. Defendant Marriott is a multinational hospitality company that owns, manages and franchises a broad portfolio of hotels and lodging facilities throughout the United States and abroad, including approximately 60 facilities located in the San Diego area. It is a Delaware corporation and is headquartered at 10400 Fernwood Road, Bethesda, MD 20817.

12. Marriott has, at all relevant times, engaged in trade or commerce in California by advertising and offering hotel lodging to California consumers.

13. Plaintiff Todd Hall is a citizen of the State of California and resides in Rancho Cucamonga, California. Plaintiff Hall has stayed in various Marriott hotels and

resorts within the class period, including the Marriott Marquis San Diego Marina.

14.    Plaintiff Kevin Branca is a citizen of the State of California and resides in San Marcos, California. Plaintiff Branca has stayed in various Marriott hotels and resorts within the class period, including the Marriott Ritz-Carlton Kapalua, in Maui, Hawaii.

15.    Plaintiff George Abdelsayed resides in San Diego, California. Mr. Abdelsayed has stayed in various Marriott hotels and resorts within the class period, including the Coronado Island Resort and Spa in San Diego, California.

## IV.    MARRIOTT'S DECEPTIVE ADVERTISING PRACTICES

### A.    Defendant's Practice of Charging Resort Fees

16.    The hotel industry has become highly price competitive, particularly with the increased use by consumers of OTAs, like Priceline and Expedia, that permit consumers to comparison shop across hotel brands. The Internet websites of hotels and OTAs allow consumers to review large numbers of rooms advertised by hotels using a daily room rate at the same time to compare their prices and make informed purchasing decisions.

17.    At issue in this case is the growing and continued unfair and deceptive practice of hotels advertising bargain-priced daily room rates online, but not including fees charged in the initially advertised room rate. For instance, and as only one example, Marriott will initially advertise a room rate that does not include a resort fee, but then include it in the final charges a consumer is required to pay. This is classic false bargain pricing and bait advertising enabled by drip and partition pricing through manipulation of internet advertising. Marriott charges these additional resort fees, which can amount to as much as $95 a day at some Marriott's properties while falsely appearing to deliver a bargain discount to increase its revenues without appearing to raise the room rate at its hotels.[2] Marriott does not include these fees in the room rate because doing so would effectively increase the price of a hotel room and consequently make its hotels less price

---

[2] In addition, in some jurisdictions Marriott is attempting to minimize, avoid, and evade government-imposed taxes based on room rates through drip and partition pricing.

competitive to consumers when compared with the bargain price it claims to be offering and to other hotels.

18.     Marriott's practice of initially advertising only part of a price and then later revealing other charges as the consumer completes the buying process has been labeled "drip pricing" by the Federal Trade Commission ("FTC"). In November 2012, the FTC warned the hotel industry that drip pricing as it pertains to charging resort fees violates federal consumer protection law when it misrepresents the price consumers pay for their hotel rooms. The FTC specifically warned the hotels that the largest and most prominent price for a hotel room should include the resort fee, and should be provided to the consumer up front, and not later in the checkout process, to avoid being deceptive drip pricing. Marriott received one of the FTC's warning letters.

19.     The FTC's Bureau of Economics then issued a report in 2017 confirming its concerns about this practice of drip pricing. That report concluded: In sum, the literature suggests that separating mandatory resort fees from posted room rates without first disclosing the total price is likely to harm consumers by artificially increasing the search costs and the cognitive costs of finding and booking hotel accommodations. Unless the total price is disclosed up front, separating resort fees from the room rate is unlikely to result in benefits that offset the likely harm to consumers.[3]

20.     Notwithstanding these warnings from the FTC, Marriott continues to bait consumers with false bargain advertised room prices that either do not include its resort fees and/or deceptively obfuscate them, both on its own website and the websites operated by OTAs. Marriott has continued this deceptive practice because it has become a key profit center for the company, as it has reaped hundreds of millions of dollars from expanding its use of resort fees over the past decade.

---

[3] Mary W. Sullivan, Fed. Trade Comm'n, Economic Analysis of Hotel Resort Fees 37 (Jan. 2017). The report and the FTC's summary can be viewed at the following link: https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resortfees/ p115503_hotel_resort_fees_economic_issues_paper.pdf

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

21.     Marriott owns, manages or franchises at least 189 properties worldwide that charge consumers resort fees ranging from $9 to as much as $95 per day. By charging consumers fees in addition to the daily amount consumers must pay for their rooms, Marriott makes hundreds of millions of additional dollars in revenue without appearing to increase the price for which it initially offers its rooms. Marriott's unlawful trade practices has affected California consumers, as Marriott has charged resort and other deceptively labelled fees to tens of thousands of California consumers over the years, charging those consumers millions and millions of dollars.

22.     Marriott also exercises control over the fees its hotels charge through its resort fee policies which give it the authority to determine what fees can be charged by the hotels it owns, manages or franchises. Although Marriott's Franchise Agreements typically allow its franchisees to set their own rates for guest room charges, these franchisees must still comply with Marriott's resort fee policy, which requires Marriott's approval and allows Marriott to control the resort fee they are permitted to charge. Moreover, under Marriott's Franchise Agreements, Marriott determines whether charges or billing practices are misleading or detrimental, including resort fees and other incremental fees or services that guests would normally expect to be included in the hotel room charge.

**B.     Defendant's Misleading Advertising Practices Concerning Resort Fees**

23.     When consumers search for and seek to book a hotel using Marriott's online reservation system, Marriott provides the consumers with a quoted room rate. For example, the following information appeared on Marriott's website for a room at its Marriott Marquis San Diego Marina September of 2019:



CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

24.     At this initial stage in the process of booking a reservation online, where the hotel appears on a page with rooms at other properties, the quoted daily room rate does not include or even mention the mandatory resort fee the consumer will be required to pay.

25.     If consumers selected the quoted rate for a room at the Marriott Marquis San Diego Marina on Marriott's online reservation system, as set forth in paragraph 21 above, they were directed to another page that provided the following information:



26.     Only at this point in the booking process does an obscure box first appear at the top of the page that states: "USD 30 daily destination amenity fee added to room rate. Concierge lounge closed 12noon Friday to 5:30pm Sunday."  This statement appears to link the amenity fee to the Concierge lounge, and is set in small typeface in a shaded light blue box and is displayed less prominently than the quoted room rate of $351 for a Member Rate and $369 for a Regular Rate which appeared in a larger bolded font and does not include the mandatory resort fee charged by Marriott for the room.

27.     Adding to the deception of consumers about the resort fee is Marriott's practice of hiding the resort fee in a larger total of charges ambiguously labeled "Taxes and fees." Specifically, Marriott includes the amenity fee in a single line item labeled "USD Taxes and fees." By combining the amounts that consumers were asked to pay for resort fees with their tax payments under a generic heading of "taxes and fees," Marriott leads consumers to believe the resort fees are government-imposed charges. For example, after selecting the Regular Rate room from the screen as shown above, a screen appeared that showed the "USD subtotal" of $449.65, consisting of the $369 rate for "USD/Night"

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

1    plus $80.65 "USD Taxes and Fees":



15        28.    The screen shown above still does not display the resort fee. Consumers are
16 able to click "continue" and complete the booking process at this point, all the while
17 believing that they are being charged $369 for the room and $80.65 for "USD Taxes and
18 fees." In fact, the transient occupancy tax rate is 10.5%, California State accommodation
19 tax is 0.195%, and the San Diego Tourism Assessment tax (2%) for a hotel room in San
20 Diego (totals 12.695%), or in this case $46.85 per night. Consumers have no way of
21 knowing that the $80.65 amount advertised for taxes and fees is actually a deceptively
22 misleading disguised increase in the room rate from the advertised price. Consumers are
23 then encouraged to quickly continue and complete the booking process, as a prominent,
24 green banner is displayed on the top of the screen, which reads "Reserve Your Room
25 Before Time Runs Out!" Below the banner is an icon of a stopwatch and a timer which
26 states "Room(s) held for: 14:39." This means that the consumer has only 14 minutes and
27 thirty-nine seconds to shop other prices for Marriott's competitors, then review
28 reservation details, and then finish the booking process. The countdown continues for the

remainder of the booking process. If 14 minutes and thirty-nine seconds pass, consumers are taken to another page that states the following:

## Session Timeout

**Welcome Back**

While you were away, our rates may have changed. Please click the button below to rebuild your reservation and re-select a rate.

**CONTINUE**

29. The screen above shows "Session Timeout" in large, bolded font. In small lettering below, the screen states "While you were away, our rates may have changed. Please click the button below to rebuild your reservation and re-select a rate." Consumers are then required to begin the booking process all over again if they did not quickly book their initial reservation. Marriott's initial deception of bait advertising a room rate at a lower price than what will actually be charged to consumers coupled with Marriott's practice of giving consumers only a limited amount of information and time to complete the booking process, lest risk a change of rates, deceptively influences consumer thinking when price comparison shopping and deciding on transactions. For consumers to find out that they are actually being charged a higher room rate disguised as a fee in addition to the quoted room rate, they are required to remain on the "Review Reservation Details" screen while being timed. They must also discover that clicking on "Summary of Charges" will reveal additional information about the charges. It is only at this point of the booking process that consumers will discover information regarding the partition pricing of the "Destination Amenity Fee" of $30.00, and "Estimated government taxes and fees" of $50.65:

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT



2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

21  But the deception doesn't end there. The consumer still can't tell what is included in the

22  Destination Amenity Fee (*e.g.*, will the consumer have to pay extra for use of wi-fi in the

23  room or just in the lobby, extra for use of the Concierge lounge, extra for use of business

24  center, extra for use of pool towels, etc.) versus what is included in the deceptively

25  labelled "government taxes and fees."   Even if the consumer knew that the true total tax

26  rate in San Diego was 12.695%, he still has no way of knowing what the additional $3.80

27  per day lumped into government taxes and fees is for, and whether it is truly a government

28

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

tax or fee or just a disguised increase in the advertised room rate designed to deceptively generate additional revenue and profit for Marriott at the consumer's expense.

30.    During the reservation process, Marriott's ambiguous statement regarding the destination amenity fee often included representations to consumers about the amenities that the resort fee covers. However, Marriott further adds to the consumer deception by stating later in the reservation process that it either charges for certain amenities separately, or purportedly provides them on a "complimentary" basis, or says nothing at all about what amenities are included in the room or will be separately charged (*e.g.*, elegant venues, outdoor pools, a gym, day spa, and tasty dining).

31.    For example, the words "Additional Charges" "On-site parking, fee: 9 USD hourly, 35 USD daily" and "Valet parking, fee: 50 USD daily" are included in the advertising. However, at the last step of the booking process, when consumers discover that the hotel separately charges a hefty fee for parking they still do not know which other amenities may be covered by the daily destination amenity fee.

32.    The inconsistency and deceptive nature by which Marriott provides information to consumers on its websites about what is covered by which fee (*e.g.*, taxes and fees, amenity fees, gym, pool, day spa, public wi-fi, room wi-fi, etc.), combined with the lack of proximity of the fees to the quoted room rate, the smaller and lighter shaded typeface used when referring to the fees, the ambiguous language regarding whether the fees have been or will be added to the room rate, the confusing representations about what amenities are covered by the fees, and the inclusion of unspecified fees with charges for taxes leading a consumer to believe this is a government imposed fees, makes it virtually impossible for consumers to comprehend what fees for what services they are being charged as a "mandatory" fee on top of their quoted room rate, or as a "complimentary" service which is actually being charged for, or as an optional add on charge which they must pay for at check in or at check out.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

33.    Defendant's practices of advertising room rates that do not include mandatory fees, including the deceptive fees in "taxes and fees" when the fee is not imposed by any government agency, and representing that fees include amenities or services that are either provided at no cost or that the consumer must still pay for separately, are misrepresentations of material fact actually misleading Plaintiffs and other consumers on a daily basis.



34.    Marriott mixes apples and oranges and deceptively calls them both fruit. A reasonable consumer would expect "Taxes and fees" to only include government-imposed taxes and fees. In fact, the "taxes and fees" language used above is the same language used when referring to "Estimated government taxes and fees" in the drop-

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

1    down list under "Summary of Charges."

2        35.    In some instances, Marriott uses the "USD Taxes and fees" language to refer

3    only to government imposed taxes and fees. For example, Marriott hotels such as the US

4    Grant, a Luxury Collection Hotel, San Diego, that do not charge an amenity fee and also

5    use the words "USD Taxes and fees" on the "Review Reservation Details" web page:



25   So, in one advertisement Marriott states that USD Taxes and fees in San Diego are

26   21.85% of the advertised room rate ($80.65 divided by $369) while in another they

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

advertise that USD Taxes and fees are 12.77% of the advertised room rate ($40.74 divided by $319).[4]

36.    While the hotels that charge an amenity fee initially hide it under the heading "USD Taxes and fees," the hotels that do not charge a separate amenity fee only contain actual government imposed taxes and fees under the "USD Taxes and fees" heading. The total of $40.74 USD Taxes and fees above appears to consist entirely of estimated *government imposed* taxes and fees.

37.    Consumers are further misled by Marriott's practice of disclosing an amenity and then stating that it is included in the resort fee, is provided free, or that consumers must pay for separately. For example, Defendant's Coronado Island Marriott Resort & Spa charges an amenity fee of $40 USD that "includes high speed Internet/resort equipment rentals/fitness classes and more":



If consumers are charged for something as an amenity fee, it is neither free nor complimentary; the consumer is paying for it.

38.    For example, the Coronado Island Marriott Resort & Spa website advertises

---

[4] In actuality, neither rate is the true percentage amount of applicable taxes of 12.695%.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

its fitness classes as "complimentary" and claims that the fitness center is "free of charge for hotel guests" when in fact it charges for it in its resort fee:





39. Marriott's practices of advertising bargain room rates for lodging at its hotels without including other daily charges required by the hotel, or claiming they are free when in fact they charge a fee for them, constitutes the advertisement or offer of

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

good or services without the intent to sell them as advertised or offered.

**C.   Marriott Misleadingly Fails to Include Resort Fees in Rates Advertised by OTAs**

40.    When consumers search for a hotel room, such as the Coronado Island Marriott Resort & Spa, using the reservation system operated by Expedia or another OTA, they receive a quoted room rate that does not include or mention any resort or amenity fee:



41.    If consumers click "Select your room" under the quoted price of $239 for a room at the Coronado Island Marriott Resort & Spa on Expedia's online reservation system, they are directed to another page that provides the following information:



42.    If consumers select the quoted price for a room at the Coronado Island Marriott Resort & Spa on Expedia's online reservation system, as set forth in paragraph 39 above, they are directed to another page that provides the following information:

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT



43. The screen shown above still does not display any resort or amenity fee. Consumers are able to input their information and complete the booking process, all the while believing they will only be charged the discounted bargain price (marked down from ~~$339~~) of $239.00 for one night in a hotel and $27.14 for "Taxes and Fees" (11.35%).[5] In fact, consumers are encouraged to quickly continue and complete the booking process, as a prominent statement in green displayed on the left side of the screen shows an icon of a stopwatch and words that state "Almost there! 6 other people viewing

---

[5] The City of Coronado Transient Occupancy Tax is 10% plus the California accommodation tax of 0.1950% and the Coronado "two separate one-half percent surcharges totals 11.195%.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

this property right now." Another icon of a stopwatch appears underneath that language with words written in bright red that state "Only 5 left of this room type on Expedia!"

44.    For consumers to find out that they are actually being charged a daily fee in addition to the quoted "bargain" room rate, they must notice an obscure disclosure located on the right-hand side of the webpage that states "Mandatory property fee: Collected by property. Details." They must also discover that clicking on "Details" will reveal additional charges that will later be charged to the consumer. It is only at this point of the booking process that consumers will discover that they will be charged a $40 resort fee upon arrival at the hotel and there's no way to tell if it's included or will be charged in addition to the advertised room rate and "Trip Total":



facilities or equipment," and "Internet access." However, Marriott further misleads consumers as Expedia advertises that the rooms contain "Free WiFi," as shown in the photo above, and the Coronado Island Marriott Resort & Spa website advertises complimentary fitness classes and free equipment which are actually being charged for.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

However, the "Free WiFi" in one Marriott advertisement (Orbitz) is stated to be limited to public places (the actual charge for room wi-fi is $15.95 per day). Elsewhere it is advertised to be included in the room (Trivago). And on Expedia you simply can't tell. How is a consumer to know what he is buying? The answer is he can't until he either arrives at the hotel or checks out.

46.     What is worse, consumers who are unable to see or do not find the "Details" hyperlink will not know that the "Trip Total" may in fact not be the total for the trip and that they may be required to pay an additional $40 fee once they arrive at the hotel. In other words, the Trip Total is not the total for the trip and the true trip total price is not disclosed – anywhere.

47.     Marriott's practice of charging consumers a resort fee *after* consumers already paid a total purchase price on OTA's websites and engaging in falsely labelled partition pricing is classic bait pricing that explicitly violates the FTC's warning letter, which states that the ***most*** prominent figure for consumers must be the total inclusive estimate.

48.     In some instances, Marriott will mix and match its rates. For example, in October 2018, Plaintiff Todd Hall paid a "Rack" rate of $320.02 at the Sheraton Maui plus a Hawaii state tax of $13.33 and a Hawaii Occupancy tax of 32.80 (14.4%), a Resort Charge of $25, and tax on the resort charge of $1.04 for a total of $392.19. Today, Marriot advertises a room rate of $274.55 per night plus USD Taxes and fees of $73.91 (26.92%) for a total of $348.46 per night. There is no disclosure of any resort fee and no way to see what the $348.46 is comprised of until after you give Marriott your credit card information and click "Book Now." If you don't know what Hawaii's all-in tax rate is (14.45%), you would have no way of knowing you are paying an additional $34 of revenue to Marriott over and above what is mandated and imposed by Hawaiian state and local taxing authorities, and you still don't know whether there will be any resort fees you will incur above that.

49.     The deceptively false and misleading statements, and the inconsistency and inaccuracy with which Marriott has provided information to consumers on its websites and on the websites of OTAs about what is covered by which fees, combined with the lack of disclosure of the fees in the total purchase price when paying using an OTAs website misleads consumers about what fees they must pay, what fees are optional, what charges are government imposed taxes and fees versus Marriott fees, what services are truly free, and what else they may have to pay for on top of their quoted room rate. This is classic bait advertising cleverly and expertly using internet enabled drip and partition pricing to manipulate and deceive consumers.

50.     Defendant's practices of charging consumers mandatory daily fees upon arrival at the hotel and after consumers have paid for hotel rooms on OTA websites, including the resort fee in an obscure hyperlink which is not included in any total amount, while at the same time misrepresenting which fees include what amenities or services and which are complimentary and at no cost versus what the consumer must still pay for separately, constitute misrepresentations of material fact capable of misleading, and which actually misled, Plaintiffs and other consumers on a daily basis.

51.     Defendant's use of mixing and matching price points by utilizing drip pricing and manipulating partition pricing gives it yet another opportunity to deceive consumers by misleadingly misusing former price comparisons. As an example, Marriott will advertise that its room rate is "$192" with a line through it, and then in bold advertise the "bargain" room rate at $148. Then, using drip and partition pricing and the click on "Details" ploy (which is the only place that reveals the consumer will pay an additional $40 charge at the property), Marriott switches the price that the consumer must pay for a room back up to $188. This false bargain advertising misleads and deceives the consumer that he is getting a bargain of $44 dollars for his stay when in fact the bargain is at best only a $4 discount to the struck through price of $192. This practice violates, among other

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

1  federal prohibited advertising practices, the prohibition against misleading bargain

2  advertising set forth in 16 CFR § 233.1.[6]

3      52.    Marriott also uses drip and partition pricing to bamboozle consumers using

4  the tried and true classic, and unlawful, bait advertising scheme.[7]   Again, Marriott uses

5  the strike through price bargain of ~~$192~~ to offer you a bait price of $148.



13  When you click on "Select your room", the bargain and bait price are again confirmed.



22  [6] "[Where] where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price." 16 CFR 233.1(a). *See also* the Expedia examples set forth above advertising a regular ~~$339~~ room marked down to $239 when in fact the total the consumer must pay at the hotel is $306 (a $33 difference, not a $100 bargain).

26  [7] "Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised." 16 CFR § 238.0.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

However, when you reserve your room, the price increases to an average per night of $192.01 per night plus "Taxes and Fees per night" of 21.98. This is the first place you see a disclosure that there will be a "Mandatory property fee: Collected by property."  Is this what drove the price up?  The consumer can't tell if it is the fee that increased the price, or if Marriott simply lied about the bargain price, the bait price, or both.



Only if you click on the "Details" link will you discover any more information about a "resort fee". But even this doesn't inform the consumer whether the $40 fee is included in the Trip Total or not, only that you will pay it at the property. It is still not clear how the $192 rate came to be, whether the trip total includes the $40 fee per day, or what in particular is included in the fee (*e.g.*, high speed or slow internet, public or room wi-fi, what are the additional inclusions, is the wellness center free or part of the charge, etc.).

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT



**Property fees**

You'll be asked to pay the following charges at the property:

- Resort fee (August – August): USD 40.00 per accommodation, per night

The resort fee includes:

- Beach loungers
- Fitness/yoga classes
- Sporting facilities or equipment
- Internet access
- Additional inclusions

**Mandatory property fee:** Collected by property.
Details

**Room 1:** 2 Adults    **avg./night**
3 Nights ⌃    $192.01

   Fri, Nov 22    $195.01
   Sat, Nov 23    $195.01
   Sun, Nov 24    $186.00

Taxes & Fees per night    $21.98

**Trip Total:**    **$641.96**

Rates are quoted in **US dollars**. Taxes and Fees due at the property are based on current exchange rates, and are payable in local currency.

53. The business practices of drip and partition pricing in and of themselves may or may not be unfair when employed legitimately and when full, fair, and adequate disclosures are made. But the way Marriott uses these practices to soften up and bamboozle the consumer is unfair, unlawful, and misleading because it uses these practices to, without limitation: (a) hide resort fees completely; (b) mischaracterize, hide, and bury non-governmentally required fees in the "Taxes and fees" line; (c) mislead and

- 24 -

deceive consumers about the "complimentary" or "free" amenities which they are actually paying for in either the resort fee or additionally at checkout (*e.g.*, public wi-fi versus in room wi-fi); (d) falsely engage in disparate bargain advertising (advertising a $192 room rate next to a $148 rate which the consumer finds out later is actually $188 because of an additional mandatory $40 fee); and (e) further its unlawful practice of bait advertising one price and then through drip pricing later charging a higher price.

**D.     Plaintiffs' Stays at Marriott Resorts**

Plaintiff Todd Hall

54.     Plaintiff Todd Hall is a resident of Rancho Cucamonga, California and has stayed at over 45 Marriott hotels and resorts during the Class Period.

55.     Specifically, Plaintiff Hall stayed at the Marriott Marquis San Diego Marina resort located at 333 West Harbor Drive San Diego, California, 92101 on May 28, 2018 to May 29, 2018. Plaintiff Hall booked his room at the Marriott Marquis San Diego Marina resort approximately one month before his stay from the Marriott website.

56.     Plaintiff Hall also stayed at the Sheraton Maui located at 2605 Kaanapali Parkway, Lahaina, HI 96761 on October 10, 2018 to October 12, 2018. Plaintiff Hall booked his room at the Sheraton Maui approximately two months before his stay from the Marriott website.

57.     Plaintiff Hall subsequently discovered Defendant's unlawful acts as described herein in September 2019, when he learned that Defendant had misleadingly advertised the hotel room rates and charges he was paying for staying at the Marriot hotels by hiding and burying the resort and amenity fees, disguising them as "USD Taxes and fees", advertising discounted room rates which were based on falsely advertised bargain rates, and switching the pricing from the advertised room rate to a different total payment for his trip. Plaintiff Hall was unaware he had been deceived by these practices at the time he booked the rooms.

58.     Plaintiff Hall was deceived by and relied upon Defendant's misleading bargain and bait advertising, and specifically the hidden and deceptive nature of the resort

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

and amenity fees charged to consumers. Plaintiff Hall purchased hotel rooms from Defendant in reliance on the false and deceptive bargain and bait advertising and without knowledge of the true amount being charged based on Defendant's deceptive advertising and buried resort fees, including amounts included under the "USD Taxes and fees" category.[8]

59.    Plaintiff Hall, as a reasonable consumer, is not required to scrutinize advertisements to ferret out misleading facts and omissions, do math in his head, ascertain whether bargain pricing includes or excludes resort fees, or get out a calculator to figure out what charges he must actually pay for the services he will actually use. In fact, he is lawfully entitled to rely on statements that Defendant deliberately places on its websites. Defendant, but not Plaintiff, knows and was warned that this advertising is in violation of federal regulations and state law.

60.    Because Plaintiff Hall reasonably assumed that the hotel reservations would conform to the advertised price and be free of unlawful or hidden charges, when they were not, he did not receive the benefit of his purchase. Instead of receiving the benefit of a bargain room rate as quoted, Plaintiff Hall paid hotel charges that were not as advertised, in violation of federal and state regulations.

61.    Plaintiff Hall would not have reserved the hotel room, and would not have paid as much as he had for a hotel room in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated federal and California law, Plaintiff Hall would not have been injured as he was. Plaintiff Hall was also unable, and will not be able in the future, to effectively compare hotel prices when purchasing hotel rooms due to Marriott's initial deception of advertising a room rate that is less than what a consumer will ultimately pay. Marriott's practice of advertising room prices which are not the actual prices that will be charged to consumers makes true price comparison shopping impossible. Plaintiff Hall has suffered a concrete, tangible, injury in fact caused by

---

[8] Plaintiff was charged a 4.16% tax on a $25 resort charge during his stay in Hawaii which was not disclosed in the advertising and the lawfulness and legitimacy of which is questionable.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

Defendant's wrongful acts and omissions.

62.     Until Marriott changes its practices, Plaintiff Hall will be unable to determine what his true hotel charges will be and what a specific fee covers, as some Marriott hotels do not disclose what is and is not included in which fees, and other Marriott hotels state that an amenity is both complimentary when it in fact is being charged for in a fee.

63.     Plaintiff Hall and the Class have lost money as a result of Defendant's unlawful behavior. Plaintiff and the Class altered their position to their detriment and suffered loss in an amount equal to the resort, amenity, and other deceptively advertised fees they paid for the hotel rooms.

64.     Plaintiff Hall intends to, seeks to, and will purchase rooms at the Marriott when he can do so with the assurance that the advertising of the room rates are lawful and consistent with federal and California regulations.

Plaintiff Kevin Branca

65.     Plaintiff Kevin Branca is a resident of San Marcos, California and has stayed at Marriott hotels and resorts during the Class Period.

66.     Specifically, Plaintiff Branca stayed at the Marriott Ritz-Carlton Kapalua resort in Maui, Hawaii located at One Ritz-Carlton Drive, Kapalua, Hawaii 96761 on October 11, 2017 to October 16, 2017. Plaintiff Branca booked his room at the Marriott Ritz-Carlton Kapalua resort before his stay from the Costco Travel website.

67.     Plaintiff Branca subsequently discovered Defendant's unlawful acts as described herein in December of 2020, when he learned that Defendant had misleadingly advertised the hotel room rates and charges he was paying for staying at the Marriott hotels by hidding and burying the resort and amenity fees, disguising them as "USD Taxes and fees", advertising discounted room rates which were based on falsely advertised bargain rates, and switching the pricing from the advertised room rate to a different total payment for his trip. For example, Plaintiff Branca was charged a $35 per night "resort fee" for his stay at the Marriott Ritz-Carlton Kapalua resort. Plaintiff Branca

was unaware he had been deceived by these practices at the time he booked the rooms.

68.     Plaintiff Branca was deceived by and relied upon Defendant's misleading bargain and bait advertising, and specifically the hidden and deceptive nature of the resort fees charged to consumers. Plaintiff Branca purchased hotel rooms from Defendant in reliance on the false and deceptive bargain and bait advertising and without knowledge of the true amount being charged based on Defendant's deceptive advertising and buried resort fees, including amounts included under the "USD Taxes and fees" category.

69.     Plaintiff Branca, as a reasonable consumer, is not required to scrutinize advertisements to ferret out misleading facts and omissions, do math in his head, ascertain whether bargain pricing includes or excludes resort fees, or get out a calculator to figure out what charges he must actually pay for the services he will actually use. In fact, he is lawfully entitled to rely on statements that Defendant deliberately places on its websites. Defendant, but not Plaintiff, knows and was warned that this advertising is in violation of federal regulations and state law.

70.     Because Plaintiff Branca reasonably assumed that the hotel reservations would conform to the advertised price and be free of unlawful or hidden charges, when they were not, he did not receive the benefit of his purchase. Instead of receiving the benefit of a bargain room rate as quoted, Plaintiff Hall paid hotel charges that were not as advertised, in violation of federal and state regulations.

71.     Plaintiff Branca would not have reserved the hotel room, and would not have paid as much as he had for a hotel room in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated federal and California law, Plaintiff Branca would not have been injured as he was. Plaintiff Branca was also unable, and will not be able in the future, to effectively compare hotel prices when purchasing hotel rooms due to Marriott's initial deception of advertising a room rate that is less than what a consumer will ultimately pay. Marriott's practice of advertising room prices which are not the actual prices that will be charged to consumers makes true price comparison shopping impossible. Plaintiff Branca has suffered a concrete, tangible, injury in fact caused by

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

Defendant's wrongful acts and omissions.

72.     Until Marriott changes its practices, Plaintiff Branca will be unable to determine what his true hotel charges will be and what a specific fee covers, as some Marriott hotels do not disclose what is and is not included in which fees, and other Marriott hotels state that an amenity is both complimentary when it in fact is being charged for in a fee.

73.     Plaintiff Branca and the Class have lost money as a result of Defendant's unlawful behavior. Plaintiff and the Class altered their position to their detriment and suffered loss in an amount equal to the resort, amenity, and other deceptively advertised fees they paid for the hotel rooms.

74.     Plaintiff Branca intends to, seeks to, and will purchase rooms at the Marriott when he can do so with the assurance that the advertising of the room rates are lawful and consistent with federal and California regulations.

Plaintiff George Abdelsayed

75.     Plaintiff George Abdelsayed is a resident of San Diego, California and has stayed at Marriott hotels and resorts during the Class Period.

76.     Specifically, Plaintiff Abdelsayed stayed at the Coronado Island Resort and Spa in San Diego, California located at 2000 2nd Street, Coronado California 92118 in July 2020. Plaintiff Abdelsayed booked his room at the Coronado Island Resort and Spa before his stay from Marriott's App.

77.     Plaintiff Abdelsayed subsequently discovered Defendant's unlawful acts as described herein, when he learned that Defendant had misleadingly advertised the hotel room rates and charges he was paying for staying at the Marriott hotels by hiding and burying resort fees, parking fees and tourism fees, disguising them as "USD Taxes and fees" and or "Resort Fees," advertising discounted room rates which were based on falsely advertised bargain rates, and switching the pricing from the advertised room rate to a different total payment for his trip. Plaintiff Abdelsayed was unaware he had been deceived by these practices at the time he booked the rooms.

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

78.     Plaintiff Abdelsayed was deceived by and relied upon Defendant's misleading bargain and bait advertising, and specifically the hidden and deceptive nature of the fees charged to consumers. Plaintiff Abdelsayed purchased hotel rooms from Defendant in reliance on the false and deceptive bargain and bait advertising and without knowledge of the true amount being charged based on Defendant's deceptive advertising and buried fees, including amounts included under the "USD Taxes and fees" and "Resort Fees" categories.

79.     Plaintiff Abdelsayed, as a reasonable consumer, is not required to scrutinize advertisements to ferret out misleading facts and omissions, do math in his head, ascertain whether bargain pricing includes or excludes fees, or get out a calculator to figure out what charges he must actually pay for the services he will actually use. In fact, he is lawfully entitled to rely on statements that Defendant deliberately places on its websites. Defendant, but not Plaintiff, knows and was warned that this advertising is in violation of federal regulations and state law.

80.     Plaintiff Abdelsayed would not have reserved the hotel room, and would not have paid as much as he had for a hotel room in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated federal and California law, Plaintiff Abdelsayed would not have been injured as he was. Plaintiff Abdelsayed was also unable, and will not be able in the future, to effectively compare hotel prices when purchasing hotel rooms due to Marriott's initial deception of advertising a room rate that is less than what a consumer will ultimately pay. Marriott's practice of advertising room prices which are not the actual prices that will be charged to consumers makes true price comparison shopping impossible. Plaintiff Abdelsayed has suffered a concrete, tangible, injury in fact caused by Defendant's wrongful acts and omissions.

81.     Until Marriott changes its practices, Plaintiff Abdelsayed will be unable to determine what his true hotel charges will be and what a specific fee covers, as some Marriott hotels do not disclose what is and is not included in which fees, and other Marriott hotels state that an amenity is both complimentary when it in fact is being

charged for in a fee.

82.    Plaintiff Abdelsayed and the Class have lost money as a result of Defendant's unlawful behavior. Plaintiff and the Class altered their position to their detriment and suffered loss in an amount equal to the resort, amenity, and other deceptively advertised fees they paid for the hotel rooms.

83.    Plaintiff Abdelsayed intends to, seeks to, and will purchase rooms at the Marriott when he can do so with the assurance that the advertising of the room rates are lawful and consistent with federal and California regulations.

## V.    CLASS ACTION ALLEGATIONS

84.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

85.    **The Nationwide Class is defined as follows:**

All U.S. citizens who reserved or booked a Marriott owned or franchised hotel room online and stayed in any such room for overnight accommodation and were charged an amount therefore that was higher than the room rate quoted or advertised per day plus government imposed taxes and government imposed fees in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

86.    **The California Class is defined as follows:**

All persons who reserved or booked a Marriott owned or franchised hotel room online in California and stayed in any such room for overnight accommodation and were charged an amount therefore that was higher than the room rate quoted or advertised per day plus government imposed taxes and government imposed fees in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and

affiliates, and the Court and its staff.

87.    During the Class Period, the quoted rates and "bargain" discounts advertised by Marriott were false and did not disclose the true Trip Totals, including amenity and resort fees, that would be charged to consumers. Defendant engaged in bait and switch advertising that failed disclose the true charges as required by federal and California law.

88.    During the Class Period, Class Members purchased hotel rooms that were misleadingly and deceptively advertised, paying additional charges for those rooms compared to similar hotel rooms lawfully advertised.

89.    The proposed Classes meet all criteria for a class action, including numerosity, commonality, typicality, predominance, superiority, and adequacy of representation.

90.    This action has been brought and may properly be maintained as a class action against Defendant. While the exact number and identities of other Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of Members in the Class. The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

91.    The proposed Classes satisfy typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased the hotel rooms, were deceived by the false and deceptive advertising, and lost money as a result.

92.    The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because it would be impractical for individual Class members to bring individual lawsuits to vindicate their claims.

93.    Because Defendant's misrepresentations were made during the hotel room booking process, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not

brought as a class action, Defendant can continue to deceive consumers and violate federal and California law with impunity.

94. The proposed Class representatives satisfy adequacy of representation. Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests antagonistic to those of other Class members. Plaintiffs have retained counsel competent in the prosecution of consumer fraud and class action litigation.

95. The proposed Classes satisfy commonality and predominance. There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

96. Questions of law and fact common to Plaintiffs and the Class include:

a. Whether Defendant failed to disclose the presence of amenity, resort, or other fees during the booking process;

b. Whether Defendant's advertising omissions and representations constituted false advertising under California law;

c. Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

d. Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

g. Whether the statute of limitations should be tolled on behalf of the Class;

h. Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

i. Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

97. Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

98. Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

99. Class treatment is therefore appropriate under Federal Rule of Civil Procedure 23.

100. Class damages will be adduced and proven at trial through expert testimony and other competent evidence, including evidence exclusively in Defendant's possession.

101. California law holds that the excess resort, amenity, and other fees consumers paid for the falsely advertised rooms is a proper measure of Class damages.

102. On information and belief, based on publicly available information, Plaintiffs allege that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated resort, amenity, and other fees and hotel room revenues for sales to each of the Nationwide Class and California Class during the proposed Class Period, exceeds $5 million.

## VI.   CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**
**CAL. CIV. CODE §§ 1750 *ET SEQ*.**

103. Plaintiffs reallege and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

104. The CLRA prohibits unfair or deceptive practices in connection the sale of goods or services to a consumer.

105. Moreover, the CLRA is meant to be "[c]onstrued liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Civil Code Section 1760, *Inter alia*.

106. The hotel rooms that Marriott provides are "Services" as defined by the CLRA.

107. Plaintiffs and the Class Members are "Consumers" as defined by the CLRA.

108.   Each of the purchases made by the Plaintiffs and the Class Members from the Defendant were "Transactions" as defined by the CLRA.

109.   Marriott's false and misleading pricing practices and other policies, acts, and practices described herein were designed to, and did, induce Plaintiffs' and Class Members' purchases of Marriott hotel rooms for personal, family, or household purposes, and violated and continues to violate at least the following sections of the CLRA:

a.      § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

b.      § 1770(a)(20): Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but not limited to, shelf tags, displays, and media advertising in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product.

110.   Marriott violated Sections 1770(a)(9) and (20) by marketing and falsely representing a lower discounted bargain hotel rental price online than what consumers were actually charged.

111.   Marriott never intended to sell its hotel rooms at the discount and for the prices advertised online.

112.   On information and belief, Marriott's violations of the CLRA discussed above were done with the actual knowledge, intent, and awareness that the conduct alleged was wrongful.

113.   On information and belief, Marriott committed these acts knowing it would harm to Plaintiffs and Class Members.

114.   Plaintiffs and Class Members were injured by Marriott because Plaintiffs and Class Members were baited and defrauded into paying more for a hotel room than was represented due to Marriott's false representations and advertisements.

115.     Plaintiffs and Class Members were harmed as a direct and proximate result of Marriott's violations of the CLRA and are thus entitled to a declaration that Defendant violated the CLRA.

116.     On September 9, 2019, Plaintiff Todd Hall, on behalf of himself and all Class Members, sent a written pre-suit demand via certified mail to Defendant in compliance with California Civil Code Section 1782. Attached hereto as **Exhibit A** is a copy of Plaintiff Hall's demand letter. More than thirty days have passed since Plaintiff Todd Hall sent his written demand letter and Defendant has failed to take the corrective action described in Plaintiff Hall's letter. Accordingly, Plaintiffs seek damages, injunctive relief, and attorneys fees' and costs under the CLRA.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF THE FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500 ET SEQ.

117.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.Under the FAL, "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

118.     As alleged herein, the advertisements, labeling, policies, acts, and practices of Marriott relating to its Hotel rooms misled consumers acting reasonably as to the cost of a hotel room rental.

119.     Plaintiffs suffered injury in fact as a result of Marriott's actions as set forth herein because plaintiffs purchased hotel rooms in reliance on Marriott's false and misleading marketing claims that the hotel rooms were discounted and cheaper than they were.

120. Plaintiffs suffered injury in fact as a result of Marriott's actions as set forth herein because Plaintiffs purchased the hotel room in reliance on Marriott's false and misleading online pricing.

121. Marriott's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Marriott advertised its hotel rooms in a manner that is untrue and misleading, which Marriott knew or reasonably should have known.

122. Marriott profited from its sales of the falsely and deceptively advertised hotel rooms to unwary consumers.

123. As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs and Class Members are entitled to injunctive and equitable relief and restitution.

## THIRD CAUSE OF ACTION
### VIOLATIONS OF THE UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.

124. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

125. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

126. The acts, omissions, misrepresentations, practices, and non-disclosures of Marriott as alleged herein constitute business acts and practices.

### FRAUDULENT

127. A statement or practice is fraudulent under the UCL if it is likely to deceive the public, applying a reasonable consumer test.

128. As set forth herein, Marriott's claims relating to the online marking of its hotel rooms are likely to deceive reasonable consumers and the public.

### UNLAWFUL

129.   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and

- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

**UNFAIR**

130.   Marriott's conduct with respect to the advertising and sale of its hotel rooms was unfair because Marriott's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

131.   Marriott's conduct with respect to the advertising and sale of its hotel rooms was also unfair because it violated public policy as declared by specific statutory or regulatory provisions, including but not limited to the False Advertising Law.

132.   Marriott's conduct with respect to the advertising and sale of its hotel rooms was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

133.   Marriott profited from the sale of its falsely, deceptively, and unlawfully advertised hotel rooms to unwary consumers.

134.   Plaintiffs and Class Members are likely to be damaged by Marriott's deceptive trade practices, as Marriott continues to disseminate, and is otherwise free to continue to disseminate misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

135.   Marriott's conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members, who have suffered injury in fact as a result of Marriott's fraudulent, unlawful, and unfair conduct.

136.   In accordance with Bus. & Prof. Code § 17203, Plaintiffs, on behalf of themselves, Class Members, and the general public, seek an order enjoining Marriott

from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

137. Plaintiffs, on behalf of themselves and Class Members, also seek an order for the restitution of all monies from the sale of the falsely advertised hotel rooms. That Marriott unjustly acquired through acts of unlawful competition.

## FOURTH CAUSE OF ACTION

## UNJUST ENRICHMENT/ QUASI CONTRACT

138. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

139. Plaintiffs and the Class allege that Defendant owes money to them for the unlawful or deceptive conduct described herein.

140. Plaintiffs and Class Members paid for a hotel room at one or more of Defendant's hotels.

141. Defendant, by charging consumers higher rates for hotel rooms than those originally advertised, received additional money from Plaintiffs and the Class.

142. The additional money was paid by mistake, where an undue advantage was taken from the Plaintiffs' and the Class's lack of knowledge of the deception, whereby money was exacted to which the Defendant had no legal right.

143. Defendant is therefore indebted to Plaintiffs and the Class in a sum certain, specifically the resort or amenity fees actually paid for the hotel rooms during the Class period as consideration for which Defendant unlawfully charged consumers.

144. Defendant is therefore indebted to Plaintiffs and the Class in a sum certain for the additional money had and received by the Defendant, which the Defendant in equity and good conscious should not retain.

145. Defendant is therefore liable to Plaintiffs and the Class in the amount of unjust enrichment or money had and received to be determined at trial.

## FIFTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

146. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

147. Defendant represented that its hotel rooms were cheaper than they were by advertising the hotel rooms at a lower price than the actual price that consumers would pay upon check out. To communicate this representation and to convince Plaintiffs and the Class Members to purchase the hotel rooms, Defendant supplied Plaintiffs and the Class Members with information, namely the Misrepresentations found on Defendant's websites and third-party booking websites. Defendants knew, or should have known, that this information was false and/or misleading to Plaintiffs and the Class Members.

148. The misrepresentations concerned material facts about the price of the hotel rooms that influenced Plaintiffs and the Class Members to purchase the hotel rooms.

149. At the time Defendant made the misrepresentations, Defendant knew or should have known that the misrepresentations were false or Defendant made the misrepresentations without knowledge of their truth or veracity.

150. Plaintiffs and the class members reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will continue to suffer damages in the form of lost money from the purchase price of the hotel rooms.

## SIXTH CAUSE OF ACTION

### CONCEALMENT/ NON-DISCLOSURE

151. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

152. Defendant knew at the time of sale that it had falsely represented the actual price of the hotel rooms that consumers would pay upon checkout.

153. Defendant fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class Members that Defendant would charge additional fees for its hotel rooms beyond the advertised price, including amenity fees, resort fees, and destination fees among others.

154. Defendant had exclusive knowledge of Misrepresentations' falsity at the

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

time of sale. The defect (the actual price of the hotel rooms upon checkout) is latent and not something that Plaintiffs or the Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase. The defect would not be disclosed by careful, reasonable inspection by the purchaser.

155.   Defendant had the capacity to, and did, deceive Plaintiffs and the Class Members into believing that they would pay the advertised price for the hotel rooms upon checkout, when in reality, Plaintiffs and the Class Members were charged more than the advertised price for the hotel rooms upon checkout.

156.   Defendant undertook active and ongoing steps to conceal the actual price of the hotel rooms. Plaintiffs are aware of nothing in Defendant's advertising, publicity, or marketing materials that discloses the truth about the actual price of the hotel rooms, including an adequate explanation of fees that are charged, despite Defendant's awareness of the actual price that consumers would pay.

157.   The facts concealed and/or not disclosed by Defendant to Plaintiffs and the Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase a hotel room.

158.   Defendant had a duty to disclose accurate information regarding the actual price that consumers would pay for its hotel rooms upon checkout.

159.   Defendant intentionally concealed and/or failed to disclose the actual price of the hotel rooms that consumers would pay upon checkout for the purpose of inducing Plaintiffs and the Class Members to act thereon.

160.   Plaintiffs and the Class Members justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the hotel rooms.

161.   Plaintiffs and Class Members suffered a loss of money as a result of Defendant's false information because they would not have purchased the hotel rooms, or would not have paid as much for the hotel rooms, if the truth concerning Defendant's Misrepresentations had been known.

## SEVENTH CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

162.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

163.   Defendant willfully, falsely, and knowingly misrepresented the advertised price of its hotel rooms. The Misrepresentation were communicated to Plaintiffs and the Class Members through Marriott's website and the websites of third party booking agencies such as Expedia.

164.   At all relevant times, Defendant knew that it had misrepresented the advertised price for its hotel rooms because Defendant knew it was charging additional fees, such as resort fees and amenity fees, upon checkout without disclosing these fees to Plaintiffs and the Class Members.

165.   Defendant's misrepresentations were made with the intent that the general public, including Plaintiffs and the Class Members, would rely upon it. Defendant's Misrepresentations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof.

166.   Plaintiffs and the class members' reliance upon Defendant's misrepresentations was reasonable. The hidden fees charged by Defendant are latent and not something that Plaintiffs or the class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

167.   In actual and reasonable reliance upon the Misrepresentations, Plaintiffs and the Class Members purchased Marriott hotel rooms. Plaintiffs and the Class members suffered a loss of money as a result of Defendant's intentional misrepresentations because they would not have purchased the hotel rooms, or would have paid less for the hotel rooms, if the truth concerning Defendant's Misrepresentations had been known.

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, prays for judgment against Defendant as to each and every cause of action, and the following remedies:

(a)     An order declaring this action to be a proper class action, appointing Plaintiffs as class representative, and appointing his undersigned counsel as class counsel;

(b)     An order requiring Marriott to bear the cost of class notice;

(c)     An order enjoining Marriott from engaging in the unfair, unlawful, and deceptive business practices and false advertising complained of herein;

(d)     An order compelling Marriott to conduct a corrective advertising campaign;

(e)     An order compelling Marriott to recall and destroy all misleading and deceptive advertising materials;

(f)     An order requiring Marriott to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

(g)     An order requiring Marriott to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

(h)     An order requiring Marriott to pay all actual and statutory damages permitted under the causes of action alleged herein;

(i)     An award of attorneys' fees and costs; and

(j)     Any other and further relief that Court deems necessary, just, or proper.

## VIII.  JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

DATED: May 27, 2021                    Respectfully Submitted,

                                       */s/ Ronald A. Marron*
                                       Ronald A. Marron

                                       **LAW OFFICES OF RONALD A. MARRON**

Ronald A. Marron
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
Lilach Halperin
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Fax: (619) 564-6665

Robert Teel
*lawoffice@rlteel.com*
**LAW OFFICE OF ROBERT L. TEEL**
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Telephone: (866) 833-5529
Fax: (855) 609-6911

**BURSOR & FISHER, P.A.**
L Timothy Fisher (State Bar No. 191626)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        breed@bursor.com

***Interim Class Counsel***

CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

I, Todd Hall, declare as follows:

1.      I am a Plaintiff in this action. I make this affidavit pursuant to California Civil Code Section 1780(d).

2.      The Complaint in this action is filed in a proper place for the trial of this action because Defendant conducts business in this county.


I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.



DATED: __11-21_____, 2019          _____
                                                              Todd Hall

I, Kevin Branca, hereby declare as follows:

    1.     I am a Plaintiff in this action. I make this affidavit pursuant to California Civil Code Section 1780(d).

    2.     The Complaint in this action is filed in a proper place for the trial of this action because Defendant conducts business in this County.

    I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.

DATED: Dec 7, 2020

*Kevin Branca*
Kevin Branca (Dec 7, 2020 10:29 PST)

Kevin Branca

# EXHIBIT A

# RONALD A. MARRON

651 Arroyo Drive                                                    Tel: 619.696.9006
San Diego, California 92103                                    Fax: 619.564.6665

September 9, 2019

**Via: Certified Mail, receipt acknowledgment with signature requested**

**TO:**

The Corporation Trust Company
Marriott International, Inc.
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

**RE:    NOTICE:  *Violations of the California Consumer Legal Remedies Act and Duty to Preserve Evidence***

Dear Sir or Madam,

**PLEASE TAKE NOTICE** that this letter constitutes notice under the California Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.,* (the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying **Marriott International, Inc.** (collectively, "YOU" and "YOUR") of violations of the Act and of our demand that YOU remedy such violations within thirty (30) days from your receipt of this letter.

This firm represents Mr. Todd Hall. Mr. Hall stayed at  the Marriott Marquis San Diego Marina resort located at 333 West Harbor Drive San Diego, California 92101 on May 28, 2018 to May 29, 2018, and at the Sheraton Maui located at 2605 Kaanapali Parkway, Lahaina, HI 96761 on October 10, 2018 to October 12, 2018. Mr. Hall was deceived by and relied upon YOUR misleading advertising and hidden nature of the resort fee being charged under the guise of a "USD Taxes and Fees" category.

YOU falsely advertise and market the price of hotel rooms on your own website and on the websites of online travel agency's ("OTA's") by quoting lower room rates than what a consumer is ultimately charged, for purposes of deceiving consumers to believe that the room rates are more competitive than they actually are. These claims are false and misleading.

YOU deceptively call the hidden portion of the room rate a number of terms, including a "resort fee," "amenity fee," and a "destination fee" (collectively referred to as "resort fees"). One key effect of this price deception is that consumers shopping for a hotel room on either Marriott's website, or an OTA's website, like Priceline or Expedia, are misled into believing a Marriott hotel room is cheaper than it actually is.

You charge additional mandatory "resort fees" on a daily basis for a room at many of YOUR hotels. However, YOU do not include these daily, mandatory fees in the room rate YOU advertise on YOUR website and do not include them in the room rate advertised by the OTA's, thereby depriving consumers of the ability to readily ascertain and compare the actual price of a room at a Marriott hotel to the price of the hotel rooms offered by Marriott's competitors and at other Marriott hotels.

Beyond this initial price deception, when consumers select a room rate and provide their credit card and other personal information in order to book a room, the mandatory resort fee that YOU add to the daily room charge is hidden. In many instances, YOU include the resort fee as part of a total charge called "Taxes and Fees," thereby misleading consumers to believe the additional fees they are paying are government-imposed, rather than a separate daily charge imposed by and paid to YOU.

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the truth regarding YOUR room prices.

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR hotel rooms under the representation that YOUR room rates are more competitively priced, when in fact they are not.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(9): Advertising goods with intent not to sell them as advertised.

§ 1770(a)(20): Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but not limited to, shelf tags, displays, and media advertising in a size larger than any other price in that advertisement, and (B) the specific price plus a specific

percentage of that price represents a markup from the seller's costs or from the wholesale price of the product.

YOU have failed to honor your consumer protection obligations. Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA, which will be requested in the class action complaint on behalf of our client, Mr. Hall, and all other similarly-situated U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation. See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990). This firm anticipates that all e-mails, letters, reports, internal corporate instant messages, and advertising campaigns records that are related to the marketing of YOUR services will be sought in the forthcoming discovery process. You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your account) to preserve all such relevant information.

I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

Sincerely,

THE LAW OFFICES OF RONALD A. MARRON APLC

/s/ Ronald A. Marron
Ronald A. Marron
Attorney for Todd Hall and all others similarly situated

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Corporation Trust Company
Marriot International, Inc.
Corporation Trust Center
1209 Orange St.
Wilmington, DE  19801

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9402 4644 8323 2344 72

2. Article Number *(Transfer from service label)*

7016 1370 0001 9079 3556

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

RECEIVED

SEP 17 2019

CT CORPORATION

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Mail Restricted Delivery
   00)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                Domestic Return Receipt