UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, KEVIN BRANCA, individually and on behalf of all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC.,<br><br>Defendant. | Case No.: 3:19-cv-01715-JLS-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE AND DENYING DEFENDANT'S MOTION TO COMPEL**<br><br>[ECF No. 101] |

Before the Court is Plaintiff Kevin Branca ("Plaintiff") and Defendant Marriott International, Inc.'s ("Defendant") Joint Motion for Determination of Discovery Dispute. ECF No. 101. Defendant seeks an order from the Court compelling Plaintiff to produce documents relating to various ticket purchases, to which Plaintiff objects. *Id*. For the reasons set forth below, Defendant's motion to compel is **DENIED**.

**I.     FACTUAL BACKGROUND**

On September 9, 2019, Plaintiff Todd Hall filed this putative class action alleging unjust enrichment and violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*.; False Advertising Law ("FAL"), Cal. Bus. &

Prof. Code §§ 17500 *et seq.*; and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*[1] *See generally* ECF No. 1. On November 22, 2019, Plaintiff Hall filed his First Amended Class Action Complaint, adding causes of action for negligent misrepresentation, concealment/non-disclosure, and intentional misrepresentation. *See generally* ECF No. 15. On January 11, 2021, Plaintiff Hall filed his Second Amended Class Action Complaint, which retained all causes of action and added three Plaintiffs: Julie Drassinower, a California resident who booked her room in New York on the Marriott website; Kevin Branca, a California resident who booked his room in Hawaii on the Costco Travel website; and Jesse Heineken, a Kansas resident who booked his room in California on the Marriott website. ECF No. 54 at ¶¶ 66–95.

On May 27, 2021, Plaintiff Hall and Plaintiff Branca filed the operative Third Amended Class Action Complaint, which retained all causes of action, removed Plaintiffs Drassinower and Heineken, and added a third Plaintiff from a related case, George Abdelsayed, a California resident who booked his room in California on the Marriott app. ECF No. 82 at ¶¶ 75–76; *see* ECF No. 78 at 4 (consolidating *Hall* and *Abdelsayed* cases and requiring the filing of a consolidated complaint). The operative Third Amended Class Action Complaint was also filed on behalf of both a "Nationwide Class"—

---

[1] The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." CAL. CIV. CODE § 1770. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. The FAL prohibits a business from disseminating any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." CAL. BUS. & PROF. CODE § 17500. Together, these three statutes "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Claims under each of these statutes are governed by the "reasonable consumer" test. Under this standard, the plaintiff must show that "members of the public are likely to be deceived." *Williams*, 552 F.3d at 938.

defined as "[a]ll U.S. citizens who reserved or booked a Marriott owned or franchised hotel room online and stayed in any such room for overnight accommodation and were charged an amount therefore that was higher than the room rate quoted or advertised per day plus government imposed taxes and government imposed fees in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale,"—and a "California Class"—defined as All persons who reserved or booked a Marriott owned or franchised hotel room online in California and stayed in any such room for overnight accommodation and were charged an amount therefore that was higher than the room rate quoted or advertised per day plus government imposed taxes and government imposed fees in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale[.]" ECF No. 82 at ¶¶ 85–86.

Plaintiffs allege that Defendant engages in false and deceptive advertising in the way Defendant represents the prices for Defendant's hotel rooms, services, and amenities. *See generally* ECF No. 82; *id*. at ¶ 17 ("At issue in this case is the growing and continued unfair and deceptive practice of hotels advertising bargain-priced daily room rates online, but not including fees charged in the initially advertised room rate"). Defendant is a multinational hospitality company that owns, manages, and franchises[2] at least 189 hotels and resorts worldwide. *Id*. at ¶¶ 11, 21. Defendant advertises its available rooms and daily room rates online through its own website and the websites of third-party online travel agencies ("OTAs"), such as Priceline and Expedia. *Id*. at ¶ 16.

When a consumer uses Defendant's website to search for a hotel room by destination and date, Defendant's website will list various hotels and rooms with matching availability. *Id*. at ¶ 23. At this initial stage, the quoted daily room rate for each hotel does not include or mention the mandatory resort fee a consumer must pay. *Id*. at ¶ 24. Once a consumer

---

[2] Though Defendant's franchise agreements typically allow franchisees to set their own rates for guest room charges, franchisees must still comply with Defendant's resort fee policy, which allows Defendant to control the resort fee charged by franchisees. *Id*. at ¶ 22.

selects a particular property, Defendant's website directs the consumer to another webpage that lists the rooms available at the selected property, along with the daily rates for those rooms. *Id*. at ¶¶ 25–26. This webpage displays a light blue box at the top of the page with blue bold font that states that a "daily destination amenity fee will be added to the room rate," followed by the hours for the property's concierge lounge. *Id*.

If a consumer then selects a specific room from the selected property, Defendant's website brings the consumer to a page titled, "Review Reservation Details." *Id*. at ¶ 28. This page displays a picture of the room; the details of the reservation, such as date, number of rooms, and guests per room; and two drop-down menus at the bottom of the page, one titled "Choose Room Features" and the other titled "Summary of Charges." *Id*. If the consumer clicks the "Summary of Charges" menu, this same page drops down a summary breaking down the overall costs of the reservation by room rate, "Destination Amenity Fee," and "Estimated government taxes and fees." *Id*. at ¶ 29. Below the total cost listed in this drop-down menu, the page also displays, in smaller and lighter-colored font, "Additional Charges," including on-site parking and valet parking fees. *Id*.

At some properties, Defendant does not charge an amenity fee. *See, e.g*., *id*. at ¶ 35. When a consumer selects a room reservation at one of these properties, Defendant's website displays the same "Review Reservation Details" page, including the same "Summary of Charges" presenting the total charge for the room consisting of the room rate plus "USD Taxes and Fees." *Id*. Since these properties do not charge an amenity fee, however, the "USD Taxes and Fees" consists solely of government taxes and fees. *Id*. at ¶ 38. Plaintiff alleges that this is misleading because Defendant's hotel room presents "USD Taxes and Fees" to represent one component of the hotel room charge, regardless of whether the "USD Taxes and Fees" includes an amenity fee or not. *See id*. at ¶¶ 35–36.

Plaintiffs allege that Defendant also deceives consumers by misusing former price comparisons. *Id*. at ¶¶ 51–52. For example, Defendant advertised its room rate as $192, with a line through it, with the bargain rate of $148 next to it. *Id*. at ¶ 51. Due to the amenity fee raising the rate to $188, Plaintiff alleges that Defendant misleads consumers that they

1 are saving $44, when in reality, they are only saving $4. *Id.*

2 Plaintiffs further allege that Defendant's website is misleading because of inconsistent representations regarding what amenities are covered by the amenity fee or are offered complimentary. *See, e.g.*, *id.* at ¶¶ 37–38. For example, Defendant's hotel may indicate that the amenity fee "includes high speed Internet/resort equipment rentals/fitness classes and more." *Id.* at ¶ 37. Nonetheless, Defendant may simultaneously advertise that fitness classes are "[c]omplimentary" and that the "[f]itness center is free of charge for hotel guests." *Id.* at ¶ 38.

Plaintiffs also allege that Defendant misleadingly fails to include resort fees in the rates advertised by OTAs. *See, e.g.*, *id.* at ¶ 40. On Expedia, for example, the quoted room rate does not include or mention any resort or amenity fee. *Id.* When a consumer clicks "Select your room," Expedia directs the consumer to another page containing the same quoted room rate. *See id.* at ¶ 41. Selecting the quoted price then directs the consumer to another page that fails to display a resort or amenity fee. *See id.* at ¶¶ 42–43. Instead, the page includes only the discounted bargain price and the "Taxes and Fees," *see id.*, indicating that there is a "Mandatory property fee: Collected by property" with a link to "Details." *Id.* at ¶¶ 43, 45. Only by clicking on "Details" does the consumer learn the amount of the resort fee and what it claims to include. *See id.* at ¶ 44. Nonetheless, Expedia may advertise that a room includes "Free WiFi," while simultaneously indicating that the "Resort fee" includes "Internet access." *See id.* at ¶ 45.

## II.     PROCEDURAL BACKGROUND

On June 4, 2021, Plaintiff served his amended responses to Defendant's first set of discovery requests. ECF No. 101 at 109, 143. On June 24, 2021, pursuant to the Court's Chambers Rules, the parties notified the Court that they disagreed about whether Plaintiff should be required to produce documents relating to various ticket purchases. Email to Chambers (June 24, 2021 at 11:21 a.m.); *see* Chmb.R. at 2. The Court held a telephonic discovery conference on June 30, 2021. ECF No. 94. The Court found it appropriate to issue a briefing schedule. ECF No. 95. The parties timely filed their Joint Motion for

Determination of Discovery Dispute on July 15, 2021. ECF No. 101. This order follows.

## III. DISCOVERY REQUEST AT ISSUE

Defendant seeks to compel responsive documents to its first set of Requests for Production of Documents ("RFPs"), specifically, number 16. ECF No. 101 at 3–6, 133. In RFP No. 16, Defendant requests:

> All documents [dated January 1, 2012 to December 31, 2017] relating to any purchase by Mr. Branca or someone acting on his behalf and/or at his direction of any product or service for which he was charged and paid a mandatory fee, including but not limited to fees associated with hotels, airline tickets, sporting event tickets, and concert tickets.

*Id.* at 133; *see id.* at 3, 145 (narrowing request, originally seeking documents from January 1, 2010, to the present). Plaintiff objects to the discovery request on the grounds[3] that it is overbroad, not relevant to any party's claims or defenses, not proportional to the needs of the case, and unduly burdensome. *Id.* at 6, 133–34.

## IV. PARTIES' POSITIONS

Defendant contends that, because Plaintiff alleges that he believed the advertised room rate was the total price, "a jury likely would have to find that [Plaintiff] never had encountered partition practicing, and thus the notion of a website advertising a base rate and then later adding charges before a purchase is made was entirely foreign to him." ECF

---

[3] Plaintiff also objected on the grounds that the requests are vague, ambiguous, duplicative, harassing, and subject to attorney-client privilege, work product doctrine, and Plaintiff's right to privacy. ECF No. 101 at 115, 133–34. However, these objections were not reasserted in the instant motion, and are therefore deemed waived. *See, e.g.*, *SolarCity Corp. v. Doria*, No. 16cv3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018) (courts in this district "generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel."); *Sherwin-Williams Co. v. Earl Scheib of Cal.*, Inc., No. 12cv2646-JAH-JMA, 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in the discovery motion to be moot or waived, limiting its review to arguments presented in the parties' briefs).

No. 101 at 4. Thus, Defendant seeks to discover Plaintiff's past experience with partition pricing. *Id*. For example, "[i]f the evidence shows that [Plaintiff] made dozens of online purchases involving partition pricing before making the subject Marriott reservation, it makes it far less likely that the partition pricing on Costco's website allegedly deceived him because he would have been well familiar with the concept of an advertised price not being the total price." *Id*. at 4–5. Defendant requests information for products and services outside the hotel industry (e.g., airline tickets, sporting event tickets, and concert tickets), and argues that these documents are still relevant because the current lawsuit is based on partition pricing via the "Costco website, Marriott website, Expedia website, and Orbitz website," which disclose resort fees in their "own unique manner." *Id*. Defendant also reiterates that Plaintiff Hall previously agreed to produce the same documents at issue here, seemingly undermining Plaintiff Branca's position that the information is not relevant. *Id*. at 5. Defendant further argues that its request is not unduly burdensome because it asked Plaintiff "to apply a few dozen search terms (such as 'Delta,' 'Ticketmaster,' 'Airbnb,' etc.) … to his email accounts[,]" and reiterates that Plaintiff "will not need to review account statements or cross reference any documents." *Id*. at 5–6.

Plaintiff contends that the information sought by Defendant is not relevant. *Id*. at 7. Because "[t]he key issue in this case is whether the representations and omissions on Marriott's website and the OTA websites are misleading to a reasonable consumer," Plaintiff's "familiarity with purchasing airline tickets, sporting event tickets, and concert tickets is not relevant in determining whether Plaintiff Branca and other class members were deceived by" Defendant. *Id*. at 7–8. Plaintiff Branca also explains that, just because Plaintiff Hall produced the documents, that it does not have any bearing on whether the documents are relevant. *Id*. at 9. Differentiating the burden to Plaintiff Branca here, counsel represents that Plaintiff Hall's employer had produced the documents, not Plaintiff Hall himself. *Id*. Plaintiff then recounts the burden he would face in "scouring through his account statements and searching for statements from financial institutions he may no longer use." *Id*. at 8.

## V. LEGAL STANDARD

Nonprivileged information is discoverable under Rule 26 if it is (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. FED. R. CIV. P. 26(b). Information need not be admissible to be discoverable. *Id.* The Court has broad discretion in determining relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)*; see cf. U.S. Fidelity & Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted).

When analyzing relevance, Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *In Re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563–64, 564 n.1 (D. Ariz. 2016) (discussing the 2015 amendments to the Federal Rules of Civil Procedure and the advisory committee's explicit removal of the phrase "reasonably calculated," and listing cases that continue to use the outdated pre-2015 standard). The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (internal quotation omitted). Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Id*.

Information must be "proportional to the needs of the case" to fall within the scope of permissible discovery. FED. R. CIV. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'"

*Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

## VI.   DISCUSSION

Though the information sought is not relevant to Plaintiff's claims,[4] the Court finds that it is relevant to Plaintiff's credibility. The Court agrees with Defendant that evidence that Plaintiff "made dozens of online purchases involving partition pricing before making the subject Marriott reservation" could negatively impact his credibility, since it would be "far less likely that the partition pricing on Costco's website [] deceived him because he would have been well familiar with the concept of an advertised price not being the total price." ECF No. 101 at 4–5. However, the Court finds that RFP No. 16 is overbroad. Plaintiff's prior hotel accommodation purchases are relevant, but the fee structures and

---

[4] Whether Plaintiff himself was deceived (*see* ECF No. 101 at 4–5) is not at issue. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025–26 (9th Cir. 2008) ("a UCL fraud claim requires no proof that the plaintiff was actually deceived"); *Williams*, 552 F.3d at 938 ("Appellants' claims under these California statutes [UCL and CLRA] are governed by the 'reasonable consumer' test. [] '[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.' []") (internal citation omitted); *Charbonnet v. Omni Hotels & Resorts*, No. 20cv1777-CAB-DEB, 2020 WL 7385828, at *3 (S.D. Cal. Dec. 16, 2020) ("Claims under each of these statutes [CLRA, UCL, and FAL] are governed by the 'reasonable consumer' test. Under this standard, the plaintiff must show that 'members of the public are likely to be deceived.' [].") (internal citation omitted); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1116 (N.D. Cal. 2018) ("deception and materiality under the FAL, CLRA, and UCL are governed by an objective 'reasonable consumer' test. Because deception and materiality are objective questions, Plaintiff 'has no burden to establish that there is a uniform understanding among putative class members as to the meaning of' the challenged health statements, 'or that all or nearly all of the class members shared any specific belief.' []. Instead, Plaintiff need only make 'an objective showing of a probability that a significant portion of the relevant consumers acting reasonably could be misled' by the challenged statements. []") (internal citations omitted).

disclosure, as well as purchasing models, for airline tickets, sporting event tickets, and concert tickets are distinguishable[5] from the hotel reservations at issue in this case.[6] Though the Court finds the hotel accommodation aspect of RFP No. 16 relevant, the Court declines to grant Defendant's motion to compel. In RFP No. 9, Defendant requested "[a]ll documents constituting or relating to reservations at a non-Marriott Hotel charging a Resort Fee made by Mr. Branca or on his behalf and/or at his direction." *Id*. at 125. Thus, ordering production of "[a]ll documents relating to any purchase by Mr. Branca or someone acting on his behalf and/or at his direction of any product or service [associated with hotels] for which he was charged and paid a mandatory fee"—RFP No. 16—would be duplicative. *See id*. at 133; *see also* FED. R. CIV. P. 26(b)(2)(C)(i) (the court must limit the extent of discovery when "the discovery sought is … duplicative").

---

[5] For example, NFL tickets sold through Ticketmaster are listed in multiple locations on the website as "$95.00 ea + Fees." *See Atlanta Falcons v. Cleveland Browns*, NFL TICKET EXCHANGE, TICKETMASTER, https://www.ticketmaster.com/atlanta-falcons-vs-cleveland-browns-atlanta-georgia-08-29-2021/event/0E005A8993E71AAD (last visited Aug. 4, 2021). Airline tickets sold through Delta are listed in multiple locations as the ultimate price, i.e., they already include all taxes and fees. *See Trip Summary*, DELTA, https://www.delta.com/complete-purchase/trip-summary?cacheKeySuffix=b284be4d-8c2f-4afb-9ddd-dcce9f283534&cartId=d8f5582c-7223-4db2-a50c-287c420da91f&app=sl-sho (last visited Aug. 4, 2021).

[6] Additionally, while negotiating Plaintiff Hall's response to the identical discovery request, Defendant's counsel asked Plaintiffs' counsel whether "Mr. Hall confirm[ed] that the only websites where he made a purchase where a mandatory fee was charged are contained in the following list? United, Delta, American, Southwest, JetBlue, [Alaska], Spirit, Ticketmaster, Orbitz, Expedia, Priceline, Booking, Airbnb, Stubhub, and LiveNation." ECF No. 101 at 147 (internal quotation marks omitted). Here, Defendant "simply asks [Plaintiff] Branca to apply a few dozen search terms [] which [Plaintiff] Branca's counsel had agreed to for [Plaintiff] Hall[.]" *Id*. at 5–6. However, those search terms were specific to Plaintiff Hall's purchase history, and there is no evidence before the Court that Plaintiff Branca used any of the websites—i.e., that the terms were relevant or narrowly tailored to him. *See cf. Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (noting generally that district courts "need not condone the use of discovery to engage in 'fishing expedition[s]'").

## VII.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant's motion to compel. ECF No. 101.

**IT IS SO ORDERED.**

Dated:  August 5, 2021

_____
Honorable Allison H. Goddard
United States Magistrate Judge