UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, et al., *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC.,<br><br>Defendant. | Case No.: 19-cv-01715-JLS-AHG<br><br>**ORDER OVERRULING DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>**[ECF No. 107]** |

Presently before the Court is Defendant Marriott International, Inc.'s Objection to Magistrate Judge Goddard's Order Resolving Joint Motion for Determination of Discovery Dispute ("Objection") (ECF No. 107). For the reasons set forth below, Defendant's Objection is **OVERRULED**.

## BACKGROUND

**I.   Allegations in the TAC**

In this putative consumer class action, Plaintiffs allege that Defendant engages in false and deceptive advertising in the way it represents the prices for its hotel rooms, services, and amenities and assert causes of action on behalf of a putative class for: (1) violations of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750

*et seq.*; (2) violations of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (4) unjust enrichment/quasi contract; (5) negligent misrepresentation; (6) concealment/non-disclosure; and (7) intentional misrepresentation. (ECF No. 82 ¶¶ 103–67.) The factual allegations in Plaintiffs' Third Amended Class Action Complaint ("TAC") relevant to the Court's resolution of the instant matter are summarized as follows:

   Defendant is a multinational hospitality company that owns, manages, and franchises at least 189 hotels and resorts worldwide. (*Id.* ¶¶ 11, 21.) Defendant advertises its available rooms and daily room rates online through its own website and the websites of third-party online travel agencies ("OTAs"), such as Priceline and Expedia. (*Id.* ¶¶ 6–7.) When a consumer uses Defendant's website to search for a hotel room by destination and date, the website will list various hotels and rooms with matching availability and provide the consumer with a quoted daily room rate. (*Id.* ¶ 23.) At this initial stage, the quoted daily room rate for each hotel does not include or mention any additional fees the consumer will be required to pay. (*Id.* ¶ 24.) Once a consumer selects a particular hotel, Defendant's website directs the consumer to another webpage that lists the available rooms at that hotel, along with the daily rates for those rooms, in large, bold font. (*Id.* ¶ 25.) This webpage also displays a light blue box at the top of the page with small, blue, bold font that states that a "daily destination amenity fee will be added to the room rate," followed by the hours for the property's concierge lounge—apparently linking the destination amenity fee to use of the concierge lounge. (*Id.*)

   Once the consumer selects a specific room from the selected hotel, Defendant's website brings the consumer to another webpage titled "Review Reservation Details." (*Id.* ¶ 27.) This webpage displays a picture of the room; the details of the reservation, such as the reservation date, number of rooms, and guests per room; the quoted daily room rate; and additional "USD Taxes and fees" to be charged. (*Id.*) There are also two drop-down menus at the bottom of this webpage, one titled "Choose Room Features" and the other

titled "Summary of Charges." (*Id.*) If the consumer clicks the Summary of Charges drop-down menu, a breakdown of what charges are included in the "USD Taxes and fees" charge appears: the "destination amenity fee" and "estimated government taxes and fees." (*Id.* ¶ 29.) By combining the amenity fee with tax payments in a generic heading of "USD Taxes and fees," Defendant misleads the consumer into believing the amenity fees are government-imposed charges. (*Id.* ¶ 27.) Also included in the Summary of Charges breakdown in smaller, lighter-colored font is a list of "Additional Charges," including rates for on-site and valet parking. (*Id.* ¶ 29.) Defendant does not inform the consumer what is included in either the destination amenity fee (e.g., wifi, use of the concierge lounge, use of the business center, etc.) or the government taxes and fees. (*Id.*)

Defendant further misleads consumers with inconsistent representations on its website regarding what amenities are covered by the amenity fee or are offered complimentary. (*See id.* ¶¶ 37–38.) For example, Defendant's website may indicate for a particular hotel that the amenity fee "includes high speed Internet/resort equipment rentals/fitness classes and more." (*Id.* ¶ 37.) However, Defendant's website may simultaneously advertise that fitness classes are "complimentary" and that the fitness center is "free of charge for hotel guests." (*Id.* ¶ 38.)

As with its own website, Defendant fails to include resort and/or amenity fees in the quoted room rates advertised by OTAs. (*See id.* ¶ 40.) When a consumer searches for a hotel room using the reservation system on Expedia, for example, the consumer receives a quoted room rate that does not include or mention any resort or amenity fee. (*Id.*) When the consumer clicks "Select your room" under the quoted daily room rate on Expedia's webpage, the consumer is directed to another webpage that again quotes the same rate without inclusion or mention of a resort or amenity fee. (*Id.* ¶ 41.) If the consumer again selects the quoted room rate, the consumer is directed to another webpage that displays a "price summary." (*Id.* ¶ 42.) This price summary includes: the quoted room rate; additional "Taxes and Fees"; a notice stating, "Mandatory property fee: Collected by property" with a link to "Details"; and a "Trip Total." (*Id.*) Only by clicking on Details

does the consumer learn that he or she will be charged a "Resort fee" and what this fee claims to include: beach loungers, fitness/yoga classes, sporting facilities and equipment, internet access, and "[a]dditional inclusions." (*Id.* ¶ 44.) Defendant, however, simultaneously advertises on Expedia that consumers are afforded "Free Wifi" and complimentary fitness classes and equipment. (*Id.* ¶ 45.) Further, the consumer cannot discern whether they will be charged the Resort fee upon arrival at the hotel or whether the Resort fee is already included in the "Trip Total." (*Id.* ¶¶ 46; 50.)

Defendant also deceives consumers on OTA websites by misusing former price comparisons. (*Id.* ¶ 51.) For example, Defendant may advertise a room rate on an OTA's website by putting a lower rate in large, bold font (the "bargain" rate or "bait" price) next to a higher room rate in smaller, strikethrough font. (*Id.* ¶ 52.) Then, later in the vending process, Defendant increases the bargain/bait price to include additional fees/taxes, bringing the total room rate back up to the originally-advertised strikethrough price. (*See id.*)

On October 16, 2017, Plaintiff Kevin Branca ("Plaintiff") booked a room at the Marriott Ritz-Carlton Kapalua Resort from Costco's Travel website. (*Id.* ¶ 66.) Subsequently in December 2020, Plaintiff discovered that Defendant had "misleadingly advertised the hotel room rates and charges" he paid to stay at Defendant's hotel "by hiding and burying the resort and amenity fees, disguising them as 'USD Taxes and fees', advertising discounted room rates which were based on falsely advertised bargain rates, and switching the pricing from the advertised room rate to a different total payment for his trip." (*Id.* ¶ 67.) For example, Defendant charged Plaintiff a $35 "resort fee" per night for his stay in Kapalua that he was unaware of when he booked his hotel. (*Id.*) Plaintiff "was deceived" by Defendant's practices and "relied upon Defendant's misleading bargain and bait advertising, and specifically the hidden and deceptive nature of the resort fees charged to consumers." (*Id.* ¶ 68.)

///

///

## II. Procedural Background of the Instant Discovery Dispute

On June 4, 2021, Plaintiff served amended objections and responses to Defendant's first set of discovery requests. (ECF No. 101 at 109.) On June 24, 2021, the parties brought a dispute to Magistrate Judge Goddard pursuant to her Chambers Rules concerning Defendant's Request for Production ("RFP") No. 16, which seeks:

> All documents dated January 1, 2012 to December 31, 2017 relating to any purchase by [Plaintiff] or someone acting on his behalf and/or at his direction of any product or service for which he was charged and paid a mandatory fee, including but not limited to fees associated with hotels, airline tickets, sporting event tickets, and concert tickets.[1]

(*Id.* at 6.)  After conducting a telephonic discovery conference (ECF No. 94), Judge Goddard issued a briefing schedule (ECF No. 95), and the parties filed a Joint Motion for Determination of Discovery Dispute ("Joint Motion") (ECF No. 101) on July 15, 2021.

On August 5, 2021, Judge Goddard issued an order resolving the Joint Motion and denying Defendant's request to compel Plaintiff to produce documents in response to RFP No. 16. (ECF No. 106.)  In her order, Judge Goddard made the following findings:

> Though the information sought is not relevant to Plaintiff's claims, the Court finds that it is relevant to Plaintiff's credibility.  The Court agrees with Defendant that evidence that Plaintiff "made dozens of online purchases involving partition pricing before making the subject Marriott reservation" could negatively impact his credibility, since it would be "far less likely that the partition pricing on Costco's website [] deceived him because he would have been well familiar with the concept of an advertised price not being the total price."  However, the Court finds that RFP No. 16 is overbroad.  Plaintiff's prior hotel accommodation purchases are relevant, but the fee structures and

---

[1]  RFP No. 16 originally sought documents from January 1, 2010, to the present, but Defendant agreed to narrow its request to the six-year period of January 1, 2012, to December 31, 2017.  (ECF No. 101 at 3, 145.)

disclosure, as well as purchasing models, for airline tickets, sporting event tickets, and concert tickets are distinguishable from the hotel reservations at issue in this case. Though the Court finds the hotel accommodation aspect of RFP No. 16 relevant, the Court declines to grant Defendant's motion to compel. In RFP No. 9, Defendant requested "[a]ll documents constituting or relating to reservations at a non-Marriott Hotel charging a Resort Fee made by [Plaintiff] or on his behalf and/or his direction." Thus, ordering production of "[a]ll documents relating to any purchase by [Plaintiff] or someone acting on his behalf and/or at his direction of any product or service [associated with hotels] for which he was charged and paid a mandatory fee"—RFP No. 16—would be duplicative.

(*Id.* at 9–10.)

Defendant filed the instant Objection to Judge Goddard's August 5, 2021 Order on August 19, 2021. (ECF No. 107.)

## LEGAL STANDARD

A party may object to a non-dispositive pretrial order of a magistrate judge within fourteen days after service of the order. Fed. R. Civ. P. 72(a). In reviewing a magistrate judge's decision, the district court's function "is not to decide what decision [it] would have reached on its own, nor to determine what is the best possible result considering all available evidence." *Allen v. Beard*, Case No.: 3:16-cv-2713-MMA-KSC, 2018 WL 5819782, at *1 (S.D. Cal. Nov. 7, 2018) (quoting *Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.*, No. 07CV90, 2007 WL 4357672, at *2 (S.D. Cal. Dec. 11, 2007)). Rather, the district court's function "is to decide whether the magistrate judge, based on the evidence and information before [her], rendered a decision that was clearly erroneous or contrary to law." *Id.*; *accord* 28 U.S.C. § 636(b)(1)(A); *see also Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, Case No. 15-cv-595-BAS (MDD), 2017 WL 3335736, at *1 (S.D. Cal. Aug. 4, 2017) ("The 'clearly erroneous' standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters." (quoting *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000))).

Under Rule 72(a), "[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bare Escentuals Beauty, Inc.*, 2007 WL 4357672, at *2 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure." *Williams v. County of San Diego*, Case No.: 17cv815-MMA (JLB), 2018 WL 6716630, at *3 (S.D. Cal. Dec. 21, 2018) (quoting *Waterfall Homeowners Ass'n v. Viega, Inc.*, 283 F.R.D. 571, 575 (D. Nev. 2012)).

## DISCUSSION

### I.   Parties' Arguments

Defendant objects to Judge Goddard's order on relevancy grounds, arguing that RFP No. 16 seeks relevant information because Plaintiff's "familiarity with partition pricing" in general is relevant to whether he was deceived by Defendant's pricing disclosures, and in turn, whether Plaintiff was deceived by Defendant's pricing disclosures is relevant to whether Plaintiff has standing. (*See* ECF No. 107 at 5–7.)  Defendant maintains that Judge Goddard's "finding that RFP No. 16 is irrelevant to [Plaintiff]'s claims is contrary to law," because to have standing under the CLRA, FAL, and UCL, a plaintiff "must meet an economic injury-in-fact requirement." (*Id.* at 5 (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).)  Citing to a case from this District, Defendant argues that to meet this injury-in-fact requirement, a plaintiff "must allege" not only that he "suffered an economic injury," but "that he actually relied on the [defendant's] purported misrepresentation." (*Id.* at 5–6 (quoting *Branca v. Nordstrom, Inc.*, No. 14cv2062–MMA (JMA), 2015 WL 1841231, at * 3 (S.D. Cal. Mar. 19, 2015)).)  Defendant reasons that Plaintiff's familiarity with partition pricing in general—the information RFP No. 16 purportedly aims to discover—is relevant to this second standing requirement: whether Plaintiff "actually relied" on Defendant's pricing disclosures. (*See id.* at 5–6.)  It is Defendant's position that "[i]f the evidence shows that [Plaintiff] made dozens of online purchases involving partition pricing before making the subject Marriot reservation, it

makes it far less likely that he relied on Marriott's initial advertising of the room rate in purchasing his hotel room." (*Id.* at 6.)

Plaintiff opposes Defendant's Objection, arguing that Defendant "fails to explain how documents relating to [his] various ticket purchases" from non-hotel industries are relevant "to whether [he] was deceived by [*Defendant*]*'s* pricing disclosures." (ECF No. 111 at 5.) Plaintiff takes issue with Defendant's characterization of the case and maintains that the "case is not about partition pricing in general," but "whether the representations and omissions on Marriott's website and the OTA websites are misleading to a reasonable consumer." (*Id.*) Plaintiff further argues that his allegations regarding Defendant's misrepresentations are not based solely on Defendant's use of partition pricing; Plaintiff also "alleges that consumers are unable to determine what services they are being charged for through the resort fee, as [Defendant] advertises some amenities as both being complimentary and a part of the resort fee." (*Id.* at 6.)

In reply, Defendant reasserts its standing argument and maintains that Judge Goddard "mistakenly found that '[w]hether [Branca] himself was deceived . . . is not at issue'" because whether Defendant's practices deceived Plaintiff "is squarely relevant to his standing to sue." (ECF No. 112 at 2 (alterations in original).) Defendant further takes aim at Judge Goddard's determination regarding the relevance of Plaintiff's familiarity with partition pricing in general, contending that she "failed to make any meaningful comparison between [its] pricing practices and the pricing practices used in other industries." (*Id.* at 5.)

## II.   Analysis

As an initial matter, Defendant appears to be using this review process to raise a new argument that it did not raise to Judge Goddard. In the Joint Motion, Defendant framed its argument concerning the relevancy of RFP No. 16 solely based on Plaintiff's credibility before a jury, stating:

///

///

> [Plaintiff] argues that, when reserving a Marriott hotel on Costco's travel website, [Defendant] deceived consumers by advertising hotels at less than full price, i.e., advertising them without the applicable resort fees, and [Plaintiff] believed that the advertised room rate was the total price. For a jury to credit that alleged belief by [Plaintiff] . . . a jury likely would have to find that [Plaintiff] never had encountered partition pricing, and thus the notion of a website advertising a base rate and then later adding charges before a purchase is made was entirely foreign to him. ***That is why*** [Defendant] seeks to discover [Plaintiff]'s past experience with partition pricing. If the evidence shows that [Plaintiff] made dozens of online purchases involving partition pricing before making the subject Marriott reservation, it makes it far less likely that the partition pricing on Costco's website allegedly deceived him because he would have been well familiar with the concept of an advertised price not being the total price.

(ECF No. 101 at 4–5 (emphasis added).) Despite failing to bring any argument concerning RFP No. 16's relevance to issues of standing in the Joint Motion, Defendant now posits that Judge Goddard "improperly disregarded case law"—that Defendant did not cite to in the Joint Motion—that requires Plaintiff to allege[2] actual reliance on Defendant's purported misrepresentations to have standing. (ECF No. 107 at 5 (quoting *Branca*, 2015 WL 1841231, at *3).) An objection, however, "is not the place . . . to make a new argument . . . . not addressed in [Defendant's] original brief." *In re Outlaw Lab'ys LP Litig.*, No. 18-CV-840-GPC-BGS, 2021 WL 84474, at *3 (S.D. Cal. Jan. 11, 2021); *accord Sundby v. Marquee Funding Grp., Inc.*, Case No.: 19-cv-00390-GPC-AHG, 2020 WL 4015694, at *4 (S.D. Cal. July 16, 2020); *see also Chappell v. Dickerson*, No. 1:96-CV-5576-AWI, 2007 WL 1725683, at *2 (E.D. Cal. Jun. 14, 2007) ("[A]llowing parties to litigate fully their case before the magistrate [judge] and, if unsuccessful, to change their strategy and

---

[2] The Court notes that Defendant cites to case law for the standard a plaintiff must meet to establish standing in a complaint, and the Court has already determined that Plaintiffs have adequately alleged standing. (*See* ECF No. 31 at 16–18.)

present a different theory to the district court would frustrate the purpose of the Magistrates Act."). Because Defendant did not raise its standing argument to Judge Goddard, the Court "need not consider it." *Beavers-Gabriel v. Medtronic, Inc.*, Civil No. 13–00686 JMS–RLP, 2015 WL 3397859, at *4 (D. Haw. May 26, 2015) (finding an argument raised for the first time in an objection to the magistrate judge's order on a motion to compel waived); *accord Baker v. Wehinger*, Case No.: CV 18-05800 SJO (Ex), 2019 WL 6720990, at *7 (C.D. Cal. Mar. 20, 2019) (same); *see also Seven For All Mankind, LLC v. GenX Clothing, Inc.*, No. CV 05-5563-GAF (RZx), 2006 WL 5720346, *3 (C.D. Cal. 2006) ("The district judge will normally not consider arguments, case law, or evidentiary material [that] could have been, but w[ere] not, presented to the magistrate judge in the first instance.").

Nevertheless, because Defendant based its credibility argument on the same theory that it now bases its standing argument—that Plaintiff's familiarity with partition pricing in general, regardless of the industry, is relevant to whether he was deceived by or actually relied on Defendant's pricing disclosures—the Court will address this aspect of Defendant's Objection. In her order, Judge Goddard disagreed with Defendant's theory, finding that "the fee structures and disclosure[s], as well as purchasing models" for other industries, such as those identified by RFP No. 16, are "distinguishable from the hotel reservations at issue in this case," and therefore irrelevant. (ECF No. 106 at 10.) This determination was not clearly erroneous.

First, as Judge Goddard found, Defendant has not met its burden to show that Plaintiff's familiarity or experience with partition pricing in other industries is probative of whether he actually relied on or was deceived by Defendant's use of partition pricing. *See Starkey v. Hernandez*, Case No.: 3:17-cv-01158-JLS-KSC, 2018 WL 6075809, at *2 (S.D. Cal. Nov. 21, 2018) ("[T]he moving party . . . has the burden of informing the Court why the information [it] seeks is relevant and proportional to the needs of the case . . . ."). Defendant's position that "the crux of this case is about whether partition pricing— irrespective of the form it takes—is or is not deceptive" (ECF No. 107 at 7) is rebutted by Plaintiff's detailed allegations in the TAC of how Defendant allegedly deceives consumers

with partition pricing on its website or on the websites of OTAs and Plaintiff's reliance on Defendant's specific practices. (*See* ECF No. 82 ¶¶ 16–53.) Although Plaintiff may be familiar with the concept of partition pricing generally from exposure to the practice in, for example, the music, airline, or sporting industries, whether or not Plaintiff was deceived by Defendant's practices may be highly dependent on the manner in which Defendant uses partition pricing. Defendant acknowledges in its Objection that "not all companies who sell goods and services over the internet use partition pricing in the same way" but draws no comparison between the practices in the other industries it seeks discovery in and those used by Defendant. Defendant posits that Judge Goddard "failed to make any meaningful comparison between [Defendant]'s pricing practices and the pricing practices used in other industries" (ECF No. 112 at 5), but it is *Defendant's* burden to show relevance, not the Court's. Based on the arguments that were before her, Judge Goddard made a relevancy determination in her discretion that is not clearly erroneous. *See Williams*, 2018 WL 6716630, at *3 ("When reviewing discovery disputes . . . the [m]agistrate [judge] is afforded broad discretion, which will be overruled only if abused." (quoting *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007))).

Moreover, Judge Goddard's decision to deny Defendant's motion to compel is further bolstered by Defendant's failure to show that RFP No. 16 is proportional to the needs of the case. *See Starkey*, 2018 WL 6075809, at *2. In the TAC, Plaintiff alleges that Defendant's use of partition pricing is only one of several ways Defendant engages in deceptive advertising practices. As highlighted by Plaintiff in his opposition to the Objection:

> Plaintiff alleges that Defendant's advertising of its hotel room rates is deceptive because: (1) Defendant does not include mandatory resort fees in initially advertised room rates; (2) Defendant does not break out the cost of mandatory resort fees when later listing the summary of charges for a hotel room; (3) Defendant includes mandatory resort fees within the broader heading of "taxes and fees," which leads consumers to believe the resort fees are government-imposed charges; (4) Defendant

>does not inform consumers on the services included in the resort fee; (5) Defendant falsely states that certain amenities are complimentary when Defendant later describes such amenities as covered by the resort fee; and (6) Defendant provides such pricing information to consumers in an inconsistent manner across different hotels, compounding the confusion.

(ECF No. 111 at 3.) Even if Defendant had demonstrated that (1) its partition pricing practices are sufficiently analogous to the pricing practices in other industries, and (2) that Plaintiff's familiarity or experience with purchasing goods or services in those industries is probative of whether he was deceived by Defendant's practices, partition pricing is only one aspect of this case. And, as noted by Judge Goddard, Defendant has also requested from Plaintiff in RFP No. 9 "[a]ll documents constituting or relating to reservations at a non-Marriott Hotel charging a Resort Fee made by [Plaintiff]." (ECF No. 106 at 10.) Given that Defendant has received, or will receive, at least some information lending to Plaintiff's experience with partition pricing in the hotel industry, Defendant has not shown that the benefit of RFP No. 16 outweighs Plaintiff's burden or expense of producing responsive documents, even if Defendant "simply asks [that Plaintiff] apply a few dozen search terms . . . to his email accounts."[3] (ECF No. 101 at 6.) Again, it is Defendant's burden as the moving party to show proportionality.

Finally, the Court notes that RFP No. 16, as written, is overbroad. Defendant argued to Judge Goddard that it drafted RFP No. 16 to discover "the experiences [Plaintiff] had

---

[3] The Court also notes that Defendant fails to demonstrate how "*documents* relating to any purchase by [Plaintiff] . . . of any product or service for which he was charged and paid a mandatory fee" would sufficiently show that Plaintiff was subjected to partition pricing in making a purchase, a point emphasized by Plaintiff in the Joint Motion. (*See* ECF No. 101 at 8 ("[Defendant] makes no mention of how it could feasibly deduce that Plaintiff paid fees on the basis of his accounts statements.").) To the extent Defendant desires e-mail confirmations for Plaintiff's purchases, the intricacies of the vending processes Plaintiff experienced when making his purchases would not be evident from the confirmations themselves.

with partition pricing before he made the subject Marriott reservation." (ECF No. 107 at 3.) However, this is not the only information the request captures. RFP No. 16 requests "[a]ll documents . . . relating to any purchase by [Plaintiff] . . . of any product or service for which he was charged and paid a mandatory fee . . . ." Defendant did not tailor RFP No. 16 specifically to Plaintiff's purchases where he was charged a mandatory fee after first being advertised a lower price, i.e., Plaintiff's experience with partition pricing. To be sure, if the Court compelled Plaintiff to produce all documents responsive to RFP No. 16, many—if not most—of the documents Plaintiff would produce may be irrelevant.

## CONCLUSION

Judge Goddard's resolution of the parties' dispute with respect to RFP No. 16 was not clearly erroneous or contrary to law. Accordingly, Defendant's Objection (ECF No. 107) is **OVERRULED**.

**IT IS SO ORDERED.**

Dated: November 1, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge