# Exhibit A

 News Center

# Marriott International Debuts Its 8,000th Property with the Newly Opened Marriott Bethesda Downtown at Marriott HQ

MARCH 1, 2022 — BETHESDA, MD

   

*The Highly Anticipated 245-Room Hotel Features Inspired Spaces, Enriching Experiences, Three Food-and-Drink Concepts, Creative Meeting Spaces and Locally Influenced Design in the Heart of Bethesda, Maryland*



Lobby Staircase

  1 of 3

Marriott International (NASDAQ: MAR) today celebrated the opening of its 8,000[th] property – <u>Marriott Bethesda Downtown at Marriott HQ</u>, a 12-story stylish retreat adjacent to Marriott International's soon-to-open new global headquarters in Bethesda, Maryland. The hotel opening signifies both a growth milestone for the company, as well

as a remarkable moment in the Marriott story, as the company celebrates its 95th year. Marriott's first lodging property, the Twin Bridges Marriott, opened in 1957 and was a four-story motor hotel in Arlington, Virginia.

"From the nine-seat root beer stand that my grandparents started nearly 95 years ago in downtown Washington, to the milestone opening of our 8,000th property, we have been fortunate to call this area our home," said David Marriott, Director and incoming Chairman, Marriott International Board of Directors. "Marriott Bethesda Downtown at Marriott HQ reflects the continued transformation of the Marriott Hotels brand, and we are thrilled to embark on a new era of inspired travel and design with the opening of this hotel."

Marriott Bethesda Downtown, part of the Marriott Hotels brand – the signature flag of Marriott Bonvoy's 30 extraordinary brands – brings enriching, locally-influenced experiences to the global hospitality company's home state. The hotel, owned by The Bernstein Companies and managed by Marriott International, is a gateway to the greater Washington, D.C. area and a destination in and of itself, featuring three innovative culinary concepts, including Bethesda's first high-rise rooftop bar.

**BUILT UPON INNOVATION**

Exemplifying Marriott Hotels' continued brand evolution, Marriott Bethesda Downtown sparks inspiration at every corner, with a modern, residential design and tailored solutions with locally-inspired accents. The hotel's contemporary interiors illustrate a curated palette of materials inspired by the region's natural attributes. Stone and tiles reminiscent of local Bethesda bluestone quarries greet guests at the hotel entrance leading to a grand staircase – the centerpiece of the glass-enclosed lobby brimming with natural light.

Faceted mirrors and floor-to-ceiling windows ripple throughout the hotel, infusing an abundance of natural light while also resembling reflections of the Potomac River.

Reimagined guest rooms and suites – with tailored, modern touches that inspire and nurture the needs of today's traveler – feature multi-functional furniture, technology-enabled work surfaces with built-in universal adapters and UCS cords, and rose gold tinted mirrors. Hotel features include a spacious fitness center with Peloton bikes, a second-floor library highlighting local authors, and a curated art collection from the region's emerging talent that is showcased throughout guest rooms and public spaces. A large-scale mural by multi-media artist Liz Collins, known globally for her abstract patterns, is an exclusively commissioned highlight.

Constructed to be LEED Gold certified with custom and sustainable design, the hotel features five expansive rooftop green spaces growing select ingredients for hotel menus and is designed to reduce pollution, save energy, and manage storm water.

**MARYLAND-INSPIRED FLAVORS**

Helmed by **Executive Chef Dupree Braswell,** Marriott Bethesda Downtown is home to three dynamic food-and-drink concepts, each with its own distinct identity, that showcase some of Maryland's finest artisans and farmers through locally sourced ingredients and thoughtful collaborations with local makers. The **Greatroom lobby bar**, a social hub from day to night, features fluid bar seating that eliminates barriers between mixologist and guest. Indoor and outdoor spaces evoke the ambiance of an Italian Piazza, while cocktails are prepared tableside in a one-of-a-kind imperial shaker and a rotating selection of local craft beers are available on tap. The hotel's restaurant, **Seventh State**, a historical nod to Maryland entering the union, offers a locally curated menu with items such as the Panuozzo, a wood-fired folded sandwich handmade with pizza dough and locally sourced ingredients. Floor-to-ceiling retractable glass walls open seasonally to outdoor seating, while a custom Italian wood-fire oven clad in bronze is a focal point of the open kitchen indoors. **Hip Flask**, Bethesda's first high-rise rooftop bar with private elevator access, offers a spirits-forward menu with flair, innovative tableside presentations, and an expansive outdoor terrace. While zero-proof cocktails are also peppered throughout seasonally rotating menus, the signature "Tiger Vogue" cocktail with Makers 46, Tiger Nut, Chicory, and Orange 20, will be shaken and stirred into a flask then presented hidden inside of a book, speakeasy style.

A standard across Marriott Hotels globally, **M Club** – open 24/7 and located on the hotel's ground floor – is an exclusive space reserved for hotel guests who are Marriott Bonvoy Elite and Club paying members. Perks include complimentary food and beverage throughout the day such as hot breakfast, evening hors d'oeuvres, and premium

beverages, ensuring uninterrupted productivity for business travelers. **In-room dining** is also available seven days a week.

## NEXT GEN MEETING SPACES

With nearly 8,000-square-feet of state-of-the-art pre-function and event space, including a private outdoor terrace overlooking downtown Bethesda, the hotel fosters connection for meetings, corporate retreats and social events. Floor-to-ceiling windows infuse an abundance of natural light while abstract design details such as cherry blossom light fixtures and watercolor carpet illustrate the region's most prominent characteristics. Meeting rooms – innovatively designed to adapt to a variety of formats, group sizes and social events – are named after destinations significant to the company's history, such as "Twin Bridges," Chicago, Dallas and Atlanta. Customizable catering options feature locally inspired food and beverage breakouts and seasonal banquet items.

## HOUSE OF KINDNESS OPENING PACKAGE

Marriott Bethesda Downtown is dedicated to ensuring every minute of the guest experience captures the essence of Bethesda, which means "House of Kindness," through destination-inspired design, programming, partnerships and five-star service.

To celebrate the opening, the hotel's "House of Kindness" offer* includes:

- 15% off the best available rate; Marriott Bonvoy members get an additional 5% off
- 20% off food and beverage
- Upgrade to a top-floor view room

"Marriott Bethesda Downtown at Marriott HQ brings a fresh vision for hospitality to Bethesda's burgeoning downtown district, with inspired spaces and locally crafted experiences," said Katarina Burns, General Manager, Marriott Bethesda Downtown at Marriott HQ. "We look forward to creating meaningful connections with our guests and community while serving as a hub for business and leisure travelers."

Marriott Bethesda Downtown will participate in Marriott Bonvoy – the award-winning travel program from Marriott International – allowing members to earn and redeem points for their stays at the new hotel, and at other hotels and resorts across Marriott Bonvoy's extraordinary portfolio of brands. With the Marriott Bonvoy app, members enjoy a level of personalization and a contactless experience that allows them to travel with peace of mind.

Weekday rates start at $296; weekend rates start at $159. *Opening offer is based on availability and blackout dates may apply. Marriott Bethesda Downtown is located at 7707 Woodmont Avenue, Bethesda, MD 20814. For more information or to make a reservation, please visit www.marriott.com/wasbd or call (301) 820-6188.

**Marriott International, Inc.** (NASDAQ: MAR) is based in Bethesda, Maryland, USA, and encompasses a portfolio of approximately 8,000 properties under 30 leading brands spanning 139 countries and territories. Marriott operates and franchises hotels and licenses vacation ownership resorts all around the world. The company offers Marriott Bonvoy®, its highly-awarded travel program. For more information, please visit our website at www.marriott.com, and for the latest company news, visit www.marriottnewscenter.com. In addition, connect with us on Facebook and @MarriottIntl on Twitter and Instagram.

**About Marriott Hotels**®

With over 590 hotels and resorts in more than 65 countries and territories around the world, Marriott Hotels is evolving travel through every aspect of the guest's stay, helping to relax, clear minds, stimulate new ideas, and anticipate travelers' needs, leaving them inspired to reach their full potential. Boldly transforming itself for mobile and global travelers who blend work and play, Marriott leads the industry with innovations, including the Greatroom lobby and Mobile Guest Services that elevate style & design and technology. To learn more, visit www.MarriottHotels.com. Stay connected to Marriott Hotels on Facebook, @marriott on Twitter and @marriotthotels on Instagram. Marriott Hotels is proud to participate in Marriott Bonvoy®, the global travel program from Marriott International. The program offers members an extraordinary portfolio of global brands, exclusive experiences on Marriott Bonvoy Moments and unparalleled benefits including free nights and Elite status recognition. To enroll for free or for more information about the program, visit marriottbonvoy.com.

**About Marriott Bonvoy®**

Marriott Bonvoy's extraordinary portfolio offers renowned hospitality in the most memorable destinations in the world, with 30 brands that are tailored to every type of journey. Members can earn points for stays at hotels and resorts, including all-inclusive resorts and premium home rentals, and through everyday purchases with co-branded credit cards. Members can redeem their points for experiences including future stays, Marriott Bonvoy Moments, or through partners for luxurious products from Marriott Bonvoy Boutiques. To enroll for free or for more information about Marriott Bonvoy, visit marriottbonvoy.com.

**CONTACT:**
Mark Indre
Market Public Relations, Washington, D.C.
Mark.Indre@marriott.com

bread & Butter
PR Agency of Record, Marriott Bethesda Downtown
marriottbethesdadowntown@wearebreadandbutter.com

**SHARE**

   





TERMS OF USE | PRIVACY
& COOKIE STATEMENT | |
© 1996 - 2022 MARRIOTT
INTERNATIONAL, INC. ALL
RIGHTS RESERVED.

MARRIOTT PROPRIETARY

INFORMATION

- Do Not Sell My Personal Information
- Tracking Preferences

# Exhibit B

Prepared in Response to Plaintiff's Requests for Production Nos. 1, 2; Interrogatories Nos. 1, 2

*Hall v. Marriott Int'l, Inc.* , No. 3:19-cv-01715-JLS-AHG (S.D. Cal.)

CONFIDENTIAL

Resort Fee Approved

Jan. 1, 2015 - Present

| Property Name | Address |
|---|---|
| AC Hotel Miami Beach | 2912 Collins Avenue, Miami Beach, FL 33140 |
| AC, San Juan Condado | 1369 Ashford Avenue, San Juan PR |
| ADERO Scottsdale | 13225 N Eagle Ridge Drive, Scottsdale, AZ 85268 |
| AK Lodge at Calloway Gardens Autograph | 4500 Southern Pine Drive, Pine Mountain, GA 31822 |
| Aloft San Juan | 300 Convention Boulevard San Juan PR 00907 |
| Aloft South Beach | 2350 Collins Ave, Miami Beach, FL 33139 |
| Autograph, Algonquin New York Times Square | 59 West 44th Street, New York, NY 10036 |
| Autograph, Beaver Creek Lodge | 26 Avondale Lane, Avon, CO 81620 |
| Autograph, Blue Moon Hotel | 944 Collins Avenue, Miami Beach, FL 33139 |
| Autograph, Cadillac Hotel & Beach Club (Miami S. Bch) | 3925 Collins Avenue, Miami Beach, FL 33140 |
| Autograph, Casa Monica Hotel & Resort | 95 Cordova Street, St. Augustine, FL 32084 |
| Autograph, Cosmopolitan Las Vegas | 3708 Las Vegas Blvd South, Las Vegas, NV 89109 |
| Autograph, Davenport Grand | 333 West Spokane Falls Boulevard, Spokane, WA 99201 |
| Autograph, Davenport Historic Downtown | 10 South Post Street, Spokane, WA 99201 |
| Autograph, Davenport Lusso | 808 West Sprague Avenue, Spokane, WA 99201 |
| Autograph, Davenport Tower | 111 South Post Street, Spokane, WA 99201 |
| Autograph, Grand Hotel Resort, Golf Club & Spa | 1 Grand Boulevard, Point Clear, AL 36564 |
| Autograph, Hotel Park City | 2001 Park Avenue, Park City, UT 84060 |
| Autograph, Hotel Paseo | 45-400 Larkspur Lane, Palm Desert, CA 92260 |
| Autograph, Kessler Canyon | 4410 County Road 209, DeBeque, CO 81630 |
| Autograph, Koloa Landing Resort at Poipu | 2641 Poipu Road, Koloa, HI 96756 |
| Autograph, Lake Arrowhead | 27984 Hwy 189, Lake Arrowhead, CA 92352 |
| Autograph, Pier South Resort | 800 Seacoast Drive, Imperial Beach, CA 91932 |
| Autograph, Playa Largo Resort & Spa | 97450 Overseas Highway, Key Largo, FL 33037 |
| Autograph, The Art Ovation Hotel, Sarasota | 1255 North Palm Avenue, Sarasota, FL 34236 |
| Autograph, The Cavalier Virginia Beach | 4200 Atlantic Avenue Virginia Beach VA 23451 |
| Autograph, The Daytona | 1870 Victory Circle, Daytona, FL 32114 |
| Autograph, The Eilan Hotel Resort & Spa | 17103 La Cantera Parkway San Antonio, TX 78256 |
| Autograph, The Inn at Bay Harbor Golf Resort | 3600 Village Harbor Drive, Bay Harbor, MI 49770 |
| Autograph, The Laylow | 2299 Kuhio Avenue, Honolulu, HI 96815 |
| Autograph, The Lexington | 511 Lexington Ave at 48th Street, New York, NY 10017 |
| Autograph, The Lido House | 3300 Newport Boulevard, Newport Beach, CA 92663 |
| Autograph, Winter Haven | 1400 Ocean Drive, Miami Beach, FL 33139 |
| Courtyard Isla Verde Beach Resort | 7012 Boca de Cangrejo Avenue, Isla Verde Carolina PR 00979 |
| Courtyard Kauai at Coconut Beach | 650 Aleka Loop, Kapaa, HI 96746 |
| Courtyard King Kamehameha's Kona Beach | 75-5660 Palani Road, Kailua-Kona, HI 96740 |
| Courtyard San Juan Miramar | 801 Ponce de Leon Avenue, San Juan PR 00907 |
| CY Marathon Florida | 2146 Overseas Highway, Marathon, FL 33050 |
| CY Miami Coconut Grove | 2649 South Bayshore Drive, Coconut Grove, FL 33133 |
| CY Orlando Lake Buena Vista at Vista Centre | 8501 Palm Parkway, Lake Buena Vista, FL 3283 |
| CY-Orlando Lake Buena Vista in the Marriott Village | 8623 Vineland Avenue, Orlando, FL 32821 |
| Edition, Miami South Beach | 2901 Collins Avenue, Miami Beach, FL 33139 |
| Edition, New York | Five Madison Avenue, New York, NY 10010 |
| Edition, New York Times Square | 701 Seventh Avenue, New York, NY 10019 |
| Element Fort Lauderdale | 299 North Federal Highway, Fort Lauderdale, FL 33301 |
| Fairfield Inn & Suites Key West | 2400 North Roosevelt Boulevard, Key West, FL 33040 |
| Fairfield Inn & Suites Key West at The Keys Collection | 3852 North Roosevelt, Key West, FL 33040 |
| Fairfield Inn & Suites-Orlando Lake Buena Vista in the Marriott Village | 8623 Vineland Avenue, Orlando, FL 32821 |
| Fort Lauderdale Marriott Harbor Beach Resort & Spa | 3030 Holiday Drive, Fort Lauderdale, FL 33316 |
| Fort Lauderdale Marriott, Pompano Beach Resort & Spa | 1200 North Ocean Boulevard Pompano Beach, FL 33062 |
| Four Points by Sheraton Orlando International Drive | 5905 International Drive, Orlando, FL 32819 |
| Four Points by Sheraton Punta Gorda Harborside | 33 Tamiami Trl., Punta Gorda, FL 33950 |
| Frenchman's Reef & Morning Star Marriott | 5 Estate Bakkeroe St. Thomas 00801 |
| Gaylord - Nashville Opryland | 2800 Opryland Drive Nashville TN 37214 |
| Gaylord National Resort & Convention Center | 201 Waterfront Street, National Harbor, MD 20745 |
| Gaylord Palms Resort & Convention Center | 6000 West Osceola Parkway, Kissimmee, FL 34746 |
| Gaylord Rockies | 6700 North Gaylord Rockies Boulevard, Aurora, CO 80019 |
| Gaylord Texan Resort & Convention Center | 1501 Gaylord Trail, Grapevine, TX 76051 |
| Grand Hotel Marriott Resort, Golf Club & Spa | One Grand Boulevard, P.O. Box 639, Point Clear, AL 36564-0639 |
| Hotel Beaux Arts, Autograph Collection | 255 Biscayne Boulevard Way, Miami, FL 33131 |
| Hotel Essex Chicago | 800 South Michigan Avenue Chicago IL 60605 |
| Hotel Talisa, Vail | 1300 Westhaven Drive, Vail, CO 81657 |
| Inn at the Mission San Juan Capistrano, Autograph Collection | 31692 El Camino Real San Juan Capistrano, CA 92675 |
| JW Marriott Camelback Inn® Scottsdale Resort &Spa | 5402 E Lincoln Drive, Scottsdale, AZ 85253 |
| JW Marriott Desert Springs Resort & Spa | 74855 Country Club Drive, Palm Desert, CA 92260 |
| JW Marriott Essex House | 160 Central Park South, New York, NY 10019 |

Prepared in Response to Plaintiff's Requests for Production Nos. 1, 2; Interrogatories Nos. 1, 2

*Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG (S.D. Cal.)

CONFIDENTIAL
Resort Fee Approved
Jan. 1, 2015 - Present

| | |
|---|---|
| JW Marriott Ihilani Ko Olina Resort & Spa | 92-1001 Olani Street, Ko Olina – Oahu, HI 96707 |
| JW Marriott Las Vegas Resort & Spa | 221 N Rampart Blvd, Las Vegas, NV 89145 |
| JW Marriott Marquis Miami & Hotel Beaux Arts | 255 Biscayne Boulevard Way, Miami, FL 33131 |
| JW Marriott Miami Turnberry Resort & Spa | 19999 West Country Club Drive Aventura FL 33180 |
| JW Marriott Orlando Grande Lakes | 4000 Central Florida Parkway, Orlando, FL 32837 |
| JW Marriott Phoenix Desert Ridge Resort & Spa | 5350 East Marriott Drive, Phoenix, AZ 85054 |
| JW Marriott San Antonio Hill Country Resort & Spa | 23808 Resort Parkway San Antonio, TX 78261 |
| JW Marriott Santa Monica Le Merigot | 1740 Ocean Avenue, Santa Monica, CA 90401 |
| JW Marriott Tucson Starr Pass Hotel | 3800 West Starr Pass Blvd., Tucson AZ 85745 |
| JW Marriott, Los Angeles L.A. Live | 900 West Olympic Blvd, Los Angeles, CA 90015 |
| JW Marriott, Marco Island Resort & Spa | 400 South Collier Boulevard, Marco Island, FL 34145 |
| Key West Marriott Beachside | 3841 North Roosevelt Boulevard, Key West, FL 33040 |
| La Posada de Santa Fe Resort & Spa | 330 East Palace Avenue, Santa Fe, NM 87501 |
| Le Méridien Delfina Santa Monica | 530 Pico Blvd Santa Monica CA 90405 |
| Le Parker Méridien New York | 119 W 56th St, New York, NY 10019 |
| Le Parker Méridien Palm Springs | 4200 E Palm Canyon Dr, Palm Springs, CA 92264 |
| Marriott Fisherman's Wharf | 1250 Columbus Avenue, San Francisco, CA 94133 |
| Marriott Newport | 25 America's Cup Avenue, Newport, RI 02840 |
| Marriott, Brooklyn Bridge | 333 Adams Street, Brooklyn, NY 11201 |
| Marriott, Coronado Island Resort | 2000 Second Street, Coronado, CA 92118 |
| Marriott, Griffin Gate Resort | 1800 Newtown Pike, Lexington, KY, 40511 |
| Marriott, Hilton Head Resort & Spa | Oceanfront at Palmetto Dunes, One Hotel Circle, Hilton Head, SC 2992 |
| Marriott, Hollywood Beach | 2501 North Ocean Drive, Hollywood, FL 33019 |
| Marriott, Hutchinson Island Beach Resort | 555 NE Ocean Boulevard, Stuart, FL 34996 |
| Marriott, Kauai Resort | 3610 Rice Street, Lihue, HI 96766 |
| Marriott, Laguna Cliffs Resort & Spa, Dana Point | 25135 Park Lantern Dana Point, CA 92629 |
| Marriott, Napa Valley | 3425 Solano Avenue, Napa, CA 94558 |
| Marriott, New York Downtown | 85 West Street, New York, NY 10006 |
| Marriott, New York East Side | 525 Lexington Avenue, New York, NY 10017 |
| Marriott, New York Marquis | 1535 Broadway, New York, NY 10036 |
| Marriott, Newport Beach | 900 Newport Center Drive, Newport Beach, CA 92660 |
| Marriott, Orlando World Center | 8701 World Center Drive, Orlando, FL 32821 |
| Marriott, Palm Beach Singer Island Resort | 3800 North Ocean Drive, Palm Beach - Singer Island, FL 33404 |
| Marriott, Park City | 1895 Sidewinder Drive, P.O. Box 4439 Park City, UT 84060 |
| Marriott, Phoenix Tempe at the Buttes | 2000 Westcourt Way, Tempe, AZ 85282 |
| Marriott, San Diego Marquis Marina | 333 West Harbor Drive, San Diego, CA 92101 |
| Marriott, San Juan Resort & Stellaris® Casino | 1309 Ashford Avenue, San Juan PR 00907 |
| Marriott, Sanibel Harbour Resort & Spa | 17260 Harbour Pointe Drive, Fort Myers, FL 33908 |
| Marriott, Sawgrass Golf Resort & Spa | 1000 TPC Blvd., Ponte Vedra Beach, FL 32082 |
| Marriott, Stanton South Beach | 161 Ocean Drive, Miami Beach, FL 33139 |
| Marriott, Vail Mountain Resort | 715 West Lionshead Circle Vail, CO 81657 |
| Marriott, Waikiki Beach Resort & Spa | 2552 Kalakaua Avenue, Waikiki, HI 96815 |
| Marriott, Waikoloa Beach Resort & Spa | 69-275 Waikoloa Beach Drive, Waikoloa, HI 96738-5711 |
| Marriott, Wailea Beach Resort & Spa | 3700 Wailea Alanui, Wailea, HI 96753 |
| Marriotts Frenchman's Cove | 7338 Estate Bakkeroe St. Thomas VI 00802 |
| Moana Surfrider, A Westin Resort & Spa, Waikiki Beach | 2365 Kalakaua Ave., Honolulu, HI 96815 |
| Moxy Boston | 240 Tremont Street, Boston, MA 02116 |
| Moxy South Beach | 915 Washington Avenue, Miami, FL 33139 |
| Myrtle Beach Marriott Resort & Spa at Grande Dunes | 8400 Costa Verde Drive, Myrtle Beach, SC 29572 |
| Perry Lane Hotel | 256 East Perry Street, Savannah, GA 31401 |
| Renaissance Esmeralda Indian Wells Resort | 44-400 Indian Wells Lane, Indian Wells, CA 92210 |
| Renaissance Las Vegas | 3400 Paradise Road. Las Vegas, NV 89169 |
| Renaissance New York Chelsea Hotel | 112 W 25th Street, New York, NY 10001 |
| Renaissance New York Times Square | 714 Seventh Avenue, New York, NY 10036 |
| Renaissance Orlando at SeaWorld | 6677 Sea Harbor Drive, Orlando, FL 32821-8092 |
| Renaissance San Juan- La Concha | 1077 Ashford Avenue, San Juan PR 00907 |
| Residence Inn, Charleston Kiawah Island/Andell Inn | 300 Farm Lake View Road, Kiawah Island, SC 29455 |
| Residence Inn, Hotel Trio Healdsburg | 110 Dry Creek Road Healdsburg, CA 95448 |
| Residence Inn, Miami Beach South Beach | 1231 17th Street, Miami Beach, FL 33139 |
| Residence Inn, Miami Beach Sunny Isles | 17700 Collins Avenue, Sunny Isles, FL 33160 |
| Residence Inn, Miami Beach Surfside | 9200 Collins Avenue, Miami Beach, FL 33154 |
| Residence Inn, Myrtle Beach Oceanfront | 2605 South Ocean Boulevard, Myrtle Beach, SC 29577 |
| Residences at Dorado Beach, a Ritz-Carlton Reserve | 100 Dorado Beach Drive, Dorado Beach PR |
| Ritz-Carlton Bacara, Santa Barbara Resort | 8301 Hollister Avenue, Santa Barbara, CA 93117 |
| Ritz-Carlton Bal Harbour, Miami | 10295 Collins Avenue Bal Harbour, FL 33154 |
| Ritz-Carlton Lodge, Reynolds Plantation Lake Oconee | 1 Lake Oconee Trail, Greensboro, GA 30642 |
| Ritz-Carlton Orlando, Grande Lakes | 4012 Central Florida Parkway, Orlando, FL 32837 |

Prepared in Response to Plaintiff's Requests for Production Nos. 1, 2; Interrogatories Nos. 1, 2
*Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG (S.D. Cal.)

CONFIDENTIAL
Resort Fee Approved
Jan. 1, 2015 - Present

| | |
|---|---|
| Ritz-Carlton Reserve at Dorado Beach | 100 Dorado Beach Drive, Dorado Beach PR 00646 |
| Ritz-Carlton San Juan | 6961 Avenue, of the Governors, Isla Verde Carolina PR 00979 |
| Ritz-Carlton, Amelia Island | 4750 Amelia Island Parkway, Amelia Island, FL 32034 |
| Ritz-Carlton, Bachelor Gulch | 0130 Daybreak Ridge Avon, CO 81620 |
| Ritz-Carlton, Dove Mountain | 15000 North Secret Springs Drive, Marana AZ 85658 |
| Ritz-Carlton, Ft Lauderdale | 1 North Fort Lauderdale Beach Boulevard, Fort Lauderdale, FL  33304 |
| Ritz-Carlton, Half Moon Bay | One Miramontes Point Road, Half Moon Bay, CA 94019 |
| Ritz-Carlton, Kapalua | One Ritz-Carlton Drive, Kapalua, HI  96761 |
| Ritz-Carlton, Key Biscayne | 455 Grand Bay Drive, Key Biscayne, FL 33149 |
| Ritz-Carlton, Laguna Nigel | One Ritz-Carlton Drive, Dana Point, CA 92629 |
| Ritz-Carlton, Lake Tahoe | 13031 Ritz-Carlton Highlands Court, Truckee, CA 96161 |
| Ritz-Carlton, Miami South Beach | One Lincoln Road, Miami,  FL  33139 |
| Ritz-Carlton, Naples | 2600 Tiburon Drive, Naples, FL 34109 |
| Ritz-Carlton, Naples Beach Resort | 280 Vanderbilt Beach Road, Naples, FL 34108 |
| Ritz-Carlton, Rancho Mirage | 68900 Frank Sinatra Drive, Rancho Mirage, CA  92270 |
| Ritz-Carlton, Sarasota | 1111 Ritz-Carlton Drive, Sarasota, FL 34236 |
| Ritz-Carlton, St. Thomas | 6900 Great Bay St. Thomas VI 00802 |
| Royal Palm South Beach Miami, a Tribute Portfolio Resort | 1545 Collins Avenue, Miami Beach, FL  33139 |
| Sheraton Atlanta Airport Hotel | 1900 Sullivan Road, Atlanta, GA  30337 |
| Sheraton Carlsbad Resort & Spa | 5480 Grand Pacific Drive, Carlsbad, CA 92008 |
| Sheraton Grand at Wild Horse Pass | 5594 W Wildhorse Pass Blvd, Chandler, AZ 85226 |
| Sheraton Grand Nashville Downtown Hotel | 623 Union Street, Nashville, TN  37219 |
| Sheraton Kauai Coconut Beach Resort | 650 Aleka Loop, Kapaa,  HI 96746 |
| Sheraton Kauai Resort | 2440 Hoonani Rd, Koloa, HI  96756 |
| Sheraton Kona Resort & Spa at Keauhou Bay | 78-128 Ehukai Street, Kailua-Kona, HI  96740 |
| Sheraton Lake Buena Vista Resort | 12205 S Apopka Vineland Rd, Orlando,  FL 32836 |
| Sheraton Maui Resort & Spa | 2605 Kaanapali Pkwy., Lahaina, HI  96761 |
| Sheraton New York Times Square | 811 7th Ave, New York, NY 10019 |
| Sheraton Niagara Falls | 300 3rd St., Niagara Falls, NY 14303 |
| Sheraton Panama City Beach Golf & Spa Resort | 4114 Jan Cooley Ave, Panama City, FL  32408 |
| Sheraton Park City | 1895 Sidewinder Drive, Park City, UT 84060 |
| Sheraton Princess Kaiulani | 120 Kaiulani Ave., Honolulu, HI  96815 |
| Sheraton San Diego Hotel & Marina | 1380 Harbor Island Drive, San Diego, CA 92101 |
| Sheraton Steamboat Resort | 2200 Village Inn Ct Steamboat Springs, CO 80487 |
| Sheraton Suites Key West | 2001 S Roosevelt Blvd, Key West, FL  33040 |
| Sheraton Waikiki | 2255 Kalakaua Ave., Honolulu, HI 96815 |
| SHS-Orlando Lake Buena Vista in the Marriott Village | 8623 Vineland Ave, Orlando, FL 32821 |
| SLS Las Vegas, a Tribute Portfolio Resort | 2535 Las Vegas Boulevard South Las Vegas NV 89109 |
| St Regis Bal Harbour Resort | 9703 Collins Ave, Bal Harbour - Miami Beach, FL 33154 |
| St. Regis Bahia Beach Resort, Puerto Rico | State Road 187 kilometer 4.2 Rio Grande PR |
| St. Regis Deer Valley Resort | 2300 Deer Valley Drive, East Park City, UT 84060 |
| St. Regis New York | 2 East 55th Street, New York NY 10022 |
| The Canyon Suites at the Phoenician | 6000 E Camelback Road, Scottsdale, AZ  85251 |
| The Cloudveil Autograph | 112 Center Street Jackson WY 83001 |
| The Dalmar, Fort Lauderdale, a Tribute Portfolio Hotel | 299 North Federal Highway, Fort Lauderdale, FL 33301 |
| The Equinox, a Luxury Collection Golf Resort & Spa, Vermont | 3567 Main Street, Manchester, VT 05254 |
| The Guild San Diego | 500 West Broadway, San Diego, CA 92101 |
| The Inn at Bay Harbor Renaissance Lake Michigan Golf Resort | 3600 Village Harbor Dr, Bay Harbor, MI 49770 |
| The Inn at Rancho Santa Fe | 5951 Linea Del Cielo Rancho Santa Fe, CA 92091 |
| The Liberty, a Luxury Collection Hotel, Boston | 215 Charles St, Boston, MA  02114 |
| The Lodge at Sonoma Renaissance Resort & Spa | 1325 Broadway at Leveroni & Napa Roads Sonoma, CA 95476 |
| The Maxwell New York City | 541 Lexington Ave, New York, NY 10022 |
| The Park Central San Francisco | 50 3rd St., San Francisco, CA 94103 |
| The Phoenician, a Luxury Collection Resort, Scottsdale | 6000 E Camelback Road, Scottsdale, AZ 85251 |
| The Ritz-Carlton, Dallas | 2121 McKinney Avenue, Dallas, TX  75201 |
| The Ritz-Carlton, Los Angeles | 900 W Olympic Blvd, Los Angeles, CA 90015 |
| The Riviera Palm Springs, a Tribute Portfolio Resort | 1600 North Indian Canyon Drive, Palm Springs, CA 92262 |
| The Royal Hawaiian, a Luxury Collection Resort | 2259 Kalakaua Ave., Honolulu, HI  96815 |
| The Sarasota Modern, a Tribute Hotel | 1290 Boulevard of the Arts Sarasota, FL 34236 |
| The St. Regis Princeville Resort | 5520 Ka Haku Rd, Princeville, HI 96722 |
| The Westin at Times Square | 270 W 43rd St, New York, NY 10036 |
| The Westin Cape Coral Resort at Marina Village | 5951 Silver King Boulevard, Cape Coral, FL 33914 |
| The Westin Carlsbad Resort & Spa | 5480 Grand Pacific Drive, Carlsbad, CA 92008 |
| The Westin Chicago Northwest | 400 Park Blvd, Itasca, IL  60143 |
| The Westin Fort Lauderdale Beach Resort | 321 North Fort Lauderdale Beach Boulevard, Fort Lauderdale, FL 3330 |
| The Westin Hapuna Beach Resort | 66-100 Kauna'Oa Drive, Waimea, HI  96743 |
| The Westin Hilton Head Island Resort & Spa | 2 Grasslawn Ave., Hilton Head Island, SC 29928 |

Prepared in Response to Plaintiff's Requests for Production Nos. 1, 2; Interrogatories Nos. 1, 2

*Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG (S.D. Cal.)

CONFIDENTIAL
Resort Fee Approved
Jan. 1, 2015 - Present

| | |
|---|---|
| The Westin Jekyll Island | 110 Ocean Way, Jekyll Island, GA  31527 |
| The Westin Key West Resort & Marina | 245 Front Street, Key West, FL 33040 |
| The Westin Kierland Resort & Spa | 6902 E Greenway Pkwy, Scottsdale,  AZ 85254 |
| The Westin La Paloma Resort & Spa | 3800 East Sunrise Drive, Tucson AZ 85718 |
| The Westin Lake Las Vegas Resort & Spa | 101 Montelago Boulevard, Henderson, NV 89011 |
| The Westin Las Vegas Hotel, Casino & Spa | 160 East Flamingo Road, Las Vegas, NV  89109 |
| The Westin Maui Resort & Spa, Ka'anapali | 2365 Kaanapali Pkwy.,  Lahaina, HI  96761 |
| The Westin Mission Hills Golf Resort & Spa | 71333 Dinah Shore Dr., Rancho Mirage, CA 92270 |
| The Westin Monache Resort, Mammoth | 50 Hillside Dr,  Mammoth Lakes, CA  93546 |
| The Westin New York Grand Central | 212 E 42nd St, New York, NY 10017 |
| The Westin Riverfront Resort & Spa at Beaver Creek Mountain | 126 Riverfront Lane Avon, CO 81620 |
| The Westin San Diego | 400 W Broadway, San Diego, CA 92101 |
| The Westin San Diego Gaslamp Quarter | 910 Broadway, Cir, San Diego, CA 92101 |
| The Westin Sarasota Hotel | 100 Marina View Drive, Sarasota, FL 34236 |
| The Westin Savannah Harbor Golf Resort & Spa | 1 Resort Dr., Savannah, GA 31421 |
| The Westin Snowmass Resort | 100 Elbert Lane, Snowmass Village, CO  81615 |
| The Westin St. John Resort & Villas | 300B Chocolate Hole Great Cruz Bay VI |
| The Westin Verasa Napa | Riverbend Resort and Spa Napa, CA 94559 |
| Tideline Ocean Resort & Spa | 2842 South Ocean Boulevard, Palm Beach, FL 33480 |
| Turnberry Isle Miami Autograph | 19999 West Country Club Drive, Aventura, FL 33180 |
| W Aspen | 550 South Spring Street, Aspen, CO  81611 |
| W Fort Lauderdale | 401 North Fort Lauderdale Beach Blvd., Fort Lauderdale, FL  33304 |
| W Las Vegas | 2535 Las Vegas Boulevard South Las Vegas NV 89109 |
| W Miami | 485 Brickell Avenue, Miami, FL 33131 |
| W New York Times Square | 1567 Broadway, New York, NY 10036 |
| W New York Union Square | 201 Park Ave S, New York, NY  10003 |
| W Retreat & Spa - Vieques Island | Km 3.2 - Hc1 Box 9368 Vieques |
| W South Beach | 2201 Collins Ave, Miami Beach, FL 33139 |
| Walt Disney World Dolphin | 1500 Epcot Resorts Blvd, Lake Buena Vista,  FL 32830 |
| Walt Disney World Swan | 1500 Epcot Resorts Blvd, Lake Buena Vista,  FL 32830 |
| Walt Disney World Swan Reserve | 1500 Epcot Resorts Boulevard Lake Buena Vista FL 32830 |
| Waterline Marina Resort & Beach Club | 5325 Marina Drive, Holmes Beach, FL 34217 |
| Williamsburg Lodge, Autograph Collection | 310 South England Street, Williamsburg, VA  23185 |

Prepared in Response to Plaintiff's Requests for Production Nos. 1, 2; Interrogatories Nos. 1, 2
*Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG (S.D. Cal.)

CONFIDENTIAL
Resort Fee Approved
Jan. 1, 2015 - Present

Prepared in Response to Plaintiff's Requests for Production Nos. 1, 2; Interrogatories Nos. 1, 2
*Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG (S.D. Cal.)

CONFIDENTIAL
Resort Fee Approved
Jan. 1, 2015 - Present

28

Prepared in Response to Plaintiff's Requests for Production Nos. 1, 2; Interrogatories Nos. 1, 2
*Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG (S.D. Cal.)

CONFIDENTIAL
Resort Fee Approved
Jan. 1, 2015 - Present

# Exhibit C

1               UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF CALIFORNIA
2

3   TODD HALL, KEVIN BRANCA, and
    GEORGE ABDELSAYED INDIVIDUALLY
4   AND ON BEHALF OF ALL OTHERS
    SIMILARLY SITUATED,
5

                Plaintiffs,
6                                       Case No.
          vs.                       3:19-cv-01715-H-AHG
7

    MARRIOTT INTERNATIONAL, INC.,
8   A DELAWARE CORPORATION,
9                Defendant.
10

11  VIDEOTAPED
    30(b)(6)          MARRIOTT INTERNATIONAL, INC.
12  DEPOSITION OF:  BY:  SCOTT A. McCOY
                         (Appearing via Zoom)
13

    DATE:            Wednesday, December 15, 2021
14

    TIME:            10:43 AM (ET)
15

    LOCATION OF
16  THE WITNESS:    Clearwater, FL
17
18
19
20
21
22
23
     JOB NO. 4976984
24   REPORTED BY:    Sandra K. Bjerke, RDR, CRR, CBC
                     (Appearing via Zoom)
25   PAGES 1 - 330

                                        Page 1

```
 1                    CERTIFICATE OF REPORTER

 2

 3              I, Sandra K. Bjerke, Registered

 4    Professional Reporter and Notary Public for the

 5    State of South Carolina at Large, do hereby certify

 6    that the foregoing transcript was transcribed to

 7    the best of my ability using the Zoom technology

 8    platform, including, but not limited to, its

 9    inherent shortcomings of garbled speech,

10    overmodulation, and voice-overlap cancellation;

11              I further certify that I am neither

12    related to nor counsel for any party to the cause

13    pending or interested in the events thereof.

14              Witness my hand, I have hereunto

15    affixed my official seal this 20th day of December,

16    2021 at Charleston, Charleston County, South

17    Carolina.

18

19

20

21

22

23

24              Sandra K. Bjerke, RDR, CRR, CBC
                My Commission Expires
25              May 6, 2030
```

                                              Page 323

1          Q.    Okay.  But with respect to the resort

2     fees, is this the primary method for communicating

3     the resort fee?

4          A.    Primary implies that the methods are

5     not all peers to one another.  We would say that

6     the methods that we use to communicate are somewhat

7     peers to one another.  They're designed to be

8     repetitive.  So the blue box is an alert.

9               Then when you are at your booking page

10     you see on there the various fees associated with

11     that particular hotel.  That would include a resort

12     or a destination fee.

13               We also have it in our confirmation

14     email if you are at a resort or destination fee

15     hotel and then a reminder upon arrival and, in

16     fact, may include it -- be included in your

17     pre-arrival email from the hotel.

18               So the number of times are essentially

19     designed to be peers to one another.  It's not that

20     one is so much more important than the other,

21     because we acknowledge when guests are shopping

22     they're considering many factors.  There's many

23     considerations to your stay in one of our hotels.

24          Q.    Okay.  How big is the blue box?

25               MR. LEARY:  Objection to form.  You can

1    answered.

2    BY MR. LITTERAL:

3         Q.   And your answer is what, Mr. McCoy?

4         A.   Why there's no brandwide campaigns or

5    announcements is it's a subset of hotels versus

6    7,800 hotels globally.  200 or so hotels does not

7    necessitate a brandwide or public campaign.

8    Individual hotels that offer resort and destination

9    fees clearly state that they have a resort or a

10   destination fee.  It's not intended to be a

11   brandwide campaign.

12        Q.   What's Marriott's reason for

13   implementing the resort fees?

14        A.   Resort and destination --

15             MR. LEARY:  Wait a second.  Just object

16   to the form that Marriott implements the fee, but

17   you can go ahead and answer.

18             THE WITNESS:  Resort and destination

19   fees are in response to hotels, owners or

20   operators, both managed or franchised, that have --

21   feel that in their market or their hotel, and I'll

22   use a resort as an example to start.

23             A resort hotel feels that they can

24   bundle a subset of amenities -- think yoga classes,

25   bourbon tastings, what have you -- and by defining

1    that bundle create convenience for the consumer in

2    terms of experience while defining an economic

3    model to support that at their hotel.

4            In the case of a destination hotel a

5    particular hotel or market might reside in a

6    location -- let's say New York City -- where they

7    can get play that's outside the building.  And so

8    the destination itself is in fact warranting some

9    degree of bundling of convenient amenities and

10   experiences for the consumer based on their purpose

11   of stay.

12           So we define a program that enables

13   hotels to follow to create consistency and value

14   for the consumer.  So our effort in defining it was

15   essentially to ensure that the customer-centric

16   focus was maintained.  The underpinning

17   relationship with the customer is supercritical to

18   what we do.

19           Therefore, we are responding to markets

20   who feel they can create a destination fee in those

21   markets like gateway cities or in a resort that has

22   one resort or a hundred adventures, can create the

23   appropriate model for those consumer experiences

24   and market it accordingly for their particular

25   hotel.

1  BY MR. LITTERAL:

2      Q.   So were these fees implemented or -- I

3  take Paul's objection about the implement.  I think

4  that's a good point.  Were these developed with the

5  consumer in mind?

6      A.   Each hotel that pushed forward, I would

7  suspect their basis was the consumer being able to

8  create -- you know, imagine that in hotel X they're

9  trying to identify how they might develop a set of

10  experiences for the guest.  To do so you need to be

11  able to have enough guests participating in it to

12  create a value, and so that it starts there.  The

13  genesis of the idea, the genesis of the approach is

14  at a particular hotel.  What Marriott does is help

15  those hotels to identify what is of value using our

16  understanding across the broad portfolio of markets

17  and hotels.

18      Q.   Okay.  So you said that you need -- or

19  you would like enough guests participating.  It

20  sounds like a public announcement might have helped

21  with that.

22           MR. LEARY:  Objection; calls for

23  speculation.

24  BY MR. LITTERAL:

25      Q.   Do you agree or disagree with that?

1      Q.   And so having the voting committee

2   makes Marriott flexible?

3      A.   Having the voting committee discuss the

4   individual offering creates the opportunity for

5   flexibility because we recognize our hotels sit in

6   different markets under different conditions and

7   each hotel may have a different consumer psyche,

8   consumer demographic that they serve.  And,

9   therefore, flexibility results and is evident in

10  the nearly 200 or roughly 200 hotels that offer

11  resort and destination fees.  Their packages are

12  different, their approaches are different, as is

13  their price points.

14     Q.   Does Marriott have a uniform set of

15  requirements that these individual hotels must

16  follow --

17     A.   We do.

18     Q.   -- to implement these fees?

19     A.   We do.

20     Q.   And, briefly, what are those?

21     A.   Hotels must meet the 4-to-1 value

22  proposition.  Hotels must clearly -- so this is for

23  the application.  They must meet the 4-to-1.  They

24  must have a ITR, which is intend to return, above

25  our red zone, which would -- which is an evolving

1    number over time.  And the hotel must submit their

2    application through to the voting committee in

3    order to be considered.

4          Once considered, if they in fact meet

5    those requirements of being either a resort or a

6    destination, and there are requirements to be a

7    destination as well as requirements to be a resort,

8    they have a set of guidelines and requirements for

9    disclosure and approach for informing both their

10    guests and their staff to the resort or destination

11    fee.

12          Q.   And is Marriott generally flexible with

13    those guidelines?

14          A.   No, no.  Those guidelines would be more

15    like fences.

16          Q.   I'm sorry?

17          A.   Those guidelines are more like fences.

18          Q.   And sometimes I deal in poetry, but in

19    this realm I have to know exactly what you mean.

20    So what do you mean, that they're like fences?

21          A.   So those guidelines are requirements.

22    So you must be at this level in order to apply.

23    You must have a 4-to-1 or greater in order to offer

24    the package.  Your hotel must qualify as a resort

25    or your destination must qualify as a destination.

1    That's a requirement.  So there isn't flexibility

2    in those requirements.

3           Q.   So no exceptions.

4           A.   No exceptions other than to note that

5    the requirement for ITR prior to Covid continued to

6    go up because consumer expectations and our

7    delivery against them continued to rise.  So what

8    is considered an underperforming hotel, we

9    continued to make that a higher threshold.

10           Q.   Okay.  So we've just covered -- you

11    see, Mr. McCoy, it says our approach today, the

12    black bullet point?  Then there's the white bullet

13    point that says continue to actively.  Then we just

14    covered the black bullet point under that, the

15    subpoint.  Now I'd like to go down to the third

16    white bullet point.  Do you see that?  It begins

17    with more robust guidelines.

18           A.   Okay.

19           Q.   Ms. Alexander says:

20                More robust guidelines to address legal

21    risks and more clearly articulate parameters are

22    work in progress.  Timing TBD.  Post integration,

23    likely.

24                Do you see that?

25           A.   I do.

1  answered the best I could at the event but

2  mentioned that I would follow up with more specific

3  information.  Do we have any standard language for

4  how we talk about or rationalize the resort fees

5  for the hotels that have them?

6           Do you see that?

7      A.   I do.

8      Q.   So does Marriott have standard language

9  for how it rationalizes resort fees?

10     A.   We have a policy that is our standard

11 description of our approach.  I don't know that I'd

12 use the term rationalize, but apparently Michelle

13 did.

14     Q.   And when was those policies developed

15 or implemented?

16     A.   I would say during -- you know, at or

17 nearly around the time of Jeff's tenure, beginning

18 of his tenure.  Certainly during my tenure we've

19 continued to work with that policy.  So at least a

20 decade.

21     Q.   And why did Marriott adopt this policy

22 or this kind of language?

23     A.   We had hotels that were asking for

24 approaches based on what was happening in their

25 competitive marketplace, and in response to those

1    asks we wanted to ensure that we had a high degree

2    of understanding and consistency acrost a broad

3    portfolio.  So that, I would say, is why I would.

4    I can't imagine or think through every reason that

5    they might have had all those years ago, but that's

6    why we have them today.

7         Q.   Does the policies help to communicate

8    the concept of the fees to the customer?

9         A.   The policy outlines approaches that

10   hotels should take in order to communicate to the

11   customer.

12        Q.   So Marriott has policies for

13   communicating to the hotels.  Does it have a policy

14   for communicating the fees to the consumer?

15        A.   We have a policy, and within that

16   policy there are guidelines that specify for the

17   hotels how they should articulate their bundle,

18   what they should do to ensure that their hotel

19   adequately discloses those fees and adequately

20   describes them for the guests upon arrival.

21            MR. LEARY:  And if I could interject

22   because I need to put this on the record as an

23   objection given your continued questions on

24   policies.  Prior Exhibit 45 was Bates stamped

25   MAR86890.  Multiple questions were asked of the

1    2012, was it your understanding that Marriott did

2    in fact include in the total -- in the quoted total

3    price any unavoidable and mandatory fees such as

4    resort fees?

5        A.   Yes.

6        Q.   And did Marriott do that after the FTC

7    letter came out?  Did they continue to do that?

8        A.   Yeah, before and after that FTC letter

9    came out we have.  And it's worth noting we're

10   pretty proud that we weren't named in that FTC

11   letter.

12       Q.   And did Marriott continue its practice

13   well after 2012 to include on its website in the

14   quoted total price any unavoidable and mandatory

15   fees?

16       A.   That's correct.

17       Q.   And has Marriott ever represented that

18   its resort fee is a mandatory government tax?

19       A.   No.

20       Q.   Has Marriott ever been advised from the

21   FTC that its website has been in violation of the

22   FTC's requirements?

23       A.   No.

24       Q.   To the extent -- you weren't shown

25   Webflow pages here today, but was it -- was it and

# Exhibit D

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA


TODD HALL, KEVIN BRANCA, and    )
GEORGE ABDELSAYED individually   )
and on behalf of all others    )
similarly situated,             )
                        )
       PLAINTIFFS,      )
                        ) Case No.
   vs.                  ) 3:19-cv-01715-H-AHG
                        )
MARRIOTT INTERNATIONAL, INC.,   )
a Delaware corporation,     )
                        )
       DEFENDANT.       )
                        )

CERTIFIED COPY


DEPOSITION OF

JEFFREY MICHAEL WOLFF

DECEMBER 1, 2021


Reported by:
DIANE DELANEY-DAUPHINE
CSR 3612
No. 21-105832

SG THE SULLIVAN GROUP
OF COURT REPORTERS
SULLIVANCOURTREPORTERS.COM
PHONE 855.525.3860 | 323.938.8750

```
 1              I, DIANE DELANEY-DAUPHINE, a Certified

 2   Shorthand Reporter of the State of California, do hereby

 3   certify:

 4              That the foregoing proceedings were taken

 5   before me at the time and place herein set forth; that

 6   any witnesses in the foregoing proceedings, prior to

 7   testifying, were administered an oath; that a record of

 8   the proceedings was made by me using machine shorthand

 9   which was thereafter transcribed under my direction;

10   that the foregoing transcript is a true record of the

11   testimony given.

12              Further, that if the foregoing pertains to the

13   original transcript of a deposition in a Federal Case,

14   before completion of the proceedings, review of the

15   transcript { }was {x} was not requested.

16              I further certify I am neither financially

17   interested in the action nor a relative or employee of

18   any attorney or any party to this action.

19              IN WITNESS WHEREOF, I have this date subscribed

20   my name.

21   Dated: December 3, 2021

22

23              _Diane Delaney-Dauphine_

24              DIANE DELANEY-DAUPHINE
                CSR No. 3612

25
```

1          MR. LEARY:  Yeah, just to the extent -- hold

2     on, Jeff.  To the extent you spoke with anyone, in-house

3     lawyers, you can identify who you speak with but not the

4     content of it.  Okay?

5          THE WITNESS:  Okay.  The only person that I

6     spoke to within Marriott, that's a Marriott employee, is

7     Theresa Coetzee.

8     BY MR. HOUCHIN:

9     Q.   Okay.  And can you describe your understanding

10    of what a resort fee is with respect to Marriott.

11    A.   A resort fee is a bundle of goods and services

12    that are packaged together at a specific rate and

13    provided to our guests, our customers to enhance their

14    experience at the hotel.

15    Q.   Okay.  Do you know when Marriott began charging

16    resort fees?

17    A.   I took my position in -- well, the corporate

18    position, I think, was 2008, 2009.  At that point there

19    were some resort fees in effect.  I don't know when off

20    the top of my head they began.

21    Q.   Okay.  And so you mentioned there were some

22    resort fees.  Do you have an estimate about how many

23    hotels were charging resort fees when you started your

24    position in 2008?

25    A.   I don't remember.  I can't recollect that.  I'm

1    sorry.  It's been so long.

2         Q.   Okay.  Fair enough.

3              The Complaint also refers to other types of

4    fees, including a destination amenity fee.  Can you

5    describe what your understanding of the destination

6    amenity fee is with respect to Marriott.

7         A.   Destination amenity fee is basically the same

8    as a resort fee but for destination hotels as opposed to

9    resorts.

10        Q.   Okay.  And do you know when Marriott began

11   charging a destination amenity fee?

12        A.   It's speculation at this point, but I would say

13   2017.  But, again, I'm just going from memory having

14   been out of this for two years, and it was quite a while

15   ago.

16        Q.   Okay.  And the Complaint also refers to a

17   destination fee.  Your understanding of that that's

18   basically the same as a destination amenity fee?

19        A.   That is correct.

20        Q.   Okay.  With respect to resort fees, do you know

21   why Marriott began charging resort fees?

22        A.   From the perspective to remain competitive with

23   our competition hotels and also to enhance the guest

24   experience at the -- at the hotels, the resorts and

25   destinations.

1    Q.   Okay.  And what do you mean by to remain

2    competitive?

3    A.   Some of our other hotels -- excuse me --

4    competition hotels, different companies, different

5    hotels, had resort fees in place at that time.  And they

6    were able to bundle this group of amenities and services

7    and provide them to their customers which in our

8    estimation -- my estimation improved guest service and

9    the guest experience when those folks were at those

10    hotels.

11    Q.   Okay.  And is it correct that Marriott was

12    written policies and procedures with respect to resort

13    fees and destination amenity fees?

14    A.   Yes, that is correct.

15    Q.   Okay.  So I'm going to mark another exhibit.

16    This going to be one of those policies.  Hold on.  Just

17    one moment.  All right.  This will be Exhibit No. 3.

18        (Exhibit 3 was marked for identification.)

19        MR. LEARY:  Just one second.

20        THE WITNESS:  I have it.  I'm reviewing it now.

21        MR. LEARY:  I have it too.  Thank you.  This

22    begins with Bates stamp MAR21, Mike?

23        MR. HOUCHIN:  Yeah, MAR21 and it goes through

24    MAR24.

25        MR. LEARY:  Okay.

1    that's referenced in that sentence.  Can you explain

2    what that is?

3         A.   Marriott had a policy during the time that I

4    was employed by Marriott that prohibited resort fees or

5    other mandatory fees without prior approval.  So in this

6    specific case, it was very specific.  This was our

7    control process whereby we told hotels that they did not

8    have the option of putting a resort fee in without going

9    through the approval process that is spelled out on the

10   document that's in front of me right now.

11        Q.   Okay.  And do you know why that was Marriott's

12   general policy?

13        A.   Because to my understanding we did not want

14   guests to be charged fees that we were not aware of or

15   were not authorized.  It was important to us from a

16   customer perspective that guests knew about any charges

17   or fees prior to paying them.  And, again, this was a

18   strict control policy that we had in place throughout

19   our company during my tenure to prohibit fees being

20   charged to customers without their knowledge.

21        Q.   Okay.  And under the paragraph that says

22   eligibility there's the No. 1 and it says --

23        A.   Yes.

24        Q.   -- "Resort fees are the market norm" --

25             MR. LEARY:  Jeff, Mike was reading from the

1    destination amenity fees prior to November 2015?

2        A.   I do not remember.

3        Q.   Okay.  And based on this document, it appears

4    that Marriott was charging destination amenity fees in

5    November of 2015?

6             MR. LEARY:  Objection to the form, foundation.

7             You can answer.

8             THE WITNESS:  This process was put in place

9    because requests for destination amenity fees were

10   coming in at that point.  Marriott did not implement the

11   destination amenity fees.

12   BY MR. HOUCHIN:

13       Q.   Okay.  You said Marriott did not implement

14   destination amenity fees.  What do you mean by that?

15   I'm just trying to understand the timeline.

16       A.   We were responding to hotel requests.

17       Q.   Okay.  So a hotel specifically came to Marriott

18   and asked if they could charge a destination amenity

19   fee?

20       A.   Yes.

21       Q.   Do you know what the first Marriott hotel was

22   that charged a destination amenity fee?

23       A.   I do not.

24       Q.   Okay.  We talked about this a little bit

25   earlier, but it looks like the criteria for charging a

1       A.   Yes.

2       Q.   And did you have an understanding from looking

3   at the FTC letter when it came out that that's what

4   their expectation was regarding where resort fees should

5   be disclosed and specifically in the total price?

6       A.   Yes.

7       Q.   Prior to the FTC letter of 2012, did Marriott,

8   in fact, include in the quoted total price any

9   unavoidable and mandatory fees such as resort fees?

10      A.   Yes.

11      Q.   Did Marriott continue its practice after the

12  2012 letter to include on its Website in the quoted

13  total price any unavoidable and mandatory fees such as

14  resort fees that consumers would be charged?

15      A.   Yes.

16      Q.   At any time has Marriott ever been advised by

17  the Marriott that it is in violation of this

18  requirement?  And let me be more clear.  That Marriott

19  is not including within the total price unavoidable and

20  mandatory fees?

21      A.   Can you repeat that.  I think you said --

22      Q.   Sure.  Has the FTC ever informed Marriott that,

23  in fact, it is not including in the quoted total price

24  any unavoidable and mandatory fees such as resort fees?

25      A.   No, the FTC has not notified us.

# Exhibit E

# The Americas, Resort/Destination Fee Policy

Marriott has developed a Resort / Destination Fee Policy ("Policy") to assist in meeting applicable contractual and legal obligations. This Policy only applies to Resort / Destination Fees automatically charged to a guest. This policy does not cover fees where a guest is given the opportunity to "opt-in" to additional hotel goods or services. The hotel's Owner or Franchisee must request in writing to implement a Resort / Destination Fee, using the language contained in the attachment titled "Owner Resort / Destination Fee Request Template".

## PROGRAM ADMINISTRATION CHARGES

Application Charge: $1,500.00 | One-time, non-refundable payment due with each application submission.
Program Administration Charge: $550.00 | Annual program maintenance charge payable in January for hotels charging a Resort/Destination Fee.

## DEFINITIONS

Resort Fee: Applicable only to hotels that are officially designated as a resort by the appropriate brand. Resort Fees allow our guests to experience in a convenient way the many features or activities a resort has to offer. The fees are customized to the specific resort and cover the costs of a wide range of items or services.

Destination Fee: For hotels that are not officially designated as a resort hotel, Destination fees allow our guests to experience in a convenient way the many features or activities a particular destination has to offer.

For non-resort hotels, the following criteria will be considered in order to determine if an application for Destination Fee will be approved. The more of these attributes that apply to a hotel, the stronger the case when determining if a hotel can implement a fee.

*Gateway City.* The hotel is in a market that is considered a "gateway" city with a high cost of operation and where competitor hotels are charging a destination or other similar fee.

*Upgraded Facilities.* The hotel may be considered a "destination" (i.e. not designated a resort) if the hotel has upgraded facilities, amenities and services.

*Desirable Location.* The hotel is in a sought-after destination, i.e. wine country, water front, tourist destination, or other similar location.

*Leisure Mix.* The hotel has a high percentage of leisure business and is a sought-after destination for Marriott Bonvoy Members redeeming points.

*Note: MSB Hotels* must meet the criteria and compete with other premium or select brands in a market where Resort or Destination Fees are considered the norm.

## ELIGIBILITY

Marriott's existing fee standard generally prohibits the imposition of automatic mandatory fees. However, hotels may seek an exemption to this standard and apply for approval of a Resort or Destination Fee by meeting or exceeding the following three criteria: *location meets the definition of a resort or destination (above), ITRec scores are not in the Red Zone, and fees are the market norm.*



ELIGIBILITY (Additional detail) provided below.

1. Must meet or exceed the requirements in the **DEFINITIONS** section above.

2. Effective January 1, 2020, the hotel has achieved an **Intent to Recommend\*** guestVoice score during the wave that the application has been submitted and the last full six-month tracking period (wave) at or above the brand standard for Intent to Recommend.

   Premium / Luxury brand standard currently defined as:
   - Intent to Recommend score of 56 for Autograph, Delta, Edition, Gaylord, JW Marriott, Marriott, The Luxury Collection, Renaissance, St. Regis Hotels, LeMeridien, Sheraton, Westin, Tribute, Design and W Hotels

   Marriott Select Brands brand standard currently defined as:
   - Intent to Recommend score of 56 for Courtyard, Fairfield, Residence Inn, SpringHill Suites, TownePlace Suites, AC Hotels, Moxy, Four Points, Aloft and Element

   **Fees are the Market Norm\*** | Hotels that are officially designated a resort by their brand may apply for a Resort Fee. For hotels applying for a Destination Fee, **market norm** is generally defined as 50% or more of the hotels in the hotel's competitive set. The competitive set in the premium and select tiers may be defined by using either the official competitive set as per the management agreement (STR Report) or the set of hotels monitored for budget data purposes, whichever set is more favorable in determining the 50% threshold. In the luxury tier, the hotel's competitive set is defined as the luxury tier hotels versus the STR or budget competitive sets. The Ritz-Carlton, St. Regis, and EDITION competitive set includes Four Seasons, Mandarin Oriental, Park Hyatt, Peninsula, Rosewood, Taj and Waldorf Astoria. JW Marriott, The Luxury Collection and W competitive set includes Andaz, Conrad, Fairmont, Grand Hyatt, Intercontinental, Small Luxury Hotels, Sofitel. Bulgari and Ritz-Carlton Reserve are excluded from Destination Fees. **For approval of a luxury hotel applications in tertiary markets with no luxury tier competitors present, the Global Brand Officer and Continent CSMO need to approve an appropriate competitive set for evaluation.**

\* The same process and criteria apply to new-build hotels seeking to implement a Resort / Destination Fee. However, because hotels will not have STR or guestVoice results at opening, these criteria will not be considered in the application process.

REQUIREMENTS FOR CONTINUING TO CHARGE A RESORT / DESTINATION FEE FOR HOTELS PERFORMING BELOW BRAND STANDARD:

1. The hotel must maintain the required **Intent to Recommend** guestVoice brand standard to charge the Resort/Destination Fee.

2. If a hotel falls below the brand standard in any six-month cycle (one wave), the General Manager must submit a detailed action plan to the Marriott Area Vice President or Account Executive that outlines what steps are being taken to meet the brand standard in the next six-month cycle no later than 30 days after the end of the wave. In addition to the action plan, falling below the Intent to Recommend brand standard requires the hotel to increase the value of the amenity bundle from 4:1 to 7:1 within 30 days of the end of the wave. The proposed 7:1 amenity bundle must be submitted to the Fee Administrator for approval (Americas.FeeRequest@marriott.com). The hotel must complete one full wave outside of the Intent to Recommend brand standard to decrease the value of the amenity bundle back to 4:1 from 7:1. Failure to comply may result in the revocation of your right to charge a Destination or Resort Fee.



3. If the guestVoice Intent to Recommend score remains below the brand standard for more than **two consecutive six-month waves**, the hotel will be considered ineligible to charge a Resort/Destination fee. If the hotel is unsuccessful in moving guestVoice Intent to Recommend above the brand standard, the Resort / Destination Fee can be revoked, and a new application must be submitted, but only after maintaining the brand standard for two consecutive six-month cycles (waves).

4. If a hotel is below the brand standard for Intent to Recommend, **an increase to the Resort / Destination Fee will not be allowed.**

5. For hotels charging a Resort / Destination Fee entering the Marriott system, a review will be conducted and, if necessary, a plan to improve Intent to Recommend above the brand standard, will be implemented (see above). The hotel will be required to meet the brand standard within the specified period, otherwise, Marriott reserves the right to revoke the privilege of charging a Resort / Destination Fee.

6. If changes are made to the QA program in the future, Resort/Destination Fee hotels must meet those new brand standards.

IMPLEMENTATION REQUIREMENTS: Hotels eligible to apply for an exemption to the Marriott fee policy will be allowed to proceed with a Resort/Destination Fee application subject to the following implementation requirements:

1. The Resort / Destination Fee offering must include a "bundle" of hotel products and services that normally would not be included in the price of the room, and for which a guest would normally be charged above and beyond the room price or room package offering. The sum pricing of the "bundled" Resort / Destination Fee must create greater value than purchasing the components separately. Specifically, Marriott requires a 4 to 1, or greater, value for the Resort/Destination Fee (e.g., $100.00 daily value for a $25.00 daily Resort / Destination Fee).

   a) Services or amenities offered as part of the Resort / Destination Fee must be available each day a guest is at the hotel and paying a Resort / Destination Fee.

   b) If the hotel is offering a one-time amenity, such as a "Welcome Drink" valued at $10.00, then the hotel should divide this value by the average length of stay and use that as the value. For illustrative purposes, if the average length of stay is 3 days, then the "Welcome Drink" value would be $3.33.

   c) For all hotels charging a Destination Fee, a food and beverage credit equal to the price of the fee, must be a component of the 4 to 1 or greater, value proposition. For example, if a Destination Fee is $25.00, the hotel must offer a daily credit of $25.00 that can be used in any hotel F&B outlet. [Effective 4/1/2019 for new submissions or change requests].

   d) Discounts (percentage off) or offers that require a guest to buy a product or service to obtain value will not be allowed as part of the Resort/Destination Fee 4 to 1 value proposition. The hotel can include discounts over and above the 4 to 1 value proposition to provide additional value to the guest.

   e) Services and amenities must be seasonal appropriate. For example, a ski resort must offer appropriate amenities during non-winter season to meet the 4 to 1 value proposition requirement.



2. Resort / Destination Fee pricing and product/service components must be market driven, based on competitive offerings and guest expectations, and should not include offerings that normally are free to the guests.

   a) Offerings and services should be relevant to the typical mix of business. For example, if midweek clientele is 75% business transient, amenities and services must be appropriate and usable for business travelers.

   b) Enhanced High Speed Internet Access (Wi-Fi) must be included in the Resort / Destination Fee offering regardless of the booking channel or whether the guest is a Marriott Bonvoy Member.

   c) As part of the value proposition, you may include only the difference between Enhanced Wi-Fi and basic Wi-Fi (ex: enhanced Wi-Fi = $15.00 / basic Wi-Fi = $10.00. Proposition value of Wi-Fi component = $5.00).

   d) Marriott Bonvoy Silver Elite, Gold Elite, Platinum Elite, Titanium Elite, and Ambassador Elite members currently receive complimentary Enhanced Wi-Fi as one of their benefits. In order to maintain the value proposition, you must provide an additional amenity to these elite members that equals or exceeds the retail price of Wi-Fi.

      i. An example of a service or amenity that may be offered is a daily beverage from Starbucks, a day pass to the Spa or something of similar value. This extra amenity must be offered each day the guest is paying the Resort/Destination Fee.

3. The Resort / Destination Fee must be effectively and consistently communicated through all Marriott and third-party reservation channels. It must be disclosed at time of reservation and at check-in.

   a) Guests making reservations at leisure and business transient rates, through the #800 number or through a live agent, must be quoted the Resort / Destination Fee at the time of reservation. Once the rate is accepted, the reservationist should disclose the Resort / Destination Fee and the products/services received for the fee. If the guest objects to the Resort / Destination Fee, the reservationist should indicate that any concerns regarding the fee should be addressed by the guest directly with the hotel staff.

   b) Guests making reservations through non-live channels similarly must be advised of the Resort / Destination Fee at time of reservation. For example, guests making reservations through Marriott.com or an OTA must see the additional charge referenced on the screen at the time of reservation, along with applicable taxes. In all cases, the Resort / Destination Fee should be disclosed, and the guest's acceptance of the charge confirmed at time of check-in by the front desk associate.

   c) Group and wholesale segments may negotiate the Resort /Destination Fee on a case-by-case basis.

   d) Evidence of disclosure and effective communications will be demonstrated through periodic testing, which is the responsibility of the hotel leadership team, to show that guests charged the Resort / Destination Fee received notice at the time of reservation and at check-in.

4. Upon check-in, the Resort / Destination Fee and the products and services received for the fee must be disclosed in writing, e.g., promotional flyer or key pack insert. If the guest objects to the Resort / Destination Fee, the hotel may waive the fee. If the Resort / Destination Fee has been waived, the hotel should charge the guest for the individual services used by the guest and included in the Resort / Destination Fee program, to the extent practical to do so.



5. If a guest is not paying a Resort / Destination Fee, they must be charged for any service or amenity used that is part of the fee package on an a la carte basis.

6. The hotel Owner or Franchisee seeking the Resort / Destination Fee must be informed of the Resort / Destination Fee Policy and the potential risks associated with inadequate disclosure. The Hotel Owner or Franchisee must agree prior to submitting an application and / or implementing the Resort / Destination Fee to the following and submit a letter, on company stationery to include the following (a-d):

   a) Owner has received a copy of Marriott's Fee Policy and assumes all costs of implementation and administration, expenses and/or liabilities associated with the Resort / Destination Fee, including an allocation of above-property costs arising from any governmental action or third-party claim contesting the imposition of the Resort / Destination Fee or the adequacy of the disclosure.

   b) Once approved, Owner is expected to comply with all Marriott Resort and Destination Fee policies, including the obligation to accurately and conspicuously communicate the mandatory fee through all reservation channels and the obligation to prominently disclose the mandatory fee in writing at check-in through a promotional flyer or other collateral. Additionally, Owner acknowledges it will adhere to standards that are part of Marriott's Resort / Destination Fee Policy.

   c) Owner acknowledges it has been provided information about the current investigation by multiple Attorneys General. Any hotel that charges Resort / Destination Fees will be bound by any outcome of the class-action litigation and/or resolution as well as associated costs.

   d) Third-party claims relating to Resort / Destination Fee will not constitute a default by Marriott as manager or franchisor.

   e) Marriott reserves the right to discontinue the Resort / Destination Fee if, in its reasonable discretion, the Resort / Destination Fee results in unacceptable levels of customer complaints, as measured by the guestVoice Survey or customer engagement research, or results in legal liability or action.

   f) Owner will adhere to changes to Marriott's policies, including policies requiring hotels to waive Resort and Destination Fees for certain Marriott BONVoY loyalty tiers and reservation types based on the evolution of the Marriott BONVoY program. We expect that, effective January 2021, changes to the program may include waiver of the Resort/Destination fee for certain Marriott BONVoY members and modifications to benefits offered to them.

   g) In addition to the one-time payment submitted with the application, an annual maintenance fee of $550.00 will be assessed to each hotel charging a Resort / Destination Fee, payable January of each year. The maintenance fee is subject to change and is non-refundable. Failure to pay the maintenance fee will result in a suspension of the hotel's ability to charge the Resort/Destination Fee.

Owner or Franchisee's agreement of the foregoing may be evidenced by acknowledging the provisions of paragraph 6.a-g in its letter requesting the Resort / Destination Fee or in a separate written communication. The hotel should retain this communication in its files.



7. The Resort / Destination Fee should be assessed to those guests that would most benefit from the Resort / Destination Fee components, rather than charged to all segments of the hotel's business mix.

The following guidelines will apply:

Marriott International resereves the right to change the guidance for the following segments at any time, as business demands or trends warrant such change.

a) **Leisure Transient Segment:** Resort / Destination Fee should be assessed, except as to (a) guests whose reservations were made prior to implementation of the fee and notice procedures, (b) guests whose stay is covered by a corporate agreement that does not provide for the Resort/ Destination Fee, and (c) guests who have elected to "opt out" as described above.

b) **Business Transient Segment:** The Resort / Destination Fee should be assessed only if (a) the product and service components of the Resort / Destination Fee are substantially applicable to the needs of the business transient hotel stay, (b) the guest has agreed to the fee and components, and (c) the stay is not covered by an existing corporate agreement, e.g., Global Sales Organization (GSO) Accounts, that does not provide for the Resort / Destination Fee.

c) **Wholesale Segment:** Pricing to this segment is primarily packaged, pre-paid, and distributed through third party vendors. Resort / Destination Fee may be assessed only if the wholesaler agrees to (a) include a Resort / Destination Fee as a component of the package and (b) identify these components as inclusive in the package offering.

d) **Group Segment:** Group pricing is established based on the specific needs of the group and customized to fit the defined components of a group meeting or event. Resort / Destination Fee will not be assessed unless contractually agreed to by the conference planner or booking agent. Please see 2-1e or 2-1g of the GSA Library of Clauses for clauses authorizing collection of a Resort Fee or Destination Fee, and see Clauses 2-1f or 2-1h for clauses to be used in contracts for groups that have elected not to pay the Resort Fee or Destination Fee but agree to pay individually for any amenities the group purchases at the prevailing rates.

8. Resort / Destination Fee must be charged per room, not per person.

9. Resort / Destination Fee based on a percentage of the room rate will not be approved.

10. For Extended Stay brands (Residence Inn, TownePlace Suites and Element) the Destination Fee may not be charged to guests with a length of stay at or exceeding 12 nights.

11. **Marriott Bonvoy Earned (Redemption) Stays:** Marriott reserves the right to modify its policies, including requiring hotels to waive Resort and Destination Fees for certain Marriott Bonvoy loyalty tiers and reservation types based on the evolution of the Marriott Bonvoy program. We expect that, effective January 2021, changes to the program may include waiver of the Resort/Destination Fee for certain Marriott Bonvoy members and modifications to benefits offered to them. All costs associated with these changes will be the responsibility of the hotel. Owner agrees to forecast the financial impact of and adhere to any changes to Marriott's policies, including policies requiring hotels to waive Resort and Destination Fees for certain Marriott Bonvoy loyalty tiers and reservation types based on the evolution of the Marriott Bonvoy program.

12. Changes to existing Resort / Destination Fees must be requested by going through the application process. This includes requests to raise the Resort / Destination Fee above the approved rate or any changes to the Resort / Destination Fee offerings.



If any material changes are made to the Resort / Destination Fee, without Committee approval, the hotel will be considered non-compliant with the policy and the privilege to charge a fee can be revoked. The Resort / Destination Fee Request templates must be reviewed and completed by each General Manager, and approved by the Owner, Management and / or Franchise company, prior to submitting the request to the Americas Fee Administrator (**Americas.FeeRequest@marriott.com**) which will then be reviewed by the Americas Fee Committee or MSB Resort & Destination Fee Committee.

Should you need additional information, please contact the Americas Fee Administrator (Americas.FeeRequest@marriott.com) or your Area Vice President/Account Executive.

ANNUAL CERTIFICATION: A representative from each hotel, will be required to submit, on an annual basis, a "Certification of Compliance" to the Marriott's Resort / Destination Fee Policy. This Annual Certification document will be distributed, by the Americas Fee Administrator, in January, to all hotels charging a Resort / Destination Fee.

a) Managed by Marriott Hotels – Annual Certification will be completed by the General Manager and submitted to the Americas Fee Administrator. If a hotel is non-compliant, the appropriate AVP and the Americas Fee Committee will be notified.
b) Franchise Hotels – Annual Certification will be completed by the General Manager and approved by the appropriate franchise company representative and submitted to the Americas Fee Committee. If a hotel is non-compliant, the appropriate Marriott AVP / AE, franchise company representative and the Americas Fee Committee will be notified.

NON-COMPLIANCE: If a hotel that is charging a Resort of Destination Fee does not comply with any of the aforementioned standards, authorization to continue charging a fee will be subject to immediate suspension until the hotel is fully compliant. If a hotel does not return to full compliance, the Resort / Destination Fee can be revoked, and a new application must be submitted before a hotel can charge a fee.

Examples of Resort / Destination Fees, which can result in a suspension or revocation of the right to continuing to charge a fee, are as follows:

a) Failure to meet the guestVoice brand standard, as described in the "Eligibility" section above
b) If an increase or decrease to the Resort of Destination Fee price is taken, without Fee Committee approval
c) If change are made to any of the amenities or services that were approved by the Fee Committee, without approval from the Fee Committee, prior to the changes being made
d) Failure to provide Bonvoy Elite members, with an extra benefit, as described in "Implementation Requirements" section 2d
e) Failure to effectively and consistently communicate your hotels Resort or Destination Fee as described in "Implementation Requirements" sections 3 and 4
f) If an owner or franchisee, does not submit a letter addressed to Marriott International as described in "Implementation Requirements" section 6
g) Failure to submit and comply with the Annual Certification requirement
h) Any and all other standards described in this document

EXCEPTIONS BY EXECUTIVE COMMITTEE APPROVAL: Consideration and approval of exceptions to the general policy will be made collectively by the Americas Fee Committee or MSB Destination Fee Committee.



# Exhibit F

ELLISON
EXHIBIT

5

4/9/21 SMB

| Destination | Stay Dates (1 NIGHT) | Rooms & Guests | |
|---|---|---|---|
| Las Vegas, NV, USA | Fri, Aug 23, 2019 - Sat, Aug 24, 2019 | 1 Room: 1 Adult/Room | EDIT |



### SpringHill Suites Las Vegas Convention Center
2989 Paradise Road Las Vegas, Nevada 89109

2.6 miles from destination | ●●●●○ 4.5 833 Reviews | Category 4

Win big at our newly renovated all-suite hotel near the Convention Center and the Vegas Strip

SPRINGHILL
SUITES
BY MARRIOTT

From **181** USD / night  **VIEW RATES**



### Las Vegas Marriott
325 Convention Center Drive Las Vegas, Nevada 89109

2.8 miles from destination | ●●●●○ 4.6 769 Reviews | Category 5

A modern hotel near the Las Vegas Convention Center, with suite-like rooms and deluxe amenities.


MARRIOTT

From **199** USD / night  **VIEW RATES**



### Renaissance Las Vegas Hotel
3400 Paradise Road Las Vegas, Nevada 89169-2770

3.1 miles from destination | ●●●●○ 4.3 904 Reviews | Category 5

A luxury hotel steps from the Las Vegas Convention Center and Monorail, and a block from the Strip.

R
RENAISSANCE
HOTELS

From **142** USD / night  **VIEW RATES**

2

MAR189893

Dates
Fri, Aug 23, 2019 – Sat, Aug 24, 2019

Rooms & Guests
1 Room : 1 Adult

**EDIT**

| Standard Rates<br>From 180 USD / night | Prepay and Save<br>From 142 USD / night | Offers and Packages<br>From 189 USD / night |
|---|---|---|

ⓘ Please note-USD 30 daily destination amenity fee added to room rate incl free play at local casino, whiskey/wine tasting and more.

## Guest room, 1 King

Room Details



72HR Sale Advance Purchase Rate, prepay in full, non-refundable, no changes
Rate Details

**142** USD / night

**SELECT**

## Guest room, 2 Double

Room Details



72HR Sale Advance Purchase Rate, prepay in full, non-refundable, no changes
Rate Details

**149** USD / night

**SELECT**

3

CONFIDENTIAL

MAR189894

# Review Reservation Details



## Guest room, 1 King
ROOM DETAILS

**Check in:** Friday, August 23, 2019

**Check out:** Saturday, August 24, 2019

**Room(s):** 1

**Guest(s) per room:** 1

EDIT

⌄ Choose Room Features

⌄ Summary of Charges

**142** USD / night + **53.01** USD Taxes and fees      **195.01** USD Subtotal

4

## ⌃ Summary of Charges

| | | |
|---|---|---|
| 142<br>USD / night | + 53.01<br>USD Taxes and fees | **195.01**<br>USD Subtotal |

**72HR Sale Advance Purchase Rate**
RATE DETAILS

**1 room(s) for 1 night(s)**                                Prices in USD

Friday, August 23, 2019                                                   142.00

| | |
|---|---|
| Total cash rate | 142.00 |
| Destination Amenity Fee | 30.00 |
| Estimated government taxes and fees | 23.01 |

| | |
|---|---|
| **Total for stay in hotel's currency** | **195.01** USD |

**Additional Charges**

On-site parking, fee: 17 USD daily
Valet parking, fee: 24 USD daily
Changes in taxes or fees implemented after booking will affect the total room price.

5

# Exhibit G

```
 1                UNITED STATES DISTRICT THE COURT

 2                  SOUTHERN DISTRICT OF CALIFORNIA

 3                  CASE NO. 3-19-CV-0715-JLS-AHG

 4

 5

 6    TODD HALL, KEVIN BRANCA, AND GEORGE )
      ABDELSAYED, individually and on     )
 7    behalf of all other similarly       )
      situation,                          )
 8                                        )
              Plaintiff,                  )
 9                                        )
                  vs.                     )
10                                        )
      MARRIOTT INTERNATIONAL, INC., a     )
11    Delaware corporation,               )
                                          )
12          Defendant.                    )
                                          )
13    _____)

14

15        VIDEOTAPED DEPOSITION OF GEORGE ABDELSAYED

16                   San Diego, California
                  January 12, 2022; 2:57 p.m.
17

18                       VOLUME I

19
               Reported by Adriana S. Angulo, CSR
20                 Certificate No. 13824

21

22

23

24

25
```

1                    REPORTER'S CERTIFICATE

2

3        I, Adriana S. Angulo, Certified Shorthand Reporter in

4    and for the State of California, do hereby certify:

5        That the witness in the foregoing deposition was by

6    me first duly sworn to tell the truth, the whole truth,

7    and nothing but the truth in the foregoing cause; that the

8    deposition was then taken before me at the time and place

9    therein named; that said deposition was reported by me in

10   shorthand and later transcribed under my direction, and

11   the preceding pages contain a true record of the testimony

12   of the witness; and I do further certify that I am a

13   disinterested person and am in no way interested in the

14   outcome of said action, or connected with or related to

15   any of the parties in said action, or to their respective

16   counsel.

17          The dismantling, unsealing, or unbinding of the

18   original transcript will render the Reporter's

19   Certification null and void.

20          IN WITNESS WHEREOF, I have hereunto set my hand

21   this 23rd day of January 2022.

22

23                    *Adriana S. Angulo*

24          _____

25                    Adriana S. Angulo
                       Certificate No. 13482

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF CALIFORNIA

3

4    TODD HALL, KEVIN BRANCA, and      )
     GEORGE ABDELSAYED, individually )
5    and on behalf of all others      ) Case No.
     similarly situated,              ) 3:19-cv-01715-JLS
6                                      )
                        Plaintiff,     )
7                                      )
     v.                                )
8                                      )
     MARRIOTT INTERNATIONAL, INC., a )
9    Delaware corporation,            )
                                       )
10                      Defendant.     )
     _____)

11

12

13          VIDEO-RECORDED DEPOSITION OF

14          GEORGE ABDELSAYED, VOLUME II

15             Tuesday, January 25, 2022

16                San Diego, California

17

18

19

20

21

22

23
     Reported by:
24   Tricia Rosate, RDR, RMR, CRR, CCRR
     CSR No. 10891
25   Job No. 380209

1          I, Tricia A. Rosate, Certified Shorthand

2   Reporter licensed in the State of California,

3   License No. 10891, hereby certify that the witness

4   was by me first duly sworn, and the foregoing

5   testimony was reported by me and was thereafter

6   transcribed with computer-aided transcription; that

7   the foregoing is a full, complete, and true record of

8   said proceedings.

9          I further certify that I am not of counsel

10  or attorney for any of the parties in the foregoing

11  proceeding and caption named or in any way interested

12  in the outcome of the cause in said caption.

13         The dismantling, unsealing, or unbinding of

14  the original transcript will render the reporter's

15  certificates null and void.

16         In witness whereof, I have hereunto set my

17  hand this day:  February 12, 2022

18

19  _____

20  Tricia Rosate, RDR, RMR, CRR, CCRR
    CSR No. 10891

21

22

23

24

25

1    BY MR. LEARY:

2         Q. With this complaint, it was -- strike that.

3              Did you have any questions regarding the

4    allegations in the complaint?

5         A. No.

6         Q. You read them and understood them?

7              MR. LITTERAL:  Asked and answered.

8              THE WITNESS:  Yes.

9    BY MR. LEARY:

10        Q. And you believe them all to be truthful and

11   accurate?

12        A. Yes.

13        Q. Was there anything you found was inaccurate?

14        A. No.

15        Q. Okay.  At page -- the paragraph 76, there

16   are allegations as to you specifically.  Okay.

17        A. Okay.

18        Q. And it indicates that Plaintiff Abdelsayed

19   stayed at the Coronado Island Resort and Spa in

20   San Diego, California, located 2000 2nd Street,

21   Coronado, California in July of 2020; is that

22   accurate?

23        A. Yes.

24        Q. Plaintiff Abdelsayed booked his room at the

25   Coronado Island Resort and Spa before his stay from

1    Marriott's app; is that accurate?

2        A. I don't know where booked it from, whether

3    it was from the app or from Government Vacation

4    Rewards.

5        Q. What have you done to confirm whether, in

6    fact, this statement here that says it was from the

7    app is accurate?

8        A. I don't know.

9        Q. You don't know?

10       A. No.

11       Q. Have you done anything?

12       A. I've gone through my emails.

13       Q. Okay.  And what did the emails show you?

14       A. I don't remember at this time.

15       Q. Well, did you produce the emails?

16           MR. LITTERAL:  Asked and answered.

17           THE WITNESS:  Counsel has them.

18   BY MR. LEARY:

19       Q. What did you produce that showed that you

20   booked your room on the app?

21       A. Whatever email has -- counsel has.

22       Q. I don't have any indication of how you

23   booked your room at the Coronado.

24           MR. LITTERAL:  Everything that's been

25   discovered has been produced.

1    wasn't sure if that's mine or not.

2        Q. That's yours, the Miramonte?

3        A. The Miramonte, yes.

4        Q. Yes.  And you were charged a resort fee,

5    right?

6            MR. LITTERAL:  Asked and answered.

7            THE WITNESS:  Yes.

8    BY MR. LEARY:

9        Q. So you knew that hotels might charge resort

10   fees back in, at least, 2018?

11           MR. LITTERAL:  Calls for speculation.

12   BY MR. LEARY:

13       Q. I'm sorry?

14       A. If it said it on website.

15       Q. Right.

16       A. Where it's in plain view, yes.

17       Q. Well, did it say it on the website for the

18   Miramonte?

19       A. I don't remember.

20       Q. Okay.  You just simply don't have a

21   recollection either way --

22           MR. LITTERAL:  Argumentive.

23           THE WITNESS:  I don't remember.

24   BY MR. LEARY:

25       Q. -- (Indiscernible crosstalk) -- Miramonte.

```
 1   1        But you knew either upon check-in or check
 2   2   out that a resort had been charged or would be
 3   3   charged?
 4   4        A. On check-in, yes.
 5   5        Q. On check in.
 6   6        And so after that date, when you were going
 7   7   through to book hotel rooms, did you -- you were
 8   8   aware that a hotel might charge a hotel fee, right?
 9   9        MR. LITTERAL:  Calls for speculation.
10  10        THE WITNESS:  If it says where I booked.
11  11   BY MR. LEARY:
12  12        Q. Well, when you booked at the Miramonte, it's
13  13   your testimony that you didn't see any reference to
14  14   a resort fee when you booked your room?
15  15        MR. LITTERAL:  Asked and answered.
16  16        THE WITNESS:  Correct.
17  17   BY MR. LEARY:
18  18        Q. Okay.  But because you stayed there, you now
19  19   had this heightened awareness that hotels might
20  20   charge a resort fee, right?
21  21        MR. LITTERAL:  Misstates testimony.  Calls
22  22   for speculation.
23  23        THE WITNESS:  I don't know.  I don't know
24  24   what they're going to charge.
25  25
```

1    BY MR. LEARY:

2        Q. Right.  But you understood, after staying,

3    that a hotel may charge a resort fee?

4            MR. LITTERAL:  Calls for speculation.

5            THE WITNESS:  Sure.

6    BY MR. LEARY:

7        Q. Right?

8        A. Sure.

9        Q. And so what did you do moving forward as a

10   reasonable consumer to confirm for a hotel was

11   charging you a resort fee when you booked that

12   hotel?

13           MR. LITTERAL:  Calls for speculation.

14           THE WITNESS:  If it says booked for this

15   price, that's what I did.  I don't read into it.

16   BY MR. LITTERAL:

17       Q. What do you mean you "don't read into it"?

18       A. I don't go digging other charges or anything

19   like that.  If it says book here for 227, that's

20   what I click on.

21       Q. Okay.  And your testimony is that on

22   occasion there were times when you booked for -- and

23   I'll use your number, 227, but that's not what you

24   were charged at the hotel?

25       A. That is correct.

1        Q. Okay.  But listen to my question again.

2            What did you do when you went through the

3    booking process to confirm if a hotel may charge a

4    resort fee?

5            MR. LITTERAL:  Objection to form.

6    BY MR. LEARY:

7        Q. I'm sorry?

8        A. Nothing.

9        Q. You didn't do anything?

10       A. I didn't look for a resort fee or booking

11   fee.

12       Q. All right.  You never looked for it?

13       A. No.

14           MR. LITTERAL:  Misstates testimony.

15   BY MR. LEARY:

16       Q. And that was your custom and habit?

17       A. Yes.

18           MR. LITTERAL:  Misstates testimony.

19   BY MR. LEARY:

20       Q. All right.  So to the extent that a resort

21   fee --

22           MR. LITTERAL:  Allow me to object, and then

23   you can answer.

24           MR. LEARY:  Yeah.  He's not liking your

25   answer.  That's why he's telling you that.

1    MR. LITTERAL:  Actually, I'm asking if you

2   can just slow down that would be useful.

3   BY MR. LEARY:

4       Q. So you're -- you never looked for resort fee

5   information as you were going through the booking

6   process, correct?

7           MR. LITTERAL:  Objection.  Misstates

8   testimony.  Mischaracterizes the evidence.

9   BY MR. LEARY:

10       Q. Is that, correct?

11       A. Correct.

12       Q. What was the most important feature> was it

13   the price?

14       A. Yes.

15       Q. Okay.  How about amenities?

16       A. No.

17       Q. That didn't -- you didn't care about that?

18           MR. LITTERAL:  Misstates testimony.

19           THE WITNESS:  No.

20   BY MR. LEARY:

21       Q. I'm sorry?

22       A. No.

23       Q. How about rooms?

24       A. As long as they're clean.

25       Q. But a particular type of room you always

1    looked for?

2         A. What do you mean?

3         Q. Did you look for a particular room?  For

4    example, you have two children, right?

5         A. Right.

6         Q. Would you look for a suite that can house

7    everyone or adjoining rooms?  Tell me about that.

8         A. As long as it's got two beds.

9         Q. Meaning all four would be in same room?

10        A. Correct.

11        Q. So sometimes you would look for two queens?

12             MR. LITTERAL:  Objection to form.

13   BY MR. LEARY:

14        Q. Is that fair?

15        A. To queens, two doubles.

16        Q. So would you at least look for rooms that

17   could accommodate your family?

18        A. Yes.

19        Q. So you would look through website to see if,

20   in fact, what you were booking could accommodate

21   your family?

22        A. Yes.

23        Q. And then you would also, at the end, did you

24   ever look to see the summary of your charges?

25        A. No.

1    Q. Did you care what the summary of charges

2    were?

3        MR. LITTERAL:  Objection to form.

4    BY MR. LEARY:

5        Q. I'm sorry?

6        MR. LITTERAL:  Calls for speculation.

7    BY MR. LEARY:

8        Q. I'm sorry.  I missed your answer.

9        A. It would see it says room charge, taxes, and

10   the total.

11       Q. Right.  My question is:  Did you ever care

12   to look and see what the summary of your charges

13   were?

14       A. As long as it's within my budget, I didn't

15   care.

16       Q. And for the hotels I've shown you so far, I

17   want to make sure I understand the entire world of

18   your booking process.  It could have been the Gov.

19   Vacation Rewards account?

20       A. Yes.

21       Q. It could have been on your Bonvoy app?

22       A. Yes.

23       Q. It could have been on the hotels website

24   directly?

25       A. Yes.

1    1         Q. It could have been on a OTA, meaning --

2    2             MR. LITTERAL:  Misstates testimony.

3    3    BY MR. LEARY:

4    4         Q. -- an Expedia, an online travel agency?

5    5         A. Yes.

6    6         Q. Okay.  You've used those?

7    7         A. Yes.

8    8         Q. Do you have a preferred one?

9    9         A. No.

10   10        Q. Have you used Expedia to book hotel room?

11   11        A. I don't recall if I did or not.

12   12        Q. Which ones do you believe you have used?

13   13        A. Most of the time it's Government Vacation

14   14   Rewards.

15   15        Q. Okay.  And then how about by phone?

16   16        A. No.

17   17        Q. Have you covered all the ways in which you

18   18   may have booked hotel rooms?

19   19        A. I believe so.

20   20        Q. Okay.  Now, when you booked your rooms, let

21   21   me ask you this, and I'll show you some web pages,

22   22   but did you have an understanding that when you went

23   23   to book a hotel room on any of the websites you

24   24   looked at, and you selected the bed of your choice,

25   25   you know, the queen beds you were mentioning, did

84

1    1    you see where the price, the advertised price, would

2    2    change as you went through the booking process?

3    3         MR. LITTERAL:  Calls for speculation.

4    4         THE WITNESS:  Yes.

5    5    BY MR. LEARY:

6    6         Q. And that the price on the first page at the

7    7    end was not what you were paying for the room,

8    8    correct?

9    9         A. Yes.

10   10        Q. Okay.  The fee at the end was higher,

11   11   correct?

12   12        A. Yes.

13   13        Q. Okay.  And when you did book your rooms, you

14   14   assess the price charge from when you first began

15   15   the booking process to when you completed it,

16   16   correct?

17   17        A. Yes.

18   18        Q. Okay.  And you also were aware that taxes

19   19   were being charged before booking the room, correct?

20   20        A. Yes.

21   21        Q. And you were not prevented from

22   22   independently researching the amount of the resort

23   23   fee in any products and amenities included, right?

24   24        MR. LITTERAL:  Object to form.

25   25        THE WITNESS:  I don't understand the

1    THE WITNESS:  I do not.

2  BY MR. LEARY:

3    Q. Okay.  And as you sit here, you can't say

4  for sure whether there may have been a reference to

5  a resort fee or not when you went through booking

6  process?

7    MR. LITTERAL:  Objection.  Asked and

8  answered.

9    THE WITNESS:  Correct.

10  BY MR. LEARY:

11    Q. If there had been a reference to the resort

12  fee as you were going through, would you still have

13  stayed at the hotel?

14    A. Maybe.

15    Q. Number 11 states:  Was Mr. Abdelsayed able

16  to ascertain the resort fee amount and what products

17  and services were included in the resort fee before

18  completing the final reservation booking at the

19  Marriott.

20    Do you see that?

21    A. Uh-huh.

22    Q. And your answer was -- your initial answer

23  "Plaintiff does not recall," correct?

24    A. Correct.

25    Q. And that answer was accurate?

1          A    I don't recall.

2          Q    In other words, do you remember seeing

3    something that prompted you to want to stay there, or

4    did you -- because you knew the hotel, you just

5    wanted to get away for the weekend?

6               MR. LITTERAL:  Objection to form.

7               THE WITNESS:  You asked me that last time.

8    I told you my wife saw it, and she wanted to stay

9    there.

10   BY MR. LEARY:

11         Q    She wanted to stay there.  Okay.

12              And, as you can see, the e-mail that you

13   received the same day you booked identified what was

14   going to be your charge for the night; right?

15              You were paying $173 for the night?

16         A    Yes.

17         Q    And that was, in fact, what you paid per

18   night at the room -- at the hotel; correct?

19         A    Yes.

20         Q    Okay.  And then you also received

21   confirmation of what was going to be your estimated

22   government taxes and fees.

23              Do you see that?

24         A    Yes.

25         Q    And you also received notification of your

1    resort fee; correct?

2        A   At the end.  Not on the front with the full

3    price.

4        Q   Did you see it, sir?

5        A   Not at the time.  No.

6        Q   Okay.  So you didn't read this?

7        A   I didn't.  No.

8            MR. LITTERAL:  Asked and answered.

9    Argumentative and harassing.

10   BY MR. LEARY:

11       Q   I'm sorry?

12       A   No.

13       Q   You never saw this e-mail?

14       A   I saw the price on the front, and that was

15   it.  I didn't read the whole e-mail.  I didn't go all

16   the way to the last page or whatever page that is.

17       Q   Okay.  Well, this page is part of the e-mail

18   confirming what your summary of charges was going to

19   be.

20       A   Okay.

21       Q   Okay?

22           And did you actually see, then, your total

23   cost of what it was going to be there?

24           MR. LITTERAL:  Asked and answered.

25           THE WITNESS:  It's on the front.  That's

1    what I saw.

2    BY MR. LEARY:

3        Q    The 474?

4        A    Whatever is on the front page, yeah.

5        Q    Okay.  So on the front page here, showing

6    the confirmation --

7             And this is something you printed off your

8    computer; right?

9        A    Yeah.

10       Q    Right?

11            Okay.  How many pages was it on your

12   computer?  Do you know?

13            MR. LITTERAL:  Calls for speculation.

14            THE WITNESS:  I don't know.

15   BY MR. LEARY:

16       Q    Okay.  Is there a reference to the amount

17   here on this first page?

18       A    Either the first or the second page.

19   Somewhere in there.

20       Q    Okay.  Okay.  But looking at the document on

21   the screen, is there any reference to how much you

22   were going to -- your total cost was going to be?

23            MR. LITTERAL:  Can you show him the whole

24   document here?

25            THE WITNESS:  Just let me see the document.

1          MR. LEARY:  What I'm showing him is the

2    first page, Bates stamped 252.

3          MR. LITTERAL:  You're not really showing him

4    the whole page, though.  You're giving him an

5    excerpt.

6          MR. LEARY:  Okay.

7          MR. LITTERAL:  It would be useful if we

8    could see the whole document.

9          (Exhibit 25 was marked for identification.)

10   BY MR. LEARY:

11        Q   Okay.  Here's the first page of the whole

12   document you printed off.

13        A   Okay.

14        Q   Is there a reference there to the total

15   cost?

16        A   No.

17        Q   Okay.  Here is, as printed, what came out as

18   the second page.

19            And does that show you the total stay?

20        A   Yes.

21        Q   And is that the amount that you agreed to

22   pay when you were online?

23            MR. LITTERAL:  Asked and answered.

24            THE WITNESS:  Yes.

25   ///

1   BY MR. LEARY:

2        Q   Okay.  And what amount is that, sir?

3        A   474.56.

4        Q   Okay.  So when you booked -- again, you're

5   not sure whether it was by app or online -- early

6   that day, that's the amount you agreed to pay?

7        A   Yes.

8        Q   Okay.  And in doing that, you had selected a

9   guest room with two double beds; right?

10       A   Yes.

11       Q   All right.  And you saw, as advertised on

12  the website, that a guest room with two double beds

13  was going to cost $173 a night; correct?

14           MR. LITTERAL:  Asked and answered.

15           THE WITNESS:  Wherever it's advertised.

16  Yeah.

17  BY MR. LEARY:

18       Q   Okay.  Do you see that there?

19       A   Yes.

20       Q   Okay.  And so this total amount that you

21  agreed to book online for 474 pages -- $474.56,

22  that's in the e-mail we just showed you; right?

23       A   Yes.

24       Q   Again, it's provided in your summary of

25  charges.

1          Here's the summary of charges.  There's your

2     Friday night through Sunday.  There's your two nights

3     at 173 per night.

4          Do you see that?

5     A    Uh-huh.

6     Q    Were you getting a government rate?

7     A    I guess.

8     Q    Okay.  And then you have your estimated

9     government taxes and fees and your resort fees.

10         And then it has the total -- okay? -- and

11    the total again is 474.56; right?

12    A    Yes.

13    Q    Okay.  So that total amount there, which was

14    also identified earlier, is the total amount that you

15    agreed to book at the hotel.

16         MR. LITTERAL:  Asked and answered.

17    BY MR. LEARY:

18    Q    Right?

19    A    Yes.

20    Q    Okay.  And that total amount included the

21    resort fee; correct?

22    A    Well, it didn't say it at the front, but

23    sure.

24    Q    And that amount includes the resort fee;

25    right?

1      A   Okay.

2      Q   And also I see there were some other charges

3   that were provided to you for parking.

4          Do you see that?

5      A   Yeah.

6      Q   And you ended up self-parking on-site;

7   correct?

8      A   Yes.

9      Q   And paid the $35 a day; correct?

10     A   Yes.

11     Q   Okay.

12         MR. LITTERAL:  I want to go ahead and take

13   that break soon, Paul.

14         MR. LEARY:  Do you want to take a break now?

15         MR. LITTERAL:  A couple of minutes would be

16   useful.  I could use the restroom.

17         MR. LEARY:  If you want to take a break --

18         I mean, we just started, but --

19         We've usually been going at least an hour

20   each time.

21         MR. LITTERAL:  That's fine.

22         MR. LEARY:  Is that okay?

23         MR. LITTERAL:  No.  I would like to use the

24   restroom.

25         MR. LEARY:  Okay.  Use the restroom.

1    of charges that you received after you booked your

2    stay at Coronado.

3        A    Yes.

4        Q    Okay.  And we've gone over your

5    interrogatory responses today, indicating several

6    times that --

7            You indicated that when you booked your room

8    at the Coronado, you didn't recall seeing any

9    reference to a resort fee; correct?

10       A    Yeah --

11           MR. LITTERAL:  Asked and answered.

12           THE WITNESS:  Yes.

13   BY MR. LEARY:

14       Q    Okay.  And, again, this was something you

15   booked a couple days beforehand, and it's possible

16   that the resort fee was there; you just didn't see

17   it.  Correct?

18           MR. LITTERAL:  Objection to form.  Calls for

19   speculation.

20           THE WITNESS:  Yes.

21   BY MR. LEARY:

22       Q    Okay.  And to the extent we've gone over

23   documents here today -- well, strike that.

24           And in your interrogatory responses several

25   times, again you stated that you denied the resort

1  BY MR. LEARY:

2      Q   Okay.  Now, again -- and I can show you

3  these discovery responses, but in August and again in

4  October, you provided verified responses denying that

5  a resort fee was ever disclosed during the booking

6  process.  Okay?

7      A   Okay.

8      Q   What statement is inaccurate?  Your

9  interrogatories or the complaint?

10         MR. LITTERAL:  Mischaracterizes evidence.

11         THE WITNESS:  I don't think anything's

12  inaccurate.

13 BY MR. LEARY:

14     Q   Well, on one document, you verified that the

15 resort fee is disclosed; correct?

16     A   Okay.

17     Q   In your interrogatory responses, you state

18 the resort fee is not disclosed.

19         MR. LITTERAL:  I'll object to this whole

20 line of questioning as mischaracterizing evidence.

21 This is an example that's listed in the complaint.

22         MR. LEARY:  Okay.

23         THE WITNESS:  I mean, if it's there, it's

24 hard to see.  So --

25 ///

1    BY MR. LEARY:

2        Q    Okay.  Right.  It may be, according to you,

3    hard to see, but it's there; correct?

4        A    Yes.  Correct.

5            MR. LITTERAL:  Argumentative.  Asked and

6    answered.

7    BY MR. LEARY:

8        Q    And as you went through the booking process,

9    you may have just overlooked it when you were going

10   through the booking process.

11       A    It could be.  Yes.

12           MR. LITTERAL:  Calls for speculation.

13   BY MR. LEARY:

14       Q    And the reason I say that is I want to make

15   sure that when you say the resort fee was never

16   disclosed, it's not that you know for sure; you just

17   can't recall.

18       A    Correct.

19       Q    Okay.  But you know --

20           At least from the complaint you verified,

21   I've shown you two examples where the resort fee was

22   disclosed during the booking process; right?

23       A    Yes.

24       Q    Okay.  By the way, have you identified or

25   can you tell me or show me through a document of any

1    false statements on Marriott's website?

2        A    No.

3        Q    Okay.  And according to your discovery

4    responses, you never read any reference to a resort

5    fee amenity during the booking process; correct?

6        A    Correct.

7        Q    All right.  And I think you're not sure what

8    amenities you used at the Coronado when you were

9    there; correct?

10       A    Correct.

11           MR. LITTERAL:  Asked and answered.

12   BY MR. LEARY:

13       Q    All right.  So if you never read anything

14   about a resort fee, you clearly didn't read what

15   amenities might have accompanied the fee; correct?

16           MR. LITTERAL:  Objection to form.

17           THE WITNESS:  Yes.

18   BY MR. LEARY:

19       Q    All right.  So you have no information, as a

20   plaintiff in this class action lawsuit, indicating

21   that what Marriott represents in their blue box

22   regarding amenities is false; is that fair?

23           MR. LITTERAL:  Mischaracterizes prior

24   testimony.

25           THE WITNESS:  Yeah.

```
 1              THE WITNESS:  Yes.

 2              MR. LEARY:  Okay.

 3              THE WITNESS:  But do you see my point?

 4     BY MR. LEARY:

 5         Q   And if you had any questions regarding what

 6     was going to be in the summary of charges, as a

 7     reasonable consumer, you would want to check the

 8     summary of charges; correct?

 9              MR. LITTERAL:  Calls for speculation.

10     Objection to form.

11              THE WITNESS:  If it fits in my budget, I'm

12     good to go.

13     BY MR. LEARY:

14         Q   Well, besides your budget --

15              Because consumers take different approaches

16     when they book rooms.  Fair?

17              MR. LITTERAL:  Mischaracterizes evidence.

18     Incomplete hypothetical.

19     BY MR. LEARY:

20         Q   Some are interested in price; correct?

21         A   Yes.

22         Q   Including if it fits within the budget;

23     right?

24         A   Yep.

25         Q   Some are interested in the type of hotel;
```

1  correct?

2          MR. LITTERAL:  Calls for speculation, this

3  whole line of questioning.

4  BY MR. LEARY:

5      Q   Right?

6      A   Sure.

7      Q   Some consumers want to make sure that there

8  are certain amenities provided at the hotel; correct?

9          MR. LITTERAL:  Calls for speculation.

10          THE WITNESS:  Yep.

11  BY MR. LEARY:

12      Q   Okay.  So -- but for you, as you went

13  through the booking process, you just wanted to make

14  sure whatever amount you booked fell within your

15  budget.

16          MR. LITTERAL:  Asked and answered.

17  BY MR. LEARY:

18      Q   Correct?

19      A   Yes.

20      Q   And the amount that you booked for the

21  hotel, for the stay at the Coronado, stayed within

22  your budget; right?

23      A   Yes.

24      Q   And as you went through the booking process,

25  you were focused on making sure you understood the

1          THE WITNESS:  No.  Just the legal ones.

2     BY MR. LEARY:

3          Q    Okay.  "The Marriott website contains two

4     separate line items for a resort fee and estimated

5     government taxes and fees respectfully," and you

6     couldn't -- it says "Plaintiff is unable to admit or

7     deny this request."  Correct?

8          A    Yes.

9          Q    And that, again, is because you simply don't

10    have any recollection of what you reviewed when you

11    booked your room.

12         A    Correct.

13         Q    The next question, there's no language --

14              This is 21.  "There's no language on the

15    Marriott website stating the resort fee is a

16    government fee."  And again it says "Plaintiff is

17    unable to admit or deny this request at that time."

18              And that's because you have no recollection

19    of your booking process; correct?

20              MR. LITTERAL:  Asked and answered.

21              THE WITNESS:  Correct.

22    BY MR. LEARY:

23         Q    But as we covered earlier, you didn't see

24    any language during the booking process where

25    Marriott indicated the resort fee is a mandatory

1    government fee; right?

2         MR. LITTERAL:  Asked and answered.

3         THE WITNESS:  Correct.

4    BY MR. LEARY:

5    Q    Okay.  All right.  Next, No. 23, it says

6    "Marriott's website does not state that the total

7    charge for booking a hotel room starts at a certain

8    dollar amount."

9         Do you see that?

10   A    Yes.

11   Q    And, again, you're not able to admit or deny

12   that based upon your experience?

13   A    Correct.

14   Q    Okay.  But from your experience, you knew

15   that -- when you first started looking at the

16   Coronado and you found the government discount rate,

17   you knew that was not going to be the total amount

18   for your stay; right?

19        MR. LITTERAL:  Asked and answered.

20        THE WITNESS:  Yes.

21   BY MR. LEARY:

22   Q    And when you finally -- before you elected

23   to book your room, you were shown on different

24   occasions the total amount for your stay.

25        MR. LITTERAL:  Objection to form.

1          THE WITNESS:  Yes.

2     BY MR. LEARY:

3          Q    Okay.  And you just can't tell me, as you

4     sit here today, whether you then looked to determine

5     what went into that total amount; correct?

6          MR. LITTERAL:  Asked and answered.

7          THE WITNESS:  Correct.

8     BY MR. LEARY:

9          Q    Okay.  The only concern was if that total

10    amount still fit within your budget.

11         A    Correct.

12         Q    Okay.  And then No. 25 says "The price of

13    the advertised room online" --

14         Let me start again.  25, "The price of the

15    advertised online room rate for a Marriott hotel room

16    increases during the online booking process and

17    includes any applicable resort fee and taxes prior to

18    completion of room booking."

19         And, again, your answer was you're unable to

20    admit or deny that; correct?

21         MR. LITTERAL:  Objection.

22         MR. LEARY:  Sorry.

23         Q    You're unable to admit or deny it; correct?

24         A    Yes.

25         MR. LITTERAL:  And also mischaracterizes the

1        Q    Okay.  And that once booked, the class

2   members would have received an e-mail confirmation

3   detailing their stay; correct?

4        A    Yes.

5        Q    And in that e-mail, it would have identified

6   once again the total amount that you agreed to book

7   for the hotel; correct?

8        A    Yes.

9        Q    And that total amount was the same amount

10  that was on the website or the app when you booked

11  it; right?

12           MR. LITTERAL:  Calls for speculation.

13           THE WITNESS:  Yes.

14  BY MR. LEARY:

15       Q    Okay.  And that total amount is actually

16  what was charged when they walked into the hotel;

17  correct?

18           MR. LITTERAL:  Calls for speculation.

19           THE WITNESS:  Yes.

20  BY MR. LEARY:

21       Q    Okay.  And if your claims were typical,

22  you -- the class would not have raised any objections

23  or concerns to the resort fee when they arrived at

24  the hotel.

25           MR. LITTERAL:  Calls for speculation.

# Exhibit H



Deposition of:
# Todd Hall

*July 9, 2021*

In the Matter of:

# Hall, Toddv. Marriott International Inc.

Veritext Legal Solutions
888.777.6690 | cs-midatlantic@veritext.com | 215-241-1000

1

2

3          I, the undersigned, a Certified Shorthand

4    Reporter of the State of California, do hereby

5    certify:

6          That the foregoing proceedings were taken

7    before me at the time and place herein set forth;

8    that any witnesses in the foregoing proceedings,

9    prior to testifying, were placed under oath; that a

10   verbatim record of the proceedings was made by me

11   using machine shorthand which was thereafter

12   transcribed under my direction; further, that the

13   foregoing is an accurate transcription thereof.

14          I further certify that I am neither

15   financially interested in the action nor a relative

16   or employee of any attorney of any of the parties.

17          IN WITNESS WHEREOF, I have this date

18   subscribed my name.

19

20   Dated:  7/15/2021

21

22

23          _____

             MONICA M. CLINE

24             RPR, CSR NO. 8933

25

1       Q    Okay.

2       A    -- go ahead and do it.

3       Q    Okay.  Now, given your history of staying

4    at hotels for almost two months out of the year,

5    most of those or all of those were usually booked

6    online; is that correct?

7       A    Yes.

8       Q    And you would go directly to either the

9    hotel or an OTA like a Travelocity?

10      A    You asked me if I would do that?

11      Q    Yes, sir.

12      A    Yes.

13      Q    I just want to make sure I understood that

14   through this process it was you on your computer

15   looking up a hotel website or a OTA to search for a

16   hotel room in a destination city.

17      A    99 percent of the time, yes.

18      Q    Fine.

19           And over the course of this period where

20   you were staying in hotels two months out of the

21   year, you stayed at a variety of different brands;

22   is that fair?

23      A    Yes.

24      Q    And do you know how many memberships you

25   would have had over that period of, let's say, back

1  BY MR. LEARY:

2      Q    The page before you book but where you see

3  the total price of the room, was it your habit to

4  look and see if you could identify the summary of

5  charges?

6          MR. HOUCHIN:  Same objections.

7          THE WITNESS:  Most of the time, sure.

8  BY MR. LEARY:

9      Q    I mean, you were an experienced traveler;

10 correct?

11     A    Yes.

12     Q    You knew when you got on a website

13 typically what you wanted in terms of a hotel or

14 location and any special things you wanted at a

15 hotel room; right?

16     A    Yes.

17     Q    That would include, for example, you might

18 want a higher room than a lower room?

19     A    Sure.

20     Q    You might want a certain type of pillow?

21     A    Sure.

22     Q    Okay.  And so when you were booking these

23 rooms, you would endeavor to try to find out what

24 went into the total charge before you paid for that

25 room; right?

```
 1   fees and taxes bracket.

 2        Q    Did you make any inquiries?

 3        A    No.

 4        Q    Okay.  So did you ever ask whether a resort

 5   fee or destination fee is actually in fact a

 6   government-imposed tax?

 7        A    No, I have asked that, that's for sure.  I

 8   have asked that.

 9        Q    And who did you ask?  Hotel operator?

10        A    No.  Front desk clerks.

11        Q    Okay.  And what was their response?

12        A    They call it a bunch of different things,

13   but they make it -- they don't -- they don't lend

14   you to believe it's a government fee.  They tell

15   you, look, it's a resort fee.

16        Q    And as a hospitality business and industry,

17   you don't grudge the hotel for trying to drive

18   revenue, do you?

19        A    Oh, no.

20        Q    And you are aware that there are amenities

21   that come with resort fees; right?

22             MR. HOUCHIN:  Objection.  Calls for

23   speculation.

24             THE WITNESS:  Yes.

25   BY MR. LEARY:
```

1      Q    Okay.  And we'll get back to your stay

2   there in a moment, but let me talk about the

3   Sheraton for a minute because then you went online

4   and booked another room, or was it one room at the

5   Sheraton?

6      A    Yes.

7      Q    And that was the Sheraton in Maui?

8      A    Yes.

9      Q    You stayed there in October of 2018?

10     A    Yes.

11     Q    And I think you booked it about two months

12  earlier, in your response; is that correct?

13     A    Yes.

14     Q    And by the way, before we leave the

15  Sheraton -- the Marquis here, do you recall -- I may

16  have asked you this, forgive me -- after you booked

17  the room that you received a confirmation of your

18  charges?

19     A    I did receive a confirmation of the

20  charges.  Are you talking about San Diego?

21     Q    Yeah.  Sorry.  Just give it a second.

22          Okay.  Go ahead.

23     A    Yes.

24     Q    Yes, you did receive a summary, a

25  confirmation?

```
1        A    Yes.

2        Q    And did you review it?

3        A    Not at the time, no.

4        Q    So you didn't see what went into the total

5   cost at that point?

6        A    No.

7        Q    Did you care what went into the total cost?

8        A    Yes.

9        Q    Why?

10       A    Well, price is always a factor, you know.

11       Q    Okay.  So did you do anything to try to

12  understand what the total cost was?

13       A    No.

14       Q    Was the trip to Maui -- did you book that

15  through a Marriott website?

16       A    Well, no.  It was through a Sheraton

17  website.

18       Q    Okay.  So you went onto a Sheraton website

19  to look for rooms there?

20       A    Yes.

21       Q    Okay.  And was this a work trip?

22       A    No.

23       Q    Okay.  Was any part of that trip a work

24  trip?

25       A    There was a couple of days leading up to it
```

1   that were.

2          Let's back up for a second.  You said did I

3   go on a Marriott website, and I said Sheraton.  Now

4   that I'm thinking about it, I can't remember which

5   one.  It was either one of those.

6      Q    So it was either the Sheraton or the

7   Marriott you went on to check out rooms at the

8   Sheraton Maui?

9      A    Yes, they were merging back then.  I can't

10  remember which one I went onto.

11     Q    Okay.  And so you had business on Maui

12  before you stayed at the Sheraton Maui?

13     A    No.

14     Q    Okay.  I'm just confused by your answer.

15  You indicated it was not business, but there was

16  business before there?

17     A    I was in Maui for business.

18     Q    Okay.

19     A    When business concluded, I added a couple

20  of days on for personal.

21     Q    So when did you arrive in Maui?

22     A    I'd have to look at a calendar.

23     Q    The information you provided in your

24  discovery responses indicates that on October 10th

25  through October 13th, plaintiff stayed at the

1    A    And it's not disguised as anything other

2  than a fee.

3    Q    Did you at any time see on a Marriott

4  website where they labeled the destination or resort

5  fee as a government tax?

6    A    Labeled?

7    Q    Yes.

8    A    No.

9    Q    Have you ever seen on a Marriott website

10  where they place notification to a consumer of a

11  resort fee in a separate blue box at the top of the

12  page where you're going to select your room?

13    A    I have seen it recently.

14    Q    Okay.  So we're clear in this case, is it

15  your testimony that you never sought any disclosure

16  of a resort fee when you booked your room at the

17  Sheraton Marquis?

18    A    That is my testimony.

19    Q    That you went through every page and you go

20  through every page; right?

21    A    To get to the purchase page?

22    Q    Yes.

23    A    Sure.

24    Q    And in your answers to interrogatories, you

25  say you actually observe and review all the

1   information on each page as you go through the

2   booking process; right?

3       A    Yes.

4       Q    And through that booking process, it's your

5   testimony that you never saw any type of a blue box

6   with a reference to a resort fee for that property,

7   the Sheraton Marquis?

8       A    Yes.

9       Q    All right.  You have no physical

10  documentation to support that; is that fair?

11      A    That is fair.

12      Q    All right.  And that's your same testimony

13  for the Sheraton Maui?

14      A    Yes.

15      Q    And if there had been any reference at all,

16  blue box, or if you checked on the summary of

17  charges and saw it there, you would never have

18  booked your hotel room there?

19          MR. HOUCHIN:  Objection.  Incomplete

20  hypothetical.  Calls for speculation.

21  BY MR. LEARY:

22      Q    Is that fair?

23      A    Most likely I wouldn't have done it.

24      Q    Well, most likely or definitively?

25      A    There's a lot of variables involved.

1      Q    Well, I need to understand.  Perhaps you

2  would have still booked it?

3           MR. HOUCHIN:  Same objections.

4           THE WITNESS:  Well, it would depend on a

5  few different things.

6  BY MR. LEARY:

7      Q    Such as?

8      A    Total cost.

9      Q    Okay.  And anything else?

10     A    What it included.

11     Q    Okay.  Anything else?

12     A    Not that I can think of.

13     Q    And so with respect to the -- in your

14  testimony, the absence of a reference to any resort

15  fee, you obviously didn't see any reference to any

16  amenities; correct?

17     A    That is correct.

18     Q    All right.  So you have no basis upon which

19  to testify in this case that Marriott misrepresented

20  the amenities that were accompanying the resort fee

21  at the Sheraton Marquis or the Sheraton -- excuse

22  me -- the Marriott Marquis or the Sheraton Maui; is

23  that fair?

24           MR. HOUCHIN:  Objection.  Compound.

25           THE WITNESS:  Well, by definition, if I

1          MR. LEARY:  It's a logical point, I think.

2     Okay.  You okay for 10 minutes?

3          THE REPORTER:  (Nods head).

4          (Exhibit 19 was marked.)

5     BY MR. LEARY:

6     Q    19.  This came from Intoxicator.  It's

7     62409 down at the bottom.  Okay?  And this appears

8     to be an email from Marriott to you on  March 21st

9     of '18 wherein you booked a room at the Marriott

10    Marquis San Diego; correct?

11    A    Yes.

12    Q    You didn't produce this in this case.  Do

13    you know why?

14    A    It must not have come up during the search.

15    Q    Well, didn't you search for terms like

16    "Marriott" and did you also look for like "San Diego

17    Marina"?

18    A    I looked for those and a lot more.

19    Q    Okay.  And this document never came up that

20    was on Intoxicators' website that you used the

21    search terms and you never saw this document?

22    A    Right.  I mean, I don't know what kind of

23    server they have or anything like that.  I don't

24    know how far back my deleted box goes, but it was

25    not produced by me.

1     Q    You just don't know either way?

2     A    I don't know.

3     Q    Okay.  And again, it's your testimony that

4  there was no disclosure of the $25 resort fee when

5  you went through the booking process?

6     A    Correct.

7     Q    The website did give you an opportunity to

8  review all of the summary of your charges; correct?

9     A    I would imagine, though I don't know for

10  certain.

11     Q    Okay.  When you booked the room knowing

12  that it initially was $151, and then you booked it

13  for $198, did you care where the additional $47.77

14  came from?

15     A    Well, I cared, sure, you bet.

16     Q    But you didn't inquire about it?

17     A    I assumed it was taxes.

18     Q    Okay.  But that was your personal

19  assumption; correct?

20     A    Yes.

21     Q    Okay.  And so I think we've covered this,

22  but you knew the initial advertised price changed

23  before you booked the room; right?

24     A    Yes.

25     Q    Are you suggesting or is it your testimony

```
 1              THE WITNESS:  Yes.
 2     BY MR. LEARY:
 3         Q    Okay.  In your complaint there was
 4     reference to a 15-minute timer and how it may
 5     influence consumers.
 6              Were you aware of a 15-minute timer when
 7     booking hotels?
 8         A    Yes.
 9         Q    And were you rushed when you booked your
10     hotel at the Marriott Marquis in San Diego?
11         A    Yes.
12         Q    Why were you rushed?
13         A    Well, according to the website, when the
14     counter starts ticking, it warns you that the rate
15     may increase if you don't act quickly.
16         Q    And you said you booked your room in about
17     10 minutes?
18         A    Give or take.
19         Q    Okay.  Do you think that you may have been
20     rushing through and you might have missed the blue
21     box?
22              MR. HOUCHIN:  Objection.  Calls for
23     speculation.
24              THE WITNESS:  You know, it's hard to say.
25     BY MR. LEARY:
```

1       A    No, I was not.

2       Q    You were at the beach or at your car show;

3   right?

4       A    Antique Show.

5       Q    Antique Show.

6            And the same with the Sheraton Maui, you

7   were out experiencing the island; right?

8       A    Yes.

9       Q    Okay.  Rather than take a break and look at

10  my notes, I'm just going to slowly go through them

11  and click off a couple and then we're done.

12           Is that all right?

13           MR. HOUCHIN:  That's fine.

14           MR. LEARY:  Are you guys good?  It's only

15  going to be five minutes instead of saying let me

16  check my notes.

17  BY MR. LEARY:

18      Q    All right.  So we're clear, we don't have

19  any print screenshots depicting what you actually

20  reviewed before booking a room; right?

21      A    I do not have that, no.

22      Q    All we have is what has been listed in the

23  complaint; correct?

24      A    Yes.

25      Q    And you believe what's listed in the

# Exhibit I



## Marriott Marquis San Diego Marina

♀ 333 West Harbor Drive, San Diego, California 92101 USA   ☎ +1 619-234-1500 ⌄   ●●●●○ 4.5   3749 Reviews   Currency Calculator

⏱ Reserve Your Room Before Time Runs Out!

| Stay Dates | Room Details | Total for Stay | | |
|---|---|---|---|---|
| Thu, Dec 17, 2020 - Fri, Dec 18, 2020 | 1 King Bed, City View, Room | 237.02 USD | ⏱ Room(s) held for: 14:37 | CHANGE |

# Guest Information

**SIGN IN FOR FASTER BOOKING**

We value your privacy. See our **Global Privacy Statement**.

All fields are required unless otherwise stated.

## Name

Title

(Optional)                                          ⌄

First Name                                          Last Name

Email Address

Marriott Bonvoy Member Number (Optional)

☐ Send my reservation confirmation by SMS

Company Name (Optional)

Note: To be credited for this stay, the name on your Marriott Bonvoy account must match the guest name.

## Address

Country/Region

USA                                                 ⌄

Address

City

State/Province                                    Zip Code

Select State                              ⌄

**Are you a travel agent?**

☐ Yes, I am a travel agent or planner

## Select Payment Option

A valid form of payment must be presented at check-in

☐ Pay using  [ >> ]  **Click to pay**

● Pay using Credit/Debit Card  

Why we ask for this?

Credit/Debit Card Number

Expiration Month                                   Expiration Year

Month                                   ⌄        Year                                   ⌄

CVV Number

**Free Wi-Fi + mobile check-in + our lowest member rates all the time**

☑ Instantly join Marriott Bonvoy and enjoy the perks with each stay.

Password

Confirm password

☑ Remember me (recommended for private computers only).

☑ I would like to receive account updates, program news and offers via email and direct mail.

☑ I would like to receive exclusive offers from select third parties.

By signing up, I agree to Marriott's **Terms of Use**, **Privacy Statement** and **Data Protection Clause**.

You may cancel your reservation for no charge before 11:59 PM local hotel time on December 16, 2020 (1 day[s] before arrival). Please note that we will assess a fee of 197.65 USD if you must cancel after this deadline.

LEARN MORE ›

[ **BOOK NOW** ]

## Phone Reservations

Marriott Reservations in the US and Canada: 1-888-236-2427
The Ritz-Carlton, US and Canada: 800-542-8680
Worldwide: **CALL YOUR RESERVATION CENTER**



## Our Lowest Prices. Instant Benefits. Only on Marriott.com

Enjoy instant benefits like our Best Rate Guarantee, Mobile Check-In, Free Wi-Fi and Earn Free Nights only when you book directly on Marriott.com.

**LEARN MORE  >**



## Unlock your stay with the Marriott Bonvoy™ App

**LEARN MORE** 🖳

**Top Destinations** ⌄

**For Guests** ⌄

**Our Company** ⌄

**Follow Us**  [f]  [⊙]  [▸]  [◉]  [▶]

© 1996 – 2020  Ⓜ Marriott International, Inc. All rights reserved. Marriott Proprietary Information

Tracking Preferences > • Terms of Use > • Program Terms & Conditions > • Privacy Center > • Do Not Sell My Personal Information > • Digital Accessibility > • Site Map > • Help >

Loading...

prod9,35CF5298-E97C-58C6-9893-D6AA3DF8C2D2

# Exhibit J

| From: | Marriott Hotels & Resorts Reservations [reservations@marriott-res.com] |
|---|---|
| Sent: | 3/21/2018 6:19:32 AM |
| To: | Todd Hall [thall@intox.com] |
| Subject: | Reservation Confirmation #86107630 for Marriott Marquis San Diego Marina |

Please review your reservation details and keep for your records.



**Marriott Marquis San Diego Marina**

333 West Harbor Drive San Diego California 92101 USA

**+1-619-234-1500**

Hotel Website    Map & Directions

Plan Your Stay

## Reservation Confirmation: 86107630

### For MR TODD HALL                                    PLATINUM ELITE

| CHECK-IN DATE | **Monday, May 28, 2018** | | CHECK-OUT DATE | **Tuesday, May 29, 2018** |
|---|---|---|---|---|
| CHECK-IN TIME | **04:00 PM** | | CHECK-OUT TIME | **11:00 AM** |

| Modify your reservation | Cancel your reservation |
|---|---|

**Dear MR TODD HALL,**

We are pleased to confirm your reservation with the Marriott Marquis San Diego Marina. We look forward to making your stay memorable and uncomplicated.

Travel Brilliantly,
Marriott Marquis San Diego Marina

## Plan Your Stay

**Up to 35% off base rates**

Plus earn up to 5,000 Marriott Rewards Points

📄 Learn More

**Introducing Marriott Moments**

Thousands of Travel Experiences Await You

📄 Explore Now

Confidential

EXHIBIT
19



### Relax and Recharge

Make a spa or beauty treatment part of your stay.



### Quick Bites or Leisurely Dining

We have fresh snacks and delicious meals to fit your needs.

📄 Make an Appointment

📄 Learn More



### Want anything, anytime?

Make requests directly on the Marriott Mobile App.

📄 Download the app



---

## Room Details

ROOM TYPE            **Guest room, 1 King, City view**📄

NUMBER OF ROOMS      **1**

GUESTS PER ROOM      **1 Adult**

GUARANTEED METHOD    **Credit Card Guarantee, Visa**

SPECIAL REQUESTS

**Room 1**

**Request noted**
• High Floor Room

• Foam Pillows

• Qualifying Rate ID Required

---

* Parking

**Hotel Alert**
Concierge Lounge closed 12noon Fri to 5:30pm Sun. Platinum/Gold Elite guests offered 1000 points for each closed day.

## Summary of Charges

**RATES, TAXES & FEES ARE PER ROOM, PER NIGHT (USD)**

| | | |
|---|---|---|
| **Monday, May 28, 2018-Tuesday, May 29, 2018** | 1 night | **151.00 USD** |
| AAA Hot Deals, AAA membership card required, valet parking, see Rate details | | |
| ESTIMATED GOVERNMENT TAXES & FEES | | **22.77 USD** |
| Destination Amenity Fee | | **25.00 USD** |
| **Total for stay (for all rooms)** | | **198.77 USD** |

**Other Charges**

* On-site parking, fee: 10 USD hourly, 35 USD daily

* Valet parking, fee: 50 USD daily

* Parking managed by Ace Parking. In/out privileges included in self and valet rates.Garage height clearance 10 feet.

Modify or cancel your reservation

Book Another Reservation

## Rate Details and Cancellation Policy

* **You may cancel your reservation for no charge until Friday, May 25, 2018 (3 day[s] before arrival).**
* Please note that we will assess a fee of 170.65 USD if you must cancel after this deadline.
* Please be prepared to show proof of eligibility for your rate (such as a membership card, corporate or government identification card, or proof of your age).
* **Please note that a change in the length or dates of your reservation may result in a rate change.**

RATE GUARANTEE LIMITATION(S)

• Changes in taxes or fees implemented after booking will affect the total room price.

**ADDITIONAL INFORMATION**
• The Responsible Tourist and Traveler
  A practical guide to help you make your trip an enriching experience
• Upon check-in an authorization request will be placed on your credit/debit card in an amount equal to the cost of the room, tax and incidental charges for the length of your stay (up to seven nights). If your stay exceeds seven nights, an additional authorization may be requested for the entire amount of your stay (room, tax and incidentals). Upon check-out, your payment card will be charged for the actual amount incurred during your stay.



## Your Rewards Information

REWARDS LEVEL

**PLATINUM ELITE**

REWARDS NUMBER

**XXXXX9701**

View your account

REWARDS BENEFITS

As a Platinum Elite member, you can enjoy the following benefits during your stay (may vary by property):

• Guaranteed lounge access for you and a guest. Free continental breakfast for member plus one guest daily. Resorts excluded and certain hotels exempt.

• Complimentary Room Upgrade (Based on availability, at time of check-in)

• Free enhanced Wi-Fi and a Platinum Arrival Gift

Learn More

### Earn 75,000 Bonus Points!

Plus earn 5x points at Marriott locations and enjoy an annual free night.

Learn More

### Need trip inspiration?

Read Traveler articles via Facebook Messenger.

Message Us

## Contact Us

Call **1-800-228-9290** in the US and Canada.

**Elsewhere, call our worldwide telephone numbers.**

Additional Reservation Information available

**DOWNLOAD MARRIOTT MOBILE APP**

DocumentId : 7173795


## Privacy, Authenticity and Opting Out

Your privacy is important to us. **Please visit our Privacy Statement for full details**.

This email confirmation is an auto-generated message. Replies to automated messages are not monitored. Our Internet Customer Care team is available to assist you 24 hours per day, 7 days per week. **Contact Internet Customer Care**.

## Promotional Email Unsubscribe

If you provided us with your email address for the first time, we will send you a follow-up email to welcome you. We will also send you periodic emails with information about your account balance, member status, special offers and promotions. An opt-out link will be included in each of these emails so that you can change your mind at any time.

If you would prefer to opt out of such emails from Marriott International, Marriott Rewards or The Ritz-Carlton Rewards, **you may do so here**. In addition, you may unsubscribe from The Ritz-Carlton email community **here**.

Please note: Should you unsubscribe from promotional email, we will continue to send messages for transactions such as reservation confirmation, point redemption, etc.

## Confirmation Authenticity

We're sending you this confirmation notice electronically for your convenience. Marriott keeps an official record of all electronic reservations. We honor our official record only and will disregard any alterations to this confirmation that may have been made after we sent it to you.

If you have received this email in error, **please let us know**.

© 1996 - 2018 MARRIOTT INTERNATIONAL, INC. ALL RIGHTS RESERVED. MARRIOTT PROPRIETARY INFORMATION
TERMS OF USE • INTERNET PRIVACY STATEMENT



# Exhibit K

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

**LAW OFFICE OF ROBERT L. TEEL**
ROBERT TEEL (SBN 127081)
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, WA 98122
Telephone:  (866) 833-5529
Fax: (855) 609-6911
***Attorneys for Plaintiffs and the Proposed Class***

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TODD HALL, JULIE DRASSINOWER, KEVIN BRANCA, and JESSE HEINEKEN individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation,<br><br>    Defendant. | Case No.: 3:19-cv-01715-JLS-AHG<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF TODD HALL'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES (SET ONE)**<br><br>Honorable Allison H. Goddard |

**PROPOUNDING PARTY:**     Defendant, MARRIOTT INTERNATIONAL, INC.

**RESPONDING PARTY:**     Plaintiff TODD HALL

**SET NUMBER:**     ONE (1)

    Pursuant to Federal Rule of Civil Procedure 33, Plaintiff Todd Hall ("Plaintiff") hereby submits the following amended objections and responses to Defendant Marriott International, Inc. ("Defendant") First Set of Interrogatories ("Requests" or "Interrogatories") to Plaintiff Todd Hall.

## PLAINTIFF'S PRELIMINARY STATEMENT

    Plaintiff does not waive and expressly reserves all objections as to the genuineness, foundation, competence, relevance, materiality, privileged status, or admissibility of these Requests and the information provided herein as evidence in connection with any proceeding or at trial of this or any other action, or for any other purpose.

    Plaintiff and his attorneys have not completed their investigation of the facts relating to this action, have not completed discovery in this action, and have not completed preparation for trial. These responses are made without prejudice to Plaintiff's rights to use subsequently discovered evidence at trial or in connection with pretrial proceedings, or to amend these responses in the event that any information is later acquired or learned by Plaintiff or inadvertently omitted from these Requests. The majority of the discovery requires extensive analysis. Legal and factual research concerning the facts known to date and information that may become known in the future remains to be done. The additional work may result in new or different factual responses, objections, and defenses. Plaintiff expressly reserves the right to amend, modify, or supplement his responses and objections. Plaintiff further reserves the right to rely on any facts, documents, or other evidence that may develop or come to Plaintiff's attention at a later date. Plaintiff further reserves the right to rely on expert testimony.

As discovery proceeds, facts, information and evidence may be discovered that are not set forth in these responses, but which may have been responsive to these Requests. The following responses are based on Plaintiff's knowledge, information and belief at this time and are complete as to Plaintiff's best knowledge at this time. Furthermore, these responses were prepared based on Plaintiff's good faith interpretation and understanding of the individual Requests and are subject to correction for inadvertent errors or omissions, if any. Plaintiff reserves his right to refer to, conduct discovery with reference to, or offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses.

The general and specific objections set forth below are intended to apply to all information produced or provided pursuant to the Requests.

## **PLAINTIFF'S GENERAL OBJECTIONS TO REQUESTS**

Plaintiff interposes the following general objections ("General Objections") to the Interrogatories as a whole, as well as to each and every individual Request contained therein, which are incorporated by reference into each specific response set forth below. Each individual response, therefore, is made subject to, and without waiver of, these General Objections.

Plaintiff objects to the Interrogatories to the extent the instructions and definitions used therein purport to impose obligations on Plaintiff beyond the scope of the Federal Rules of Civil Procedure. Without waiver of his objections, Plaintiff will respond consistently with the requirements of the Federal Rules.

Plaintiff objects to the Interrogatories to the extent they seek disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege, immunity, protection or doctrine of similar effect. To the extent that Plaintiff inadvertently provides any information arguably

protected from discovery under any such privilege, protection or doctrine, such inadvertent disclosure shall not constitute a waiver of any such privilege, protection or doctrine.

Plaintiff objects to the Interrogatories to the extent they seek information not relevant to the claims and defenses in this action, on the grounds that the Interrogatories are irrelevant, constitute an undue burden on Plaintiff, and are not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff objects to the Interrogatories to the extent they are overbroad, unduly burdensome, oppressive, vague, ambiguous, or uncertain. Without waiver of his objections, Plaintiff has made reasonable, good faith assumptions of Defendant's intended meanings and will respond accordingly, as set forth below.

Plaintiff objects to the Interrogatories to the extent they are harassing, including where the information is of limited use or relevance in comparison to the burden or expense involved in producing any such information.

Plaintiff objects to the Interrogatories to the extent they seek information not in Plaintiff's possession, custody or control, or information that is in the possession, custody or control of Defendant or third parties, or is more easily or cost efficiently obtainable from them or is publicly available.

Plaintiff objects to the Interrogatories to the extent any Request is duplicative or cumulative of any earlier Request.

Plaintiff objects to the Interrogatories to the extent they seek the identification or disclosure of information in violation of Plaintiff's or third parties' rights of privacy, including any state or local laws, ordinances, rules or regulations protecting such information. Plaintiff's responses shall not be deemed to be a waiver of Plaintiff's or any third party's rights with respect to such information.

Plaintiff's responses, as set forth below, are based upon a good-faith interpretation of the Interrogatories. Should a different interpretation of any Request be

asserted by Defendant, Plaintiff reserves the right to add to, modify, or otherwise change or amend the below responses.

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify the total number of hotel stays by Mr. Hall in each of 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, and 2020.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Hall's hotel stays and is not limited to Mr. Hall's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it neither relevant nor proportional to the needs of the case because it seeks information about all of Mr. Hall's hotel stays and is not limited to Mr. Hall's stays at Marriott hotels.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 1:**

Without waiving the above objections, Plaintiff responds as follows:

4

Since 1997, Mr. Hall has stayed approximately 752 nights at Marriott hotels, approximately 550 nights at Hilton hotels, and approximately 50 nights at Holiday Inn hotels. Plaintiff has also stayed at other hotels, but is unable to estimate his total number of stays at these other hotels. Plaintiff estimates that he stayed at hotels approximately 56 nights per year from the period between 2010 to 2020.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## INTERROGATORY NO. 2:

Identify the total number of hotel reservations that Mr. Hall himself made via a website, regardless of whether it was by computer, cell phone, or any other electronic device, in each of 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, and 2020.

## RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Hall's hotel stays and is not limited to Mr. Hall's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it neither relevant nor proportional

to the needs of the case because it seeks information about all of Mr. Hall's hotel stays and is not limited to Mr. Hall's stays at Marriott hotels.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 2:**

Without waiving the above objections, Plaintiff responds as follows:

Since 1997, Mr. Hall has stayed approximately 752 nights at Marriott hotels, approximately 550 nights at Hilton hotels, and approximately 50 nights at Holiday Inn hotels. Plaintiff has also stayed at other hotels, but is unable to estimate his total number of stays at these other hotels. Plaintiff estimates that he stayed at hotels approximately 56 nights per year from the period between 2010 to 2020. To the best of Mr. Hall's recollection, he personally made each of these hotel reservations himself with the exception of a stay at the Hard Rock Hotel in Las Vegas, Nevada on July 24, 2017 through July 26, 2017 that was booked Mr. Hall's office for business purposes.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 3:**

Does Mr. Hall contend that, during the period of January 1, 2005 to the present, he has stayed at a Marriott Hotel charging a Resort Fee? If so, with respect to each such stay, please identify:

(i) the name and address of the Marriott Hotel at which Mr. Hall stayed;

(ii) the dates of the stay;

(iii) the purpose of the stay;

(iv) the person(s), if any, who stayed at the Marriott Hotel with Mr. Hall, either in the same hotel room or a separate hotel room;

6

*Hall v. Marriott*, No. 3:19-cv-01715-JLS-AHG
PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S INTERROGATORIES, SET ONE

(v) all resort fee discounts that Mr. Hall requested and/or used during the hotel stay, including but not limited to discounts used on coffee, food, pool access, and/or gym amenities;

(vi) the name, address, telephone number, email addresses, and employer of the person who made the reservation for the stay;

(vii) the date the person made the reservation;

(viii) the means by which the person made the reservation (by phone, by website (and, if so, identify the website address, and the device on which the website was accessed), etc.);

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero*

7

*Hall v. Marriott, No. 3:19-cv-01715-JLS-AHG*
PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S
INTERROGATORIES, SET ONE

*v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objects, Plaintiff responds as follows:

- Plaintiff does contend that, during the period of January 1, 2005 to the present, he has stayed at a Marriott Hotel charging a Resort Fee.
- On May 28, 2018 through May 29, 2018, Plaintiff stayed at the Marriott Marquis San Diego Marina located at 333 West Harbor Drive, San Diego, California 92101. During this stay, Plaintiff Hall was charged a "destination fee" in the amount of $25. The purpose of the stay was personal in nature. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately March 20, 2018 using the Marriott.com website from his computer.
- On October 10, 2018 through October 13, 2018, Plaintiff stayed at the Sheraton Maui located at 2605 Kaanapali Parkway, Lahaina, Hawaii 96761. During this stay, Plaintiff was charged a "resort fee" in the amount of $25 per night. The purpose of this stay was part business and part personal. Plaintiff Hall stayed two nights, on October 10, 2018 and October 11, 2018, for business purposes and one night, on October 12, 2018, for personal purposes. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately August 27, 2018 using the Marriott.com website from his computer.
- At the present time, Plaintiff Hall does not recall any other instances in which he has stayed at a Marriott Hotel charging a Resort Fee.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 4:**

Does Mr. Hall contend that, during the period of January 1, 2005 to the present, he has stayed at a non-Marriott Hotel charging a Resort Fee? If so, with respect to each such stay, please identify:

(i) the name and address of the Marriott Hotel at which Mr. Hall stayed;

(ii) the dates of the stay;

(iii) the purpose of the stay;

(iv) the person(s), if any, who stayed at the Marriott Hotel with Mr. Hall, either in the same hotel room or a separate hotel room;

(v) all resort fee discounts that Mr. Hall requested and/or used during the hotel stay, including but not limited to discounts used on coffee, food, pool access, and/or gym amenities;

(vi) the name, address, telephone number, email addresses, and employer of the person who made the reservation for the stay;

(vii) the date the person made the reservation;

(viii) the means by which the person made the reservation (by phone, by website (and, if so, identify the website address and the device on which the website was accessed), etc.);

(ix) the address/location of the person making the reservation at the time that they made the reservation;

(x) the method of payment the person making the reservation used to make the reservation (and, if by credit card, the type of card, the name of the card, the card number, the expiration date, and whether it was a personal or corporate card);

(xi) the name, address, telephone number, email addresses, and employer of each person who received a reimbursement for the payment for the hotel room and/or all

9

other hotel charges

(xii) the name, address, telephone number, email addresses, and employer of each person with knowledge relating to the making of the reservation, including any applicable travel agency employees, and the specific knowledge they have;

(xiii) if the person making the reservation is someone other than Mr. Hall, all instructions Mr. Hall provided to the person in connection with the making of the reservation; and

(xiv) all documents received by Mr. Hall, the person making the reservation, and/or any other person acting on Mr. Hall's behalf and/or at his direction relating to the reservation and/or hotel stay, including but not limited to the reservation confirmation and any other proof of purchase, reservation reminder, folio, and/or receipt; and all documents in Mr. Hall's possession, custody, or control relating to the reservation and/or hotel stay.

## RESPONSE TO INTERROGATORY NO. 4:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Hall's hotel stays and is not limited to Mr. Hall's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it is neither relevant nor

10

proportional to the needs of the case because it seeks information about all of Mr. Hall's hotel stays and is not limited to Mr. Hall's stays at Marriott hotels. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## AMENDED RESPONSE TO INTERROGATORY NO. 4:

Without waiving the above objections, Plaintiff responds as follows:

- Plaintiff does contend that, during the period of January 1, 2005 to the present, he has stayed at non-Marriott Hotels charging a Resort Fee.
- On May 20, 2014 through May 21, 2014, Plaintiff stayed at the South Point Casino located at 9777 Las Vegas Blvd. South, Las Vegas, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $14 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately May 19, 2014 using the Southpoint website from his computer. Nobody stayed with Mr. Hall during this hotel stay.
- On December 19, 2016 through December 20, 2016, Plaintiff stayed at the GSR Grand Sierra Resort and Casino located at 2500 East 2nd Street,

Reno, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $20.34 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately December 16, 2016 using the GSR Grand Sierra Resort and Casino website from his computer. Nobody stayed with Mr. Hall during this hotel stay.

- On July 24, 2017 through July 26, 2017, Plaintiff stayed at the Hard Rock Hotel and Casino located at 4455 Paradise Road, Las Vegas, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $35.15 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall's office made the reservation on behalf of Mr. Hall on approximately March 1, 2017 using the Hard Rock Hotel website. Nobody stayed with Mr. Hall during this hotel stay.

- On October 12, 2016 through October 13, 2016, Plaintiff stayed at the Tropicana Resort and Casino located at 3801 Las Vegas Blvd., South Las Vegas, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $32.48 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself using the Tropicana website from his computer. Mr. Hall cannot recall when this online reservation was made. Nobody stayed with Mr. Hall during this hotel stay.

- On June 5, 2017 through June 7, 2017, Plaintiff stayed at the South Point Casino located at 9777 Las Vegas Blvd. South, Las Vegas, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $21 per

12

night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself using the Southpoint website from his computer. Mr. Hall cannot recall when this online reservation was made. Nobody stayed with Mr. Hall during this hotel stay.

- On August 3, 2016 through August 5, 2016, Plaintiff stayed at the South Point Casino located at 9777 Las Vegas Blvd. South, Las Vegas, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $14 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on using the Southpoint website from his computer. Mr. Hall cannot recall when this online reservation was made.   Nobody stayed with Mr. Hall during this hotel stay.

- On October 7, 2015 through October 8, 2015, Plaintiff stayed at the GSR Grand Sierra Resort and Casino located at 2500 East 2nd Street, Reno, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $18.95 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately October 6, 2015 using the GSR Grand Sierra Resort and Casino website from his computer.

- On November 27, 2018 through November 29, 2018, Plaintiff stayed at the GSR Grand Sierra Resort and Casino located at 2500 East 2nd Street, Reno, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $53.00. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself using the GSR Grand

13

Sierra Resort and Casino website from his computer. Mr. Hall cannot recall when this online reservation was made. Nobody stayed with Mr. Hall during this hotel stay.

- On June 11, 2018 through June 12, 2018, Plaintiff stayed at the South Point Casino located at 9777 Las Vegas Blvd. South, Las Vegas, Nevada. During this stay, Plaintiff Hall was charged a resort in the amount of $21.00 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately June 8, 2018 using the Hotels.com website from his computer. Nobody stayed with Mr. Hall during this hotel stay.

- On October 14, 2019 through October 16, 2019, Plaintiff stayed at the Nugget Casino Resort located at 1100 Nugget Ave Sparks, NV 89431. During this stay, Plaintiff Hall was charged a resort fee that was included in the total room rate of $79 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately September 24, 2019 using the Nugget Casino website from his computer. Nobody stayed with Mr. Hall during this hotel stay.

- On March 1, 2021 through March 3, 2021, Plaintiff stayed at the Grand Sierra Resort located at 2500 East 2nd Street, Reno, Nevada. During this stay, Plaintiff Hall was charged a resort fee in the amount of $33.84 per night. The purpose of the stay was for business. During this stay, Mr. Hall did not request or receive any "resort fee discounts." Plaintiff Todd Hall made the reservation himself on approximately February 26, 2021 using the GSR Grand Sierra Resort and Casino website from his computer. Nobody stayed with Mr. Hall during this hotel stay.

14

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 5:**

Identify the name, address, telephone number, email addresses, and employer of each person who has booked travel for Mr. Hall on his behalf and/or at his direction at any time from January 1, 2005 to the present, including but not limited to any administrative assistant(s) or spouse(s).

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Hall's travel and is not limited to Mr. Hall's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case because it seeks information about all of Mr. Hall's travel and is not limited to Mr. Hall's stays at Marriott hotels.

Without waiving the foregoing objections, Plaintiff responds as follows:

To the best of Mr. Hall's recollection, Mr. Hall has always personally booked his own travel.

Discovery is ongoing and Plaintiff reserves the right to supplement this response

15

as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 5:**

Without waiving the above objections, Plaintiff responds as follows:

To the best of Mr. Hall's recollection, Mr. Hall has always personally booked his own travel with the exception of a hotel stay at the Hard Rock Hotel in Las Vegas, Nevada on July 24, 2017 through July 26, 2017 that was booked Mr. Hall's office for business purposes. The July 2017 stay at the Hard Rock was booked by Amanda Ahne of Intoximeters, Inc. on approximately March 1, 2017. Ms. Ahne is no longer with Intoximeters, Inc. and Plaintiff is unaware of her current address, telephone number, and email address.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 6:**

Did there come a time when Mr. Hall learned that certain Marriott Hotels charge a resort fee? If so, please identify: (i) the date when Mr. Hall first learned that information; (ii) the means by which Mr. Hall learned that information (and, if a person provided that information to Mr. Hall, identify the name and contact information for that person); (iii) the specific information learned; and (iv) all steps taken by Mr. Hall in response to learning that information.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy

16

under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows:

To the best of Mr. Hall's present recollection, Mr. Hall first learned that certain Marriott hotels charge a resort fee on approximately May 28, 2018 when Plaintiff Hall was charged a $25 "destination fee" in connection with his stay at the Marriott Marquis San Diego Marina located at 333 West Harbor Drive, San Diego, California 92101. Mr. Hall believes that he first learned that the Marriott Marquis San Diego Marina charges a "destination fee" when he first checked into the hotel on May 28, 2018. Upon learning that certain Marriott hotels charge a resort fee, Mr. Hall has taken actions to avoid staying at Marriott hotels that charge a resort fee.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 7:**

Without divulging any attorney-client communications, how did it come about

17

that Mr. Hall became the proposed class representative in this lawsuit?

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff Todd Hall contacted the Law Offices of Ronald A. Marron on approximately September 4, 2019 regarding participating in the present class action lawsuit. On September 9, 2019, Plaintiff Todd Hall signed an attorney-client agreement with the Law Offices of Ronald A. Marron regarding the present class action lawsuit. On September 9, 2019, the original class action complaint naming Mr. Hall as a Plaintiff was filed with the Court.

18

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 8:**

State whether you have been a party to any lawsuit other than this matter and, if you have, identify the lawsuit by name, case number, and jurisdiction.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing objections, Plaintiff responds as follows:

- *Howard Clark v. The Hershey Company*, Case No. 3:18-cv-06113-WHA (N.D. Cal.).

- Small claims case approximately 35 years ago where Mr. Hall was a defendant concerning a vehicle transaction. At the present time, Mr. Hall does not recall the case name, case number, or jurisdiction.

- Small claims case approximately 35 years ago where Mr. Hall was a plaintiff concerning a vehicle transaction. At the present time, Mr. Hall does not recall the case name, case number, or jurisdiction.

19

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 9:**

If you ever compared the price you paid for a Marriott room against the booking price of the room, identify such instances by resort, date, and what steps you took to compare.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous because Plaintiff is unclear on the intended meaning of "booking price of the room." Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 10:**

For every online booking of a Marriott room, state whether you assessed the price charged from when you first began the booking process to when you actually completed the booking process.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Discovery is ongoing and Plaintiff reserves the right to supplement this response

as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 10:**

Without waiving the above objections, Plaintiff responds as follows:

Yes. For every online booking of a Marriott room, Plaintiff assessed the price charged from when he first began the booking process to when he completed the booking process. Plaintiff believed that taxes were added to the advertised room price when he completed the online booking process. Plaintiff was unaware that he would be charged a "destination fee" for his May 2018 hotel stay at the Marriott Marquis San Diego Marina or that he would be charged a "resort fee" for his October 2018 stay at the Marriott Sheraton Maui.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 11:**

If you ever asked for a refund of any type of fee charged by a Marriott hotel at or after check out identify by location and date when this occurred.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it

is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff received a "BackToBack" refund during his Maui stay on October 12, 2018 in the amount of $52.07.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 12:**

Identify all travel reward memberships you have held since January 1, 2012, including any Marriott's reward number or Marriott BonvoyTM loyalty program number.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the

extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Hall's travel rewards memberships and is not limited to travel rewards memberships provided by Marriott. Plaintiff objects to this Request because it neither relevant nor proportional to the needs of the case because it seeks information about all travel rewards memberships and is not limited to travel rewards memberships provided by Marriott.

Without waiving the foregoing objections, Plaintiff responds as follows:

- Mr. Hall's Marriott rewards number is 339-059-701.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 13:**

Identify all communications you have received from Marriott regarding Marriott BonvoyTM loyalty program, including, but not limited to the updating of any terms of that loyalty program.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it neither relevant nor proportional to the needs of the case. Plaintiff objects to

24

*Hall v. Marriott, No. 3:19-cv-01715-JLS-AHG*
PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S
INTERROGATORIES, SET ONE

this Request because the information is equally available to Defendant.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 13:**

Without waiving the foregoing objections, Plaintiff responds as follows:

From time to time, Plaintiff receives emails from Marriott regarding the Marriott BonvoyTM loyalty program. Plaintiff will produce copies of these emails that are within his care, custody, and control.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 13: (Sic.)**

State all facts supporting Mr. Hall's allegation in paragraph 55 of the Complaint that he "discovered Defendant's unlawful acts . . . in September 2019," including but not limited to by identifying (i) each of the alleged "unlawful acts" with specificity; (ii) how Mr. Hall made this alleged discovery; (iii) what occurred in September 2019 that caused Mr. Hall to learn about the alleged "unlawful acts"; and (iv) all documents supporting Mr. Hall's contention that he first learned about the alleged "unlawful acts" in September 2019.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request because the first amended complaint is no longer the operative complaint in this action. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent

25

that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## AMENDED RESPONSE TO INTERROGATORY NO. 13 (sic):

Without waiving the above objections, Plaintiff responds as follows:

Mr. Hall learned of Marriott's unlawful acts in September of 2019 after consulting with his attorneys at the Law Offices of Ronald A. Marron. The contents of those communications are protected from disclosure by the attorney-client privilege. The unlawful acts include that Marriott had misleadingly advertised the hotel room rates and charges he was paying for staying at the Marriot hotels by hiding and burying the resort and amenity fees, disguising them as "USD Taxes and fees", advertising discounted room rates which were based on falsely advertised bargain rates, and switching the pricing from the advertised room rate to a different total payment for his trip.

26

Mr. Hall was unaware that these "drip pricing" practices were unlawful until September of 2019 after consulting with his attorneys. There are no documents within Plaintiff's care, custody, or control supporting Mr. Hall's contention that he first learned about the alleged "unlawful acts" in September 2019.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 14:**

State all facts supporting Mr. Hall's allegation in paragraph 56 of the First Amended Class Action Complaint that he "was deceived by and relied upon [Marriott's] misleading bargain and bait advertising, and specifically the hidden and deceptive nature of the resort and amenity fees charged to consumers."

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request because the first amended complaint is no longer the operative complaint in this action. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL

27

109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## AMENDED RESPONSE TO INTERROGATORY NO. 14:

Without waiving the above objections, Plaintiff responds as follows:

- For Mr. Hall's May 2018 hotel stay at the Marriott Marquis San Diego Marina, Mr. Hall relied on the advertised room price on the Marriott website of approximately $151 per night in deciding to book his stay. At the time when Mr. Hall completed the booking process, Mr. Hall was unaware that he would be charged a "destination fee" in the amount of $25 per night. Mr. Hall contends that the $25 "destination fee" was never disclosed to him on the Marriott website. Mr. Hall was deceived when he subsequently discovered that he had been charged a $25 per night "destination fee" at the time when he checked into the hotel and reviewed his hotel invoice. Mr. Hall would not have reserved the hotel room had he had known that Marriott charged a $25 per night destination fee in addition to the advertised room price of approximately $151 per night.

- For Mr. Hall's October 2018 hotel stay at the Sheraton Maui, Plaintiff relied on the advertised room price on the Marriott website of approximately $320.02 per night in deciding to book his stay. At the time when Plaintiff completed the booking process, Plaintiff was unaware that he would be charged a "resort fee" in the amount of $25 per night. Plaintiff

contends that the $25 per night "resort fee" was never disclosed on the Marriott website. Plaintiff was deceived when he subsequently discovered that he had been charged a $25 per night "resort fee" at the time when he checked into the hotel and reviewed his hotel invoice. Mr. Hall would not have reserved the hotel room had he had known that Marriott charged a $25 per night resort fee in addition to the advertised room price of approximately $320.02 per night.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 15:**

State all facts supporting Mr. Hall's allegation in paragraph 59 of the First Amended Class Action Complaint that he "would not have reserved the hotel room, and would not have paid as much as he had for a hotel room in the absence of [Marriott's] misrepresentations and omissions."

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request because the first amended complaint is no longer the operative complaint in this action. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the

29

needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff responds as follows:

- For Mr. Hall's May 2018 hotel stay at the Marriott Marquis San Diego Marina, Mr. Hall relied on the advertised room price on the Marriott website of approximately $151 per night in deciding to book his stay. At the time when Mr. Hall completed the booking process, Mr. Hall was unaware that he would be charged a "destination fee" in the amount of $25 per night. Mr. Hall contends that the $25 "destination fee" was never disclosed to him on the Marriott website. Mr. Hall was deceived when he subsequently discovered that he had been charged a $25 per night "destination fee" at the time when he checked into the hotel and reviewed his hotel invoice. Mr. Hall would not have reserved the hotel room had he had known that Marriott charged a $25 per night destination fee in addition to the advertised room price of approximately $151 per night.

- For Mr. Hall's October 2018 hotel stay at the Sheraton Maui, Plaintiff relied on the advertised room price on the Marriott website of approximately $320.02 per night in deciding to book his stay. At the time

when Plaintiff completed the booking process, Plaintiff was unaware that he would be charged a "resort fee" in the amount of $25 per night. Plaintiff contends that the $25 per night "resort fee" was never disclosed on the Marriott website. Plaintiff was deceived when he subsequently discovered that he had been charged a $25 per night "resort fee" at the time when he checked into the hotel and reviewed his hotel invoice. Mr. Hall would not have reserved the hotel room had he had known that Marriott charged a $25 per night resort fee in addition to the advertised room price of approximately $320.02 per night.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 16:**

State all facts supporting any contention by Mr. Hall that his dispute with Marriott is not required to be arbitrated.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request because the first amended complaint is no longer the operative complaint in this action. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the

31

needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Without waiving the foregoing objections, Plaintiff responds as follows:

Mr. Hall is currently unaware of any facts relating to whether his dispute with Marriott is not required to be arbitrated.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## INTERROGATORY NO. 17:

State all facts supporting any contention by Mr. Hall that he did not waive his right to file a class action lawsuit against Marriott.

## RESPONSE TO INTERROGATORY NO. 17:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request because the first amended complaint is no longer the operative complaint in this action. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Without waiving the foregoing objections, Plaintiff responds as follows:

Mr. Hall is currently unaware of any facts that he did not waive his right to file a class action lawsuit against Marriot.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## INTERROGATORY NO. 18:

Does Mr. Hall contend that the representation on Marriott's website that the "[r]ates" for a particular hotel are "from" a certain dollar amount per night, is false or misleading? If so, state all facts supporting Mr. Hall's contention.

## RESPONSE TO INTERROGATORY NO. 18:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous because Plaintiff is unable to determine Defendant's intended meaning of "'rates' from a particular hotel are 'from' a certain dollar amount per night." Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez,*

240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory as being a premature contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## AMENDED RESPONSE TO INTERROGATORY NO. 18:

Without waiving the above objections, Plaintiff responds as follows:

Yes, Mr. Hall does contend that the representation on Marriott's website that the "[r]ates" for a particular hotel are "from" a certain dollar amount per night, is false and misleading. Plaintiff contends that the "from" dollar amount is false and misleading because it does not include resort fees, destination fees, amenity fees, wifi fees, parking fees, and other fees that are charged by Marriott. Plaintiff contends that Marriott's initial advertising of a low price not including resort fees and other fees is what is false and misleading. When consumers search for and seek to book a hotel using Marriott's online reservation system, Marriott provides the consumers with a quoted room rate. For example, the quoted room rate for the Marriott Marquis San Diego Marina in September of 2019 was "From 351 usd/night." At this initial stage in the process of booking a reservation online, where the hotel appears on a page with rooms at other properties, the quoted daily room rate does not include or even mention the mandatory resort fee the consumer will be required to pay.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## INTERROGATORY NO. 19:

Does Mr. Hall contend that Marriott made a misrepresentation as to a material

34

fact? If so, with respect to each such alleged misrepresentation, (i) identify the fact allegedly misrepresented; (ii) explain why the fact allegedly is material; (iii) identify the alleged misrepresentation, including but not limited to by identifying the word(s) and/or phrase(s) on Marriott's website allegedly constituting the misrepresentation; (iv) explain why the alleged misrepresentation allegedly has a tendency to mislead; (v) explain how Mr. Hall allegedly relied on the alleged misrepresentation; and (vi) state all other facts supporting Mr. Hall's contention that Marriott made an alleged misrepresentation.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request because the first amended complaint is no longer the operative complaint in this action. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories

35

should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff objects to this Interrogatory as being a premature contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## AMENDED RESPONSE TO INTERROGATORY NO. 19:

Plaintiff responds as follows:

Yes, Mr. Hall does contend that Marriott made a misrepresentation as to a material fact.

- Mr. Hall contends that Marriott made a misrepresentation of a material fact because Marriott does not include mandatory resort fees in initially advertised room rates. When consumers search for and seek to book a hotel using Marriott's online reservation system, Marriott provides the consumers with a quoted room rate. For example, the quoted room rate for the Marriott Marquis San Diego Marina in September of 2019 was "From 351 usd/night." At this initial stage in the process of booking a reservation online, where the hotel appears on a page with rooms at other properties, the quoted daily room rate does not include or even mention the mandatory resort fee the consumer will be required to pay. Plaintiff contends that this misrepresentation is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the hotel room and would not have paid as much as they had for a hotel

room in the absence of Marriott's misrepresentation. For Mr. Hall's May 2018 hotel stay at the Marriott Marquis San Diego Marina, Mr. Hall relied on the advertised room price on the Marriott website of approximately $151 per night in deciding to book his stay. At the time when Mr. Hall completed the booking process, Mr. Hall was unaware that he would be charged a "destination fee" in the amount of $25 per night. Mr. Hall contends that the $25 "destination fee" was never disclosed to him on the Marriott website. Mr. Hall was deceived when he subsequently discovered that he had been charged a $25 per night "destination fee" at the time when he checked into the hotel and reviewed his hotel invoice. For Mr. Hall's October 2018 hotel stay at the Sheraton Maui, Plaintiff relied on the advertised room price on the Marriott website of approximately $320.02 per night in deciding to book his stay. At the time when Plaintiff completed the booking process, Plaintiff was unaware that he would be charged a "resort fee" in the amount of $25 per night. Plaintiff contends that the $25 per night "resort fee" was never disclosed on the Marriott website. Plaintiff was deceived when he subsequently discovered that he had been charged a $25 per night "resort fee" at the time when he checked into the hotel and reviewed his hotel invoice.

- Mr. Hall contends that Marriott made a misrepresentation of a material fact because Marriott does not break out the cost of mandatory resort fees when later listing the summary of charges for a hotel room. Specifically, Marriott includes the resort fee in a single line item labeled "USD Taxes and fees" on the summary of charges section on Marriott's website. By combining the amounts that consumers were asked to pay for resort fees with their tax payments

37

under a generic heading of "taxes and fees," Marriott leads consumers to believe the resort fees are government-imposed charges. For example, if a consumer booking the Marriott Marquis San Diego Marina in September of 2019 selected the regular rate room from Marriott's website, then they would see a screen that showed the "USD subtotal" of $449.65, consisting of the $369 rate for "USD/Night" plus $80.65 "USD Taxes and Fees." The screen does not display a resort fee and the consumer would be able to click "continue" and complete the booking process at this point, all the while believing that they are being charged $369 for the room and $80.65 for "USD Taxes and fees." Plaintiff contends that this misrepresentation is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation. Mr. Hall relied on this misrepresentation when he booked his rooms for the May 2018 and October 2018 hotel stays.

- Mr. Hall contends that Marriott made a misrepresentation of a material fact because Marriot includes mandatory resort fees within the broader heading of "taxes and fees," which leads consumers to believe that resort fees are government imposed charges. Specifically, Marriott includes the resort fee in a single line item labeled "USD Taxes and fees" on the summary of charges section on Marriott's website. By combining the amounts that consumers were asked to pay for resort fees with their tax payments under a generic heading of "taxes and fees," Marriott leads consumers to believe the resort fees

38

*Hall v. Marriott*, No. 3:19-cv-01715-JLS-AHG
PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S
INTERROGATORIES, SET ONE

are government-imposed charges. For example, if a consumer booking the Marriott Marquis San Diego Marina in September of 2019 selected the regular rate room from Marriott's website, then they would see a screen that showed the "USD subtotal" of $449.65, consisting of the $369 rate for "USD/Night" plus $80.65 "USD Taxes and Fees." The screen does not display a resort fee and the consumer would be able to click "continue" and complete the booking process at this point, all the while believing that they are being charged $369 for the room and $80.65 for "USD Taxes and fees." Plaintiff contends that this misrepresentation is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation. Mr. Hall relied on this misrepresentation when he booked his rooms for the May 2018 and October 2018 hotel stays.

- Mr. Hall contends that Marriott made a misrepresentation of a material fact because Marriot falsely states that certain amenities are complimentary when Marriott later describes such amenities as covered by the resort fee. For example, Defendant's Coronado Island Marriott Resort & Spa charges an amenity fee of $40 USD that "includes high speed Internet/resort equipment rentals/fitness classes and more" If consumers are charged for something as a resort fee, it is neither free nor complimentary; the consumer is paying for it. The Coronado Island Marriott Resort & Spa website also advertises its fitness classes as "complimentary" and claims that the fitness center is "free of charge for hotel guests" when in fact it charges for it in its

39

resort fee. Plaintiff contends that this misrepresentation is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation.

- Mr. Hall contends that Marriott made a misrepresentation of a material fact because Marriott provides such pricing information to consumers in an inconsistent manner across different hotels, compounding the confusion.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 20:**

Does Mr. Hall contend that Marriott failed to disclose a material fact? If so, with respect to each such failure to disclose a material fact, (i) identify the fact allegedly not disclosed; (ii) explain why the fact allegedly is material; (iii) state the manner in which Mr. Hall contends Marriott did not disclose the fact; (iv) explain in detail how Mr. Hall contends Marriott allegedly should have disclosed the fact, including but not limited to how Marriott should have made the disclosure, the specific wording of the disclosure that Marriott should have used, and to whom Marriott should have made the disclosure; (v) explain why the alleged failure to disclose has a tendency to mislead; (vi) explain how Mr. Hall allegedly relied on the alleged misrepresentation; and (vii) state all other facts supporting Mr. Hall's contention that Marriott failed to disclose a material fact.

**RESPONSE TO INTERROGATORY NO. 20:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further

40

*Hall v. Marriott, No. 3:19-cv-01715-JLS-AHG*
PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S
INTERROGATORIES, SET ONE

objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff objects to this Interrogatory as being a premature contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 20:**

Plaintiff responds as follows:

Yes, Mr. Hall does contend that Marriott failed to disclose a material fact.

- Mr. Hall contends that Marriott failed to disclose a material fact because Marriott does not include mandatory resort fees in initially

41

advertised room rates. When consumers search for and seek to book a hotel using Marriott's online reservation system, Marriott provides the consumers with a quoted room rate. For example, the quoted room rate for the Marriott Marquis San Diego Marina in September of 2019 was "From 351 usd/night." At this initial stage in the process of booking a reservation online, where the hotel appears on a page with rooms at other properties, the quoted daily room rate does not include or even mention the mandatory resort fee the consumer will be required to pay. Plaintiff contends that this omission is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation. For Mr. Hall's May 2018 hotel stay at the Marriott Marquis San Diego Marina, Mr. Hall relied on the advertised room price on the Marriott website of approximately $151 per night in deciding to book his stay. At the time when Mr. Hall completed the booking process, Mr. Hall was unaware that he would be charged a "destination fee" in the amount of $25 per night. Mr. Hall contends that the $25 "destination fee" was never disclosed to him on the Marriott website. Mr. Hall was deceived when he subsequently discovered that he had been charged a $25 per night "destination fee" at the time when he checked into the hotel and reviewed his hotel invoice. For Mr. Hall's October 2018 hotel stay at the Sheraton Maui, Plaintiff relied on the advertised room price on the Marriott website of approximately $320.02 per night in deciding to book his stay. At the time when Plaintiff completed the booking process, Plaintiff was

42

*Hall v. Marriott, No. 3:19-cv-01715-JLS-AHG*
PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S
INTERROGATORIES, SET ONE

unaware that he would be charged a "resort fee" in the amount of $25 per night. Plaintiff contends that the $25 per night "resort fee" was never disclosed on the Marriott website. Plaintiff was deceived when he subsequently discovered that he had been charged a $25 per night "resort fee" at the time when he checked into the hotel and reviewed his hotel invoice. Plaintiff contends that Marriott should disclose the resort fee by including it in the advertised room rate.

- Mr. Hall contends that Marriott failed to disclose a material fact because Marriott does not break out the cost of mandatory resort fees when later listing the summary of charges for a hotel room. Specifically, Marriott includes the resort fee in a single line item labeled "USD Taxes and fees" on the summary of charges section on Marriott's website. By combining the amounts that consumers were asked to pay for resort fees with their tax payments under a generic heading of "taxes and fees," Marriott leads consumers to believe the resort fees are government-imposed charges. For example, if a consumer booking the Marriott Marquis San Diego Marina in September of 2019 selected the regular rate room from Marriott's website, then they would see a screen that showed the "USD subtotal" of $449.65, consisting of the $369 rate for "USD/Night" plus $80.65 "USD Taxes and Fees." The screen does not display a resort fee and the consumer would be able to click "continue" and complete the booking process at this point, all the while believing that they are being charged $369 for the room and $80.65 for "USD Taxes and fees." Plaintiff contends that this omission is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then

43

they would not have reserved the hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation. Mr. Hall relied on this misrepresentation when he booked his rooms for the May 2018 and October 2018 hotel stays. Mr. Hall contends that Marriott should break out the cost of mandatory resort fees when later listing the summary of charges for a hotel room.

- Mr. Hall contends that Marriott failed to disclose a material fact because Marriot includes mandatory resort fees within the broader heading of "taxes and fees," which leads consumers to believe that resort fees are government imposed charges. Specifically, Marriott includes the resort fee in a single line item labeled "USD Taxes and fees" on the summary of charges section on Marriott's website. By combining the amounts that consumers were asked to pay for resort fees with their tax payments under a generic heading of "taxes and fees," Marriott leads consumers to believe the resort fees are government-imposed charges. For example, if a consumer booking the Marriott Marquis San Diego Marina in September of 2019 selected the regular rate room from Marriott's website, then they would see a screen that showed the "USD subtotal" of $449.65, consisting of the $369 rate for "USD/Night" plus $80.65 "USD Taxes and Fees." The screen does not display a resort fee and the consumer would be able to click "continue" and complete the booking process at this point, all the while believing that they are being charged $369 for the room and $80.65 for "USD Taxes and fees." Plaintiff contends that this misrepresentation is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the

44

hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation. Mr. Hall relied on this misrepresentation when he booked his rooms for the May 2018 and October 2018 hotel stays. Mr. Hall contends that Marriott should conspicuously disclose that mandatory resort fees are not government imposed.

- Mr. Hall contends that Marriott failed to disclose a material fact because Marriott does not inform consumers of the services that are included in the resort fee. Plaintiff contends that this omission is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation. Plaintiff contends that Marriott should disclose the services that are included in the resort fee in a conspicuous manner on the Marriott website.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## INTERROGATORY NO. 21:

Does Mr. Hall contend that the representation on Marriott's website that the "[r]ates" for a particular hotel are "from" a certain dollar amount per night, is false or misleading? If so, state all facts supporting Mr. Hall's contention.

## RESPONSE TO INTERROGATORY NO. 21:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being cumulative of Interrogatory Number 18. Plaintiff objects to this Interrogatory as being vague and ambiguous

45

because Plaintiff is unable to determine Defendant's intended meaning of "'rates' from a particular hotel are 'from' a certain dollar amount per night." Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory as being a premature contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 22:**

Does Mr. Hall contend that the omission of tax from the rate in the phrase "From [rate] USD / night" on Marriott's website constitutes a misrepresentation? State all facts supporting Mr. Hall's answer.

**RESPONSE TO INTERROGATORY NO. 22:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further

objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff objects to this Interrogatory as being a premature contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## AMENDED RESPONSE TO INTERROGATORY NO. 22:

Plaintiff responds as follows:

Mr. Hall does not contend that the omission of a government-imposed tax from the rate in the phrase "From [rate] USD / night" on Marriott's website constitutes

47

a misrepresentation.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**INTERROGATORY NO. 23:**

Does Mr. Hall contend that the phrase "[t]axes and fees" on Marriott's website is a misrepresentation or misleading? If so, state all facts supporting that contention.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff objects to this Interrogatory as being a premature contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

**AMENDED RESPONSE TO INTERROGATORY NO. 23:**

Plaintiff responds as follows:

Mr. Hall does contend that contend that the phrase "[t]axes and fees" on Marriott's website is a misrepresentation and is misleading. Specifically, Marriott includes the resort fee in a single line item labeled "USD Taxes and fees" on the summary of charges section on Marriott's website. By combining the amounts that consumers were asked to pay for resort fees with their tax payments under a generic heading of "taxes and fees," Marriott leads consumers to believe the resort fees are government-imposed charges. For example, if a consumer booking the Marriott Marquis San Diego Marina in September of 2019 selected the regular rate room from Marriott's website, then they would see a screen that showed the "USD subtotal" of $449.65, consisting of the $369 rate for "USD/Night" plus $80.65 "USD Taxes and Fees." The screen does not display a resort fee and the consumer would be able to click "continue" and complete the booking process at this point, all the while believing that they are being charged $369 for the room and $80.65 for "USD Taxes and fees." Plaintiff contends that this misrepresentation is material and has a tendency to mislead because if reasonable consumers, including Mr. Hall, were aware that Marriott charges a mandatory resort fee, then they would not have reserved the hotel room and would not have paid as much as they had for a hotel room in the absence of Marriott's misrepresentation. Mr. Hall relied on this misrepresentation

49

when he booked his rooms for the May 2018 and October 2018 hotel stays.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## INTERROGATORY NO. 24:

Does Mr. Hall contend Marriott has control over or is otherwise responsible for the advertisements or room offerings of Marriott Hotels on online travel agency or other non-Marriott websites? If so, state all facts supporting that contention.

## RESPONSE TO INTERROGATORY NO. 24:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of

50

testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff objects to this Interrogatory as being a premature contention interrogatory pursuant to Federal Rule of Civil Procedure 33(a)(2).

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

DATED: March 8, 2021

*/s/ Ronald A. Marron*
RONALD A. MARRON

**LAW OFFICES OF**
**RONALD A. MARRON**
Ronald A. Marron
*ron@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorney for Plaintiffs and the Proposed***
***Class***

51

*Hall v. Marriott, No. 3:19-cv-01715-JLS-AHG*
PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO DEFENDANT'S
INTERROGATORIES, SET ONE

**VERIFICATION**

I, Todd Hall, am a Plaintiff in the above-captioned matter. I am familiar with the contents of Plaintiff Todd Hall's Amended Objections and Responses to Defendant's Interrogatories (Set One).

The information supplied therein is based on my own personal knowledge and/or has been supplied by my attorneys or other agents and/or complied from available documents and is therefore provided as required by law. The information contained in Plaintiff Todd Hall's Amended Objections and Responses to Defendant's Interrogatories (Set One) is true, except as to the matters which were provided by my attorneys or other agents or compiled from available documents, including all contentions and opinions, and, as to those matters, I am informed and believe they are true.

I declare, under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed on ___Mar 8, 2021___, in California.

*Todd R Hall*
Todd R Hall (Mar 8, 2021 08:10 PST)

TODD HALL

---

1

*Hall v. Marriott, No. 3:19-cv-01715-JLS-AHG*
VERIFICATION

# Exhibit L

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Sean L. Litteral (SBN 331985)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        slitteral@bursor.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOD HALL, KEVIN BRANCA, and GEORGE ABDELSAYED, individually and on behalf of all others similarly situated, | Case No. 3:19-cv-01715-JLS-AHG |
| Plaintiffs, | **PLAINTIFF GEORGE ABDELSAYED'S AMENDED RESPONSES TO DEFENDANT MARRIOTT INTERNATIONAL, INC.'S FIRST SET OF INTERROGATORIES** |
| v. | |
| MARRIOTT INTERNATIONAL, INC., a Delaware corporation, | |
| Defendant. | |

**PROPOUNDING PARTY:**   DEFENDANT MARRIOTT INTERNATIONAL, INC.

**RESPONDING PARTY:**   PLAINTIFF GEORGE ABDELSAYED

**SET NUMBER:**   ONE

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff George Abdelsayed ("Plaintiff") hereby submits the following objections and responses to Defendant Marriott International, Inc. ("Defendant") First Set of Interrogatories ("Requests" or "Interrogatories") to Plaintiff George Abdelsayed.

## PLAINTIFF'S PRELIMINARY STATEMENT

Plaintiff does not waive and expressly reserves all objections as to the genuineness, foundation, competence, relevance, materiality, privileged status, or admissibility of these Requests and the information provided herein as evidence in connection with any proceeding or at trial of this or any other action, or for any other purpose.

Plaintiff and his attorneys have not completed their investigation of the facts relating to this action, have not completed discovery in this action, and have not completed preparation for trial. These responses are made without prejudice to Plaintiff's rights to use subsequently discovered evidence at trial or in connection with pretrial proceedings, or to amend these responses in the event that any information is later acquired or learned by Plaintiff or inadvertently omitted from these Requests. The majority of the discovery requires extensive analysis. Legal and factual research concerning the facts known to date and information that may become known in the future remains to be done. The additional work may result in new or different factual responses, objections, and defenses. Plaintiff expressly reserves the right to amend, modify, or supplement his responses and objections. Plaintiff further reserves the right to rely on any facts, documents, or other evidence that may develop or come to Plaintiff's attention at a later date. Plaintiff further reserves the right to rely on expert testimony.

As discovery proceeds, facts, information and evidence may be discovered that are not set forth in these responses, but which may have been responsive to these Requests. The following responses are based on Plaintiff's knowledge, information and belief at this time and are complete as to Plaintiff's best knowledge at this time.

Furthermore, these responses were prepared based on Plaintiff's good faith interpretation and understanding of the individual Requests and are subject to correction for inadvertent errors or omissions, if any. Plaintiff reserves his right to refer to, conduct discovery with reference to, or offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses.

The general and specific objections set forth below are intended to apply to all information produced or provided pursuant to the Requests.

## GENERAL OBJECTIONS

Plaintiff interposes the following general objections ("General Objections") to the Interrogatories as a whole, as well as to each and every individual Request contained therein, which are incorporated by reference into each specific response set forth below. Each individual response, therefore, is made subject to, and without waiver of, these General Objections.

Plaintiff objects to the Interrogatories to the extent the instructions and definitions used therein purport to impose obligations on Plaintiff beyond the scope of the Federal Rules of Civil Procedure. Without waiver of his objections, Plaintiff will respond consistently with the requirements of the Federal Rules.

Plaintiff objects to the Interrogatories to the extent they seek disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege, immunity, protection or doctrine of similar effect. To the extent that Plaintiff inadvertently provides any information arguably protected from discovery under any such privilege, protection or doctrine, such inadvertent disclosure shall not constitute a waiver of any such privilege, protection or doctrine.

Plaintiff objects to the Interrogatories to the extent they seek information not relevant to the claims and defenses in this action, on the grounds that the Interrogatories are irrelevant, constitute an undue burden on Plaintiff, and are not

reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff objects to the Interrogatories to the extent they are overbroad, unduly burdensome, oppressive, vague, ambiguous, or uncertain. Without waiver of his objections, Plaintiff has made reasonable, good faith assumptions of Defendant's intended meanings and will respond accordingly, as set forth below.

Plaintiff objects to the Interrogatories to the extent they are harassing, including where the information is of limited use or relevance in comparison to the burden or expense involved in producing any such information.

Plaintiff objects to the Interrogatories to the extent they seek information not in Plaintiff's possession, custody or control, or information that is in the possession, custody or control of Defendant or third parties, or is more easily or cost efficiently obtainable from them or is publicly available.

Plaintiff objects to the Interrogatories to the extent any Request is duplicative or cumulative of any earlier Request.

Plaintiff objects to the Interrogatories to the extent they seek the identification or disclosure of information in violation of Plaintiff's or third parties' rights of privacy, including any state or local laws, ordinances, rules or regulations protecting such information. Plaintiff's responses shall not be deemed to be a waiver of Plaintiff's or any third party's rights with respect to such information.

Plaintiff's responses, as set forth below, are based upon a good-faith interpretation of the Interrogatories. Should a different interpretation of any Request be asserted by Defendant, Plaintiff reserves the right to add to, modify, or otherwise change or amend the below responses.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1:

Identify the hotel reservations, by name and address, that Mr. Abdelsayed made via website, regardless of whether it was by computer, cell phone, or any other electronic device, between 2010 and 2020.

## RESPONSE TO INTERROGATORY NO. 1:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Abdelsayed's hotel stays and is not limited to Mr. Abdelsayed's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it neither relevant nor proportional to the needs of the case because it seeks information about all of Mr. Abdelsayed's hotel stays and is not limited to Mr. Abdelsayed's stays at Marriott hotels.

Without waiving the foregoing objections, Plaintiff responds as follows:

| Name of Hotel | Address |
|---|---|
| Hilton Americas-Houston | 1600 Lamar Street, Houston, Texas 77010 |
| Coronado Island Marriott Resort | 2000 2nd Street, Coronado, California 92118 |
| Miramonte Resort and Spa | 45000 Indian Wells Lane, Indian Wells, California 92210 |
| Grand Hyatt San Diego | 1 Market Place, San Diego, California 92101 |

| Hilton Los Angeles / Universal City | 555 Universal Hollywood Drive, Universal City, CA 91608 |
|---|---|
| Hampton Inn by Hilton | Heroes de Chapultepec 1702-B, La Escondida, 98160 Zacatecas, Zac., Mexico |
| The Woodland Resort | 2301 North Millbend Drive, The Woodlands, Texas, 77380 |
| Mayan Palace at Vidanta Riviera | Cancun Playa del Carmen Carretera Federal, 77710 Riviera Maya, Q.R., Mexico |
| Omni San Francisco Hotel | 500 California Street, San Francisco, CA 94104 |
| Courtyard by Marriott Los Angeles Burbank Airport | 2100 Empire Avenue, Burbank, CA 91504 |
| New York Marriott East Side | 525 Lexington Avenue, New York City 10017 |
| Residence Inn by Marriott Anaheim | 640 West Katella Avenue, Anaheim, CA 92802 |
| The Royal Playa del Carmen | Calle 20 Nte LB, Gonzalo Guerrero, 77720 Playa del Carmen, Q.R., Mexico |

Discovery is ongoing and Plaintiff reserves the right to supplement these responses.

**INTERROGATORY NO. 2:**

From January 1, 2010 to the present, did Mr. Abdelsayed stay at any Marriott Hotels that charged a Resort Fee?  If so, with respect to each such stay, please identify:

(i)     the name and address of the Marriott Hotel at which Mr. Abdelsayed stayed;

(ii)    the dates of the stay;

(iii)   when he learned of the Resort Fee being charged; and

(iv)   the amount of the Resort Fee he was charged for his stay and all credits and/or discounts that Mr. Abdelsayed requested and/or used during the hotel stay, including but not limited to credits and/or discounts used on coffee, food, pool access, and/or gym amenities.

## RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Abdelsayed's hotel stays and is not limited to Mr. Abdelsayed's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case because it seeks information about all of Mr. Abdelsayed's hotel stays and is not limited to Mr. Abdelsayed's stays at Marriott hotels. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan.

13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows: Following a diligent search of Plaintiff's records, including over 2000 pages produced herewith, Plaintiff does not believe so. But he cannot recall. Discovery is ongoing and Plaintiff reserves the right to supplement his responses.

## AMENDED RESPONSE TO INTERROGATORY NO. 2:

Without waiving the above objections, Plaintiff responds as follows:

Plaintiff stayed at the Coronado Island Marriott Resort located at 2000 2nd Street, Coronado, California 92118. Plaintiff stayed at this resort between July 24-July 26, 2020. Plaintiff was not informed of the Resort Fee until check-in. Plaintiff was charged $25 per night for both nights of his stay.

## INTERROGATORY NO. 3:

From January 1, 2010 to the present, did Mr. Abdelsayed stay at any non-Marriott Hotel that charged a Resort Fee? If so, with respect to each such stay, please identify:

> (i) the name and address of the hotel at which Mr. Abdelsayed stayed;
>
> (ii) the dates of the stay;
>
> (iii) when he learned of the Resort Fee being charged; and
>
> (iv) the amount of the Resort Fee charged for his stay and all credits and/or discounts that Mr. Abdelsayed requested and/or used during the hotel stay, including but not limited to credits and/or discounts used on coffee, food, pool access, and/or gym amenities.

## RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates by reference the General Objections and Objections to

Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Abdelsayed's hotel stays and is not limited to Mr. Abdelsayed's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case because it seeks information about all of Mr. Abdelsayed's hotel stays and is not limited to Mr. Abdelsayed's stays at Marriott hotels. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows: Following a diligent search of Plaintiff's records, including over 2000 pages produced herewith, Plaintiff does not believe so. But he cannot recall. Discovery is ongoing and Plaintiff reserves the right to supplement his responses.

**INTERROGATORY NO. 4:**

Identify the name, address, telephone number, and email addresses of Mr. Abdelsayed's employers from January 1, 2010 to present, and identify the person, if any, who booked travel for Mr. Abdelsayed on his behalf and/or at his direction including but not limited to any administrative assistant(s) or spouse(s).

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Abdelsayed's travel and is not limited to Mr. Abdelsayed's stays at Marriott hotels. Plaintiff objects to this Request because it seeks information outside of the applicable class period. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case because it seeks information about all of Mr. Abdelsayed's travel and is not limited to Mr. Abdelsayed's stays at Marriott hotels.

Without waiving the foregoing objections, Plaintiff responds as follows:

| Date | Employer | Address | Telephone | Email | Booked Travel |
|------|----------|---------|-----------|-------|---------------|
| 01/2010-09/2014 | Apria Health Care | 10090 Willow | 858-653-6800 | Does Not Know | N/A |

| | | | | | |
|---|---|---|---|---|---|
| | | Creek Rd, San Diego, CA, 92131 | | | |
| 09/2014-12/2014 | Kearny Mesa Hyundai | 4797 Convoy Street, San Diego, CA, 92111 | 858-278-7100 | Does Not Know | N/A |
| 04/2015-09/2015 | Loomis Armor | 3555 Aero Ct., San Diego, CA 92123 | 619-232-51605 | Does Not Know | N/A |
| 09/2015-03/2016 | American Medical Response | 8808 Balboa Ave., Suite 150, San Diego, CA 92123 | 858-492-8111 | Does Not Know | N/A |
| 03/2016-06/2016 | Apria Health Care | 10090 Willow Creek Rd, San Diego, CA, 92131 | 858-653-6800 | Does Not Know | N/A |
| 11/2016-Present | Kearny Mesa Hyundai | 4797 Convoy Street, San Diego, CA, 92111 | 858-278-7100 | Does Not Know | N/A |

**INTERROGATORY NO. 5:**

For any stay at a Marriott Hotel from January 1, 2010 to present, was Mr. Abdelsayed aware of a Resort Fee charge, including the amount and related services, prior to completing his room reservation?

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it contains subparts that are not logically and factually subsumed within the same primary subject. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows: Following a diligent search of Plaintiff's records, including over 2000 pages

produced herewith, Plaintiff does not believe so. But he cannot recall.

**INTERROGATORY NO. 6:**

Is it Mr. Abdelsayed's contention that he was never aware that a Resort Fee was being charged before he booked a room at a Marriott Hotel? If no, please identify: (i) the date when Mr. Abdelsayed first learned that a Resort Fee was being charged; (ii) how Mr. Abdelsayed learned of the Resort Fee (and, if a person provided that information to Mr. Abdelsayed, identify the name and contact information for that person); (iii) the specific information learned; and (iv) all steps taken by Mr. Abdelsayed in response to learning that information.

**RESPONSE INTERROGATORY NO. 6:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative

account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows: It is Plaintiff's contention that he was not aware of the resort fee until check in. He was informed of this information by the staff member who helped him check in. At that point, Plaintiff had traveled to the resort with his family, and he did not believe there was anything he could do.

**INTERROGATORY NO. 7:**

State whether Mr. Abdelsayed has been a party to any lawsuit other than this matter and, if he has, identify the lawsuit by name, case number, and jurisdiction.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff believes that he was a part of a class of employees who sued Kearny Mesa Hyundai for unpaid wages. Plaintiff was not a named plaintiff. He does not recall anything about the case other than that he received a nominal monetary amount along with each of the other employees.

## INTERROGATORY NO. 8:

For every online booking of a Marriott room, state whether Mr. Abdelsayed assessed and understood the price of the room from when he first began the booking process to when he actually completed the booking process.

## RESPONSE TO INTERROGATORY NO. 8:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff does not recall the precise details for every single one of his bookings. Plaintiff has produced over 2000 pages of documents, including his account statements setting forth the amount he paid for each hotel. Discovery is ongoing and Plaintiff reserves the right to supplement his responses as additional information becomes available.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:

Without waiving the above objections, Plaintiff responds as follows:

Plaintiff assessed and understood the price of the room. However, as described elsewhere, Plaintiff was not informed of the Resort Fee during the booking process.

**INTERROGATORY NO. 9:**

Has Mr. Abdelsayed ever asked for a refund or credit of a fee charged by a Marriott hotel at check in or at check out? If so, identify the date(s) and hotel(s) when this occurred.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Interrogatory as being vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request to the extent that it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).

Without waiving the foregoing objections, Plaintiff responds as follows: No.

//

//

//

**INTERROGATORY NO. 10:**

Identify all travel reward memberships Mr. Abdelsayed has held since January 1, 2010, including any Marriott's reward number or Marriott Bonvoy™ loyalty program number.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome because it seeks information about all of Mr. Abdelsayed's travel rewards memberships and is not limited to travel rewards memberships provided by Marriott. Plaintiff objects to this Request because it neither relevant nor proportional to the needs of the case because it seeks information about all travel rewards memberships and is not limited to travel rewards memberships provided by Marriott.

Without waiving the foregoing objections, Plaintiff responds as follows:

| Travel Reward Membership | Reward / Program Number |
|---|---|
| Marriott | 218118396 |
| Southwest Airlines | 20069766264 |
| United Airlines | JB111456 |
| Delta Airlines | 9363080004 |
| IHG | 967201862 |

---

| Discovery | 8155596075 |
| --- | --- |
| Hilton Honors | 168274507 |
| Hyatt | 552285914J |
| Gov Vacation Rewards | GVR44680QBO |

## INTERROGATORY NO. 11:

Was Mr. Abdelsayed able to ascertain the Resort Fee amount and what products and services were included in the Resort Fee before completing the final reservation booking for a room at a Marriott Hotel?

## RESPONSE TO INTERROGATORY NO. 11:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this Request because it neither relevant nor proportional to the needs of the case because it seeks information about all travel rewards memberships and is not limited to travel rewards memberships provided by Marriott. Plaintiff objects to this request to this request on the grounds that it is vague, ambiguous, and compound. Plaintiff further objects on the grounds that the Interrogatory is overbroad, unduly burdensome, and oppressive.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff does not recall. To the extent that Plaintiff recalls any of these details, Plaintiff vaguely recalls material in the past related to internet access and parking,

but Plaintiff does not recall whether such statements were made in connection with resort fee notifications.

**INTERROGATORY NO. 12:**

Was the full price of Mr. Abdelsayed's stay at any Marriott Hotel disclosed before completing the booking of his room reservation? If not, identify what was disclosed, for which properties, and when he learned that price information was not disclosed during the booking process.

**RESPONSE TO INTERROGATORY NO. 12:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to this request on the grounds that it is vague and compound. Plaintiff objects to this Request because it neither relevant nor proportional. Plaintiff further objects on the grounds that the Interrogatory is overbroad, unduly burdensome, and oppressive.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff does not recall the precise details for every single one of his bookings. Plaintiff has produced numerous documents, including his account statements setting forth the amount he paid for each hotel. Discovery is ongoing and Plaintiff reserves the right to supplement his responses as additional information becomes available.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Without waiving the above objections, Plaintiff responds as follows:

Plaintiff assessed and understood the price of the room. However, as described elsewhere, Plaintiff was not informed of the Resort Fee during the booking process.

**INTERROGATORY NO. 13:**

What are the specific monetary damages being claimed by Mr. Abdelsayed as a result of Marriott's alleged misconduct, and the amount thereof?

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff further objects to this request on the grounds that it calls for expert testimony and the

premature disclosure of Plaintiffs' expert reports. Plaintiffs will disclose their experts at class certification and/or in accordance with the schedule established by the Court.

Discovery is ongoing and Plaintiff reserves the right to supplement this response as discovery proceeds.

## INTERROGATORY NO. 14:

Set forth the specific facts as to how Mr. Abdelsayed was deceived during the online booking of a room at a Marriott hotel, and is it Mr. Abdelsayed's contention this alleged deception occurred every time he booked a room?

## RESPONSE TO INTERROGATORY NO. 14:

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every

evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Without waiving the foregoing objections, Plaintiff responds as follows: It is Plaintiff's contention that he was not aware of the resort fee until check in. He was informed of this information by the staff member who helped him check in. At that point, Plaintiff had traveled to the resort with his family, and he did not believe there was anything he could do.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Without waiving the above objections, Plaintiff responds as follows:

During the booking process, Plaintiff was informed of the price per night for his room. However, this price as advertised did not include the Resort Fee and Plaintiff was not informed of the Resort Fee until check-in. Accordingly, Plaintiff was led to believe that the cost of the stay would amount to a certain price, when, in fact, Marriott intended to charge another price.

**INTERROGATORY NO. 15:**

For Mr. Abdelsayed's reserving of rooms for the July 2020 Hotel Stay, (i) did Marriott not disclose the existence of the Resort Fee prior to final room booking; (ii) did Marriott disclose the existence of the Resort Fee but Mr. Abdelsayed did not see any such disclosures before making the reservations; or (iii) did Marriott disclose the existence of the Resort Fee and Mr. Abdelsayed was fully aware of those disclosures before making the reservations?

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this

request as vague and ambiguous.  Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect.  Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that is overbroad and unduly burdensome.  Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).  Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Without waiving the foregoing objections, Plaintiff responds as follows:  It is Plaintiff's contention that he was not aware of the resort fee until check in.  He was informed of this information by the staff member who helped him check in.  At that point, Plaintiff had traveled to the resort with his family, and he did not believe there was anything he could do.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:

Without waiving the above objections, Plaintiff responds as follows:

Marriott's Resort Fee was not disclosed during the booking process.

## INTERROGATORY NO. 16:

Has Mr. Abdelsayed ever asked for or received a credit in connection with a Resort Fee charge at any Marriott Hotel, including but not limited to the July 2020

Hotel Stay?  If so, please describe in detail the circumstances surrounding the credit, including who received the credit; the amount of credit; and whether Mr. Abdelsayed or someone on his behalf requested the credit.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response.  Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect.  Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that is overbroad and unduly burdensome.  Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case.  Plaintiff objects to this Interrogatory because it calls for a narrative response.  *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).  Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff has not requested a credit in connection with a Resort Fee.

**INTERROGATORY NO. 17:**

Has Mr. Abdelsayed ever made a reservation at the Coronado Island Marriott Resort and Spa?  If so, with respect to each such reservation, state: (i) the date the

reservation was made; (ii) the means by which the reservation was made (via website, app, etc.); (iii) whether Mr. Abdelsayed was informed of the existence of a resort fee before he completed his reservation; and (iv) the dates when the stay occurred or is set to occur.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions).

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff made his own reservation for his July 24-July 26, 2020 stay at Coronado

Island Marriott Resort.  Plaintiff booked the trip either on Marriott's website or on Marriott's phone application.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

Without waiving the above objections, Plaintiff responds as follows:

Plaintiff believes he made his reservation on July 22, 2020.

**INTERROGATORY NO. 18:**

Describe in detail everything Mr. Abdelsayed recalls seeing on the Marriott app flow when he made the reservation in connection with the July 2020 Hotel Stay.

**RESPONSE TO INTERROGATORY NO. 18:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response.  Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that is overbroad and unduly burdensome.  Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case.  Plaintiff objects to this Interrogatory because it calls for a narrative response.  *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")).  Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff does not recall whether he made his reservation on Marriott's website or on Marriott's application. Plaintiff recalls seeing a picture of the room, pictures of the property, the room rate, and taxes for the room.

**INTERROGATORY NO. 19:**

For each Proposed Class Member, identify:

(i)     their name;

(ii)    their address;

(iii)   the Marriott Hotel(s) at which they allegedly booked a room;

(iv)    the manner in which they booked a room at a Marriott Hotel/Marriott Hotels, including but not limited to through the Marriott website, through an online travel agency like Expedia or Orbitz, or through the Marriott app;

(v)     whether they were charged a Resort Fee upon booking a room at a Marriot Hotel/Marriott Hotels;

(vi)    whether the Resort Fee was disclosed to them prior to their booking a room at a Marriott Hotel/Marriott Hotels;

(vii)   whether they sought and/or received any goods or services covered by the Resort Fee; and

(viii)  whether they sought a refund or reimbursement of the Resort Fee.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client

privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff further objects that Marriott has superior access to the information it seeks and, therefore, it is more readily available to Marriott than Plaintiff.

Without waiving the foregoing, Plaintiff responds as follows: Discovery is ongoing and Plaintiff reserves the right to supplement his responses.

**INTERROGATORY NO. 20:**

Identify the alleged amount of damages suffered by each Proposed Class Member as a result of Marriott's alleged misconduct, and the manner of calculating the same.

**RESPONSE INTERROGATORY NO. 20:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information

protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff objects to this Interrogatory on the grounds that it is premature. Plaintiff further objects to this request on the grounds that it calls for expert testimony and the premature disclosure of Plaintiffs' expert reports. Plaintiffs will disclose their experts at class certification and/or in accordance with the schedule established by the Court.

**INTERROGATORY NO. 21:**

Identify any and all expert witnesses who Mr. Abdelsayed and/or the Proposed Class Members intend to or may call during the trial of this Action, and with respect to each such expert witness, please (i) state the expert witness's qualifications; (ii) summarize the subject matter on which the expert witness is expected to testify, and all opinion(s) to be given by the expert witness; (iii) state each and every fact relied upon by the expert witness to reach the opinion(s) the expert witness is expected to give; (iv) identify each and every document reviewed or relied upon by the expert witness to reach the opinion(s) the expert witness is expected to give; and (v)

identify and attach each and every report or other document which the expert witness has prepared for use in the trial in this action.

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiff incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the instant response. Plaintiff further objects to this Interrogatory on the following grounds:

Plaintiff objects that this Interrogatory is compound. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that is overbroad and unduly burdensome. Plaintiff objects to this Request because it is neither relevant nor proportional to the needs of the case. Plaintiff objects to this Interrogatory because it calls for a narrative response. *See Bashkin v. San Diego Cty.*, No. 08-CV-1450-WQH WVG, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011) (party is not "entitled to a narrative account of [opposing party's] case,") (citing *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M.2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents.")). Plaintiff objects to this Interrogatory to the extent that it calls for legal conclusions. Plaintiff further objects to this request on the grounds that it calls for expert testimony and the premature disclosure of Plaintiffs' expert reports. Plaintiff will disclose their experts at class certification and/or in accordance with the schedule established by the Court.

Dated:  October 4, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  ___/s/ L. Timothy Fisher___
          Attorney

L. Timothy Fisher (SBN 191626)
Sean L. Litteral (SBN 320783)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
E-mail: ltfisher@bursor.com
           slitteral@bursor.com

*Interim Class Counsel*

## __VERIFICATION__

I, George Abdelsayed, declare that:

I am a plaintiff in the above-captioned action.  I have read Plaintiff George Abdelsayed's Amended Responses to Defendant Marriott International, Inc.'s First Set of Interrogatories and know the contents thereof.  The responses are true of my own knowledge except as to the matters therein stated on information and belief and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in San Diego, California on October __4__, 2021.



George Abdelsayed

---

# Exhibit M



United States of America
FEDERAL TRADE COMMISSION
Washington, DC 20580

Division of Advertising Practices

November 26, 2012

Kemp Gallineau
Vice President & General Manager
The Gaylord Palms
Resort & Convention Center
6000 West Osceola Parkway
Kissimmee, Florida 34746

**WARNING LETTER**

Dear Mr. Gallineau:

The Federal Trade Commission ("FTC") has investigated whether certain hotel operators are violating Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.§ 45(a), by misrepresenting the hotel room reservation price quoted to consumers.

On May 21, 2012, the FTC held a conference on "drip pricing," defined broadly as a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process. At the conference, FTC Chairman Jon Leibowitz asked consumers to share their drip pricing stories with the FTC. One common complaint consumers raised involved mandatory fees hotels charge for amenities such as newspapers, use of onsite exercise or pool facilities, or internet access, sometimes referred to as "resort fees." These mandatory fees can be as high as $30 per night, a sum that could certainly affect consumer purchasing decisions.

Specifically, consumers complained that they did not know that they would be required to pay resort fees in addition to the quoted hotel room rate. Several stated that they only learned of the fees after they arrived at the hotel, long after making a reservation at what they believed to be the total room price. Others paid for the reservation in advance, and only found out after they arrived at the hotel that they would have to pay additional mandatory fees.

FTC staff has reviewed a number of online hotel reservation sites, and has confirmed that some hotels exclude resort fees from the quoted reservation price. Instead, the "total price" or "estimated price" quoted to consumers includes only the room rate and applicable taxes. At some of these sites, the applicable resort fee is listed nearby, but separate from, the quoted price. In others, the quoted price is accompanied by an asterisk that leads consumers to another location at the site – sometimes on the same page, sometimes not – where the applicable resort fee is disclosed, typically in fine print. A few sites fail to identify applicable resort fees anywhere, and instead inform consumers that other undefined fees may apply.

MAR00012

These practices may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms. We believe that online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel. While a hotel reservation site may breakdown the components of the reservation estimate (e.g., room rate, estimated taxes, and any mandatory, unavoidable fees), the most prominent figure for consumers should be the total inclusive estimate.

We reviewed your website at http://www.gaylordhotels.com/gaylord-palms/index.html/ and found that in at least some instances mandatory resort fees are not included in the reservation rate quoted to consumers. We strongly encourage you to review your company's website to ensure you are not misrepresenting the total price consumers can expect to pay when making a reservation to stay in your hotel. Please be advised that the FTC may take action to enforce and seek redress for any violations of the FTC Act as the public interest may require.

Thank you for your attention to this matter. Please direct any inquiries concerning this letter to Annette Soberats at asoberats@ftc.gov or at 202-326-2921.

Very truly yours,

Mary K. Engle
Associate Director for Advertising Practices

cc:    Arne M. Sorenson, President & CEO
       Marriott International Inc.

# Exhibit N

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Sean L. Litteral (SBN 331985)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
            slitteral@bursor.com

*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOD HALL, KEVIN BRANCA, and GEORGE ABDELSAYED, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation,<br><br>               Defendant. | Case No. 3:19-cv-01715-JLS-AHG<br><br>**PLAINTIFF GEORGE ABDELSAYED'S AMENDED RESPONSES TO DEFENDANT MARRIOTT INTERNATIONAL, INC.'S FIRST SET OF REQUESTS FOR ADMISSION** |

**PROPOUNDING PARTY:**    DEFENDANT MARRIOTT INTERNATIONAL, INC.

**RESPONDING PARTY:**    PLAINTIFF GEORGE ABDELSAYED

**SET NUMBER:**    ONE

Pursuant to Federal Rules of Civil Procedure, Rule 36, Plaintiff George Abdelsayed ("Plaintiff") hereby submits the following objections and responses to Defendant Marriott International, Inc.'s ("Defendant") First Set of Request for Admissions ("Requests") to Plaintiff George Abdelsayed.

## **GENERAL OBJECTIONS**

Plaintiff does not waive and expressly reserves all objections as to the genuineness, foundation, competence, relevance, materiality, privileged status, or admissibility of these responses and the information provided herein as evidence in connection with any proceeding or at trial of this or any other action, or for any other purpose.

Plaintiff and his attorneys have not completed their investigation of the facts relating to this action, have not completed discovery in this action, and have not completed preparation for trial. These responses are made without prejudice to Plaintiff's rights to use subsequently discovered evidence at trial or in connection with pretrial proceedings, or to amend these responses in the event that any information is later acquired or learned by Plaintiff or inadvertently omitted from these responses. The majority of the discovery requires extensive analysis. Legal and factual research concerning the facts known to date and information that may become known in the future remains to be done. The additional work may result in new or different factual responses, objections, and defenses. Plaintiff expressly reserves the right to amend, modify, or supplement his responses and objections. Plaintiff further reserves the right to rely on any facts, documents, or other evidence that may develop or come to Plaintiff's attention at a later date. Plaintiff further reserves the right to rely on expert testimony.

As discovery proceeds, facts, information and evidence may be discovered that are not set forth in these responses, but which may have been responsive to these Requests for Admission. The following responses are based on Plaintiff's

knowledge, information and belief at this time and are complete as to Plaintiff's best knowledge at this time. Furthermore, these responses were prepared based on Plaintiff's good faith interpretation and understanding of the individual Requests for Admission and are subject to correction for inadvertent errors or omissions, if any. Plaintiff reserves his right to refer to, conduct discovery with reference to, or offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses.

The general and specific objections set forth below are intended to apply to all information produced or provided pursuant to the Requests for Admission. Plaintiff interposes the following general objections ("General Objections") to the Requests for Admission as a whole, as well as to each and every individual Request contained therein, which are incorporated by reference into each specific response set forth below. Each individual response, therefore, is made subject to, and without waiver of, these General Objections.

Plaintiff objects to the Requests for Admission to the extent the instructions and definitions used therein purport to impose obligations on Plaintiff beyond the scope of the Federal Rules of Civil Procedure. Without waiver of his objections, Plaintiff will respond consistently with the requirements of the Federal Rules.

Plaintiff objects to the Requests for Admission to the extent they seek disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege, immunity, protection or doctrine of similar effect. To the extent that Plaintiff inadvertently provides any information arguably protected from discovery under any such privilege, protection or doctrine, such inadvertent disclosure shall not constitute a waiver of any such privilege, protection or doctrine.

Plaintiff objects to the Requests for Admission to the extent they seek information not relevant to the claims and defenses in this action, on the grounds that the Requests for Admission are irrelevant, constitute an undue burden on Plaintiff, and are not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiff objects to the Requests for Admission to the extent they are overbroad, unduly burdensome, oppressive, vague, ambiguous, or uncertain. Without waiver of her objections, Plaintiff has made reasonable, good faith assumptions of Defendant's intended meanings and will respond accordingly, as set forth below.

Plaintiff objects to the Requests for Admission to the extent they are harassing, including where the information is of limited use or relevance in comparison to the burden or expense involved in producing any such information.

Plaintiff objects to the Requests for Admission to the extent they seek information not in Plaintiff's possession, custody or control, or information that is in the possession, custody, or control of Defendant or third parties, or is more easily or cost efficiently obtainable from them or is publicly available.

Plaintiff objects to the Requests for Admission to the extent any Request is duplicative or cumulative of any earlier Request.

Plaintiff objects to the Requests for Admission to the extent they seek the identification or disclosure of information in violation of Plaintiff's or third parties' rights of privacy, including any state or local laws, ordinances, rules or regulations protecting such information. Plaintiff's responses shall not be deemed to be a waiver of Plaintiff's or any third party's rights with respect to such information.

Plaintiff's responses, as set forth below, are based upon a good-faith interpretation of the Requests for Admission. Should a different interpretation of any Request be asserted by Defendant, Plaintiff reserves the right to add to, modify, or otherwise change or amend the below responses.

# RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Mr. Abdelsayed was aware that a Resort Fee was being charged prior to completing his booking of a room reservation at Marriott Hotels.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 2:**

Mr. Abdelsayed was aware of services and amenities that were included in Resort Fees prior to completing his booking of a room reservation at a Marriott Hotel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request. Plaintiff was not aware of a Resort Fee being charged on his July 24-July 26, 2020 hotel stay prior to completing his booking of a room reservation at Marriott Hotels. To the extent that Resort Fees were assessed prior to his July 2020 stay, Plaintiff has made a reasonable inquiry including a review of over 2000 pages of document production, but the information Plaintiff knows or can readily obtain is insufficient to enable Plaintiff to admit or deny.

**REQUEST FOR ADMISSION NO. 3:**

Mr. Abdelsayed was aware of taxes, separate from Resort Fees, that were included in Resort Fees prior to completing his booking of a room reservation at a Marriott Hotel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine,

or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 4:**

If a Resort Fee was being charged by a certain Marriott Hotel, Mr. Abdelsayed was informed of the Resort Fee charge at the time of check-in at Marriott Hotels.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request. Plaintiff was not aware of a Resort Fee being charged on his July 24-July 26, 2020 hotel stay prior to completing his

booking of a room reservation at Marriott Hotels.  To the extent that Resort Fees were assessed prior to his July 2020 stay, Plaintiff has made a reasonable inquiry including a review of over 2000 pages of document production, but the information Plaintiff knows or can readily obtain is insufficient to enable Plaintiff to admit or deny.

**AMENDED RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Without waiving the foregoing objections, Plaintiff responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 5:**

Mr. Abdelsayed reviewed his room folios at or after check-in from Marriott Hotels and was aware that a Resort Fee was included in his charges.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous.  Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows:  Admit.

//

//

**REQUEST FOR ADMISSION NO. 6:**

Mr. Abdelsayed was able to ascertain the Resort Fee amount and what products and services were included in the Resort Fee before booking his room reservation.

**RESPONSE REQUEST FOR ADMISSION NO. 6:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied. Plaintiff was only informed of the Resort Fee after he arrived at the hotel for check-in.

**REQUEST FOR ADMISSION NO. 7:**

Mr. Abdelsayed was not prevented from independently researching the amount of a Resort Fee at a Marriott Hotel and the products and services included with the Resort Fee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 8:**

In connection with the July 2020 Hotel Stay, Mr. Abdelsayed was aware of the Resort Fee amount and what products and services were included in the Resort Fee before booking his room reservation.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows:  Denied.  Plaintiff was only informed of the Resort Fee after he arrived at the hotel for check-in.

**REQUEST FOR ADMISSION NO. 9:**

At the time that the reservation for the July 2020 Hotel Stay was made, Mr. Abdelsayed previously had stayed at a non-Marriott Hotel charging a Resort Fee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous.  Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows:  Plaintiff is unable to admit or deny this request.  Plaintiff has made a reasonable inquiry including a review of over 2000 pages of document production, but the information Plaintiff knows or can readily obtain is insufficient to enable Plaintiff to admit or deny.

**REQUEST FOR ADMISSION NO. 10:**

At the time that the reservation for the July 2020 Hotel Stay was made, Mr. Abdelsayed previously had made an electronic reservation at a Marriott Hotel charging a Resort Fee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request. Plaintiff has made a reasonable inquiry including a review of over 2000 pages of document production, but the information Plaintiff knows or can readily obtain is insufficient to enable Plaintiff to admit or deny.

**REQUEST FOR ADMISSION NO. 11:**

At the time that the reservation for the July 2020 Hotel Stay was made, Mr. Abdelsayed was aware that some Marriott Hotels charged a Resort Fee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine,

or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request. Plaintiff has made a reasonable inquiry including a review of over 2000 pages of document production, but the information Plaintiff knows or can readily obtain is insufficient to enable Plaintiff to admit or deny.

**REQUEST FOR ADMISSION NO. 12:**

During or at the end of his July 2020 Hotel Stay, Mr. Abdelsayed received a portfolio/folio showing that he had been charged a Resort Fee in connection with the July 2020 Hotel Stay.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the

extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 13:**

Neither Mr. Abdelsayed nor Mr. Abdelsayed's Attorneys are aware of any court opinion, statute, regulations, or any other legal authority stating Drip Pricing is unlawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 14:**

The FTC has not declared Drip Pricing to be unlawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 15:**

The November 2012 Warning Letter does not state Drip Pricing is unlawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 16:**

The November 2012 Warning Letter does not require a hotel to identify "up front" on its website the total charge for purchasing a hotel room.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 17:**

No November 2012 Warning Letter was directed to Marriott.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy

under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous.  Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 18:**

No November 2012 Warning Letter expressed any concern about Marriott's website.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous.  Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 19:**

The FTC did not issue the Sullivan Paper.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Plaintiff incorporates by reference each of the General Objections set forth

above as if fully set forth herein.  Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous.  Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 20:**

The Marriott website contains two separate line items for a Resort Fee and "Estimated government taxes and fees," respectively.

**RESPONSE REQUEST FOR ADMISSION NO. 20:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous generally and as to time.  Plaintiff objects

to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request at this time.

**REQUEST FOR ADMISSION NO. 21:**

There is no language on the Marriott website stating the Resort Fee is a government fee.

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous generally and as to time. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request at this time.

**REQUEST FOR ADMISSION NO. 22:**

The "From [dollar amount] USD/night" next to the "View Rates" box on Marriott's website shows the "rates" start at that dollar amount.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Plaintiff incorporates by reference each of the General Objections set forth

above as if fully set forth herein.  Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous generally and as to time.  Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request at this time.

## REQUEST FOR ADMISSION NO. 23:

Marriott's website does not state that the total charge for booking a hotel room starts at a certain dollar amount.

## RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information.  Plaintiff objects to this request to the extent that it is vague and ambiguous generally and as to time.  Plaintiff objects

to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request at this time.

**REQUEST FOR ADMISSION NO. 24:**

Marriott does not advertise that the total charge for booking a hotel room starts at a certain dollar amount.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous generally and as to time. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request at this time.

**REQUEST FOR ADMISSION NO. 25:**

The price of the advertised online room rate for a Marriott Hotel room increases during the online booking process and includes any applicable Resort Fee and taxes prior to completion of room booking.

## RESPONSE TO REQUEST FOR ADMISSION NO. 25:

Plaintiff incorporates by reference each of the General Objections set forth above as if fully set forth herein. Plaintiff further objects to this Request on the following grounds:

Plaintiff objects to this Request to the extent it seeks disclosure of information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, protection, or doctrine of similar effect. Plaintiff objects to this Request to the extent that it is invasive of his right to privacy under the U.S. and California Constitutions, other state or local laws, or ordinances, rules or regulations protecting such information. Plaintiff objects to this request to the extent that it is vague and ambiguous generally and as to time. Plaintiff objects to this Request to the extent that it seeks information that is neither relevant nor proportional to the needs of the case.

Without waiving the foregoing, Plaintiff responds as follows: Plaintiff is unable to admit or deny this request at this time.

Dated: October 4, 2021    Respectfully submitted,

              **BURSOR & FISHER, P.A.**

              By:  */s/ L. Timothy Fisher*
                  L. Timothy Fisher

              L. Timothy Fisher (SBN 191626)
              Sean L. Litteral (SBN 320783)
              1990 N. California Blvd., Suite 940
              Walnut Creek, CA 94596
              E-mail: ltfisher@bursor.com
                  slitteral@bursor.com

              *Interim Class Counsel*

# Exhibit O



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

For Release

# FTC Warns Hotel Operators that Price Quotes that Exclude 'Resort Fees' and Other Mandatory Surcharges May Be Deceptive

November 28, 2012

**Tags:** Consumer Protection | Bureau of Consumer Protection | Advertising and Marketing | Advertising and Marketing Basics

The Federal Trade Commission has warned 22 hotel operators     that their online reservation sites may violate the law by providing a deceptively low estimate of what consumers can expect to pay for their hotel rooms.

The warning letters cited consumer complaints that surfaced at a recent conference the FTC held on "drip pricing," a pricing technique in which firms advertise only part of a product's price and reveal other charges as the customer goes through the buying process.  According to the FTC letters, "One common complaint consumers raised involved mandatory fees hotels charge for amenities such as newspapers, use of onsite exercise or pool facilities, or internet access, sometimes referred to as 'resort fees.'  These mandatory fees can be as high as $30 per night, a sum that could certainly affect consumer purchasing decisions."  The warning letters also state that consumers often did not know they would be required to pay resort fees in addition to the quoted hotel rate.

"Consumers are entitled to know in advance the total cost of their hotel stays," said Federal Trade Commission Chairman Jon Leibowitz.  "So-called 'drip pricing' charges, sometimes portrayed as 'convenience' or 'service' fees, are anything but convenient, and businesses that hide them are doing a huge disservice to American consumers."

The letters strongly encourage the companies to review their websites and ensure that their ads do not misrepresent the total price consumers can expect to pay.

The Federal Trade Commission works for consumers to prevent fraudulent, deceptive, and unfair business practices and to provide information to help spot, stop, and avoid them. To file a complaint in English or Spanish, visit the FTC's online Complaint Assistant or call 1-877-FTC-HELP (1-877-382-4357). The FTC enters complaints into Consumer Sentinel, a secure, online database available to more than 2,000 civil and criminal law enforcement agencies in the U.S. and abroad. The FTC's website provides free information on a variety of consumer topics.  Like the FTC on Facebook, follow us on Twitter, and subscribe to press releases for the latest FTC news and resources.

# Contact Information

MEDIA CONTACT:

    Betsy Lordan

    *Office of Public Affairs*

    202-326-3707

STAFF CONTACT:

    Annette Soberats

    *Bureau of Consumer Protection*

    202-326-2921

    Serena Viswanathan

    *Bureau of Consumer Protection*

    202-326-3244

# Exhibit P



United States of America
FEDERAL TRADE COMMISSION
Washington, DC 20580

Division of Advertising Practices

November 26, 2012

Peter Weien, General Manager
The Gaylord Opryland
Resort & Convention Center
2800 Opryland Drive
Nashville, Tennessee 37214

### WARNING LETTER

Dear Mr. Weien:

The Federal Trade Commission ("FTC") has investigated whether certain hotel operators are violating Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.§ 45(a), by misrepresenting the hotel room reservation price quoted to consumers.

On May 21, 2012, the FTC held a conference on "drip pricing," defined broadly as a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process. At the conference, FTC Chairman Jon Leibowitz asked consumers to share their drip pricing stories with the FTC. One common complaint consumers raised involved mandatory fees hotels charge for amenities such as newspapers, use of onsite exercise or pool facilities, or internet access, sometimes referred to as "resort fees." These mandatory fees can be as high as $30 per night, a sum that could certainly affect consumer purchasing decisions.

Specifically, consumers complained that they did not know that they would be required to pay resort fees in addition to the quoted hotel room rate. Several stated that they only learned of the fees after they arrived at the hotel, long after making a reservation at what they believed to be the total room price. Others paid for the reservation in advance, and only found out after they arrived at the hotel that they would have to pay additional mandatory fees.

FTC staff has reviewed a number of online hotel reservation sites, and has confirmed that some hotels exclude resort fees from the quoted reservation price. Instead, the "total price" or "estimated price" quoted to consumers includes only the room rate and applicable taxes. At some of these sites, the applicable resort fee is listed nearby, but separate from, the quoted price. In others, the quoted price is accompanied by an asterisk that leads consumers to another location at the site – sometimes on the same page, sometimes not – where the applicable resort fee is disclosed, typically in fine print. A few sites fail to identify applicable resort fees anywhere, and instead inform consumers that other undefined fees may apply.

**MAR00010**

These practices may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms. We believe that online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel. While a hotel reservation site may breakdown the components of the reservation estimate (e.g., room rate, estimated taxes, and any mandatory, unavoidable fees), the most prominent figure for consumers should be the total inclusive estimate.

We reviewed your website at http://www.gaylordhotels.com/gaylord-opryland/index.html/ and found that in at least some instances mandatory resort fees are not included in the reservation rate quoted to consumers. We strongly encourage you to review your company's website to ensure you are not misrepresenting the total price consumers can expect to pay when making a reservation to stay in your hotel. Please be advised that the FTC may take action to enforce and seek redress for any violations of the FTC Act as the public interest may require.

Thank you for your attention to this matter. Please direct any inquiries concerning this letter to Annette Soberats at asoberats@ftc.gov or at 202-326-2921.

Very truly yours,

Mary K. Engle
Associate Director for Advertising Practices

cc:    Arne M. Sorenson, President & CEO
Marriott International Inc.

# Exhibit Q

| | |
|---|---|
| **From:** | Bennett, Susannah [Susannah.Bennett@marriott.com] |
| **Sent:** | Monday, December 31, 2012 04:05:35 PM |
| **To:** | Kellman, Harvey |
| **Cc:** | Bennett, Susannah |
| **Subject:** | RE: Gaylord Resort Fees/response from the FTC |

Hi Harvey,

In response to the letter I sent to the FTC I received a call late last week from Annette Soberats, an attorney with the FTC. We had a nice discussion - she confirmed that the FTC had indeed reviewed the Gaylord website prior to October 1st. They believe that since Gaylord reservations are directed to Marriott.com, we are in compliance. However, she did want me to confirm one thing. When booking a reservation, you get to the page where you would fill in your personal data and credit card number. You can see on the right side of that page, before filling in your information, a box that has "total fee" and a parenthetical that says the fee includes estimated taxes. Annette asked us to confirm that the "total fee" stated there also already includes the resort fee. <span>Privilege</span>

| Privilege |
|---|

Privilege And, she asked us to further confirm that any taxes charged on the resort fee are already included in that total amount, so that the $278.48 is the "all in" amount, and upon the final reservation screen no additional fees or taxes will be added.



Privilege

Susannah

Susannah Bennett | Vice President & Senior Counsel | Marriott International, Inc. | 10400 Fernwood Road | Bethesda, MD 20817 | Direct 301.380.5957 | Cell 410.336.1486 | susannah.bennett@marriott.com
NOTICE: This Marriott Law Dept. email may be confidential or privileged. Unauthorized copying, distribution or disclosure is prohibited. If you are not the intended recipient please advise me and then delete it. This is not intended to be an electronic signature under applicable law.

-----Original Message-----
From: Bennett, Susannah
Sent: Friday, December 14, 2012 12:29 PM
To: Kellman, Harvey; Holdaway, Jeff
Cc: Bennett, Susannah
Subject: FW: Gaylord Resort Fees/Response Letter to FTC

| Redacted |
|---|

Susannah

Susannah Bennett | Vice President & Senior Counsel | Marriott International, Inc. | 10400 Fernwood Road | Bethesda, MD 20817 | Direct 301.380.5957 | Cell 410.336.1486 | susannah.bennett@marriott.com
NOTICE: This Marriott Law Dept. email may be confidential or privileged. Unauthorized copying,

**CONFIDENTIAL**

distribution or disclosure is prohibited. If you are not the intended recipient please advise me and then delete it.  This is not intended to be an electronic signature under applicable law.

# Exhibit R

Resort Fees / Destination Amenity Fees

- Regulatory Updates
- Americas Policies and Required Practices

*Facilitators:*
Harvey Kellman, Vice President & Assistant Legal Counsel,
Marriott International

Jeff Wolff, Vice President, Guest Experience & Rooms Operations,
The Americas

October 21, 2016

THE AMERICAS

JOCELYN opens the call

Welcome and thank you for joining us today for the Resort Fees and Destination
Amenity Fees Webinar
I am Jocelyn Bailey and I will be moderating the call today.

Our facilitators today are Harvey Kellman, Vice President & Assistant Legal Counsel,
Marriott International
and
Jeff Wolff, Vice President, Guest Experience & Rooms Operations, The Americas

NEXT SLIDE



PURPOSE OF CALL

Regulatory Updates

Review Approval Process and Philosophy

Hotel, Owner and Franchisee Requirements

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

3

JEFF

Good Day Everyone and thank you for joining us on today's webinar. We appreciate you taking time on a Friday afternoon, in order to review several important topics relating to Resort Fees and Destination Amenity Fees.

One quick note: At any time during the webinar today, when we mention Resort Fee, please know that all of the information applies to other similar fees, sometimes known as Destination Amenity Fees or Facility Fees

Let me review the purpose of today's webinar. First, we have invited property leaders from all hotels, in the Americas, managed by Marriott or by a management or Franchise Companies, that are charging either a Resort, Destination or Facility Fee. Additionally, we invited owners and representatives from franchise and management companies for those hotels that charge one of these fees. Finally, we have invited all the same group of people from our newest hotels operating formally, under Starwood Hotels.

Joining me today and presenting first is Harvey Kellman, Vice President and Assistant Legal Counsel for Marriott International.

As you may have heard, there has been quite a bit of action on the legal and regulatory

front that could potentially impact the way that Resort and other fees are presented to our guests. Harvey, along with several of his counterparts on the Marriott legal team as well as our governmental affairs department, have been front and center, working to protect the interests of the hotels, owners, franchisees and Marriott International . As you will hear, we have taken a lead role, working through the AHLA and with the other major hotel companies in our industry, to present our case for Resort Fees

During the second part of today's call, I will review Marriott International's Resort Fee Policy. When implementing any of these fees, your resort or hotel, was required to meet some strict requirements, processes and guidelines that Marriott International has in place, in order to receive approval for the privilege of having one of these fees. I will be reviewing this policy, as it is possible that some of the General Managers were not in their current position when the fee was implemented. It is important to know, that if a hotel is not meeting any of these guidelines, you must move to be compliant immediately, or you will be considered ineligible to continue to charge a Resort or Destination Amenity Fee. For hotels that are operated by Managed by Marriott, the General Manager is accountable to ensure compliance to our standards. For those hotels managed by other companies, it is that management or franchise companies responsibility to ensure full compliance. As you will hear from Harvey, Marriott International's policy is compliant with the current FTC regulations and the reason that we are compliant is because of the policy that we have in place.

For those former Starwood Hotels on today's call, we understand that the policies of your previous company, may be different. We will address those differences, later in this webinar.

So let's move on to the content for today's call and with that, I would like to turn the call over to Harvey.

AND THEN TURNS IT OVER TO HARVEY

3



Regulators Revisiting
Resort Fee Disclosure Requirements

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

4

HARVEY

Today we are going to discuss some very important developments in the regulatory landscape – both at the state and federal levels - that will likely require changes to the way resort fees are disclosed to consumers through online channels and mobile devices.

Last Sentence: These changes can have a business impact to hotels that charge resort fees, and we will share with you what Marriott and Starwood (independently prior to the merger) are doing to mitigate the impact to our hotels that charge resort fees.

PLEASE NOTE:

➢ Any references to prices in this presentation are for illustrative purposes only.

➢ Franchise Hotels / Management Companies must meet Marriott International's Resort Fee policy.

➢ Pricing decisions will be made solely by the Franchise Hotel and / or Management Company.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL    5

HARVEY to speak to this....

Intro: Before we get into the discussion, a few disclaimers . . .

Last Sentence: Pricing decisions will be made solely by the Franchise Hotel and / or Management Company

5

## 2012 "DRIP PRICING" GUIDELINES

Federal Trade Commission (FTC) issued "warning letters" to 22 hotel companies requiring hotel booking channels to improve resort fee disclosures.

- Resort Fee must be clearly disclosed to the customer *prior to* the customer committing to book.

- The most prominent figure on the hotel website must be the total room price (Room Price + Mandatory Fees = **TOTAL PRICE**).

- Applies to all booking channels.

- Room Price remains operative rate in search.

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

6

HARVEY

Intro: Before we discuss the current regulatory environment, it is important to briefly go over a little history on resort fees and how both Marriott and Starwood have complied with the current legal requirements. This will help us understand what changes we are likely facing.

Go through Slides

• Room Price remains the operative rate in search:

This is an important element under the current legal framework for resort fees in terms of the competitive landscape for resort fee hotels.

Last Sentence: When a consumer currently does a search and directs the website to sort hotels by price, just the room rate is the operative number for purposes of sorting – not the room rate plus resort fee which would result in a lower ranking for the hotel.



HARVEY

Intro: Here are screenshots of the booking flow on Marriott.com for a hotel that charges a resort fee. In this case, a consumer searches for a hotel in Marco Island, Florida. The results that are returned include the Marco Island Marriott Beach Resort which charges a $25 resort fee.

As you can see, a $200 room rate is listed for this hotel, and at this stage in the booking path there is no mention of the resort fee charge. Also note the small red box at the top that highlights the ability of the consumer to sort the results in different ways, including by distance (the default), and also by price.

Last Sentence: If "sort by price" would be selected, the $200 rate would be the operative number for purposes of sorting this hotel.

2012 "DRIP PRICING" GUIDELINES

HARVEY

Last Sentence: This next screen in the booking path provides the first mention of the $25 resort fee charge, although importantly separate from the $200 room rate.

HARVEY

Intro: This next screen in the booking path is the crux of today's legal requirements. Note inside the red box the Total Price paid by the guest of $247.50 is prominently displayed, which is the sum of the $200 room rate *plus* all added taxes and fees.

Last Sentence: When you click on the "Total taxes and fees" link . . .

MAR190324



HARVEY

Last Sentence: The $25 resort fee is once again displayed, as well as occupancy taxes of $22.50 to be paid by the guest.

MAR190325



HARVEY

Intro: The next few slides demonstrate Starwood's compliance with the Drip Pricing Guidelines.  Here the consumer is searching fro a Starwood hotel in Scottsdale.   The Westin Kierland Resort shows up in the results, which is a hotel that charges a $29 resort fee.

Last Sentence: As you can see, just the room rate of $423 is displayed at this stage.

CONFIDENTIAL



HARVEY

Last Sentence: When you click on the "Select Your Rate" link . .



HARVEY

Last Sentence: The Total Price of $509 is displayed with a separate disclosure of the $29 resort fee.

HARVEY

And then the site displays a complete breakout of all fees included in the total price, including the $29 resort fee and other charges.

Last Sentence: As you can see, the Total Price to be paid by the guest of $509.23 is prominently displayed.

# RENEWED INTEREST IN RESORT FEES
## BY FTC AND STATE AGS

- FTC Chairwoman Ramirez questioning adequacy of Drip Pricing Guidelines. Seeks Total Price Display (TPD) disclosure for Resort Fees.

- 40+ State Attorney Generals launched investigations into whether resort fees violate consumer protection laws. Marriott received subpoenas from DC and PA. Starwood from GA and NY.

- The goal is to resolve both investigations simultaneously with a single solution.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

15

HARVEY

Intro: So that is the state of play today with respect to Resort Fee disclosures. We firmly believe that how we display resort fees to consumers is not only completely lawful, and non-deceptive, but we have also seen a very high level of guest satisfaction at hotels that charge resort fees due to a combination of our clear disclosures and internal policies.

Unfortunately, the FTC, and in particular the FTC Chairwoman has taken a renewed and very keen interest in resort fees. Complicating the matter further is that over 40 State Attorney Generals have also become focused on resort fees and have opened formal investigations.

- FTC Chairwoman Ramirez questioning adequacy of Drip Pricing Guidelines. . . .

Total Price Display in effect means that the first number the consumer sees when doing a search for a hotel is the room rate plus the resort fee. It also means, at least according to the FTC Chairwoman, that the Total Price (including the resort fee) is the operative number in a price-based sort order. We'll discuss the impact in the next slide.

TPD could also possibly mean that the Resort Fee is now subject to OTA commissions and occupancy taxes, which is generally not the case today. This would obviously have

a cost impact to resort hotels.

- 40+ State Attorney Generals launched investigations . . .

This is very unusual, and complicates the path to resolution. Very little coordination between state AGs and FTC.

Last Sentence: The goal is to resolve both investigations simultaneously with a single solution. This is proving to be extremely challenging.

15

## MARRIOTT'S ADVOCACY TO PROTECT RESORT FEES

- TPD may have a negative competitive impact on resort fee hotels, due to the potential impact on sort order and competitive impact from neighboring hotels that do not charge resort fees.

- Working with AHLA and other industry members, we are promoting an "Enhanced Page One Display" proposal to the FTC and AGs that would preserve the Room Rate as the operative rate in search, with an enhanced breakout of the resort fees on the first page displayed to the consumer.

- Our primary goals are to (1) be able to retain resort fee revenue; (2) achieve resolution on both the FTC and AG investigations; (3) require OTAs and their affiliates to be bound by the same rules; (4) not have resort fees subject to OTA commissions and occupancy taxes; and (5) gain sufficient time to do the required IT development.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

16

HARVEY

Intro: Marriott and Starwood have been actively engaged on this issue – working with AHLA, AGA and meeting with government regulators at the state and federal levels.

- TPD may have a negative competitive impact . . .

With the increased shift of hotel bookings to online platforms, and in particular mobile, the way hotels are displayed in sort order is important – particularly with respect to third party channels (Expedia, Booking.com).

- Working with AHLA and other industry members, we are promoting an "Enhanced Page One Display" . . .

We would like to build on what we do today, where the room rate is the operative number for sorting, but add the disclosure of the resort fee to the first page that is displayed to the consumer across all channels.

- Our primary goals are to . . .

Last Sentence: We'll talk a little in a few slides about the system work that may be needed to change the way we display resort fees, which will depend on the final outcome.

CONFIDENTIAL



**ENHANCED PAGE ONE DISPLAY –
OPTIONS BEING CONSIDERED**

*Example 1*
XYZ Hotel Resort   $250 per night
                   (+ $25 "Mandatory Hotel Room Charge")

*Example 2*
XYZ Hotel Resort   $250 per night
                   (+ $25 "Mandatory Hotel Room Charge")
**Total Room Charge $275 per night**

- Strong preference for Example 1
- Display of "Mandatory Hotel Room Charge" on **Page One on first exposure of the room rate to the consumer.**
- Both the title of the "Mandatory Hotel Room Charge" and the amount of the resort fee are required to be displayed in the same size font as the daily room rate.
- Room Rate is operative rate in price-based sort order.
- Total Price in addition to a summary of amenities included in charge is displayed *prior to* completion of booking.

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

17

THE AMERICAS

HARVEY

Intro: Here are some very rough examples of what the Enhanced Disclosure might look like.

First yellow box shows the $250 room rate along with the $25 resort fee which we are referring to as a "Mandatory Hotel Room Charge". The second box goes further and shows not only the $250 room rate along with the $25 resort fee, but it also shows the Total Price of $275. This is important to the Chairwoman.

- Strong preference for Example 1
Important to keep in mind that getting the FTC and AGs to accept this option is appearing to be an uphill battle. TPD is what they want.

Last Sentence: Total Price in addition to a summary of amenities included in charge is displayed *prior to* completion of booking.

MAR190334

## SYSTEM UPGRADES

- System upgrades will depend on the resolution.

- All customer facing hotel digital channels (web and mobile) will have to be modified to enable TPD or Enhanced Page One Display.

- TPD would require changes to a number of back-end legacy systems that support four key business functions:

  - Revenue Management
  - Reservation Processing
  - Property Management System
  - Financial Systems (commission payment, accounting, tax remittance)

- Consideration for Starwood IT Integration

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

18

HARVEY AND THEN TURNS OVER TO JEFF

Intro: Any change in the display of resort fees will require system changes.

Last Sentence: Now I'd like to turn over the presentation to Jeff Wolff who will rovide an overview of our current policies and practices relating to Resort Fees.



Americas Policies and Required Practices

JEFF

MAR190336



RESORT FEE APPROVAL PROCESS

Marriott International has a formalized Approval Process for any hotel that seeks to charge a Resort Fee. A hotel cannot charge a Resort Fee without this formal approval.

Issues concerning how Marriott approval process and policies will apply to Starwood hotels, (including a grandfathering mechanism) and requests for implementation of new resort fee charges for MI and Starwood hotels in current uncertain environment are currently under advisement by Resort Fee Committee.

ELIGIBILITY:

- Must be the "market norm" which is defined as 75% or more of the hotel's competitive set charging a Resort Fee.
- GSS OSAT, during the latest 6 months must be at or above brand standard (not in Red Zone).
- The resort's owner or franchisee must request, in writing, the Resort Fee.
- The resort should reside in a jurisdiction in which imposition of a Resort Fee will not result in significant legal risks.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL                    20

JEFF
Thanks Harvey.

OK, let's move on to review the Resort Fee Approval Process to ensure that you know your commitments and obligations:

Marriott International has a formalized Approval Process for any hotel that seeks to charge a Resort Fee. A hotel cannot charge a Resort Fee without this formal approval and as mentioned earlier, if a hotel fails to comply with our policy, your hotel could become ineligible to charge a Resort or Destination Amenity Fee.

I would first like to note that as I review this policy, please keep in mind that issues concerning how the Marriott approval process and policies will apply to Starwood hotels, (including a grandfathering mechanism) and requests for implementation of any new resort fee charges for Marriott and Starwood hotels in the current uncertain environment, are currently under advisement by Resort Fee Committee

The eligibility requirements are as follows:

• First, Resort Fees must be the "market norm" which is defined as 75% or more of the hotel's competitive set charging a Resort Fee. The comp set is looked upon as the hotels on your current or secondary comp set which means that the 75% could include

other resorts or hotels, outside your market, that your frequently compete against. We normally, do not like to take the lead in charging Resort Fees in a market.

- Guest satisfaction, during the latest 6 months must be at or above brand standard (not in Red Zone). That means if the Red Zone standard becomes more stringent, your hotel must meet this minimum standard

- The resort's owner or franchisee must request, in writing, the Resort Fee. This is done to ensure that there is 100% alignment between the owners and operators and that everyone knows the requirements associated to implement a fee as well as the risks involved

- The resort should reside in a jurisdiction in which imposition of a Resort Fee will not result in significant legal risks. At the current time, there are markets that are considered more risky than others, however the owners and operators are aware of this.

CONFIDENTIAL

# APPROVAL PROCESS - RESORT FEE COMMITTEE

Once a Resort Fee is requested and the proper forms are submitted, the Resort Fee must receive Executive approval by the Approval Committee which includes:

| | |
|---|---|
| Americas Lodging Services Officer | Erika Alexander |
| Brand Leader | Tina Edmundson |
| SVP & Associate General Counsel | Jeff Holdaway |
| SVP Finance | Jen Mason |
| VP, Guest Experience & Rooms Operations | Jeff Wolff |

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

21

JEFF
In order to ensure consistency, Marriott has a Resort Fee Committee, with the participants shown on this slide, who must approve the fee before it can be implemented at a hotel.  This committee has been in place, since the inception of our Marriott Resort Fee policy to ensure compliance with our standards in order to protect all parties involved, including our customers.

## RESORT FEE IMPLEMENTATION REQUIREMENTS

- Must include a "bundle" of resort products & services that would not be included in the price of the room. The sum of the "bundle" must provide greater value than purchasing the components separately.

- Must be market driven, based on competitive offerings and guest expectations and should not include offerings that normally are free to guests.

- Enhanced Wi-Fi must be included in the Resort Fee offering. Regardless of the booking channel or whether or not the guest is a Marriott or Ritz-Carlton Rewards Member.

- The retail value of Enhanced Wi-Fi must be deducted from the Resort Fee for Elite Rewards Members. Alternatively, if the resort would like to keep the Resort Fee consistent for all guests, it may charge the same Resort Fee to Elite Members so long as it provides additional amenities or services that equal or exceed the retail value of Wi-Fi.

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

22

JEFF
Next, in order to charge a fee, the following requirements must be met.

• The Resort Fee must include a "bundle" of resort products and services that would not be included in the price of the room. The sum of the "bundle" must provide greater value than purchasing the components separately.

• The services and amenities offered as part of the Resort Fee, must be market driven, based on competitive offerings and guest expectations and should not include offerings that normally are free to guests. *Examples: Newspapers, Airport Van Service, Local Calls (if free), Health Club Access, etc.*

• Enhanced Wi-Fi must be included in the Resort Fee offering, regardless of the booking channel or whether or not the guest is a Marriott or Ritz-Carlton Reward Member, or an SPG Member

• The retail value of Enhanced Wi-Fi must be deducted from the Resort Fee for Elite Marriott Reward Members. Alternatively, if the resort would like to keep the Resort Fee consistent for all guests, it may charge the same Resort Fee to Elite Members so long as it provides additional amenities or services that equal or exceed the retail value of Wi-Fi. Some examples of this could be daily access to your spa, a beverage or something of similar value. Since you charge for a Resort Fee on a daily basis, this additional amenity of service must be available each day.

## RESORT FEE NOTIFICATION REQUIREMENTS

- The Resort Fee must be effectively and consistently communicated through all Direct and 3rd Party channels and must be disclosed at the time of booking (including #800 and live agent bookings).
- Guests making reservations through non-live channels should be advised of the Resort Fee at time of reservation. For example, guests making reservations through Brand.com or an OTA must see the additional charge referenced on the screen at the time of reservation, along with applicable taxes. In all cases, the Resort Fee should be disclosed and the Guest's acceptance of the charge confirmed at time of check-in by the front desk associate.
- Group and wholesale segments should negotiate the Resort Fee on a case-by-case basis.
- Evidence of effective communications will be demonstrated through periodic testing, which is the responsibility of the hotel leadership team, to show that 90% or more of guests charged the Resort Fee received notice at the time of reservation and 100% of guests received notice at or before check-in.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

23

JEFF

Another critical requirement for hotels charging a fee, is that you must comply with our notification requirements:

• The Resort Fee must be effectively and consistently communicated through all Marriott / Ritz-Carlton and 3rd Party channels and must be disclosed at the time of booking (including #800 and live agent bookings).

• Guests making reservations through non-live channels should be advised of the Resort Fee at time of reservation. For example, guests making reservations through Marriott.com/OTA must see the additional charge referenced on the screen at the time of reservation, along with applicable taxes. In all cases, the Resort Fee should be disclosed and the Guest's acceptance of the charge confirmed at time of check-in by the front desk associate.

• Group and wholesale segments should negotiate the Resort Fee on a case-by-case basis. I will review the notification process for group business in a moment.

• Evidence of effective communications will be demonstrated through periodic testing, which is the responsibility of the hotel leadership team, to show that 90% or more of guests charged the Resort Fee received notice at the time of reservation and 100% of guests received notice at or before check-in.



JEFF

This slide shows several examples of communication documents that hotels are providing to their guests at check in order to let them know what amenities and services are included in the Resort Fee. The bottom line, is when a guest pays for a resort fee, we want them to enjoy the components of the Resort Fee and the value associated with it.

# RESORT FEE NOTIFICATION REQUIREMENTS- GROUPS

Group and wholesale segments should negotiate the Resort Fee on a case-by-case basis.

- **Group Segment:** Group pricing is established based on the specific needs of the group and customized to fit the defined components of a group meeting or event. Resort Fees will not be assessed unless contractually agreed to by the conference planner or booking agent.

- Please see **Clause 2-1e** of the GSA Manual Library of Clauses for a clause authorizing collection of a Resort Fee, and see **Clause 2-1f** of a Resort Fee, and see **Clause 2-1f** for a clause for groups that have elected not to pay the Resort Fee but agree to pay individually for any amenities the group purchases at the prevailing rates.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

25

JEFF

While I know that the take rate for group customers may not be as high as it is for transient, some hotels do a great job of selling group leaders on the benefit and high value associated with Resort Fees. That being said, we have guidelines on contract clauses that must be included in contracts. That information is available on MGS

RESORT FEE VALUE PROPOSITION

- Resort fees should always be accompanied by a strong value proposition.
- A minimum value proposition is 5 to 1 *(e.g., $125.00 worth of goods or services for a $25.00 Resort Fee)*.
- Resort Fee Offerings cannot include items normally provided to the guest at no charge. *Examples: Newspapers, Airport Van Service, Local Calls (if free), Health Club Access, etc.*
- You should periodically review the amenity package tied to your resort fee to ensure it continues to be perceived as a significant benefit to hotel guests.
- Discounts will not be included in the value proposition, however, they may be offered over and above the minimum value.
- Resort Fees must be charged per room, not per person.
- Services and amenities must be available each day. If an item is offered once (Welcome Drink) value is derived by dividing by average length of stay.
- If a guest is not paying a Resort Fee, they must be charged for each service or product on an a la carte basis.
- Loyalty Program Redemption stays will be charged the Resort Fee.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

26

JEFF
So now, let's review the Resort Fee Value Proposition:

• Resort fees should always be accompanied by a strong value proposition.

• A minimum value proposition is 5 to 1 *(e.g., $125.00 worth of goods or services for a $25.00 Resort Fee)*.

• Resort Fee Offerings cannot include items normally provided to the guest at no charge. *Examples: Newspapers, Airport Van Service, Local Calls (if free), Health Club Access, etc.*

• You should periodically review the amenity package tied to your resort fee to ensure it continues to be perceived as a significant benefit to hotel guests.

• Discounts will not be included in the value proposition, however, they may be offered over and above the minimum value. An example of this might be a 20% discount on Spa Services. The reasons that discounts are not allowed is that the guest is required to spend more money in order to receive the value associated with the discount.

• Resort Fees must be charged per room, not per person.

• Services and amenities must be available each day. If an item is offered once (Welcome Drink) value is derived by dividing by average length of stay.

• If a guest is not paying a Resort Fee, they must be charged for each service or product on an a la carte basis. We understand that in some cases, a guest may object to paying the Resort Fee or they may be part of the group. In order to ensure the

integrity of the Resort Fee policy, that guest must be charged for any amenity or service if it is used or consumed.

- Marriott Rewards Redemption stays will be charged the Resort Fee.

# RESORT OWNER OR FRANCHISEE REQUIREMENTS

The resort owner or franchisee seeking the Resort Fee must be informed of the Resort Fee SOP and the potential risks associated with inadequate disclosure. The resort owner/franchisee must agree prior to implementing the Resort Fee the following:

- The Resort will assume all costs of implementation and administration and expenses or liabilities associated with the Resort Fee, including an allocation of above-property costs attributable to providing guests with disclosure and expenses arising from any governmental action or third-party claim contesting the imposition of the Resort Fee or the adequacy of the disclosure;
- Third-party claims relating to Resort Fees will not constitute a default by Marriott as manager or franchisor; and
- Marriott reserves the right to discontinue the Resort Fee if, in its reasonable discretion, the Resort Fee results in unacceptable levels of customer complaints, as measured by the Guest Satisfaction Survey, or results in legal action.
- Owner/franchisee agreement of the foregoing may be evidenced by acknowledging the provisions of paragraph 5.a-c in its letter requesting the Resort Fee or in separate written communication. The Resort should retain this communication in its files.

27

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

THE AMERICAS

JEFF

The resort owner or franchisee seeking the Resort Fee must be informed of the Resort Fee SOP and the potential risks associated with inadequate disclosure. The resort owner/franchisee must agree prior to implementing the Resort Fee the following.

• The Resort will assume all costs of implementation and administration and expenses or liabilities associated with the Resort Fee, including an allocation of above-property costs attributable to providing guests with disclosure and expenses arising from any governmental action or third-party claim contesting the imposition of the Resort Fee or the adequacy of the disclosure;

• Third-party claims relating to Resort Fees will not constitute a default by Marriott as manager or franchisor; and

• Marriott reserves the right to discontinue the Resort Fee if, in its reasonable discretion, the Resort Fee results in unacceptable levels of customer complaints, as measured by the Guest Satisfaction Survey, or results in legal action.

• Owner/franchisee agreement of the foregoing may be evidenced by acknowledging the provisions of paragraph 5.a-c in its letter requesting the Resort Fee or in separate written communication. The Resort should retain this communication in its files.

- If Guest Satisfaction scores drop below brand standard for more than two consecutive six month cycles, resorts will no longer be permitted to charge a Resort Fee. A new application must be re-submitted, but only after maintaining the brand standard for two consecutive cycles.

- Resort Fees based on a percentage of the room rate will not be approved.

- Changes to existing Resort Fees must be requested by going through the application process.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

28

JEFF

•      If Guest Satisfaction scores drop below brand standard for more than two consecutive six month cycles, resorts will no longer be permitted to charge a Resort Fee. A new application must be re-submitted, but only after maintaining the brand standard for two consecutive cycles.

•      Resort Fees based on a percentage of the room rate will not be approved. We know that there are a few hotels that are currently charging a Resort Fee that is a percentage of the room rate. Most of those hotels are on certain islands in the Caribbean, where this practice is common.

•      Changes to existing Resort Fees must be requested by going through the application process. Specifically, if there are material changes to the services or amenities offered as part of the Resort Fee, the Resort Fee Committee must be notified in advance of these changes and approval must be granted to the hotel

# RESORT FEE – CHANGES TO OFFERINGS OR PRICE

- Price increases (or decreases) to any existing Resort Fees will be handled in the same manner as a request for a Resort Fee.
- Any changes of Resort Fee Offerings must be approved by the Resort Fee Committee.
- If your hotel implemented a Resort Fee, prior to the current process, you must meet all standards.

THE AMERICAS

HARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

29

JEFF

• Price increases (or decreases) to any existing Resort Fees will be handled in the same manner as a request for a Resort Fee

• Any changes of Resort Fee Offerings must be approved by the Resort Fee Committee

• If your hotel implemented a Resort Fee, prior to the current process, you must meet all standards

**RESORT FEE – DELIVERING THE PROMISE**

- All promised services and products must be delivered 100% of the time
- Any guest not paying a Resort Fee must pay for all services and products a la carte
- Elite Loyalty Members must receive incremental value to compensate for the free Wi-Fi
- Resort Fee Wi-Fi must be enhanced – avoid "nickel and diming" guests
- Use Resort Fee to enhance the resort experience

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL                    30

JEFF

- All promised services and products must be delivered 100% of the time. This means that if you are charging a fee, every service and amenity must be delivered on a daily basis, even if you are at low occupancy
- As mentioned before, any guest not paying a Resort Fee must pay for all services and products a la carte
- Elite Loyalty Members must receive incremental value to compensate for the free Wi-Fi
- Resort Fee Wi-Fi must be enhanced – avoid "nickel and diming" guests
- Use Resort Fee to enhance the resort experience. Our Resort Fee policy is high value and as a result, we have almost never, seen a decrease in Guest Satisfaction scores at those hotels charging a fee.

NEXT STEPS

1. Ensure your resort is 100% compliant with our policy.
2. Review offerings to ensure they are accurate and relevant.

THE AMERICAS

MARRIOTT INTERNATIONAL PROPRIETARY AND CONFIDENTIAL

31

JEFF and then transition to Q&A and hand over to Jocelyn
So in summary, your hotel is required to

- Ensure your resort is 100% compliant with our policy.
- Review offerings to ensure they are accurate and relevant

MAR190350



JOCELYN

Now it is time for questions.  Harvey and I are happy to answer any questions that you may have about the Regulatory issues and the Marriott International Resort Fee policy.  The only thing that I ask, is that if there are property specific questions, that may not be relevant to the entire audience, that you contact us individually to discuss.  With that, I will now turn the call back over to Jocelyn so that we can take your questions.  Jocelyn…………..
Thank you Jeff and Harvey – you covered a lot of information.

If you want to pose a question, select the Q&A panel on the right of your screen, select ALL Panelists and then please type it into the Q&A box and send ~

32



JEFF to thank everyone for joining, their time, questions….

MAR190352