**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

**BURSOR & FISHER, P.A.**
L Timothy Fisher (SBN 191626)
Sean L. Litteral (SBN 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
            slitteral@bursor.com

**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL (SBN 127081)
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Tel: (866) 833-5529
Fax: (855) 609-6911
*Interim Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, KEVIN BRANCA, and GEORGE ABDELSAYED individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation;<br><br>    *Defendant*. | Case No. 3:19-cv-01715-JO-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL**<br><br>Date: July 27, 2022<br>Time: 9:30 a.m.<br>Ctrm: 4C<br>Judge: Hon. Jinsook Ohta<br><br>**SPECIAL BRIEFING SCHEDULE ORDERED [Dkt. No. 136]**<br><br>**REDACTED FOR PUBLIC VIEW** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................... 1

II. FACTS ........................................................................................ 3

    A. Marriott Charges Deceptive Resort Fees Through Its Website ............ 3

    B. Government Investigations into Marriott's Deceptive Resort
       Fees .................................................................................................... 5

    C. Consumer Survey Evidence Shows that the Resort Fees
       Charged on Marriott's Website Are Deceptive ................................. 6

    D. Internal Documents Show that Marriott Knows that Its Resort
       Fees Are Deceptive ........................................................................... 7

    E. Plaintiffs' Experiences with Marriott ............................................... 9

III. LEGAL STANDARD ................................................................... 11

IV. ARGUMENT ............................................................................... 12

    A. The Requirements of Rule 23(a) Are Satisfied ................................ 12

        1. Numerosity ............................................................................ 12

        2. Commonality ......................................................................... 12

        3. Typicality .............................................................................. 14

        4. Adequacy .............................................................................. 15

    B. The Requirements of Rule 23(b)(3) Are Satisfied ........................... 17

        1. Predominance ....................................................................... 17

            a. Defendant's Liability Will be Adjudicated
               Pursuant to Objective Standards, Using Common
               Evidence ................................................................. 18

               i. Common Issues Predominate with Respect
                  to Plaintiffs' Claims Under California's
                  Consumer Protection Laws .................................... 18

               ii. Common Issues Predominate with Respect
                  to Plaintiffs' Common Law Intentional

-i-

Misrepresentation, Negligent
Misrepresentation, and Concealment/Non-
Disclosure Claims ...................................................20

iii.    Common Issues Predominate with Respect
to Plaintiffs' Quasi Contract/Unjust
Enrichment Claim ................................................22

b.    Damages Stem Solely from Defendant's Actions
that Created Legal Liability............................................22

c.    Proposed Damages Model............................................24

2.    Superiority .......................................................25

C.    The Requirements of Rule 23(b)(2) Are Satisfied..............................27

D.    Alternatively, the Court Should Certify a Rule 23(c)(4) Class ..........28

E.    The Court Should Approve Notice to the Classes ..............................29

V.    CONCLUSION ...........................................................29

-ii-

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................................................ 13, 26

*Bateman v. Am. Multi-Cinema, Inc.,*
  623 F.3d 708 (9th Cir. 2010) .................................................................. 26

*Berger v. Home Depot USA, Inc.,*
  741 F.3d 1061 (9th Cir. 2014) ................................................................ 17

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) .................................................................. 11

*Brazil v. Dell Inc.,*
  2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) ...................................... 20

*Brickman v. Fitbit, Inc.,*
  2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) ....................................... 20

*Briseno v. ConAgra Foods, Inc.,*
  844 F. 3d 1121 (9th Cir. 2017) ............................................................... 11

*Brockey v. Moore,*
  107 Cal. App. 4th 86 (2003) ............................................................. 18, 19

*Broomfield v. Craft Brew All., Inc.,*
  2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ................................. 20, 27

*Bruno v. Eckhart Corp.,*
  280 F.R.D. 540 (C.D. Cal. 2012) ............................................................ 19

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013) .................................................................. 22

*Chowning v. Kohl's Dep't Stores, Inc.,*
  2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ....................................... 23

*Clark v. Super. Ct.,*
  50 Cal. 4th 605 (2010) ............................................................................ 23

-iii-

*Comcast Corp. v. Behrend*,

    133 S. Ct. 1426 (2013)................................................17, 18, 19, 22

*Cortez v. Purolator Air Filtration Prods. Co.*,

    23 Cal. 4th 163 (2000)........................................................23

*Culley v. Lincare Inc.*,

    2016 WL 4208567 (E.D. Cal. Aug. 10, 2016)....................................26

*Davidson v. Kimberly-Clark Corp.*,

    889 F.3d 956 (9th Cir. 2018)..................................................28

*De La Fuente v. Stokely-Van Camp, Inc.*,

    713 F.2d 225 (7th Cir. 1983)..................................................15

*Deposit Guar. Nat'l Bank v. Roper*,

    445 U.S. 326 (1980) .........................................................26

*Ellis v. Costco Wholesale Corp.*,

    657 F.3d 970 (9th Cir. 2011) .................................................27

*Engalla v.Permanente Med. Grp., Inc.*

    15 Cal. 4th 951 (1997).......................................................20

*Erica P. John Fund, Inc. v. Halliburton Co.*,

    563 U.S. 804 (2011) .........................................................18

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,

    326 F.R.D. 592 (N.D. Cal. 2018) .............................................14

*Fletcher v. Sec. Pac. Nat'l Bank*,

    23 Cal. 3d 442 (1979).......................................................23

*Gonzalez v. Millard Mall Servs., Inc.*,

    281 F.R.D. 455 (S.D. Cal. 2012) .............................................11

*Guido v. L'Oreal, USA, Inc.*,

    284 F.R.D. 468 (C.D. Cal. 2012)..............................................19

*Hale v. State Farm Mut. Auto. Ins. Co.*,

    2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) ...............................13, 18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................13, 14, 16, 17, 26

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ................................................................14, 15, 19

*Harris v. Palm Springs Alpine Estates*,
   329 F.2d 909 (9th Cir. 1964) .............................................................................12

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2018 WL 6300479 (S.D. Cal. Nov. 29, 2018).............................................11, 27

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ...................................................................24, 29

*Hofstetter v. Chase Home Fin., LLC*,
   2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ..................................................12

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   2007 WL 1689899 (N.D. Cal. June 11, 2007) ..................................................12

*In re Brazilian Blowout Litig.*,
   2011 WL 10962891 (C.D. Cal. Apr. 12, 2011)....................................15, 16, 26

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2013 WL 5429718 (N.D. Cal. 2013)................................................................22

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) ....................................................................20

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ...........................................................................20

*In re Morning Song Bird Food Litig.*,
   320 F.R.D. 540 (S.D. Cal. 2017) ....................................................................20

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..............................................................................19, 27

*Jefferson v. Chase Home Fin.*,
   2008 WL 1883484 (N.D. Cal. Dec. 14, 2007) ................................................18

-v-

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL

*Jimenez v. Allstate Ins. Co.*,

   765 F.3d 1161 (9th Cir. 2014) ..........................................................................13

*Johns v. Bayer Corp.*,

   280 F.R.D. 551 (S.D. Cal. 2012) .......................................................................20

*Keegan v. Am. Honda Motor Co., Inc.*,

   284 F.R.D. 504 (C.D. Cal. June 12, 2012) .......................................................19

*Keele v. Wexler*,

   149 F.3d 589 (7th Cir. 1998) ............................................................................13

*Keilholtz v. Lennox Hearth Prods.*,

   268 F.R.D. 330 (N.D. Cal. 2010) .....................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,

   29 Cal. 4th 1134 (2003) ...................................................................................23

*Krueger v. Wyeth, Inc.*,

   310 F.R.D. 468 (S.D. Cal. 2015) .....................................................................22

*Lambert v. Nutraceutical Corp.*,

   2020 WL 12012559 (C.D. Cal. Jan. 8, 2020) ..................................................25

*Lambert v. Nutraceutical Corp.*,

   870 F.3d 1170 (9th Cir. 2017) ..........................................................................23

*Lavie v. Procter & Gamble Co.*,

   105 Cal. App. 4th 496 (2003) ..........................................................................18

*Lazar v. Super. Ct.*,

   12 Cal. 4th 631 (1996) .....................................................................................20

*Levya v. Medline Indus. Inc.*,

   716 F.3d 510 (9th Cir. 2013) ......................................................................17, 18

*Lilly v. Jamba Juice Co.*,

   308 F.R.D. 231 (N.D. Cal. 2014) ..........................................................15, 18, 29

*Makaeff v. Trump Univ., LLC*,

   309 F.R.D. 631 (S.D. Cal. 2015) .....................................................................25

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL

*Martin v. Monsanto Co.*,
  2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ....................................17

*McGill v. Citibank*, N.A.,
  2 Cal. 5th 945 (2017) ............................................................27

*Mezzadri v. Med. Depot, Inc.*,
  2016 WL 5107163 (S.D. Cal. May 12, 2016) ...............................13

*Milan v. Clif B. & Co.*,
  2021 WL 4427427 (N.D. Cal. Sept. 27, 2021) ............................14

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
  823 F.3d 948 (9th Cir. May 20, 2016) ......................................19

*Parkinson v. Hyundai Motor Am.*,
  258 F.R.D. 580 (C.D. Cal. 2008) .............................................19

*People ex re. Bill Lockyer v. Fremont Life Ins. Co.*,
  104 Cal. App. 4th 508 (2002) .................................................25

*People ex re. Kennedy v. Beaumont Inv., Ltd.*,
  111 Cal. App. 4th 102 (2003) .................................................25

*Petersen v. Costco Wholesale Co., Inc.*,
  312 F.R.D. 565 (C.D. Cal. 2016) .............................................28

*Price v. Synapse Grp., Inc.*,
  2017 WL 3131700 (S.D. Cal. July 24, 2017) .............................22

*Pulaski Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ....................................18, 23, 24, 25

*Richmond v. Dart Indus., Inc.*,
  29 Cal. 3d 462 (1981) ............................................................11

*Rodman v. Safeway, Inc.*,
  2014 WL 988992 (N.D. Cal. 2014) ..........................................13

*Salvagne v. Fairfield Ford Inc.*,
  264 F.R.D. 321 (S.D. Ohio 2009) ............................................15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ..................................................................................11

*Simpson v. Fireman's Fund Ins. Co.*,
    231 F.R.D. 391 (N.D. Cal. 2005) ............................................................14

*Smith v. Microsoft Corp.*,
    297 F.R.D. 464 (S.D. Cal. 2014) .............................................................11

*Smith v. Univ. of Wash. Law Sch.*,
    233 F.3d 1188 (9th Cir. 2000) .................................................................27

*Spann v. J.C. Penney Corp.*,
    2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) .......................................25

*Spann v. J.C. Penney Corp.*,
    307 F.R.D. 508 (C.D. Cal. 2015)........................................................14, 29

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
    256 F.R.D. 284 (D. Conn. 2009) .............................................................21

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2012) .................................................................19

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013, 1021 (9th Cir. 2011) .......................................................24

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012)........................................................19, 26

*Veera v. Banana Republic, LLC*,
    6 Cal.App.5th 907 (2016) ........................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .....................................................................12, 13, 27

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ...................................................................18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................14, 26

-viii-

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ...................................................................28

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ..............................................................26, 27

**Statutes**

Cal. Bus. & Prof. Code § 17535 ...................................................................23

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................................................2, 18

Cal. Bus. & Prof. Code §§ 17203 ..................................................................23

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ................................................2, 18

Cal. Civ. Code § 1780(a)(3) ..........................................................................23

Cal. Civ. Code §§ 1750, *et seq.* ...............................................................2, 18

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................1, 2

Fed. R. Civ. P. 23(a)(2) ...........................................................................12, 13

Fed. R. Civ. P. 23 ..........................................................................................11

Fed. R. Civ. P. 23(a)(1) .................................................................................12

Fed. R. Civ. P. 23(a)(3) .................................................................................14

Fed. R. Civ. P. 23(a)(4) .................................................................................15

Fed. R. Civ. P. 23(b)(2) .........................................................1, 2, 11, 27, 28

Fed. R. Civ. P. 23(b)(3) ...................................................1, 2, 11, 17, 25, 27

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................29

Fed. R. Civ. P. 23(c)(4) .................................................................................28

**Treatises**

Restatement of Restitution § 151 ...................................................................23

## I.    **INTRODUCTION**

This is a straight-forward class action case involving the false and deceptive advertising of the amount consumers must pay for Defendant Marriott International, Inc.'s ("Marriott" or "Defendant") hotel rooms, services, and amenities. Plaintiffs Todd Hall and George Abdelsayed's (collectively, "Plaintiffs") consolidated Third Amended Complaint ("TAC") alleges that Marriott deceptively advertises a low-quoted daily room rate that is less than a consumer will actually pay because it does not include the mandatory resort fees that Marriott adds to the daily room charge. TAC ¶ 9. This deceptive pricing scheme, which the Federal Trade Commission (FTC) refers to as "drip pricing," causes consumers to believe that Marriott's hotel rooms are cheaper than they are and this conduct violates consumer protection laws.

The case is readily amenable to certification. Each of the Rule 23(a) criteria are satisfied. Regarding numerosity, many hundreds of thousands of consumers were charged mandatory resort fees after booking hotel rooms through the Marriott website and Marriott mobile app, which uniformly employed a deceptive, bait and switch pricing scheme. For commonality, Plaintiffs demonstrate that Marriott's unlawful conduct was the same to all class members so that liability to each will be determined by answering the same questions, including whether Marriott violated California consumer protection laws and whether this conduct was likely to deceive a reasonable consumer. For typicality, Plaintiffs demonstrate that the legal theory and type of injury is the same for all class members, and with respect to adequacy, Plaintiffs demonstrate that they and their counsel have no conflicts and have been vigorously prosecuting the case on behalf of the proposed classes.

In addition, each of the Rule 23(b)(2) and 23(b)(3) criteria is satisfied. The class claims present predominating common questions based on objective standards that can be resolved through class-wide evidence. Because a determination of the deceptive nature of Marriott's advertising will resolve an issue that is central to the validity of each one of Plaintiffs' claims in one stroke, Plaintiffs' claims are

appropriate for class treatment. Because the classes challenge a uniformly deceptive advertising scheme, class damages necessarily flow from Marriott's conduct creating the legal liability.

For the reasons set forth below, Plaintiffs respectfully move the Court for an order pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), certifying Plaintiffs' claims for unjust enrichment/quasi contract, negligent misrepresentation, intentional misrepresentation, and concealment/non-disclosure, a United States class defined as follows:

> All persons in the United States who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app and who paid a resort fee, destination fee, amenity fee, or destination amenity fee in their respective state of citizenship on or after September 9, 2015 and until the Class is certified excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

Plaintiffs also move the Court for an Order pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), certifying, with respect to their claims for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), unjust enrichment/quasi contract, negligent misrepresentation, intentional misrepresentation, and concealment/non-disclosure, a California class defined as follows:

> All persons in California who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app and who paid a resort fee, destination fee, amenity fee, or destination amenity fee on or after September 9, 2015 and until the Class is certified excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

## II.    FACTS

### A.    Marriott Charges Deceptive Resort Fees Through Its Website

Marriott advertises and sells hotel rooms on its own website (www.marriott.com) and mobile app. TAC ¶ 5. For certain hotels, Marriott charges additional mandatory fees that it refers to as "resort fees," "destination fees," "amenity fees," or "destination amenity fees" (collectively, "resort fees"). TAC ¶¶ 5, 8; HD[1] ¶ 2 & Ex. 1 [Wolff Dep. Tr. at 23:3-19]. These fees are not included in the initial advertised room rates. TAC ¶¶ 9, 23-24.

For instance, a room at the Marriott Marquis San Diego Marina is initially advertised for $420, which does not include a mandatory $35 per night destination amenity fee. HD ¶ 5 & Ex. 4 [Marriott's Request for Judicial Notice in support of its Motion to Dismiss ("Marriott's RJN," Dkt. No. 18-2) at Ex. B]; HD ¶ 2 & Ex. 1 [Wolff Dep. Tr. 93:4-9]. This price deception is compounded by the fact that the hotel room is advertised next to room rates for other hotels that do not charge resort fees. *Id*.

The destination amenity fee only first (and obliquely) appears after a consumer selects a hotel room based on the initial low-ball advertised rate and is directed to a new web page, in a blue box at the top of this page above the advertised room rates at the hotel. HD ¶ 5 & Ex. 4 [Marriott's RJN at Ex. C]. The language used in the "blue box" disclosure would lead a consumer that even notices it to believe the resort fee has been already "added" to the quoted room rate, which is incorrect. ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ ████████████████████

---

[1] "HD" refers to the Declaration of Michael T. Houchin filed in support of Plaintiffs' Motion for Partial Summary Judgment and its attached exhibits.

1
2
3                  As a further testament to their
4 deceptive nature, these "blue box" statements at times do not mention the amenities
5 that are included with the resort fees (HD ¶ 5 & Ex. 4 [Marriott's RJN at Ex. C]; HD
6 ¶ 2 & Ex. 1 [Wolff Dep. Tr. at 95:17-21]) or even mention the amount of the resort
7 fees. HD ¶ 6 & Ex. 5.
8
9
10           After the ambiguous "blue box," the resort fee does not appear
11 again in the regular reservation process. HD ¶ 5 & Ex. 4 [Marriott's RJN at Exs. D-
12 F]. Consumers would only see reference to the resort fee charge if they
13 independently click on a separate dropdown box for "Summary of Charges," toward
14 the end of the booking process. HD ¶ 5 & Ex. 4 [Marriott's RJN at Ex. E]; HD ¶ 2
15 & Ex. 1 [Wolff Dep. Tr. at 97:10-23].

16       Marriott's resort fee practices constitute "drip pricing," where only a part of a
17 product or service's price is advertised upfront and additional charges are revealed
18 later in the purchase process. HD ¶ 22 & Ex. 21. The purpose of this "drip pricing"
19 is to increase Marriott's revenue and profit, while avoiding the competitive
20 disadvantage in upfront advertising.
21
22                      In 2019 alone, Marriott hotels
23 charged consumers approximately         in resort fees. HD ¶ 10 & Ex. 9.
24 During the class period, approximately        in resort fees were charged to
25 United States residents who booked rooms through the Marriott website and Marriott
26 mobile app and       in resort fees were charged to California residents who
27 booked rooms through the Marriott website and Marriott mobile app. HD ¶ 11 & Ex.
28 10 [Podlipna Expert Rpt. at ¶¶ 9-10].

**B.    Government Investigations into Marriott's Deceptive Resort Fees**

In November of 2012, the Federal Trade Commission ("FTC") put the hotel industry on notice that the aforementioned resort fee practices may violate federal consumer protection laws by sending out warning letters to 22 hotel chains. HD ¶ 26 & Ex. 25. Marriott received two of these letters. HD ¶¶ 23-25 & Exs. 22-24. Then, in 2017, the FTC issued a study demonstrating the consumer harm caused by resort fee drip pricing like Marriott engages in here. HD ¶ 22 & Ex. 21.

On July 9, 2019, the Office of the Attorney General for the District of Columbia filed a consumer protection lawsuit against Marriott regarding the disclosure of resort fees on the Marriott website.[2] HD ¶¶ 29-30 & Exs. 28-29. Recently, on December 23, 2021, the court in the D.C. Action denied Marriott's Motion for Summary Judgment. HD ¶ 31 & Ex. 30.

---

[2] The Court previously ordered Marriott to produce all discovery materials from the D.C. Action to the Plaintiffs in this Action "[g]iven the substantial overlap in the factual allegations in the D.C. action and the instant case[.]" Dkt. No. 80 at 14-15.

**C.** **Consumer Survey Evidence Shows that the Resort Fees Charged on Marriott's Website Are Deceptive**

Plaintiffs retained Dr. J. Michael Dennis, Ph.D. to conduct a consumer survey regarding the disclosure of resort fees on the Marriott website. HD ¶ 12 & Ex. 11. Dr. Dennis is a well-qualified consumer survey expert who has testified in numerous matters. HD ¶ 12 & Ex. 11 [Dennis Expert Rpt. at ¶¶ 5-20]. Dr. Dennis was asked "to design, conduct, and report on a consumer survey to measure the extent to which reasonable consumers' perceptions of the relevant Marriott.com website are consistent with Plaintiffs' theories of liability, that is, the allegation that Defendant misleads consumers into misunderstanding the (i) actual daily room rate and (ii) the cost components of the daily room rate." *Id.* at ¶ 25. Accordingly, Dr. Dennis designed a survey whereby respondents were assigned to two different groups: (1) a partial disclosure group whereby respondents were shown hotel website information that mapped Plaintiffs' allegations with respect to the specific ways Marriott engaged in price deception, and (2) a full disclosure group whereby respondents were shown website information that did not mislead consumers (*i.e.* contained no price deception), according to Plaintiffs. *Id.* at ¶ 49.

The hypothetical hotel room used for both groups had a room rate of $369 USD per night plus a $30 resort fee. HD ¶ 12 & Ex. 11; *id.* at ¶ 56. However, the advertised room rate for the partial disclosure group was $369 per night (not including the $30 resort fee and government-imposed taxes) whereas the advertised room rate for the full disclosure group was $446 per night (including the $30 resort fee and government-imposed taxes). *Id.* at ¶¶ 56-57. The partial disclosure group was shown a "blue box" stating the amount of the resort fee, which replicates how Marriott displays resort fees on its website. *Id.* at ¶ 60. The partial disclosure group could also view the resort fee amount by clicking on the "Summary of Charges" drop down box in a manner consistent with how Marriott displays resorts fees on its website. *Id.* at ¶ 63.

Dr. Dennis' survey measured "the extent to which Full Disclosure hotel information did or did not result in a difference in consumers' understanding of the actual price they would pay for a night of lodging, compared to being provided Partial Disclosure hotel information based on Defendant's actual practices, as alleged by Plaintiffs." *Id.* at ¶ 65. First, the survey found "where consumers are shown only the $369 price point without any other cost information, consumers on average perceived the website to convey that the lowest price they would pay would be $372.63, compared to $450.67 for the Full Disclosure group." *Id.* at ¶ 66. Second, the survey "measured the impact of adding the light-blue disclosure statement to the Partial Disclosure version of the survey." *Id.* at ¶ 67. The survey found that "the impact of the disclosure was marginal. Whereas before the disclosure, consumers understood the lowest price would be $372.63 on average, the additional information increased consumers' understanding of the hotel website information to convey a total price of $385.64, compared to $449.55 for the Full Disclosure group." *Id.* Moreover, "[p]roviding respondents information about 'Taxes and fees' was not effective in communicating the presence of a 'Resort Fee' for the Partial Disclosure group respondents." *Id.* at 68.

Dr. Dennis concluded that his "consumer survey demonstrates that reasonable consumers were deceived by Defendant's websites" and "[t]hroughout the purchase journey of booking a hotel room online on Marriott's websites, consumers shown hotel website information mapped to Defendant's actual practices consistently understood the total cost of lodging to be substantially lower, compared to the understanding of consumers presented hotel website information meeting Plaintiffs' criteria as non-deceptive." *Id.* at ¶ 91.

**D.  Internal Documents Show that Marriott Knows that Its Resort Fees Are Deceptive**

Marriott is also aware that its resort fees are deceptive to consumers. ███

████████████████████████████████████████████████████



*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL



However, Marriott never implemented either the total price display or the page one disclosure. HD ¶ 5 & Ex. 4. In essence, Marriott chose to continue deceiving consumers. This class action lawsuit followed. Dkt. No. 1.

### E. Plaintiffs' Experiences with Marriott

Plaintiff Todd Hall is a resident of Rancho Cucamonga, California who stayed at the Marriott Marquis San Diego Marina from May 28, 2018 to May 29, 2018 and was charged a destination fee in the amount of $25. TAC ¶ 55; Declaration of Todd Hall attached hereto ("Hall Decl."), ¶ 2-5 & Ex. A [Hall Dep. Tr. at 47:17-24; 72:11-17]. Plaintiff Hall booked his room at the Marriott Marquis San Diego Marina from the Marriott website. TAC ¶ 55; Hall Decl., ¶ 6 & Ex. A [Hall Dep. Tr. at 54:21 - 55:6]. Plaintiff Hall also stayed at the Sheraton Maui from October 10, 2018 to October 12, 2018. TAC ¶ 56; Hall Decl., ¶ 7 & Ex. A Hall Dep. Tr. at 60:1-13; 62:2-10; 62:23 – 63:10]. Plaintiff Hall also booked his room at the Sheraton Maui from

the Marriott website. TAC ¶ 56. Plaintiff Hall read and relied on the representations on the Marriott website when booking his hotel room, including the quoted room price and the omission of the fact that the estimated total price did not disclose the mandatory resort fee. Hall Decl., ¶ 8 & Ex. A [Hall Dep. Tr. at 72:24 – 73:6; 78:20-25; 80:9-16; 97:25 – 98:12; 132:3-6]. Plaintiff Hall purchased the Marriott hotel rooms in reliance on the false and deceptive bargain and bait advertising and without knowledge of the true amount being charged based on Defendant's deceptive advertising and misleading disclosure of resort fees, including listing the resort fee within the 'USD Taxes and fees' category. Hall Decl., ¶ 9 & Ex. A [Hall Dep. Tr. at 84:19-23; 92:11-20; 132:11-17; 132:25 – 133:5; 133:16 – 134:19].

Plaintiff George Abdelsayed is a resident of San Diego County, California who stayed at the Marriott Coronado Island Resort and Spa in July 2020 and was charged a resort fee of $25 per night. TAC ¶¶ 76-76; Declaration of George Abdelsayed filed concurrently herewith ("Abdelsayed Decl."), ¶¶ 2-5 & Ex. B [Abdelsayed Dep. Tr. at 61:24 – 62:5; 87:12-20]. Plaintiff Abdelsayed booked his room from the Marriott website or Marriott mobile app. Abdelsayed Decl., ¶ 6 & Ex. B [Abdelsayed Dep. Tr. at 208:16-22]. Plaintiff Abdelsayed read and relied on Marriott's representations when booking the hotel room, including the quoted room price and the fact that the mandatory resort fee was omitted from the room price and not properly disclosed. Abdelsayed Decl., ¶ 7 & Ex. B [Abdelsayed Dep. Tr. at 50:2-5; 109:23 – 110:2; 117:1-25; 176:25 – 177:5; 189:6-18; 196:7-12; 238:3-6]. Plaintiff Abdelsayed purchased his hotel room in reliance on the false and deceptive bargain and bait advertising and misleading disclosure of resort fees, including listing the resort fee under the 'USD Taxes and fees' category. Abdelsayed Decl., ¶ 7 & Ex. B [Abdelsayed Dep. Tr. at 100:3-25; 218:11 – 219:21].

//
//
//

-10-

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Rule 23(b)(3) authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). These are the only criteria that must be met. *Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1124-26 (9th Cir. 2017) ("declin[ing] to interpose an additional hurdle"—administrative feasibility—"into the class certification process delineated in the enacted Rule").

In ruling on a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). "In considering a motion for class certification, strict adherence to the Federal Rules of Evidence is not required and inadmissible evidence may be considered." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *5 n. 5 (S.D. Cal. Nov. 29, 2018) (citing *Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012); *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473-74 (S.D. Cal. 2014).

California "has a public policy which encourages the use of the class action device." *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981). On a motion for class certification, the court makes no findings of fact. *Keilholtz v. Lennox Hearth*

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL

*Prods.*, 268 F.R.D. 330, 337, n.3 (N.D. Cal. 2010). "In determining whether class certification is appropriate, the question is not whether . . . [plaintiffs] will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900, at *6 (N.D. Cal. Mar. 31, 2011) (internal quotations and citations omitted).

## IV.    ARGUMENT

### A.    The Requirements of Rule 23(a) Are Satisfied

#### 1. *Numerosity*

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (internal citations and quotations omitted). Numerosity is generally met if a proposed class has at least 40 members. *See, e.g., Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964). Documents produced by Marriott during discovery show that the total amount of resort fees paid by the Nationwide Class during the Class Period approximates ██████████ and the total amount of resort fees paid by the California Class during the Class Period approximates ████████. *See* HD ¶ 11 & Ex. 10 [Podlipna Expert Rpt. ¶¶ 9-10, Schedules 1-2]. Common sense accordingly dictates that the classes are sufficiently numerous and that joinder of all class members is impracticable.

#### 2. *Commonality*

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This criterion is satisfied whenever "the class members have suffered the same injury," so that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ["*Dukes*"]. "Where questions common to class

members present significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *4 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal citation omitted)). "What matters" is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes,* 564 U.S. at 350 (quotation omitted); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

"[P]laintiff's burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts." *Hanlon*, 150 F.3d at 1019. Commonality is found "where a defendant has engaged in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)). Under Rule 23(a)(2), "even a single common question will do." *Dukes*, 564 U.S. at 359.

Here, the classes include only persons who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app and who paid a resort fee. Plaintiffs' common contention is that class members booked Marriott hotel rooms through the Marriott website or mobile app which advertised prices using the same misleading pricing scheme, were baited to transact with Marriott due to the deceptive pricing scheme, and suffered damages as a result. *See generally*, TAC. This "common contention" is "capable of classwide resolution," *see Dukes*, 564 U.S. at 350, as Marriott's liability to all class members will be determined by answering the same questions. Because the pricing scheme utilized on the Marriott website was uniform, common questions include whether Marriott's pricing scheme was deceptive to reasonable consumers. *See e.g., Spann*

*v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015). Here, "common evidence, such as consumer surveys and…internal documents, will be used to prove falsity, deception, and materiality." *Milan v. Clif B. & Co.*, 2021 WL 4427427, at *4 (N.D. Cal. Sept. 27, 2021); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612–16 (N.D. Cal. 2018) (finding predominance of materiality and reliance based in part on consumer survey). Dr. Dennis' consumer survey "demonstrates that reasonable consumers were deceived by" Marriott's website. HD ¶ 12 & Ex. 11 [Dennis Expert Rpt. at ¶ 91].

Common questions also include (1) whether Marriott's representations and omissions on the Marriott website were material to consumers; (2) if the representations and omissions were material, whether they were unlawful; (3) if reasonable consumers who booked Marriott hotel rooms through the Marriott website were deceived by material misrepresentation and omissions; and (4) what is the proper method for calculating damages? Commonality is satisfied.

### 3. *Typicality*

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This means plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation and internal quotation marks omitted).

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her

claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation and citations omitted). Thus, "[t]o assess whether or not the representative's claims are typical, the Court examines 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Brazilian Blowout Litig.*, 2011 WL 10962891, at *3 (C.D. Cal. Apr. 12, 2011) ["*Brazilian Blowout*"] (quoting *Hanon*, 976 F.2d at 508 (quotation omitted)). "In instances where it is alleged that the defendant[] engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) (quotation omitted).

Here, Plaintiffs allege that they and all class members all booked Marriott hotel rooms through the Marriott website or mobile app, were exposed to and deceived by the same deceptive and misleading advertising, and were injured in the same manner. TAC ¶¶ 91-93. Consumer research reveals that consumers are highly likely to be deceived by these exact misleading representations and omissions. *See* HD ¶ 12 & Ex. 11 [Dennis Expert Rpt. ¶¶ 66-68, 91]. Plaintiffs' claims are therefore typical of class members' claims. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) (plaintiffs' claims are typical when "they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class."). The typicality requirement is also satisfied.

### 4. *Adequacy*

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Plaintiffs have demonstrated that they and their counsel satisfy these criteria. Plaintiffs have standing, have no conflict of interest with other class members, are aware of their obligations as class representatives, and have prosecuted and will continue prosecuting the action vigorously on behalf of the classes. *See* Hall Decl., ¶¶ 5-6, 13-14 & Ex. A [Hall Dep. Tr.]; Abdelsayed Decl., ¶¶ 5-6, 11-12 & Ex. B [Abdelsayed Dep. Tr.]; *Brazilian Blowout*, 2011 WL 10962891, at *5 (class representatives adequate where they submitted declarations stating "they understand their responsibilities as class representatives, that no conflicts exist between their interests and other members of the class, and that they intend to vigorously pursue all claims asserted in this lawsuit"). Plaintiffs do not possess any interests that conflict with those of the proposed classes because, like absent class members, Plaintiffs relied on Marriott's misleading advertisements in purchasing Marriott hotel rooms through the Marriott website, lost money because they paid for hotel charges that were not as advertised, and are motivated to establish Marriott's liability and attain remedies equally applicable to and beneficial for the classes. *See* Hall Decl., ¶¶ 8-11, 13-15 & Ex. A [Hall Dep. Tr.]; Abdelsayed Decl., ¶¶ 4-9, 11-13 & Ex. B [Abdelsayed Dep. Tr.]. Plaintiffs are familiar with the underlying legal claims asserted in this case and have stayed informed about its status. *See* Hall Decl., ¶¶ 13-15; Abdelsayed Decl., ¶¶ 11-13.

Plaintiffs' counsel are adequate class counsel because they are experienced in consumer protection class actions and other false advertising litigation, have no conflicts, and have prosecuted and will continue prosecuting the action vigorously on behalf of the classes. Declaration of Ronald A. Marron in Support of Plaintiffs' Motion for Class Certification ("Marron Decl."), ¶¶ 1-48 & Ex. C; Declaration of Robert L. Teel in Support of Plaintiffs' Motion for Class Certification ("Teel Decl."), ¶¶ 1-15; Declaration of L. Timothy Fisher in Support of Plaintiffs' Motion for Class Certification ("Fisher Decl."), ¶¶ 1-8 & Exs. D-F); *Martin v. Monsanto*

-16-

*Co.*, 2017 WL 1115167, at *5 (C.D. Cal. Mar. 24, 2017) (finding the adequacy requirement satisfied when Plaintiffs' counsel "submitted declarations demonstrating that they have had substantial experience with similar class actions and other false advertising litigation, have no conflicts, and will continue prosecuting the action vigorously on behalf of the Class."). The Law Offices of Ronald A. Marron, The Law Office of Robert L. Teel, and Bursor & Fisher demonstrate the ability to diligently pursue the instant claims on behalf of Plaintiffs and the proposed classes and have sufficient resources to do so successfully. Marron Decl., ¶¶ 1-48 & Ex. C; Teel Decl., ¶ 1-15; Fisher Decl., ¶¶ 1-8 & Exs. D-F. The adequacy requirement is therefore also satisfied.

## B. The Requirements of Rule 23(b)(3) Are Satisfied

### 1. *Predominance*

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3). Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

In addition to showing that common questions concerning the substantive elements of the class's claims predominate, Rule 23(b)(3) requires a showing that the class's "damages stemmed from the defendants' actions that created the legal liability." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) ["*Comcast*"]). Plaintiffs must also show that "damages are capable of measurement on a classwide basis,"

*Comcast*, 133 S. Ct. at 1433, so they can "feasibly and efficiently be calculated once the common liability questions are adjudicated." *Levya*, 716 F.3d at 514. "Often, this will impose only a very limited burden." *Lilly*, 308 F.R.D. at 244. "If damages are capable of measurement on a class-wide basis, questions of individual damage calculations will not overwhelm questions common to the class." *Hale*, 2016 WL 4992504, at *8 (citing *Comcast*, 133 S. Ct. at 1433).

> a. *Defendant's Liability Will be Adjudicated Pursuant to Objective Standards, Using Common Evidence*

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

> i. Common Issues Predominate with Respect to Plaintiffs' Claims Under California's Consumer Protection Laws

California's FAL, CLRA, and UCL "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted). This is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population…" *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003). "[T]he primary evidence in a false advertising case is the advertising itself," *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003), and "[t]he 'misleading character' of a given representation 'appears on applying its words to the facts.'" *Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *17 (N.D. Cal. Dec. 14, 2007) (quoting *Colgan*, 135 Cal. App. 4th at 679). "To state a claim under the UCL or the FAL 'based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.'" *Pulaski Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) ["*Pulaski*"] (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312

(2009)). Advertising is misleading if it presents "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Brockey*, 107 Cal. App. 4th at 99.

If Plaintiffs demonstrate a representation was likely to deceive under this objective "reasonable consumer" test, relief "is available 'without individualized proof of deception, reliance and injury,' so long as the named plaintiffs demonstrate injury and causation." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012) (quotation omitted); *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 964-65 (9th Cir. May 20, 2016) ("[W]here the defendant's representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class certification.") (citing *Hanon*, 976 F.2d at 509 ("We emphasize that the defense of non-reliance is not a basis for denial of class certification."))). And while reliance is an element of the class's CLRA claims, "[t]he causation required by the CLRA does not make plaintiffs' claims unsuitable for class treatment because causation as to each class member is commonly proved more likely than not by materiality." *Guido*, 284 F.R.D. at 482 (quotation omitted). That is because "[a] presumption, or at least an inference, of reliance arises . . . whenever there is a showing that a misrepresentation was material." *Tobacco II Cases*, 46 Cal. 4th at 327; *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2012), *abrogated on other grounds by Comcast*, 133 S. Ct. 1426.

The objective test for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class certification." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012). "For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Id.* (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. June 12, 2012); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012); *Chavez*, 268 F.R.D. at 375-80; *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008)).

Here, "the predominating common issues include whether [Defendant] misrepresented" the Marriott hotel room rates and amenities "and whether the misrepresentations were likely to deceive a reasonable consumer." *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012); *see also In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011). Whether Marriott's bait and switch advertising scheme is likely to deceive a reasonable consumer can be determined through common evidence, including consumer survey evidence. HD ¶ 12 & Ex. 11 [Dennis Expert Rpt. at ¶ 91]. The Court should therefore find that common issues predominate.

    ii.    <u>Common Issues Predominate with Respect to Plaintiffs' Common Law Intentional Misrepresentation, Negligent Misrepresentation, and Concealment/Non-Disclosure Claims</u>

"The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v.Permanente Med. Grp., Inc*. 15 Cal. 4th 951, 974 (1997) (quoting *Lazar v. Super. Ct*., 12 Cal. 4th 631, 638 (1996)) (internal quotation marks omitted). "As with Plaintiffs' consumer law claims, resolution of each of these elements is common to the class." *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *13 (N.D. Cal. Sept. 25, 2018) (certifying class with respect to intentional fraud and negligent misrepresentation claims."); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) (affirming certification of fraud claim where defendant engaged in uniform conduct toward whole class); *Brickman v. Fitbit, Inc.*, 2017 WL 5569827, at *6–*7 (N.D. Cal. Nov. 20, 2017) (holding that materiality and reliance standards applied equally to consumer law, common law fraud, and negligent representation claims); *Brazil v. Dell Inc.*, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010); *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540 (S.D. Cal. 2017).

Common issues predominate with respect to Plaintiffs' negligent and intentional misrepresentation and concealment/non-disclosure claims, as proof of the required elements will require consideration of only the misrepresentations and omissions that Marriott uniformly made to all class members. The common evidence that will prove each of these claims includes the Marriott website, showing Marriott's deceptive pricing scheme (HD ¶¶ 5, 7 & Exs. 4, 6), Marriott's internal documents showing Marriott's intent to defraud consumers through its advertising of Marriott hotel room rates (*see* HD ¶¶ 13-15 & Exs. 12-14), Dr. Dennis' survey showing that consumers rely on and are misled by such misleading advertising (*see* HD ¶ 12 & Ex. 11 [Dennis Expert Rpt., ¶¶ 66-68, 91]), and documents produced by Marriott during discovery showing the amount of resort fees paid by consumers who booked Marriott hotel rooms through the Marriott website and mobile app during the class period (HD ¶¶ 10-11 & Exs. 9-10).

Plaintiffs' fraud and negligent misrepresentation claims are also appropriate for nationwide class certification because "the fundamental elements of fraud are substantially similar from state to state." *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 300 (D. Conn. 2009). "Virtually every state requires that there be a misrepresentation made by the defendant, that the defendant had knowledge that it was false, the defendant intended to induce the reliance of the plaintiff, the plaintiff relied on the statement, and the plaintiff was injured as a result." *Id.* The *Spencer* Court found that "common legal issues predominate with respect to how states treat fraud claims" and the "Plaintiffs have adequately demonstrated that the elements of fraud are substantially similar from state to state." *Spencer*, 256 F.R.D. at 301. Moreover, for fraudulent omissions (as are alleged in this case), a person cannot rely on information not provided to them and, therefore, Plaintiffs only need prove that the omitted information was material, an objective standard that can be determined through common evidence.

**Common Issues Predominate with Respect to Plaintiffs' Quasi Contract/Unjust Enrichment Claim**

Plaintiff's quasi-contract claim arises from the same consumer protection violations and fraud claims that form the basis for the previously discussed claims. The same common evidence described above will show that Marriott charged consumers higher rates for hotel rooms than those originally advertised, thereby unjustly receiving additional money from Plaintiffs and the classes, where Marriott took undue advantage of Plaintiffs and the classes, and whereby money was exacted to which Defendant had no legal right. *See Price v. Synapse Grp., Inc.*, 2017 WL 3131700, at *10-11 (S.D. Cal. July 24, 2017). Certification is therefore appropriate.

b.  *Damages Stem Solely from Defendant's Actions that Created Legal Liability*

Plaintiffs allege Marriott is liable based solely on its misrepresentations and omissions with respect to its advertising of Marriott hotel rooms and amenities on the Marriott website and mobile app, and the classes' damages flow solely from that conduct. *See Comcast*, 133 S. Ct. at 1434. Thus, "[u]nlike the situation in *Comcast*, there is no possibility in this case that damages could be attributed to defendants' acts that are **not** challenged on a class-wide basis because all members of the current class attribute their damages" to the same deceptive practice. *See Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 482 (S.D. Cal. 2015) (emphasis in original); *accord Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (same); *cf. In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at *22 (N.D. Cal. 2013) ("*Comcast* has no application" where plaintiffs assert only one theory of liability and impact").

"Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d

1170, 1183 (9th Cir. 2017) (quoting *Pulaski*, 802 F.3d at 989). The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan*, 135 Cal. App. 4th at 694 (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000); *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 452 (1979)); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(3). "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Restitution is "measured by what was taken from the plaintiff." *Clark v. Super. Ct.*, 50 Cal. 4th 605, 615 (2010). Thus, "[i]n its simplest form, restitution is simply 'the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received.'" *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, at *5 (C.D. Cal. Mar. 15, 2016) (*quoting Cortez*, 23 Cal. 4th at 174).

Restitution under the UCL and FAL "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 698 (2006). The measure of recovery in restitution for the benefit received by the other is the value of the property at the time of its improper acquisition, retention or disposition. *Colgan*, 135 Cal. App. 4th at 698-99 (quoting Restatement of Restitution § 151). Here, damages can be calculated on a classwide basis by calculating the amount of resort fees paid by consumers who booked Marriott hotel rooms through the Marriott website or mobile app during the class period. This requires only a mathematical calculation based on objective evidence (Marriott's business records) that is purely mechanical and provides no obstacle to class certification. Plaintiffs' expert, Ms. Charlene Podlipna, CPA, has already performed such a calculation and has computed damages on a classwide basis. *See* HD ¶ 11 & Ex. 10 [Podlipna Expert Rpt., ¶¶ 9-30].

### c. _Proposed Damages Model_

Here, Marriott engaged in "bait and switch" advertising whereby it advertised a low-quoted rate for a hotel room, knowing that the actual hotel room Marriott intended to sell was more expensive than the initial price that drew customers in. "In such a scheme, one of the dangers is that the consumer will rely on the deceptive advertising to decide to buy merchandise. Then, when the deception is revealed, the consumer, now invested in the decision to buy and swept up in the momentum of events, nonetheless buys at the inflated price, despite his or her better judgment." _See Veera v. Banana Republic, LLC_, 6 Cal.App.5th 907, 921 (2016). California law has "created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; [and] restitution is the remedy." _Stearns v. Ticketmaster Corp._, 655 F.3d 1013, 1021, fn. 13 (9th Cir. 2011); _accord Pulaski & Middleman, LLC v. Google, Inc.,_ 802 F.3d 979, 986 (9th Cir. 2015). The Ninth Circuit has also observed that "a product's 'regular' or 'original' price matters…" and "[m]isinformation about a product's 'normal' price is, therefore, significant to many consumers in the same way as a false product label would be." _Hinojos v. Kohl's Corp.,_ 718 F.3d 1098, 1106 (9th Cir. 2013).

In this case, Plaintiffs propose restitution based on the resort fees that were charged by Marriott and this simple calculation would be based on the amount of resort fees paid by consumers. This damages model is direct and straightforward, easy for a jury to understand, and relatively simple to apply to the facts of this case.

Plaintiffs obtained resort fee payment information from Marriott, which included resort fees paid by consumers through the Marriott website during the class period. _See_ HD ¶ 11 & Ex. 10 [Podlipna Expert Rpt., ¶¶ 16-22]. According to Ms. Podlipna, "the total amount of resort fees paid by the Nationwide Class during the Class Period approximates ████████" and "the total amount of resort fees paid by the California Class during the Class Period approximates ████████" _See id._

[Podlipna Expert Rpt., ¶¶ 9-10]. These calculations are based on resort fee revenue data produced by Marriott, including ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* [Podlipna Expert Rpt., ¶ 16]. Accordingly, Ms. Podlipna was able to calculate total resort fees that were charged to guests who booked their reservation through the marriott.com website or Marriott mobile app. *Id.* [Podlipna Expert Rpt., ¶ 19].

Plaintiffs are seeking a full refund of resort fees that were charged to the class members and this damages model has been accepted by courts in this district and in cases involving similar allegations. Moreover, it does not matter that consumers may have used some of the amenities, "instead, the court focuse[s] on the fraud in the selling, not the value of the product [or service], in upholding full refunds." *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 638 (S.D. Cal. 2015); *accord Pulaski*, 802 F.3d at 987 ("The calculation need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase."); *see also People ex re. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 135 (2003), *as modified on denial of reh'g* (Sept. 9, 2003); (determining that restitution in the amount of full refunds is a permissible remedy); *People ex re. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 531 (2002), *as modified on denial of reh'g* (Jan. 16, 2003) (same); *Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *6 (C.D. Cal. Mar. 23, 2015) (same); *Lambert v. Nutraceutical Corp.*, 2020 WL 12012559, at *11 (C.D. Cal. Jan. 8, 2020) (same). Thus, Plaintiffs' proposed model is appropriate.

### 2. <u>Superiority</u>

In addition to predominance, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of a controversy." Fed. R. Civ. P. 23(b)(3). The superiority analysis focuses on

"efficiency and economy[.]" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). The superiority inquiry also assesses whether the objective of the class action procedure will be achieved and compares alternative mechanisms for dispute resolution. *See Hanlon*, 150 F.3d at 1023. Courts are afforded wide discretion to evaluate superiority because they are "in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). The superiority requirement "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Class members have no incentive to prosecute separate actions since the resort fees charged averaged around $30.00, making individual claims exceedingly small in comparison to the costs of litigation. Courts routinely find the superiority requirement satisfied under similar circumstances. *See Brazilian Blowout Litig.*, 2011 WL 10962891, at *9.

Here, neither Plaintiffs nor the proposed class members have an interest in individual prosecution of their claims, as those claims are of small individual value and virtually identical. Class certification here promotes judicial efficiency because it permits Plaintiffs' and class members' common claims and issues to be tried once with a binding effect on all parties. Given the relatively small size of each class member's claim, class treatment is not merely superior but effectively is the only way for the Court to ensure fair and efficient adjudication of the classes' claims, as no individual consumer could reasonably bring an action to recover that amount. "The Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums." *Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016) (citation omitted). The superiority requirement is satisfied.

## C. The Requirements of Rule 23(b)(2) Are Satisfied

In addition to certification under Rule 23(b)(3), Plaintiffs also request certification under Rule 23(b)(2). In the Ninth Circuit, a class may be certified under both (b)(2) and (b)(3). *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000); *Hilsley*, 2018 WL 6300479, at *19; *Broomfield*, 2018 WL 4952519, at *7. Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Further, "[a] class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser*, 253 F.3d at 1195 (citation omitted). Applying *Dukes*, the Ninth Circuit has held "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (quotations omitted).

Here, Marriott's conduct affected class members equally because Marriott's website and mobile app employ a uniformly deceptive pricing scheme that includes unlawful bait and switch business practices, and therefore all class members were exposed to the same or substantially similar misleading pricing scheme. *See* HD ¶ 5 & Ex. 4. Final injunctive relief is appropriate with respect to the classes as a whole and would ensure class members are protected in the future.

Further, Plaintiffs and class members are limited to their out-of-pocket cost as restitution damages, and this monetary relief is equitable in nature, flowing from the wrongs asserted. Injunctive relief in this action is not merely incidental to monetary damages because "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction." *McGill v. Citibank*, N.A., 2 Cal. 5th 945, 954, 393 P.3d 85, 89 (2017) (quoting *In re Tobacco II Cases*, 46 Cal.4th at 319).

Plaintiffs have standing to pursue the injunctive relief that they seek. In

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-69 (9th Cir. 2018) ["*Davidson II*"], the Ninth Circuit noted that "[i]t [was] an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id.* at 967. The Ninth Circuit "resolve[d] this district court split in favor of plaintiffs seeking injunctive relief" and held that a previously deceived consumer "may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969. Here, Plaintiffs "intend[] to, seek[] to, and will purchase rooms at the Marriott when [they] can do so with the assurance that the advertising of the room rates are lawful and consistent with federal and California regulations. *See* TAC ¶¶ 64, 83; *see also* Hall Decl., ¶ 12 & Ex. A [Hall Dep. Tr. at 101: 15-21]; Abdelsayed Decl., ¶ 10 & Ex. B [Abdelsayed Dep. Tr. at 261:5-9]. Thus, the requirements of Rule 23(b)(2) are satisfied.

### D. Alternatively, the Court Should Certify a Rule 23(c)(4) Class

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "As the Ninth Circuit has repeatedly made clear, 'damage calculations alone cannot defeat certification.'" *Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 584 (C.D. Cal. 2016) (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). Here, Plaintiffs have shown that Rule 23(b)(3) certification is appropriate because damages can easily be calculated on a classwide basis. HD ¶ 11 & Ex. 10 [Podlipna Expert Rpt., ¶¶ 9-30]. However, if the court is not inclined to certify a Rule 23(b)(3) class, then Plaintiffs alternatively request certification under Rule 23(c)(4) for purposes of establishing Marriott's liability. "[T]he fact that a class may not be satisfied for purposes of seeking damages does

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL

not mean that it cannot be certified at all." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014). Several courts have certified classes under Rule 23(c)(4) for purposes of determining liability. *See id; Petersen.*, 312 F.R.D. at 584; *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 532 (C.D. Cal. 2015) ("Even if JCPenney is correct and the putative class is ultimately unable to recover restitution or obtain injunctive relief, the court could still certify a liability-only class at this stage. Contrary to defendant's arguments, the Ninth Circuit has held that victims of alleged false price comparison schemes have been injured even if there is 'no difference in value between the product as labeled and the product as it actually is [.]'") (quoting *Hinojos*, 718 F.3d at 1105)).

### E.     The Court Should Approve Notice to the Classes

Under Rule 23(c)(2)(B), for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Filed concurrently with this Motion is the Declaration of James Prutsman of Kroll Settlement Administration detailing a Notice Plan for this case. Because Marriott has records of consumers who booked hotel rooms through the Marriott website and paid resort fees during the class period, individual notice is simple in this action. Thus, to reach all potential class members, the best notice practicable under the circumstances is direct notice. Fed. R. Civ. P. 23(c)(2)(B).

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Class Certification, to Appoint Class Representatives, and Appoint Class Counsel.

DATED: April 15, 2022                  Respectfully submitted,

                                       /s/ *Ronald A. Marron*
                                       **LAW OFFICES OF RONALD A.**
                                       **MARRON**
                                       RONALD A. MARRON (SBN 175650)
                                       *ron@consumersadvocates.com*
                                       MICHAEL T. HOUCHIN (SBN 305541)
                                       *mike@consumersadvocates.com*
                                       LILACH HALPERIN (SBN 323202)
                                       *lilach@consumersadvocates.com*
                                       651 Arroyo Drive
                                       San Diego, California 92103
                                       Telephone: (619) 696-9006
                                       Facsimile: (619) 564-6665

                                       **LAW OFFICE OF ROBERT L. TEEL**
                                       ROBERT L. TEEL
                                       *lawoffice@rlteel.com*
                                       1425 Broadway, Mail Code: 20-6690
                                       Seattle, Washington  98122
                                       Telephone: (866) 833-5529
                                       Facsimile: (855) 609-6911

                                       **BURSOR & FISHER, P.A.**
                                       L. Timothy Fisher (SBN 191626)
                                       Sean L. Litteral (SBN 331985)
                                       1990 N. California Blvd., Suite 940
                                       Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
                                       Facsimile: (925) 407-2700
                                       E-mail: *ltfisher@bursor.com*
                                              *slitteral@bursor.com*
                                       ***Interim Class Counsel***