1  Brett N. Taylor (SBN 274400)
   *btaylor@cozen.com*
2  COZEN O'CONNOR
   601 South Figueroa Street, Suite 3700
3  Los Angeles, CA 90017
   Tel.: 213-892-7900; Fax: 213-892-7999
4
   Paul Leary (PA Bar No. 85402)
5  (*Pro Hac Vice*)
   *pleary@cozen.com*
6  COZEN O'CONNOR
   One Liberty Place
7  1650 Market Street, Suite 2800
   Philadelphia, PA 19103
8  Tel.: 215-665-2000; Fax: 215-665-2013
9  Chad E. Kurtz (DC Bar No. 1016934)
   (*Pro Hac Vice*)
10 *ckurtz@cozen.com*
   COZEN O'CONNOR
11 1200 19th Street, NW, Suite 300
   Washington, DC 20036
12 Tel.: 202-463-2521; Fax: 202-640-5939
13 Attorneys for Defendant
   Marriott International, Inc.
14

15              **UNITED STATES DISTRICT COURT**
16             **SOUTHERN DISTRICT OF CALIFORNIA**

17 TODD HALL, KEVIN BRANCA, and          Case No.: 3:19-cv-01715-JO-AHG
   GEORGE ABDELSAYED, individually       Hon. Judge Jinsook Ohta
   and on behalf of all other similarly
18 situated,                             **DEFENDANT MARRIOTT**
                                         **INTERNATIONAL, INC.'S**
19          Plaintiff,                   **UNOPPOSED MEMORANDUM OF**
                                         **POINTS AND AUTHORITIES IN**
20      vs.                              **SUPPORT OF SEALING CERTAIN**
                                         **DOCUMENTS FILED BY**
21 MARRIOTT INTERNATIONAL, INC., a       **PLAINTIFFS**
   Delaware corporation,
22                                       *[Filed concurrently with Declaration of*
23          Defendant.                   *Theresa A. Coetzee]*

24                                       Judge: Hon. Jinsook Ohta
25
26
27
                                  -1-
28
   DEFENDANT MARRIOTT INTERNATIONAL, INC.'S UNOPPOSED MEMORANDUM OF
   POINTS AND AUTHORITIES IN SUPPORT OF SEALING CERTAIN DOCUMENTS FILED
                             BY PLAINTIFFS
                          LEGAL\57600433\3

## I.   <u>INTRODUCTION</u>

In connection with their Motion for Partial Summary Judgment and Motion for Class Certification, plaintiffs Todd Hall and George Abdelsayed ("Plaintiffs") filed a Motion to File Documents Under Seal (Dkt. No. 141), and requested that this Court deny that Motion (so as to decline to seal the records). (*See id.* at 4.) For the below reasons, defendant Marriott International, Inc. ("Marriott") seeks to seal only the portions of Plaintiffs' filings that contain (i) Marriott's confidential financial information, including the amount of resort fee revenue received by Marriott, and the amount of resort fees paid by consumers to Marriott-branded hotels; and (ii) confidential contractual agreements between Marriott and online travel agencies ("OTAs"). Plaintiffs do not oppose Marriott's request to seal those documents.

## II.   <u>BACKGROUND</u>

On November 19, 2020, the Court entered an Order Granting Joint Motion for Protective Order. (Dkt. No. 44.) The Protective Order represents the parties' agreement that "[t]his action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure" may be warranted, and is intended to "adequately protect information the parties are entitled to keep confidential," such as "confidential business or financial information, information regarding confidential business practices, or other confidential research, development, or commercial information … [and] information generally otherwise unavailable to the public[.]" (*Id.* at 1-2.)

On April 15, 2022, Plaintiffs filed their Motion for Partial Summary Judgment and Motion for Class Certification, as follows: They filed public versions containing redactions to the portions of their papers that they thought Marriott might want to seal, or were subject to the Protective Order, and submitted certain documents entirely

DEFENDANT MARRIOTT INTERNATIONAL, INC.'S UNOPPOSED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SEALING CERTAIN DOCUMENTS FILED BY PLAINTIFFS
LEGAL\57600433\3

1  under seal. (Dkt. Nos. 141-145.) Plaintiffs then submitted un-redacted versions of the

2  entire filings to the Court *in camera*.

3      Marriott contends that some of the documents and information redacted and/or

4  sealed in Plaintiffs' filings should remain redacted and/or sealed. Marriott thus

5  submits this Memorandum of Points and Authorities in Support of Sealing Certain

6  Documents Filed by Plaintiffs.

7              **III.   LEGAL STANDARD**

8      "[T]he common law right of access is not absolute." *In re Midland Nat'l Life*

9  *Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012). Although

10  there is a presumption of access to court records, a party seeking to seal judicial

11  records can overcome the presumption of access by providing "compelling reasons."

12  *Id.* (quotation omitted). When ruling on a motion to seal court records, the court

13  balances the competing interests of the public and the party seeking to seal the records.

14  *Id.* However, the public's interest in judicial proceedings does not extend to "parties'

15  confidential information where that information is not central to a decision on the

16  merits." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013)

17  (holding U.S. District Court for the Northern District of California abused its

18  discretion by refusing to seal confidential financial information).

19      When determining whether a compelling reason exists, relevant factors include

20  "whether disclosure of the material could result in improper use," such as "the use of

21  records to … circulate libelous statements, or release trade secrets." *Algarin v.*

22  *Maybelline, LLC*, 12CV3000 AJB DHB, 2014 WL 690410, at *2 (S.D. Cal. Feb. 21,

23  2014). Ultimately, however, what constitutes a compelling reason is "best left to the

24  sound discretion of the trial court." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809

25  F.3d 1092, 1097 (9th Cir. 2016).

26

27

28

DEFENDANT MARRIOTT INTERNATIONAL, INC.'S UNOPPOSED MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF SEALING CERTAIN DOCUMENTS FILED
BY PLAINTIFFS
LEGAL\57600433\3

California district courts routinely seal documents identifying a company's confidential financial information. *See, e.g.*, *InterityMessageBoards.com v. Facebook, Inc.*, No. 18-5286, 2021 WL 3771785, at *23 (N.D. Cal. Aug. 24 2021) (sealing information about Facebook's revenue streams); *Karl v. Zimmer Biomet Holdings, Inc.*, No. 18-4176, 2019 WL 2775567, at *9 (N.D. Cal. July 2, 2019) (sealing "sales numbers and/or revenues for certain produces sold by defendants"); *FTC v. Amazon.com, Inc.*, No. 14-1038, 2016 WL 4447049, at *2 (W.D. Wash. Aug. 24, 2016) (stating that the court previously had sealed revenue information in the case). Courts also "regularly find that litigants may file under seal contracts with third parties that contain proprietary and confidential business information." *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *5 (N.D. Cal. 2015) (sealing contractual documents that contained confidentiality clauses); *see also Stout v. Hartford Life & Acc. Ins. Co.*, No. CV 11–6186 CW, at *2 (N.D. Cal. Dec. 4, 2012).

## IV.   <u>ARGUMENT</u>

Marriott respectfully asks the Court to seal the portions of Plaintiffs' summary judgment and class certification filings and exhibits thereto that contain Marriott's confidential financial information and/or confidential contractual terms with OTAs.

### A. <u>The Court should seal Marriott's confidential financial information.</u>

There is no need for the public to have access to Marriott's confidential financial information—specifically, the amount of resort-fee revenue received by Marriott, or the amount of resort fees paid by consumers to Marriott-branded properties.

The amount of annual resort-fee revenue received by Marriott is not publicly available information, and is dictated by the terms of confidential agreements with hotel owners and franchisees. Decl. of Theresa A. Coetzee ("Coetzee Decl.") ¶ 4. The

amount of resort-fee revenue received by Marriott year over year is reflective of Marriott's overall resort-fee strategy, and dependent upon the terms of those confidential agreements. *Id.* ¶ 5. If Marriott's competitors were able to access the amount of annual resort-fee revenue received by Marriott, they could misuse that information and/or gain an unfair advantage over Marriott in working with potential hotel owners, franchisees, or other third parties. *Id.* ¶ 6. This is exactly the type of confidential business information the Protective Order was entered to protect from public disclosure.

Similarly, the amount of resort fees paid by consumers to Marriott-branded properties is not publicly available information. *Id.* ¶ 7. The difference between the amount of resort fees collected by specific Marriott-branded hotels and the amount of resort-fee revenue passed on to Marriott by individual hotels is reflective of Marriott's overall resort-fee strategy and dependent upon the terms of confidential agreements with hotel owners and franchisees. *Id.* ¶ 8. This, too, is the type of confidential business information the Protective Order is intended to protect.

Marriott's confidential financial information, which allegedly is relevant to Plaintiffs' alleged *damages*, is not relevant to any of the arguments in Plaintiffs' summary judgment motion, which asks the Court to impose statutory *liability*. *See Apple*, 727 F.3d at 1228. Plaintiffs cite Marriott's resort fee data only to show that Marriott engaged in the allegedly deceptive conduct to increase its revenue. (Dkt. No. 143-1, at 9-10.) While Plaintiffs' argument is flawed and unsupported by the facts in this case, a party's alleged *motive* for engaging in allegedly deceptive conduct is irrelevant to whether a party actually *committed* the deceptive conduct. To be clear, Marriott did not engage in any deceptive conduct in connection with its resort fee program, and has been in compliance with FTC guidelines on resort fee disclosures dating back to 2012, and earlier. As for the legal arguments presently before the Court,

including the cross-motions for summary judgment, Plaintiffs need not show the *amount* of resort fee revenue received by Marriott.

Finally, the resort fee revenue received by Marriott-branded hotel properties (the resort fees paid by guests to hotels), which are independent from Marriott, is irrelevant; all that is relevant is the resort fee revenue paid by the Marriott-branded hotel properties to the defendant, Marriott (which is a very small fraction of the resort fees paid by guests). Indeed, Plaintiffs are aware from the testimony of several Marriott representatives, that Marriott receives approximately three percent of the resort-fee revenues collected by owners and franchisees. (*See* Scott McCoy Dep. 60:13-61:6; Jeff Wolff Dep. 209:15-211:8.) To that end, the resort-fee revenue received by Marriott or its branded hotel properties has no relevance to whether Marriott engaged in deceptive conduct.

Nor is Marriott's confidential financial information relevant to class certification. In their Motion for Class Certification, Plaintiffs argue that the amount of resort fees paid to Marriott-branded hotel properties demonstrates "numerosity." (Dkt. No. 144-1, at 12.) It does not—numerosity relates to the number of proposed class members, and not to any dollar amount purportedly spent by such proposed class members. *See Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-14 (9th Cir. 1964). Plaintiffs further cite to Marriott's resort-fee revenue, and the amount of resort fees paid by consumers to Marriott-branded hotel properties (not Marriott), in explaining their proposed damages model. (Dkt. No. 144-1, at 24-25.) Specifically, Plaintiffs propose that damages would be calculated as "restitution based on the resort fees that were charged by Marriott and this simple calculation would be based on the amount of resort fees paid by consumers." (*Id.* at 24.) In analyzing a proposed damages model, courts assess whether Plaintiffs' proposed method of calculating damages is arbitrary, and whether it is consistent with Plaintiffs' theory of liability,

DEFENDANT MARRIOTT INTERNATIONAL, INC.'S UNOPPOSED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SEALING CERTAIN DOCUMENTS FILED BY PLAINTIFFS

LEGAL\57600433\3

among other things. *See Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 638 (S.D. Cal. 2015). The actual dollar amounts of any proposed damages, however, are not relevant to this Court's determination as to whether it will accept Plaintiffs' proposed damages model.

Because Marriott's confidential financial information is not "central to a decision on the merits" on Plaintiffs' summary judgment or class certification motions—and in fact is irrelevant to those motions—there is no public interest in this information. *See Apple*, 727 F.3d at 1228. There is, however, a compelling interest in maintaining the confidentiality of this highly-sensitive financial information, which could be used by Marriott's competitors, and perhaps owners and franchisees, to gain an unfair advantage over Marriott. *See, e.g., Karl*, 2019 WL 2775567, at *9. Finally, Plaintiffs' filings incorrectly suggest that the amount of resort fees paid by consumers to Marriott-branded hotel properties constitutes the amount of fees received by Marriott. This is patently false and Plaintiffs' counsel is well aware of this. Marriott's corporate designee, and other Marriott officials explained in detail the financial aspects of the resort fee program, and specifically the small percentage of resort-fee revenue that Marriott receives from owners and franchisees. (*See* Scott McCoy Dep. 60:13-61:6; Jeff Wolff Dep. 209:15-211:8.) Thus, public disclosure of this information would publicize misleading information regarding Marriott's financial position. *See Algarin*, 2014 WL 690410, at *2.

**B. The Court should seal the confidential terms of OTA agreements.**

Plaintiffs' filings—specifically, Exhibits 2 and 3 to the Declaration of Michael Houchin—describe contract terms in business agreements between Marriott and OTAs containing confidentiality clauses. There exists no public need to access the terms of Marriott's private and confidential business contracts with third parties. On information and belief, the public has never had access to these OTA agreements.

-7-

Coetzee Decl. ¶ 9. Moreover, the Expedia and Orbitz agreements both contain a confidentiality clause, the violation of which could negatively impact Marriott's important business relationships with these companies. *Id.* Marriott's competitors could gain an unfair negotiating advantage if they were able to access the confidential terms of the Expedia and Orbitz agreements, because access to Marriott's specific contractual terms could allow competitors to seek to negotiate more favorable terms with those OTAs, among other reasons. *Id.* ¶ 10.

This, too, is the exact type of confidential business information the Protective Order was implemented to protect. Marriott could suffer substantial prejudice if references to the Expedia and Orbitz agreements are not sealed. Further, the terms of these agreements are not relevant to Plaintiffs' claims, and Plaintiffs have not cited to or mentioned the agreements in their summary judgment or class certification filings—they are included in Plaintiffs' filings as part of deposition transcripts that are cited for other purposes.

## V.  CONCLUSION

For the above reasons, and without any opposition from Plaintiffs, Marriott respectfully asks the Court to grant Plaintiffs' Motion to Seal and (i) replace the publicly available versions of the filings and documents attached hereto as Exhibits A-F (which are redacted as necessary to protect the information described above); and (ii) maintain Exhibits 7, 9, and 10 to the Declaration of Michael Houchin under seal.

Dated: April 29, 2022                    Respectfully submitted,

                                          */s/ Brett N. Taylor*
                                          Brett N. Taylor
                                          Attorney for Defendant
                                          Marriott International, Inc.

-8-