**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665

**LAW OFFICE OF ROBERT L. TEEL**
ROBERT L. TEEL (SBN 127081)
*lawoffice@rlteel.com*
1425 Broadway, Mail Code: 20-6690
Seattle, Washington 98122
Tel: (866) 833-5529
Fax: (855) 609-6911
***Interim Class Counsel***

**BURSOR & FISHER, P.A.**
L Timothy Fisher (SBN 191626)
Sean L. Litteral (SBN 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
                slitteral@bursor.com

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL, KEVIN BRANCA, and GEORGE ABDELSAYED individually and on behalf of all others similarly situated,<br><br>      *Plaintiffs*,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation;<br><br>      *Defendant*. | Case No. 3:19-cv-01715-JO-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT CLASS COUNSEL**<br><br>Date:   September 21, 2022<br>Time:  9:30 a.m.<br>Ctrm:  4C<br>Judge: Hon. Jinsook Ohta<br><br>**SPECIAL BRIEFING SCHEDULE ORDERED [Dkt. No. 138]** |

# **TABLE OF CONTENTS**

I.  Plaintiffs Did Not Waive the Right to Participate in a Class Action .............. 1

II.  Predominance is Satisfied .................................................................... 2

    1.  Plaintiffs Provide Common Proof of Materiality ................. 2

    2.  Marriott's Misrepresentations and Omissions were Uniform ............. 5

    3.  Common Issues Predominate re. Plaintiffs' Common Law Claims ............................................................................. 7

    4.  Questions as to Injury Do Not Preclude Class Certification ............... 9

    5.  Damages Are Susceptible of Measurement Across the Classes .......... 9

III.  A Class Action is Superior ............................................................... 11

    1.  Marriott's Terms of Service Do Not Defeat Class Certification ........ 11

    2.  Determining Class Membership is Feasible ....................... 12

IV.  Commonality is Satisfied .................................................................. 12

V.  Plaintiffs Satisfy Typicality and Adequacy .................................... 12

VI.  Rule 23(b)(2) Certification is Appropriate ...................................... 14

VII.  Rule 23(c)(4) Certification is Appropriate ...................................... 14

VIII.  Notice to the Class ........................................................................... 15

IX.  Conclusion ....................................................................................... 15

-i-

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT
CLASS COUNSEL

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Bowerman v. Field Asset Servs., Inc.*,
   No. 13-00057, 2015 WL 5569061 (N.D. Cal. 2015)...........................................15

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................12

*Capaci v. Sports Research, Inc.*,
   No. 19-3440, 2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ...............................9

*Fremont General Corp. Litigation*,
   No. 2:07-cv-02693, 2010 WL 3168088 (C.D. Cal. 2010) ..................................12

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012).........................................................................10

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018)................................................................3

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................14

*Herrera, v. LCS Financial Services Corp.*,
   274 F.R.D. 666 (N.D. Cal. 2011) .......................................................................11

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   No. 17-2335, 2018 WL 6300479 (S.D. Cal. 2018) ......................................12, 15

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ...............................................................3, 4, 8, 10

*Holt v. Noble House Hotels & Resort, LTD*,
   No. 17-2246, 2018 WL 5004996 (S.D. Cal. 2018) ............................3, 6, 11, 12

*In re California Micro Devices Securities Litigation*,
   168 F.R.D. 257 (N.D. Cal. 1996) .......................................................................13

*In re Marriott International, Inc., Customer Data Security Breach Litigation*,
   No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022)................2, 9, 10, 11

-ii-

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*,

   422 F. Supp. 3d 194 (D.D.C. 2019)...................................................................2

*In re Steroid Hormone Prod. Cases*,

   181 Cal.App. 4th 145 (2010) .......................................................................4

*In re Tobacco II Cases*,

   46 Cal.4th 298 (2009)...........................................................................5, 14

*Johns v. Bayer Corp.*,

   280 F.R.D. 551 (S.D. Cal. 2012) ..................................................................5

*Kamakahi v. Am. Soc'y for Reprod. Med.*,

   305 F.R.D. 164 (N.D. Cal. 2015) ...............................................................15

*Kwikset Corp. v. Superior Court*,

   51 Cal.4th 310 (2011) ...................................................................................8

*Martin v. Yasuda*,

   829 F.3d 1118 (9th Cir. 2016) .....................................................................1

*Nitsch v. Dreamworks Animation SKG Inc.*,

   315 F.R.D. 270 (N.D. Cal. 2016) ..............................................................12

*Robinson v. OnStar, LLC*,

   721 Fed.Appx. 704 (9th Cir. 2018) ..............................................................2

*Sav-On Drug Stores, Inc. v. Superior Court*,

   34 Cal.4th 319 (2004).................................................................................10

*Shroyer v. New Cingular Wireless Servs., Inc.*,

   498 F.3d 976 (9th Cir. 2007) .......................................................................1

*Spangler v. Nat. College of Tech. Instruction*,

   No. 14-3005, 2016 WL 11772282 (S.D. Cal. 2016) ....................................5

*Spann v. J.C. Penney Corp.*,

   307 F.R.D. 508 (C.D. Cal. 2015).................................................................4

*Testone v. Barlean's Organic Oils, LLC*,

   2021 WL 4438391 (S.D. Cal. 2021).............................................................3

-iii-

*Veera v. Banana Republic, LLC*,
   6 Cal. App. 5th 907 (2016) .......................................................................passim
*Victorino v. FCA US LLC*,
   No. 16-1617, 2020 WL 2306609 (S.D. Cal. 2020) .................................... 10, 15
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................14
*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 2191901 (N.D. Cal. May 23, 2014) ......................................................3
*White v. Mills*,
   No. 17-1775, 2021 WL 6750766 (D. NJ Dec. 29, 2021) ......................................1
*Yeoman v. Ikea U.S. W., Inc.*,
   No. 11-701, 2013 WL 5944245 (S.D. Cal. 2013) ...............................................15
*Zylstra v. Safeway Stores, Inc.*,
   578 F.2d 102 (5th Cir. 1978) ..............................................................................13

**<u>Other Authorities</u>**

7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice
   and Procedure § 1760 (4th ed. 2021).....................................................................9

Manual for Complex Litigation sec. 21.24 (4th ed. 2004) ......................................15

**<u>Rules</u>**

Fed. R. Civ. P. 23(b)(2) ...........................................................................................14

Fed. R. Civ. P. 23(b)(3) ...........................................................................................14

Fed. R. Civ. P. 23(c)(4) .....................................................................................14, 15

**<u>Regulations</u>**

16 C.F.R. § 238.1.................................................................................................6, 8

16 C.F.R. § 238.2....................................................................................................3

16 C.F.R. § 238.0.................................................................................................6, 8

-iv-

## I.   Plaintiffs Did Not Waive the Right to Participate in a Class Action

The general rule in California is that class action waivers are unconscionable. *See Shroyer v. New Cingular Wireless Servs., Inc*., 498 F.3d 976, 983 (9th Cir. 2007). Notwithstanding, Marriott waived its right to enforce any class action waiver. The Terms of Use contain the following provision as the fifth sub-paragraph under a heading titled "Arbitration":

> You agree that you will not file a class action against Marriott or participate in a class action against Marriott. You agree that you will not file or seek a class arbitration, or participate in a class arbitration, against Marriott.

*See* Dkt. No. 154-2 at p. 308-309. District courts have held that "the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated – <u>not</u> as an independently effective waiver." *White v. Mills*, No. 17-1775, 2021 WL 6750766, at *4 (D. NJ Dec. 29, 2021) (emphasis in original) (internal quotation omitted). Here, the language of the class action waiver is inextricably tied to the arbitration provision itself, which Marriott has waived. *See id*. (class action waiver tied to arbitration provision where waiver was "the sixth subsection of the nine-part [arbitration] provision…"); *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (defendants waived right to enforce arbitration by litigating case for seventeen months) (citing cases); *see also* Dkt. No. 155 [Def.'s Opp. to Plaintiffs' MSJ at 34 (Marriott failing to contest argument that it waived arbitration by proceeding with litigation)]. Because the class action waiver is tied to the arbitration provision, and Marriott waived its right to enforce arbitration, Plaintiffs may proceed with the litigation as a class action. *See White*, 2021 WL 6750766, at *4.[1]

Less than three months ago, another district court certified a class action against Marriott, finding "Plaintiffs raise a strong argument that [Marriott] waived

---

[1] It is likely that Marriott intentionally delayed its attempt to enforce arbitration/class action waiver to avoid en masse arbitration and erode individual consumers' rights due to the passage of time.

[its] right to enforce the class action waiver" because aside "from a one-line, boilerplate affirmative defense, Defendants litigated this case for more than 31 months before asserting that Plaintiffs are subject to a class waiver." *In re Marriott International, Inc., Customer Data Security Breach Litigation*, No. 19-md-2879, 2022 WL 1396522, fn. 26 (D. Md. May 3, 2022). The Court ultimately held that it need not rule on the issue at class certification; instead, "the Court may address the Class action [waiver] defense—as it will all affirmative defenses—at the merits stage of the litigation." *See id*. Similarly here, Marriott waived its right to enforce a class action waiver by litigating the case for more than 34 months before asserting that Plaintiffs are subject to a class waiver. Notwithstanding, the Court may defer ruling on this issue until the merits stage of the litigation, after discovery related to applicability of the waiver provision is complete.[2]

## II.   Predominance is Satisfied

### 1.   *Plaintiffs Provide Common Proof of Materiality*

At the class certification stage, a plaintiff need not provide proof of materiality. Rather, a plaintiff need only show that materiality is a common question for the class. *See In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 422 F. Supp. 3d 194, 252 (D.D.C. 2019) ("materiality is necessarily a common question…because it is judged by an objective 'reasonable person' standard and, therefore, no evidence of materiality is necessary for purposes of class certification.") (citing *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901,

---

[2] In its Opposition ("Opp."), Marriott does not state that Marriott provided notice or constructive notice of the Term's existence or that Plaintiffs provided their affirmative consent to the Terms of Use. *See Robinson v. OnStar, LLC*, 721 Fed.Appx. 704, 705 (9th Cir. 2018) ("[A] consumer [must] be on notice of the existence of a term before he or she can be legally held to have assented to it.") (internal quotations omitted). Instead, Marriott's position appears to be that Plaintiffs agreed to a class action waiver years in advance through the Bonvoy Terms & Conditions, which state that Marriott "may at any time amend, modify or supplement these Program Rules" and "[y]our continued participation in the Loyalty Program will constitute your acceptance of any such Program Rule Changes." Opp. at 9:14-16. This is unenforceable. *See Robinson*, 721 Fed.Appx. at 705 (agreement when formed did not include the terms and conditions and plaintiff did not accept by retaining the service to which she was entitled under the original agreement).

at *14 (N.D. Cal. May 23, 2014) (finding that materiality is a question common to the class and concluding predominance was met for the same reason commonality was met); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) ("because deception and materiality are objective questions, they are 'common question[s] for purposes of Rule 23(b)(3)'"); *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *14 (S.D. Cal. 2021) ("the Court finds more persuasive those cases requiring proof only of a common question of materiality and reliance rather than proof of those issues on the merits at the class certification stage.")).

Nonetheless, there can be no dispute that Marriott's failure to include mandatory resort fees in the initial advertised nightly rates, which constitutes unlawful bait and switch pricing, is material. First, Marriott's practices violate federal regulations and run afoul of the FTC's warning regarding resort fee drip pricing. *See* 16 C.F.R. § 238.2; *see also* Dkt. No. 143-24 (FTC warning that resort fee drip pricing like Marriott's "may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms."). The "legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). Second, "'the price of [an item is] an undeniably material term.'" *See Holt v. Noble House Hotels & Resort, LTD*, No. 17-2246, 2018 WL 5004996 at *10 (S.D. Cal. 2018) (failure to include 3.5% surcharge to total cost of menu items material to reasonable person); *Hinojos*, 718 F.3d at 1106 ("Misinformation about a product's 'normal' price is [] significant"). Third, both Plaintiffs testified that they read and relied on Marriott's artificially low-quoted room rate that did not include the mandatory resort fee charge and were induced to purchase Marriott's hotel rooms through Marriott's false representations and omissions. *See* Dkt. No. 144-2 ("Hall Decl.") at ¶¶ 8-9; Dkt. No. 144-4 ("Abdelsayed Decl.") at ¶¶ 7-8.

Marriott argues that the "booking process was not materially deceptive"

-3-

because the "total cost of the stay and the resort fee were disclosed." Opp. at 13:12-15. This Court already rejected this argument, holding "although Plaintiff may have known the full amount of money he would be charged for his hotel room, the room's regular or baseline price matters, and the inclusion or omission of resort fees affects that consumer valuation." *See* Dkt. No. 31 [Order on MTD] at 17-18 (citing *Hinojos*, 718 F.3d at 1101); *see also Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 922 (2016) (rejecting argument that plaintiffs could not establish reliance even though they later learned of the actual price).[3] Marriott contends "Plaintiffs admit that Marriott's booking process was not materially deceptive" and "[n]ot one deponent identified a false or misleading representation on Marriott's website…" Opp. at 13:12-14. That is simply false. Plaintiffs testified that they were deceived by and induced to book a hotel room due to Marriott's misrepresentations and omissions. *See* Hall Decl., ¶¶ 8-9; Abdelsayed Decl., ¶¶ 7-8; *see also* Dkt. No. 153 (Plaintiffs' Opp. to Def.'s MSJ) at pp. 3-11.

Marriott next argues that Dr. Dennis's survey is "insufficient to establish common proof of materiality" (Opp. at 20:27). However, Dr. Dennis's survey demonstrates that reasonable consumers were deceived by Defendant's website, as they consistently understood the total cost of lodging to be substantially lower. *See* Dkt. No. 143-14 [Dennis Rpt.]. As such, Dr. Dennis's study provides evidence that a reasonable person "would attach importance to [the] existence or nonexistence" of Marriott's misrepresentations and omissions "in determining his choice of action in the transaction in question." *In re Steroid Hormone Prod. Cases*, 181 Cal.App. 4th 145, 156-57 (2010); *see also Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 523 (C.D. Cal. 2015) (question of materiality predominated where plaintiff intended to "rely on empirical data demonstrating that false price comparisons deceive consumers and influence their purchasing decisions."). Although Defendant questions this evidence, the ultimate determination is to be made by the trier of fact. *Johns v. Bayer Corp.*,

---

[3] Marriott does not mention *Veera* in its Opposition. *See generally*, Opp.

280 F.R.D. 551, 558–59 (S.D. Cal. 2012) (issue of materiality "is a question of fact to be determined at a later stage").

Marriott also argues Plaintiffs cannot establish materiality because Plaintiffs booked the hotel rooms for a number of reasons. *See* Opp. at 21:1-17. However, the California Supreme Court has unequivocally held "[i]t is not ... necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct ... It is enough that the representation has played a substantial part [] in influencing his decision." *In re Tobacco II Cases*, 46 Cal.4th 298, 326-27 (2009). Here, Plaintiffs testified that they read and relied on the representations on the Marriott website or app when booking hotel rooms, including the quoted room price that did not disclose the mandatory resort fee. Hall Decl., ¶¶ 8-9; Abdelsayed Decl., ¶¶ 7-8. Plaintiffs have established that such misrepresentations were material.[4]

### 2.   *Marriott's Misrepresentations and Omissions were Uniform*

Marriott argues the class cannot be certified because the misrepresentations and omissions were not uniform. *See* Opp. at 17-18. However, Marriott did not include the mandatory resort fee in the initial advertised room rates for *any* hotel that charged a mandatory resort fee. *See* Dkt. No. 140-1 [Def.'s MSJ at 1:11-12 ("[Marriott] readily acknowledges it does not display the resort fee on its initial web page...")].[5] Plaintiffs' injury was in booking hotel rooms via the Marriott website or app in reliance on the misrepresentation that the quoted room rate advertised was the cost, when in fact the cost included a mandatory resort fee. Similarly, the class members' injuries are booking a hotel room from Marriott's website or app in

---

[4] *Spangler v. Nat. College of Tech. Instruction*, No. 14-3005, 2016 WL 11772282, at *8 (S.D. Cal. 2016) ("individual factors that may have gone into each [consumer's] decision to [purchase] does not affect the objective materiality of the alleged misrepresentations.").

[5] *See also* Dkt. No. 143-18 [Alexander Dep. Tr. at 28:18 – 29:1 ("Q: Okay. So is Marriott's approach a uniform approach to resort fees? [objection] A: ...I would say, yes, our policy – the elements of our policy and our program get applied uniformly."); *see also id.*, at 194:16-19 ("Q: [i]s the [resort fee] disclosure across the Marriott.com website uniform? A: Yes.")].

reliance on the initial low-ball advertised room rate. *See Holt*, 2018 WL 5004996 at *5. "Thus, Plaintiff[s] allege[] a single misrepresentation that was made identically to all potential class members." *See id.* (internal quotations omitted).

Marriott argues that it sometimes provided consumers belated resort fee disclosures in a blue box during the booking process, and therefore some consumers were not deceived. *See* Opp. at 18. However, in addition to being deficient and misleading themselves, Marriott's belated disclosures do not dispel the initial deception that baited consumers to transact with Marriott in the first place.[6] As discussed above, "the room's regular or baseline price matters," and the deception is advertising a low quoted room rate that Marriott never intended to charge for the hotel stay. *See* Dkt. No. 31 [Order denying MTD]; *see also* 16 C.F.R. § 238.0 (prohibiting advertising an insincere offer to sell product or service which advertiser in truth does not intend to sell as advertised); 16 C.F.R. § 238.1 ("No advertisement containing an offer to sell a product should be published when the offer is not a bona fide effort to sell the advertised product."). Here, the Court need not "determine what was actually seen by the class" (Opp. at 18:15-16), as Marriott advertised a low-quoted room rate without the mandatory resort fee to *all* class members. Moreover, whether Marriott's belated disclosures are ineffective and likewise misleading is a question common to the class that can be determined by the trier of fact and does not defeat class certification. In sum, all class members suffered the same injury when they were exposed to Marriott's initial low-quoted room rate that baited consumers to transact with Marriott, and the trier of fact may determine on a class-wide basis whether Marriott's belated disclosures were deficient and/or similarly misleading.

Marriott also notes that consumers received post-booking emails confirming

---

[6] For this same reason, Marriott's argument that the "putative classes include individuals who viewed, and did not view, the enhanced Marriott website with a toggle box that would allow a consumer to see the total cost with all taxes and fees" is unpersuasive. Opp. at 18. The "toggle box" on the enhanced website is not selected by default and consumers are automatically shown room prices that do not include the resort fee. *See* Marron Decl. iso Reply, ¶¶ 2-3 & Exs. 1-2 [Wolff Dep. at Exs. 14 & 15].

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION, TO APPOINT CLASS REPRESENTATIVES, AND TO APPOINT
CLASS COUNSEL

the reservation and disclosing the resort fee. Opp. at 18-19. However, a *post*-booking email is simply another insufficient belated disclosure, as the booking is already completed. Courts have held that such a belated disclosure is ineffective and does not counteract the initial deception. *See Veera*, 6 Cal.App.5th at 920-922 (post-advertisement disclosure ineffective where disclosure was made when the consumer was already "invested in the decision to buy and swept up in the momentum of events."). Further, whether class members "paid immediately upon booking" or later learned of the resort fee through Marriott's belated disclosures is irrelevant. *See* Opp. at 19. "[T]he question of reliance and causation does not rest as a matter of law on whether plaintiffs knew the actual price of the items they purchased at the moment money was exchanged . . . If the reliance on the misleading advertising was a substantial factor in causing plaintiff's decision to buy, the requirements of reliance and causation are met." *Veera*, 6 Cal.App.5th at 920-922. Here, Plaintiffs testified that they read and relied on Marriott's advertisement of a low-quoted room rate that did not include any mention of a mandatory resort fee. *See, e.g.,* Hall Decl., ¶¶ 8-9; Abdelsayed Decl., ¶¶ 7-8; Dkt. No. 153 (Plaintiffs' Opp. to Def.'s MSJ) at pp. 3-11. Plaintiffs have adequately shown that their decision to purchase was influenced by Marriott's misrepresentations, which they allege were misleading. Plaintiffs have therefore shown reliance under California's consumer protection statutes.

### 3.      *Common Issues Predominate re. Plaintiffs' Common Law Claims*

Marriott argues that individual inquiries would need to be made to determine whether class members saw Marriott's belated disclosures or later learned of the total price of the stay. *See* Opp. at 19:15-21. Not so. Marriott did not include the mandatory resort fee in initial advertised room rates for *any* hotel that charged a mandatory resort fee. Any belated disclosures made once consumers were already baited to transact with Marriott and invested in the decision to book are ineffective and do not dispel the initial deception. *See Veera*, 6 Cal. App. 5th at 920-922. Further, irrespective of whether consumers knew the full amount of money they

-7-

would be charged, "the room's regular or baseline price matters, and the inclusion or omission of resort fees affects that consumer valuation." *See* Dkt. No. 31 [Order on MTD] at 17-18; *Hinojos*, 718 F.3d at 1101; *Veera*, 6 Cal. App. 5th at 922.[7]

Marriott next argues "Plaintiffs never identified a false statement or a misrepresentation made by Marriott, and therefore, cannot establish that Marriott had knowledge of any 'misrepresentation.'" Opp. at 20:6-8. But Marriott's practice of advertising a low-quoted room rate without accounting for the resort fee is misleading. *See* 16 C.F.R. § 238.0; 16 C.F.R. § 238.1; 16 C.F.R. § 238.2. Both Plaintiffs testified that they read and relied on the initially advertised price. *See* Hall Decl., ¶¶ 8-9; Abdelsayed Decl., ¶¶ 7-8. Common proof, including Marriott's internal documents, will show that Marriott had knowledge of these misrepresentations. *See* Dkt. No. 144-1 [Plaintiffs' MCC at 7-9]; *see also* Dkt. No. 153 [Plaintiffs' Opp. to Def's MSJ at 13-14].

Marriott contends "the uniformity issues that preclude certification of the California claims preclude certification of Plaintiffs' fraud claims." Opp. at 20:12-13. This argument was refuted in Section I(B)(2), *supra*.

Marriott also argues Plaintiffs' "unjust enrichment causes of action are generally unfit for class treatment" because "class members may have received a benefit from the amenities included with the resort fee" and "it is an individualized inquiry to determine if retention of the fee was unjust." Opp. at 20-21. However, this "benefit of the bargain" rationale was explicitly rejected in *Kwikset Corp. v. Superior Court*. 51 Cal.4th 310, 332-335 (2011). "*Kwikset* held that the 'benefit of the bargain' defense is permissible only if the misrepresentation that the consumer alleges was not 'material.'" *Hinojos*, 718 F.3d at 1107. Plaintiffs have demonstrated that the misrepresentations were material. *See* Section I(B)(1), *supra*. Moreover,

---

[7] Additionally, Plaintiffs only need to demonstrate that Marriott's misrepresentations were likely to deceive under an objective "reasonable consumer" standard, and need not show individualized proof of deception, reliance and injury. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012).

Plaintiffs allege the resort fee did not provide benefits to anyone, as consumers were entitled to the amenities as part of their hotel room purchase. *See Veera*, Cal.App.5th at 918-922 (the economic harm in bait-and-switch advertising cases "is the difference between the advertised price plaintiffs should have been charged, and the full price plaintiffs actually paid."). As such, whether retention of the resort fee was unjust is a common question.

### 4.   *Questions as to Injury Do Not Preclude Class Certification*

Defendant's argument that some class members may have been reimbursed for stays (Opp. at 21-22) does not defeat class certification because the court can simply modify the proposed class definitions to exclude consumers who may have been reimbursed for the hotel rooms. *See, e.g., In re Marriott International, Inc.*, 2022 WL 1396522 at *5 (redefining class definition to "only include persons who bore the economic burden for hotel room(s)" before certifying class against Marriott), citing 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1760 (4th ed. 2021) ("[A court] has discretion to limit or redefine class[es] in an appropriate manner to bring the action within Rule 23."); *Capaci v. Sports Research, Inc.*, No. 19-3440, 2022 WL 1133818, at *18 (C.D. Cal. Apr. 14, 2022) ("the court is not persuaded that this concern defeats class certification because the court can simply modify the proposed class to exclude any consumer who may have received a refund or returned the product.") (citing cases).

Defendant's concerns about consumers who "used the related amenities" or later learned of the resort fee are unavailing for the reasons discussed in Sections I(B)(1) and I(B)(3). *See Veera*, 6 Cal.App.5th at 918-922. Marriott's argument that Plaintiffs themselves have not demonstrated injury-in-fact because, according to Defendant, "they were unaware of any misrepresentation and [] they booked for a multitude of reasons…" (Opp. at 22:3-15) is refuted above in Sections I(B)(1)-(3).

### 5.   *Damages Are Susceptible of Measurement Across the Classes*

Marriott argues individualized inquiries would be required as to who actually

paid the fee and how much they paid. *See* Opp. at 22-23. However, Marriott has records of all consumers who paid for the resort fee and how much they paid. *See* Dkt. No. 143-13 [Podlipna Expert Rpt.]. Further, the Court may modify the class definition to include only persons who bore the economic burden for the hotel rooms to alleviate the concern regarding consumers who may have received a reimbursement (*see In re Marriott International, Inc.*, 2022 WL 1396522 at *5), and whether consumers were reimbursed can readily be resolved through a claims administration process. *See Victorino v. FCA US LLC*, No. 16-1617, 2020 WL 2306609, at *4 (S.D. Cal. 2020) ("Other district courts are in agreement that the determination of class membership … can be done during the claims administration process."). Moreover, "'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages.'" *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 333 (2004).

Marriott also argues that Plaintiffs' damages model cannot determine whether consumers booked through methods other than the website or app. *See* Opp. at 23:5-6. However, Marriott provided documents during discovery listing whether consumers booked hotel stays through the website or app and Plaintiffs' damages model accounts for that. *See* Dkt No. 143-13 [Podlipna Expert Rpt.].

Marriott argues Plaintiffs cannot determine whether consumers were not deceived, used amenities, or missed Marriott's belated resort fee disclosures. *See* Opp. at 23:7-9. However, Plaintiffs need not determine whether individual consumers were deceived. Because Marriott's misrepresentations were uniform, the relevant inquiry is whether Marriott's misleading pricing scheme was likely to deceive under an objective "reasonable consumer" standard. *See Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012). Further, as discussed above in Section I(B)(3), whether consumers used amenities is not the relevant inquiry (*see Hinojos*, 718 F.3d at 1107) and whether some consumers missed Marriott's belated

-10-

and insufficient resort fee disclosures simply adds to the initial deception (*see* Section I(B)(2), *supra*). *See Veera*, 6 Cal.App.5th at 920-922.

Marriott argues that a full refund of the resort fee is inappropriate because consumers received a benefit from the resort fee. Opp. at 23-24. However, Plaintiffs' theory of liability is that the resort fee did not provide benefits to anyone, as consumers were entitled to the amenities as part of their hotel room purchase. In similar cases, courts have accepted a full refund of the surcharge as an appropriate measure of damages. *See, e.g., Holt*, 2018 WL 5004996 at *11 (disgorgement of the entire amount of surcharge appropriate); *Veera*, Cal.App.5th at 918 (the economic harm in bait-and-switch cases "is the difference between the advertised price plaintiffs should have been charged, and the full price plaintiffs actually paid.").

**III.   A Class Action is Superior**

### 1.   *Marriott's Terms of Service Do Not Defeat Class Certification*

Marriott waived its right to enforce any class action waiver, as Marriott voluntarily litigated this action for more than 34 months before asserting that Plaintiffs are subject to a class waiver. *See* Section I(A), *supra*. Nevertheless, the classes are defined as "all persons who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app…" Dkt. No. 144. All class members would therefore have the same or substantially similar contractual agreement with Marriott and this affirmative defense will not raise individualized issues that defeat predominance. *In re Marriott International, Inc.*, 2022 WL 1396522, at *19, fn. 26 ("[A]ll class members will have the same (or substantially similar) contractual relationship with Marriott. Rule 23 typicality, adequacy, and predominance issues are thus not present.").

Other California district courts have considered and rejected this same argument, holding "[t]he fact that some members of a putative class may have … released claims against a defendant does not bar class certification." *See, e.g., Herrera, v. LCS Financial Services Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011);

-11-

*Fremont General Corp. Litigation*, No. 2:07-cv-02693, 2010 WL 3168088, at *9 (C.D. Cal. 2010) (rejecting argument that class should not be certified on the ground that some class members may have executed releases); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 313 (N.D. Cal. 2016) (same).

### 2.   Determining Class Membership is Feasible

Defendant also asserts class members are not identifiable or ascertainable. However, the Ninth Circuit has declined to "impose a freestanding administrative feasibility prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-2335, 2018 WL 6300479, at n.18 (S.D. Cal. 2018). Notwithstanding, Marriott has the contact information of all persons who booked a Marriott hotel room. Marriott's concerns regarding persons who were reimbursed, were not deceived, or missed Marriott's belated disclosures were addressed in Sections I(B)(2), (4), (5) *supra*.

## IV.   Commonality is Satisfied

Marriott again argues that some class members may have overlooked Marriott's belated and insufficient resort fee disclosures, reviewed post-booking emails, later learned of the resort fee after being baited to transact with Marriott, or did not consider Marriott's misrepresentations material. *See* Opp. at 25-26. Each of these arguments were refuted above in Sections I(B)(2), (4), (5).

Marriott argues "commonality is lacking where the plaintiff cannot show a common pattern affecting the class as a whole" and Plaintiffs did not articulate "a common misleading experience." Opp. at 26. Not so. As discussed above in Section I(B)(2), Marriott's misrepresentations were uniform. *See Holt*, 2018 WL 5004996, at *5 ("whether [Defendant's] practice of listing menu prices without inclusion of the cost of the surcharge was unfair, deceptive, and/or misleading under the CLRA and/or UCL [is] a question [] sufficient to satisfy commonality.").

## V.   Plaintiffs Satisfy Typicality and Adequacy

Marriott argues "[b]ecause Plaintiffs had such individualized experiences,

-12-

they cannot be seen to be 'typical' of the class." Opp. at 27. But Defendant does not explain how any of the Plaintiffs' experiences were "individualized." As discussed in Section I(B)(2), *supra*, Marriott's misrepresentations and omissions were uniform, and Plaintiffs had the same booking experience as all other class members. Marriott's reference to post-booking emails is inconsequential to class certification. *See* Section I(B)(2), *supra*. Finally, Marriott's argument that Plaintiffs did not rely on the deceptive initial advertised price when booking hotel rooms and "could not identify any deceptive information on Marriott's website" is false and contrary to Plaintiffs' deposition testimony. *See* Hall Decl., ¶¶ 8-9; Abdelsayed Decl., ¶¶ 7-8; *see also* Dkt. No. 153 at pp. 3-11 (citing deposition testimony showing Plaintiffs reasonably relied on Marriott's misrepresentations, omissions, and deception).

Marriott argues that Plaintiffs are inadequate because "they cannot recall the booking process, overlooked or did not care about the resort fee, cannot identify a false or misleading statement, did not review their summary of charges before booking, and ignored or discarded multiple emails from Marriott confirming a resort fee." Opp. at 28:1-8. These arguments were refuted above. *See* Sections I(B)(1)-(3).

Marriott also argues that Plaintiffs' counsel are inadequate because two of Plaintiffs' attorneys stayed at Marriott properties and may be considered class members. *See* Opp. at 28:9-26. However, the cases cited by Marriott disapproved of persons with a familial relationship to class representatives serving as class counsel, and of attorneys serving as both class counsel and class representative. *See Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 (5th Cir. 1978); *In re California Micro Devices Securities Litigation,* 168 F.R.D. 257, 260 (N.D. Cal. 1996). Here, Plaintiffs' counsel are not the proposed class representatives and do not have any relationship with the proposed class representatives other than an attorney/client relationship. Counsel will therefore be monitored by independent and informed clients, alleviating the conflict concerns discussed in *In re California Micro Devices Sec. Lit.* 168 F.R.D. at 262; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020

(9th Cir. 1998) (the central inquiry is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"). Further, Marriott does not contend, and there is no evidence showing, that Plaintiffs' counsel will not represent the class in good faith or will seek to maximize their profits at their clients' expense. The Court therefore should find class counsel adequate.

## VI.   Rule 23(b)(2) Certification is Appropriate

Marriott argues the primary relief sought is monetary relief. *See* Opp. at 29:1-16. However, Plaintiffs' claims for restitution are secondary in that any compensation flows directly out of Defendant's misrepresentations or omissions. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). Plaintiffs' primary claims under the CLRA were for injunctive relief, and the UCL and FAL are primarily equitable remedy statutes. *In re Tobacco II Cases*, 46 Cal. 4th at 320. Plaintiffs' basis for seeking corrective advertising modifications also flows directly from why Defendant is liable to the Class: Marriott's false and deceptive advertising.

Marriott argues Plaintiffs "cannot plausibly allege that they will be deceived by the Marriott booking process again, and no 'real and immediate threat' exists that they will be wronged." Opp. at 36:9-12. This argument was already rejected by the Court. *See* Dkt. No. 31 [Order denying MTD at 18-19 ("Under *Davidson*, Plaintiff has alleged sufficient facts to establish standing to seek injunctive relief.")]. Both Plaintiffs testified that they would and intend to book Marriott hotels again in the future if the website accurately listed the mandatory resort fees and explained what were included in the resort fees. *See* Hall Decl., ¶ 11; Abdelsayed Decl., ¶ 10. As such, the Court should find that Plaintiffs' Rule 23(b)(2) class may be certified.

## VII.   Rule 23(c)(4) Certification is Appropriate

Marriott argues, "[f]or the same reasons that common issues do not predominate under Rule 23(b)(3), Plaintiffs cannot obtain an issues class under Rule 23(c)(4)." Opp. at 29:24-25. However, certification under Rule 23(c)(4) is appropriate where claims do not satisfy predominance. *See, e.g., Kamakahi v. Am.*

-14-

*Soc'y for Reprod. Med.*, 305 F.R.D. 164 (N.D. Cal. 2015) (certifying liability issue class even though claim as a whole did not satisfy predominance); Manual for Complex Litigation sec. 21.24 (4th ed. 2004) ("[T]his provision may enable a court to achieve the economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action."). Here, certification under Rule 23(c)(4) is appropriate, as the determination of whether Marriott's bait-and-switch advertising is unlawful will answer a threshold liability question that can be determined on a class-wide basis.

## VIII.    Notice to the Class

Marriott argues direct notice would be overly broad. *See* Opp. at 30:2-16. However, notice would only be sent to individuals who booked Marriott hotel rooms that charged a resort fee. Courts have held that "[n]otice to a broader group than the class definition is acceptable as long as there is some link or connection between the method of class notice and the class definition." *Victorino*, 2020 WL 5064295, at *2-3; *Bowerman v. Field Asset Servs., Inc.*, No. 13-00057, 2015 WL 5569061, at *4 (N.D. Cal. 2015) ("[T]he best notice practicable under the circumstances was notice to a group that was broader than the class definition but included the complete universe of class members. This was an acceptable and unremarkable method of delivering notice to the class."). The case cited by Marriott is not analogous to the case at hand. *See Yeoman v. Ikea U.S. W., Inc.*, No. 11-701, 2013 WL 5944245 at *4-5 (S.D. Cal. 2013) (rejecting email notice to all customers for whom defendant had email information, including approximately 1 million addresses obtained before class period). Notwithstanding, if the court is inclined to certify the class, then the Court should order that the Parties meet and confer about an appropriate notice plan. *See Hilsley*, 2018 WL 6300479, at *21.

## IX.    Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Class Certification, to Appoint Class Representatives, and Appoint Class Counsel.

DATED: August 5, 2022                    Respectfully submitted,


                                         /s/ Ronald A. Marron
                                         **LAW OFFICES OF RONALD A.**
                                         **MARRON**
                                         RONALD A. MARRON (SBN 175650)
                                         *ron@consumersadvocates.com*
                                         MICHAEL T. HOUCHIN (SBN 305541)
                                         *mike@consumersadvocates.com*
                                         LILACH HALPERIN (SBN 323202)
                                         *lilach@consumersadvocates.com*
                                         651 Arroyo Drive
                                         San Diego, California 92103
                                         Telephone: (619) 696-9006
                                         Facsimile: (619) 564-6665


                                         **LAW OFFICE OF ROBERT L. TEEL**
                                         ROBERT L. TEEL
                                         *lawoffice@rlteel.com*
                                         1425 Broadway, Mail Code: 20-6690
                                         Seattle, Washington  98122
                                         Telephone: (866) 833-5529
                                         Facsimile: (855) 609-6911


                                         **BURSOR & FISHER, P.A.**
                                         L. Timothy Fisher (SBN 191626)
                                         Sean L. Litteral (SBN 331985)
                                         1990 N. California Blvd., Suite 940
                                         Walnut Creek, CA 94596
                                         Telephone: (925) 300-4455
                                         Facsimile: (925) 407-2700
                                         E-mail: *ltfisher@bursor.com*
                                                 *slitteral@bursor.com*
                                         ***Interim Class Counsel***

-16-