UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD HALL and GEORGE ABDELSAYED individually and on behalf of all others similarly situated, <br><br>Plaintiffs, <br><br>v. <br><br>MARRIOTT INTERNATIONAL, INC., a Delaware corporation, <br><br>Defendant. | Case No.:  19cv1715-JO-AHG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO CERTIFY THE CLASS** |

In this consumer class action, Plaintiffs Todd Hall and George Abdelsayed ("Lead Plaintiffs" or "Plaintiffs") brought a deceptive advertising suit against Defendant Marriott International, Inc. ("Marriott") alleging that the hotel chain inadequately disclosed its resort fees.  The parties filed cross motions for summary judgment.  Dkt. 140 ("Marriott's MSJ"); Dkt. 143 ("Pltfs. Partial MSJ").  Plaintiffs also filed a motion to certify the class.  Dkt. 144 ("Class Cert.").  For the reasons stated below, the Court (1) grants in part and denies in part Marriott's motion for summary judgment; (2) grants in part and denies in part Plaintiffs' motion for summary judgment; and (3) grants in part and denies in part Plaintiffs' motion to certify the class.

///

///

# I. BACKGROUND

The two Lead Plaintiffs in this case stayed at Marriott hotels and now complain of the resort fees they were required to pay.[1]  *See generally* Dkt. 82 ("TAC"); *see also* Dkt. 143-35, Plaintiffs' Statement of Undisputed Material Facts ("SUMF") at 3.  Plaintiff Hall stayed at a Marriott hotel in San Diego, California from May 28, 2018 to May 29, 2018, and at a Marriott hotel in Maui from October 10, 2018 to October 12, 2018.  SUMF at 55–57.  Plaintiff Abdelsayed stayed at a Marriott hotel in Coronado Island, California in July 2020.  *Id.* at 61.  Both Plaintiffs purchased their Marriott hotel stays through either the Marriott website or mobile application.  *Id.* at 55–62.  Marriott charged both Plaintiffs resort fees of $25 per night for their respective stays.  Plaintiffs allege that Marriott deceived them by failing to inadequately disclose those fees prior to payment.  *Id.* at 55, 61.  Plaintiff Abdelsayed testified that he relied on Marriott's "buried resort fees" and would have wanted to be informed of those resort fees prior to purchase.  *See* Class Cert., Abdelsayed Decl. ¶¶ 7–8, Ex. B at 218:24–219:21, 261:5–9.  Plaintiff Hall testified that he did not see Marriott's resort fee disclosures and that, if he had, he "most likely" would not have paid or the hotel room.  *See* Marriott's MSJ, Ex. H ("Hall Dep. Tr.") at 95:15–96:12.

## A. Marriott's Online Booking Process

To reserve a hotel room, Plaintiffs completed an online booking process.  During the booking process, consumers like Plaintiffs click through consecutive webpages on the Marriott website to view room details and charges prior to booking their stays.  On the first page of the booking process, consumers see a list of Marriott hotels and corresponding room rates.  *See* SUMF 6; *see also* Marriott's MSJ, Ex. F at 2.  This first page reflects that, for each hotel, prices started "from" a particular rate:

---

[1] Resort fees at Marriott hotels are charged for the purpose of providing hotel guests with various bundled amenities such as access to the fitness center and enhanced wi-fi.  Marriott's MSJ at 3–4; Marriott's. MSJ Ex. E, Resort Fee Policy at 3–4; Dkt. 153 ("Pltfs. Opp. to Marriott's MSJ"), Ex. 8 at p. 276.



*Id.*  As seen above, for example, the rates at the "Marriott Marquis San Diego Marina" are priced "From 420 USD/night."  *See* SUMF at 6–7; Marriott's MSJ, Ex. F at 2.

Consumers must then click on the "View Rates" button to get to the second page in the booking flow.  For instance, if a consumer clicked the "View Rates" button for the Marriott Marquis San Diego Marina, the consumer would be brought to a page like the below:

3



*See* SUMF at 8; Marriott's MSJ, Ex. F at 3.  As seen above, if a resort fee applied, a notice would appear at the top of the screen in blue, bolded text that is outlined by a blue box, stating "Please note," "USD 35 daily destination amenity fee will be added to the room rate."  *See id.*  The second page in the booking process also reflects the available rooms (*e.g.*, queen or king room) and corresponding rates, without the resort fee included.  *See id.*

Once a consumer selects a particular room, they arrive at the third page in the booking flow and would see a screen like the one below:

4



As seen above, the third page provides the reservation details, including the "USD Subtotal" comprised of a charge for "USD/night" and a separate charge for "USD taxes and fees," which includes the resort fee. *See* SUMF at 14; Marriott's MSJ, Ex. F at 4.

A more detailed breakdown of the charges showing the amount of the resort fee is available if the consumer clicks the "Summary of Charges" dropdown box:

| | |
|---|---|
| **RATE DETAILS** | |
| 1 room(s) for 1 night(s) | Prices in USD |
| Monday, November 4, 2019 | 420.00 |
| Total cash rate | 420.00 |
| Destination Amenity Fee | 35.00 |
| Estimated government taxes and fees | 57.65 |
| **Total for stay in hotel's currency** | **512.65** USD |

*See* SUMF at 15; Marriott's MSJ, Ex. F at 5.  As seen above, the detailed summary of charges that appears in the dropdown box shows three charges that comprise the total daily rate: (1) the total cash rate, (2) the resort fee, and (3) estimated government taxes and fees. *See id.*

**B. Plaintiffs' Claims and Proposed Class**

In addition to alleging that Marriott inadequately discloses resort fees on its own website, Plaintiffs also alleged that Marriott inadequately discloses resort fees on the websites of third-party online travel agencies ("OTAs"), such as Expedia and Orbitz. *See id.* ¶¶ 7–8, 40–53.[2]  Plaintiffs brought the following seven claims against Marriott on the above grounds: (1) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (4) unjust

---

[2] Plaintiffs alleged in the TAC that Marriott deceptively advertised certain hotel amenities like wifi as "free or complimentary" when, in fact, Marriott charged for those amenities with resort fees. *See, e.g.*, TAC ¶ 9.  The Court notes that Plaintiffs appear to have abandoned this theory on summary judgment and class certification. *See generally* Class Cert.; Pltfs. Partial MSJ.  Plaintiffs' only mention of this theory is in a footnote supporting the argument that Marriott's resort fee disclosures are inadequate. *See* Pltfs. Partial MSJ at 24 & n.6.

enrichment; (5) negligent misrepresentation; (6) concealment; and (7) intentional misrepresentation. *See generally* Dkt. 82 ("TAC"). Plaintiffs seek damages under their CLRA, negligent misrepresentation, intentional misrepresentation, and concealment claims. *See id.* ¶¶ 116, 150, 161, 167. Plaintiffs also seek the equitable remedies of restitution and injunctive relief under their CLRA, FAL, UCL, and unjust enrichment claims. *See id.* ¶¶ 116, 123, 136–37, 145.

Both parties filed cross motions for summary judgment of the above claims. Plaintiffs also request that this Court certify a nationwide class and a California class. Plaintiffs propose to certify the following nationwide class for their state common law claims for unjust enrichment, negligent misrepresentation, concealment, and intentional misrepresentation:

> All persons in the United States who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app and who paid a resort fee, destination fee, amenity fee, or destination amenity fee in their respective state of citizenship on or after September 9, 2015 and until the Class is certified excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

Class Cert. at 2. Plaintiffs also propose to certify the following California class under their CLRA, UCL, and FAL claims:

> All persons in California who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app and who paid a resort fee, destination fee, amenity fee, or destination amenity fee on or after September 9, 2015 and until the Class is certified excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff. *See id.*

**C. Marriott's Class Action Waiver Defense**

Marriott asserts an affirmative class action waiver defense against class members that enrolled in its rewards program on or after April 24, 2015. In its answer, Marriott

asserted the defense that "[s]ome or all of the putative class members are subject to mandatory arbitration and/or class action waiver provision." Dkt. 92 at 26. The company bases this affirmative defense on its argument that consumers who enrolled in Marriott's rewards program agreed to waive their right to join class actions against Marriott. According to Marriott, beginning on April 24, 2015, individuals who signed up for Marriott's rewards membership were notified that they were waiving their rights to join a class action as part of the terms and conditions of rewards membership. By signing up for rewards membership, these individuals therefore agreed to waive that right. *See* Dkt. 172 ("Marriott's Supp. Br.") at 2, Ex. B; Dkt. 154 ("Class Cert. Opp."), Decl. of Theresa Coetzee, Exs. A–G. While there is no evidence in the record that the two Lead Plaintiffs––who enrolled in Marriott's rewards program before 2015—agreed to Marriott's class action waiver, Marriott asserts this defense against all class members who enrolled in Marriott's rewards program on or after April 24, 2015.

## II. LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248–50.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proof at trial. *Id.* at 322–23. The court

must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### III. DISMISSAL OF EQUITABLE CLAIMS

Plaintiffs bring claims seeking both damages and equitable remedies, but only their claims seeking damages may proceed at this stage. As discussed below, Plaintiffs are not entitled to restitution and injunctive relief under their CLRA, FAL, UCL, or unjust enrichment claims because (1) Plaintiffs lack standing to seek injunctive relief, and (2) the Court lacks equitable jurisdiction over Plaintiffs' equitable claims.

**A. Plaintiffs Do Not Have Standing to Seek Injunctive Relief**

First, the Court addresses whether Plaintiffs have standing to seek injunctive relief. The standing doctrine addresses "whether the litigant is entitled to have the court decide the merits of the dispute." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing is required for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). To have standing, a plaintiff must have an "injury in fact"—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

In the deceptive marketing context, "a previously deceived consumer may have standing to seek an injunction" where the threat of future harm is imminent rather than conjectural or hypothetical. *See Davidson*, 889 F.3d at 969 (citation omitted). In *Davidson*, the Court found that a plaintiff alleging that wipes were deceptively labeled "flushable" had standing to seek injunctive relief because she would have "no way of determining

whether the representation [was] in fact true" when contemplating purchases in the future. *See id.* at 969–72. Ultimately, the *Davidson* plaintiff's "inability to rely on the validity" of the "flushable" label going forward was a sufficiently imminent threat of future harm to constitute an injury in fact for standing purposes. *See id.*

Courts applying *Davidson*, however, have found that the threat of future harm is not sufficiently imminent where a plaintiff could "easily discover whether a previous misrepresentation had been cured without first buying the product at issue." *See, e.g.*, *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906–07 (N.D. Cal. 2021) (citation omitted) ("Because Plaintiff [now] knows that he can determine the Products' dosages by consulting the back labels, Plaintiff cannot plausibly allege that he faces a real or immediate threat of similar, future harm"); *Matic v. United States Nutrition, Inc.*, 2019 WL 3084335, at *8 (C.D. Cal. Mar. 27, 2019) (finding plaintiff lacked standing because "he knows precisely where to find" clarifying information on the product label); *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (finding that even if a plaintiff's understanding of a label was reasonable at one point, "he is now aware that such a belief is unfounded" and "there is no future risk that plaintiff will be misled" in the same way).

The Court finds that Plaintiffs do not have standing to seek injunctive relief because they do not face a real threat of being deceived about Marriott's resort fees in the future. Here, as detailed more fully below, Plaintiffs' only surviving theory of liability is that Marriott did not disclose resort fees clearly enough. *See infra* Section IV.A. Plaintiffs do not contend that Marriott failed to disclose the existence of resort fees, only that the manner and placement of those disclosures were misleading and inadequate. *See* Pltfs. Partial MSJ at 5–8. Thus, even if Plaintiffs' belief that no resort fee existed was reasonable at the time of their purchases, they now know that resort fees were included and know precisely where to look to find Marriott's resort fee disclosures. *See id.* Specifically, they now know that Marriott's resort fees are disclosed in a blue box on the second page of the booking flow and again in the "Summary of Charges" dropdown box on the third page of the booking flow. Unlike in *Davidson*, Plaintiffs could easily determine whether Marriott charges a

resort fee when reserving hotel rooms in the future—they therefore are not likely to be deceived or wronged again in the same way.  The Court therefore finds that Plaintiffs lack standing to seek injunctive relief.

**B. The Court Does Not Have Equitable Jurisdiction**

Second, the Court examines whether Plaintiffs have an adequate damages remedy; if so, it cannot consider Plaintiffs' equitable claims for restitution.  Although "[e]quitable jurisdiction is distinct from subject matter jurisdiction . . . both are required for a federal court to hear the merits of an equitable claim."  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022); *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975).  Unlike a state court, a federal court has equitable jurisdiction to award equitable relief only where a plaintiff has no adequate legal remedy against a defendant based on the same harm.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020).  Thus, where "monetary damages provide[] an adequate remedy," a federal court may not consider the merits of equitable claims for restitution, disgorgement, or injunctive relief.  *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76; *see also, e.g.*, *Feitelberg v. Credit Suisse First Bos.*, LLC, 134 Cal. App. 4th 997, 1009 (2005) (noting that restitution and injunctive relief are equitable in nature).  Moreover, certain claims—such as the UCL, the FAL, and unjust enrichment—only provide for equitable relief and thus, are impermissible where adequate money damages are available.  *See Guzman*, 49 F.4th at 1313 ("[T]he UCL provides only for equitable remedies."); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) (same as to the FAL); *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (same as to unjust enrichment).  Plaintiffs bear the burden to establish that they lack an adequate damages remedy before they can obtain equitable relief.  *See Sonner*, 971 F.3d at 844.

Here, the Court finds that damages are adequate to remedy the harms that Plaintiffs allegedly suffered due to the inadequate disclosure of resort fees.  Plaintiffs allege one theory of harm (*i.e.*, hidden resort fees) and request one remedy: "a full refund of resort fees."  *See* Class Cert. at 25.  With their negligent misrepresentation, intentional

misrepresentation, concealment, and CLRA claims, Plaintiffs seek money damages to recover the amounts they paid in resort fees.  With their equitable claims, Plaintiffs request restitution for the same amounts—a refund of resort fees.  Plaintiffs cannot recover this amount twice, first as damages and then as restitution.  Plaintiffs, therefore, "fail[] to explain how the same amount of money for the exact same harm is inadequate or incomplete."  *Sonner*, 971 F.3d at 844 (affirming dismissal of restitution claims where plaintiff sought the same amount in damages and restitution).  Plaintiffs have not met their burden to plead that these money damages are inadequate to remedy their harm, let alone point to evidence of their inadequacy.  *See generally* TAC; *see also* Pltfs. Partial MSJ; Class Cert.  Accordingly, because Plaintiffs have an adequate damages remedy, this Court lacks jurisdiction over their equitable claims for restitution.  *See Guzman*, 49 F.4th at 1312–15 (finding at summary judgment stage that plaintiff with a CLRA damages claim based on misleading advertising could not pursue restitution under the UCL).

For the above reasons, the following equitable claims are dismissed without prejudice for lack of standing or equitable jurisdiction: (1) the first cause of action under the CLRA, to the extent it requests injunctive relief; (2) the second cause of action under the FAL; (3) the third cause of action under the UCL; and (4) the fourth cause of action for unjust enrichment.  Below, the Court addresses the parties' pending motions solely with respect to Plaintiffs' remaining claims for damages under the CLRA, negligent misrepresentation, intentional misrepresentation, and concealment.

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Plaintiffs' CLRA Claim

On summary judgment, Plaintiffs argue under two distinct theories that Marriott's booking process is deceptive under the CLRA.  *See* Pltfs. Partial MSJ.  Under their first "bait and switch" theory, consumers rely on the room price advertised on the first page of the online booking process and click further into the booking process only to find that—after taxes and fees are added—the total price of the stay is higher.  *See, e.g.*, Pltfs. Partial MSJ at 1, 14–15.  According to Plaintiffs, Marriott dangles the lower rate on the first page,

which does not include resort fees and taxes, to deceptively lure consumers further into the online booking process. *See id.*  By the time consumers discover that the final price is much higher, they are so swept up in the momentum of the purchase that they pay more for their stay than they otherwise would have. *See id.*

Under Plaintiffs' second theory, consumers do not understand that they are paying resort fees because Marriott does not adequately disclose them. *See, e.g.*, *id.* at 5–8.  While there is a blue box with resort fee information on the second page of the booking process, Plaintiffs argue that it is deceptively inconspicuous because it is in smaller print, a different color font, and at the top of the page instead of next to the price information at the bottom of the page. *See id.* at 5.  While Marriott discloses the room rate plus an additional amount for "USD taxes and fees" on the third page of the booking process, Plaintiffs argue the "taxes and fees" disclosure is confusing because it does not explicitly specify "resort fees" and causes consumers to believe that the fees are entirely government related. *See id.* at 6–7, 14–15.  Consumers can only discover that "taxes and fees" includes the hotel's resort fee if they click on a dropdown box for "Summary of Charges." *See id.* at 6–8.  Plaintiffs theorize that, because of these inadequate disclosures, consumers are not aware at the end of the booking process that any portion of the total price is attributable to a resort fee. *See generally id.*

### 1. Plaintiffs' "Bait and Switch" Theory

Because Plaintiffs appear to proceed under two distinct theories of deception under the CLRA, the Court first addresses the viability of Plaintiff's "bait and switch" theory.

To establish a violation of the CLRA, Plaintiffs must identify statements that are likely to deceive a reasonable consumer.  This "reasonable consumer" test requires Plaintiffs to demonstrate that "members of the public are *likely* to be deceived" by Marriott's representations about the total price. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotation omitted and emphasis added); *see also Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020).  "'Likely to deceive' indicates that the ad is such that it is probable that a significant portion of the general consuming public or

of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  "This requires more than a mere possibility that [a representation] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie*, 105 Cal. App. 4th 496).  Whether a representation is deceptive is determined by viewing it in the context of the commercial interaction as a whole.  *See Freeman*, 68 F.3d at 290; *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *Salazar v. Walmart, Inc.*, 83 Cal. App. 5th 561, 569 (2022) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.") (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).[3]

Whether a business practice is deceptive will usually be a question of fact that cannot be resolved as a matter of law.  *See, e.g.*, *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007).  Although less common, where the material facts are undisputed, whether a reasonable consumer is likely to be deceived can be decided as a matter of law.  *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1241–42 (2007).  A representation can be non-deceptive as a matter of law where qualifying language makes the meaning of the allegedly deceptive representation clear. *See, e.g.*, *Freeman*, 68 F.3d 285.  In *Freeman*, the Ninth Circuit found that a sweepstakes promotion was not deceptive as a matter of law where qualifying language "expressly and repeatedly" appeared regarding the requirements for winning the sweepstakes.  *Id.* at 289.

---

[3] *See also, e.g.*, *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 584 (2022) (["D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used.") (citation omitted); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1241–42 (2007) (examining likelihood that reasonable consumer would be deceived "[i]n context"); *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 184 Cal. App. 4th 313, 35 (2010) (same); *Delman v. J. Crew Grp., Inc.*, 2017 WL 3048657, at *7 (C.D. Cal. May 15, 2017) ("The question is how a reasonable consumer would interpret the phrase . . . in the context of the specific commercial interaction that Plaintiff has challenged.").

In so holding, the Court stated that reasonable consumers are presumed to read "qualifying language [that] appears immediately next to the representations it qualifies." *Id.* Both district and state courts in California have reached similar conclusions that such explicit and conspicuous qualifying disclosures can render allegedly deceptive statements non-deceptive as a matter of law. *See, e.g.*, *Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352, 1371–72 (2013) (same where a product called "Challenge Butter" and advertised as "Spreadable Butter" stated in smaller text that the product contained canola oil); *Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) ("a reasonable consumer, like the plaintiff in *Freeman*, cannot look at only one statement to the exclusion of everything else and claim he has been misled.").[4]

Even when there is no question that the initial deception was cured by a later disclosure, a company can still be liable for deceptive practices that cause consumers to be lured in and "swept up" in the buying process. In *Veera v. Banana Republic, LLC*, the court found that an initial deception can cause consumers to invest significant amounts of time and become so swept up in the buying process that later qualifying disclosures cannot cure the original deception. *See* 6 Cal. App. 5th 907, 920 (2016); *see also* Pltfs. Opp. To Marriott's MSJ at 3–4. There, a store's window advertised "40 percent off purchases," which "led [consumers] to enter the store, to shop, to select items, to decide to purchase them, and to stand in line to make the purchases." *Id.* at 911, 920. The court found that

---

[4] *See also Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 966 (2003) (reasonable consumer not likely to be deceived where bold print on valet "ticket provide[d] reasonable and advance notice of the [valet] charge."); *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1118 (2020) (denying class certification where advertisements stated $1 and total charges were higher, but where additional charges were disclosed prior to purchase); *Shvarts v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1160 (2000) (affirming dismissal because car renters were not likely to be misled as a matter of law regarding a refueling charge for rental cars where the amount per gallon was clearly printed on the first page of the rental agreement); *Razo v. Ashley Furniture Indus., Inc.*, 782 F. App'x 632, 633 (9th Cir. 2019) ("a reasonable consumer would have read the unambiguous and truthful disclosures placed on the front and back of Ashley's DuraBlend hangtag"); *Dinan v. Sandisk LLC*, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019) (reasonable consumer not likely to be deceived regarding the number of bytes in a storage device where the packaging disclosed it).

even though consumers learned that items were not discounted as promised prior to purchase, by the time qualifying disclosures were made, the consumers were "invested in the decision to buy and swept up in the momentum of events."  *See id.* at 920–21.  In reaching this holding, the *Veera* court emphasized that the plaintiffs had spent 40 minutes or more shopping, waited in lines of 15 or more people, and felt pressured to purchase once they reached the front of the line due to embarrassment.  *See id.* at 912–13; 920–21.[5]  Because of the time investment and pressure of embarrassment, the pre-purchase disclosure about total price was insufficient to cure the initial deception.

Here, Marriott's disclosures regarding the total price of the hotel stays are conspicuously disclosed by the end of the internet booking process.  At the outset of the process, consumers are told that rooms are available starting "from" a certain amount.  The parties do not dispute, however, that additional fees are disclosed multiple times in the booking process.  *See* SUMF 2–16.  The undisputed facts indicate the following: (1) the existence and amount of daily resort fees and a higher nightly room rate than the original "from" rate are disclosed at page two of the booking process; (2) the final nightly total, including taxes and resort fees, is disclosed in bold at page three of the booking process; (3) the final total is disclosed again in bold at page four of the booking process prior to payment.  *See id.*  During this booking process, price increases from the initial "from" rate are disclosed throughout and the total price is stated twice prior to final purchase in bolded text.  Under these circumstances, a reasonable consumer would not have looked solely at the advertised "from" price on the first page of the booking process and ignored every

---

[5] Nearly every court to consider *Veera* has noted that its holding is limited to situations where disclosures are ineffective because they are made when a consumer is already "invested" and is "swept up" in the "momentum."  *See, e.g.*, *Downey*, 44 Cal. App. 5th at 1122–23 (noting that *Veera* did not hold that all post-advertising disclosures are ineffective); *Weisberg v. Takeda Pharms. U.S.A., Inc.*, 2018 WL 4043171, at *9 (C.D. Cal. Aug. 21, 2018) (describing *Veera* as limited to facts where "a consumer becomes invested in the decision to buy and even after the deception is revealed is swept up in the momentum of events, [and] nonetheless buys at the inflated price, despite his or her better judgment.") (citation omitted).

ensuing price disclosure.  *Bobo*, 2015 WL 13102417 at \*5 (a reasonable consumer "cannot look at only one statement to the exclusion of everything else and claim he has been misled."); *see also Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at \*5 (C.D. Cal. Aug. 16, 2013) (finding advertised hotel rates not deceptive as a matter of law under the reasonable consumer test because the existence of resort fees, taxes, and amounts were disclosed prior to booking).  Because the higher total price was clearly and conspicuously disclosed by the end of the booking transaction, Plaintiffs only have a cognizable theory if they can establish that the initial deception caused consumers to be "swept up" in the booking process under *Veera*. [6]

Unfortunately for Plaintiffs, the *Veera* "bait-and-switch" paradigm is not applicable here.  First, the evidence demonstrates that Plaintiffs did not invest significant time in the purchase process, a factor that was critical to the *Veera* court's decision.  *See Veera*, 6 Cal. App. 5th at 920–21.  The consumers in *Veera* invested 40 minutes or more in the shopping process before learning that the price was higher than originally advertised.  *See id.*  Here, the only evidence of time investment is Plaintiff Hall's testimony that the entire booking process, from start to finish, took about 10 minutes.  *See* Hall Dep. Tr. at 237:16–18.  In addition, unlike the consumers in *Veera*, Plaintiffs here quickly learned that the total price was higher than originally advertised; this information was not obscured or buried during the commercial interaction until the last minute.  *See id.*  Because a higher price appears on the second page of the booking flow, the time Plaintiffs invested before any misapprehension about total price was dispelled is the amount of time that it took to click the "View Rates" button on the first page of the booking flow.  Moreover, Plaintiffs' own testimony confirms that—unlike the plaintiffs in *Veera*—each was aware of, and comfortable with, the total price prior to purchase.  Plaintiff Abdelsayed testified that he

---

[6] The Honorable Judge Sammartino formerly presided over this action and declined to dismiss Plaintiff's "bait and switch" theory after noting that the court was required to draw all reasonable inferences in Plaintiffs' favor with respect to their novel legal theory.  *See* Dkt. 18 at 21–23.

knew the advertised room rate on the first page would not be the total, was aware that the price increased throughout the booking process and agreed to the final price before booking. *See* Marriott's MSJ, Ex. G ("Abdelsayed Dep. Tr.") at 83:20–84:20; 179:14–182:1; 246:14–247:1; 251:1–19. Plaintiff Hall similarly testified that he was aware that the price increased throughout the booking process and was aware of the total before booking. *See, e.g.*, Hall Dep. Tr. at 132:11–24. Plaintiffs have, therefore, failed to support their "bait and switch" theory with evidence suggesting that this case falls within *Veera's* ambit.

For the above reasons, the Court concludes that Plaintiffs' bait and switch theory of deception fails as a matter of law. Any consumer's perception that the price reflected on the first page of Marriott's booking process constituted the total price is quickly and explicitly dispelled at every other page in the booking process. Based on the undisputed facts, the Court finds no likelihood of deception as a matter of law. *See, e.g.*, SUMF at 6–15; Marriott's Exhibit F. Marriott is entitled to summary judgment on this aspect of Plaintiffs' claims.

### 2. Plaintiffs' Claims Based on Inadequate Disclosure of Resort Fees

Next, the Court turns to Plaintiffs' second theory of deception under the CLRA: that consumers pay for a hotel room without understanding that a resort fee is a component of the total price. Because the Court finds that there are disputed issues of fact regarding the deceptiveness of Marriott's booking process and the adequacy of its disclosures, the Court declines to grant summary judgment on this theory.

As discussed above, unless the disclosures accompanying a potentially deceptive statement are so explicit and conspicuous that the court can make a determination as a matter of law, the question of whether a reasonable consumer is likely to be deceived by any particular combination of statements, omissions, and qualifying disclosures remains a question of fact. *See, e.g.*, *Linear*, 152 Cal. App. 4th at 134–35; *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (finding that consumers are not required to "look beyond misleading representations on the front of the [tag] to discover the truth . . . in small

print on the side of the [tag].”); *O'Connor v. Uber Techs., Inc.*, 2016 WL 9087256, at *2 n.1 (N.D. Cal. Mar. 30, 2016) (finding that in contrast to cases like *Freeman*, “in the instant case, the disclaimer in the rider agreement is on page five of an eight-page document, and does not immediately follow any of Uber's alleged representations that tip is included.”); *Chase v. Hobby Lobby Stores, Inc.*, 2018 WL 786743, at *4 (S.D. Cal. Feb. 8, 2018) (“qualifying language was not repeatedly asserted”).

Unlike its disclosure of the total price, Marriott does not repeatedly and conspicuously disclose resort fees throughout the booking process. On the second page of Marriott's booking process, a blue box appears at the top of the page disclosing a resort fee. *See* SUMF at 8; Marriott's MSJ, Ex. F at 3. This blue box disclosure is the first text to appear on the page and is bolded and outlined but is smaller than the surrounding text and does not appear immediately next to the hotel price information. *See* Marriott's MSJ at 14–15; *see also* Pltfs. Partial MSJ at 6. Next, the third page clearly discloses additional “taxes and fees,” but does not disclose a *resort* fee—consumers can only discover that a resort fee is included in this amount by clicking on the “Summary of Charges” drop-down box. *See* SUMF at 8, 14–15; Marriott's MSJ, Ex. F at 3–5. These resort fee disclosures are not conspicuous enough for the Court to find them nondeceptive as a matter of law. A factfinder should resolve these genuine and material factual disputes about whether consumers would notice and understand the disclosures due to their font size, color, and placement within the context of the entire transaction. Indeed, Plaintiffs point to survey evidence, that approximately 50% of consumers do not notice these disclosures and do not know they paid resort fees. *See* Pltfs. Ex. 11.[7] Therefore, the Court finds that there are disputed issues of material fact regarding whether a reasonable consumer would be deceived by Marriott's resort fee disclosures and denies Marriott's request for summary

---

[7] Citations to “Pltfs. Ex.” refer to the exhibits filed in support of Pltfs. Partial MSJ.

judgment on these claims.  The same factual disputes also preclude the Court from granting Plaintiffs' request for summary judgment in their favor on the CLRA claim.

**B. Plaintiffs' Negligent Misrepresentation Claim**

Because Plaintiffs' remaining theory rests on the inadequacy of Marriott's disclosures rather than its publication of a false statement, Plaintiffs cannot bring a negligent misrepresentation claim.  Negligent misrepresentation is the "assertion, as a *fact*, of that which is not true, by one who has no reasonable ground for believing it to be true." Cal. Civ. Code, § 1710, subd. (2) (emphasis added).  Under California law, while fraud liability can be based on "suppression of a fact," negligent misrepresentation is narrower and requires an affirmative "false statement of a past or existing material fact." *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 984 (2003); *see also* Cal. Civ. Code, § 1710, subd. (2).  Accordingly, negligent misrepresentation claim cannot be based on the omission nor suppression of a material fact.  *See id.*; *see also Byrum v. Brand*, 219 Cal. App. 3d 926, 941–42 (1990) ("clearly a representation is an essential element [of negligent misrepresentation]"); *Huber, Hunt & Nichols, Inc. v. Moore*, 67 Cal. App. 3d 278, 304 (Ct. App. 1977) ("[n]o . . . court [has] held that the doctrine of negligent misrepresentation applies to [i]mplied representations.  In all cases a 'positive assertion' was involved").  As discussed above, Plaintiffs do not dispute that Marriott disclosed resort fees during the booking process and do not argue that the information in the resort fee disclosures was false. *See* SUMF 6, 8, 14–15.  Instead, Plaintiffs' only remaining theory is that the resort fee disclosures were so inconspicuous that consumers did not notice them.  *See, e.g.*, Pltfs. Ex. 11.  This theory does not include an affirmative representation constituting a "false statement of past or existing material fact."  *See Shamsian*, 107 Cal. App. 4th at 984.  Accordingly, because they cannot establish an essential element of negligent misrepresentation, Plaintiffs cannot proceed under this claim.

**C. Plaintiffs' OTA Claims**

Next, the Court considers Plaintiffs' claims that Marriott is liable for allegedly deceptive statements on the websites of third-party online travel agencies ("OTAs") such

as Expedia and Orbitz.  *See, e.g.*, TAC ¶¶ 40–53.  Marriott moves for summary judgment on these OTA claims, arguing that no evidence shows Marriott controls how these third parties disclose resort fees on their websites.  *See* Marriott's MSJ at 24–25.  For the reasons described below, the Court grants summary judgment to Marriott with respect to Plaintiffs' OTA claims.

Marriott is entitled to summary judgment on the OTA claims because Plaintiffs point to no evidence in the record that Marriott had any control over how third-party, online travel companies presented resort fee information.  Under the CLRA, liability cannot be predicated on vicarious liability unless there is evidence of "personal participation in the unlawful practices and unbridled control" over those deceptive practices.  *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (citation omitted); *see also Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 811 (9th Cir. 2020); *Yordy v. Plimus*, 2014 WL 1466608, at *3 (N.D. Cal. Apr. 15, 2014) (collecting cases).[8]  Here, to establish the requisite control, Plaintiffs rely solely on evidence that Marriott sent OTAs the hotel prices to post on the OTA websites.  *See* Pltfs. Opp. to Marriott's MSJ at 27–28; Pltfs. Exs. 16–18.  This evidence, however, is irrelevant to the sole remaining theory of liability—whether the manner in which resort fees were disclosed was likely to deceive and therefore unlawful.  *See supra* Section IV.A.  Plaintiffs have not argued or submitted evidence to show that Marriott had any control over where, how conspicuously, or how many times resort fees were disclosed on these third-party websites.  *See* Dkt. 153, Exs. 16–18.  In fact, some of Plaintiffs' evidence suggests that Marriott had no control: the contract between Expedia and Marriott states that Expedia "determine[d] the sorting and display of hotels" on its websites in its "sole discretion."  *See* Dkt. 153, Ex. 16 at

---

[8] While it is not clear whether Plaintiffs are also attempting to allege that Marriott is vicariously liable for the OTAs' advertisements under their state law fraud claims, the Court notes that Marriott similarly cannot be liable for the torts of a third party without some evidence of control or participation. *See, e.g.*, Blum, George L. et. al., 57B Am. Jur. 2d Negligence § 1018 ("Underlying the doctrine [of vicarious liability] is the notion of authority or control over the alleged wrongdoer").

MAR01807.[9]  Because there is no evidence that Marriott had any control over how resort fees were displayed on OTA websites, the Court grants summary judgment to Marriott with respect to Plaintiffs' OTA claims.

**D. Marriott's Class Action Waiver Defense**

The Court now turns to Plaintiffs' request for summary judgment on certain of Marriott's affirmative defenses.[10]  Plaintiffs argue that Marriott's affirmative defense of class action waiver fails because Marriott has no evidence that Lead Plaintiffs agreed not to bring a class action.  They further argue that Marriott has waived this defense against all putative class members by failing to pursue it prior to class certification.  *See* Pltfs. Partial MSJ at 30; *see also* Dkt. 173 ("Pltfs. Supp. Br.") at 6–11.[11]  The Court will address each of these arguments in turn.

The Court agrees with Plaintiffs that Marriott has failed to create a triable issue on whether Lead Plaintiffs agreed to Marriott's class action waiver.  *See Celotex*, 477 U.S. at 322–23 (noting summary judgment is appropriate where the nonmoving party fails to produce any proof concerning an essential element on which it bears the burden of proof at trial); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting defendant bears the burden of proof at summary judgment with respect to an affirmative defense).  At trial, to prove its affirmative defense of class action waiver,

---

[9] The Court also notes that in addition to the lack of evidence regarding Marriott's alleged vicarious liability, there is also no evidence in the record of what appeared on the OTA websites because Plaintiffs did not submit any evidence of the OTA websites or advertisements on summary judgment.

[10] In their motion for summary judgment, Plaintiffs argue that 14 of Marriott's affirmative defenses either fail as a matter of law or for lack of evidence.  Aside from its class action waiver defense, Marriott does not contest the Court striking these affirmative defenses.  *See* Dkt. 155 ("Marriott's Opp. to Pltfs. Partial MSJ") at 28.  Accordingly, pursuant to the agreement of the parties and because there are no genuine disputes of material fact, the Court grants summary judgment to Plaintiffs on Marriott's following affirmative defenses as identified in the operative answer: affirmative defenses 1–2, 9, 11–12, 18, 22–23, 25, 27, 29–30, and 36.  *See* Dkt. 92.

[11] After determining that the parties had not sufficiently aided the Court in briefing these arguments and anticipating that a class action waiver could impact class certification, the Court ordered supplemental briefing on the issue.  *See* Dkt. 168.

Marriott would bear the burden to establish that Lead Plaintiffs both (1) had notice of Marriott's terms and conditions, which included a class action waiver; and (2) agreed to those terms and conditions. *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972) (under California law, parties form valid contracts by mutual assent); *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) (mutual assent requires notice of terms and conditions and assent to them). Despite the fact that it bears the burden on this issue, Marriott points to no evidence in the record that Lead Plaintiffs had notice of Marriott's terms and conditions and assented to them, such that they could be bound by their terms. *See* Marriott's Supp. Br. at 3; Pltfs. Supp. Br. at 1–3. Even the terms and conditions that Lead Plaintiffs purportedly agreed to is absent from the record. *See id.* Given the total absence of evidence in this regard, the Court grants summary judgment on Marriott's class action waiver defense against Lead Plaintiffs.

On the other hand, the Court finds that Marriott has sufficiently preserved and maintained its right to assert a class action waiver defense against the proposed class members.[12] Generally, "[t]he inclusion of [a] defense in an answer is sufficient to preserve [a] defense." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (overruled on other grounds by *Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)). Additionally, while a party can waive a defense, it generally does not do so by failing to act with regard to putative, unnamed class members prior to class certification. *See Diamond v. Allstate Ins. Co.*, 91 F.3d 151 (9th Cir. 1996); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("'[A] nonnamed class

---

[12] "A waived ... defense is one that a party has knowingly and intelligently relinquished; a forfeited [defense] is one that a party has merely failed to preserve." *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012) (internal citations omitted). Because the Court ultimately finds that Marriott neither waived nor forfeited its affirmative defense of class action waiver, the nomenclature is largely irrelevant here, and the Court uses the terms interchangeably. *See In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 n.2 (9th Cir. 2008).

member is [not] a party to the class-action litigation *before the class is certified*'") (citation omitted) (emphasis in original); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 878 (9th Cir. 2021) (finding that defendant did not waive jurisdictional affirmative defense against absent class members by not moving to dismiss "putative class members who were not then before the court").

Here, Marriott preserved its affirmative defense of class action waiver by including it in its answer. *See* Dkt. 92 at 26. In fact, Marriott has asserted its class action waiver defense in each of its answers to the amended complaints, including in the operative answer. *See* Dkts. 32, 59, 92. Nor has Marriott waived its affirmative defense. Plaintiffs argue that Marriott has acted inconsistently with its alleged intent to pursue the affirmative defense of class action waiver because it has not brought a motion against absent class members, but the Court disagrees. Until a class has been certified, absent class members are not parties to this action; thus, Marriott could not have brought a motion as to them. Its failure to bring a motion arguing that absent class members were bound by a class action waiver provision does not constitute a waiver of Marriott's affirmative defense. This is especially the case when, as here, Marriott repeatedly asserted the affirmative defense in its answers consistent with its intention to pursue the defense. Accordingly, the Court finds that Marriott did not waive its class action waiver defense against absent class members.

**E. Marriott Has Failed to Show a Lack of Reliance**

Below, the Court briefly addresses Marriott's remaining argument that it is entitled to summary judgment on Plaintiffs' CLRA, intentional misrepresentation, and concealment claims because neither of the two Lead Plaintiffs can show reliance. *See* Marriott's MSJ at 10–12.

Plaintiffs' remaining claims under the CLRA and for concealment and intentional misrepresentation all require reliance. *See Gray v. Dignity Health*, 70 Cal. App. 5th 225, 243 (2021); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). To show reliance, a plaintiff must demonstrate that the misrepresentation or omission was an "immediate cause of the injury-causing conduct[.]" *In re Tobacco II Cases*, 46 Cal. 4th

298, 328 (2009).  A plaintiff can do so by showing that the misrepresentation or omission "played a substantial part . . . in influencing his decision," or by showing that the misrepresentation or omission was material.  *See OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007).  Under California law, a plaintiff need not show that "[the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011) (internal quotations and citations omitted); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (if representation is material, reliance "can be presumed, or at least inferred").  With respect to omissions, reliance is satisfied if the plaintiff demonstrates that "had the omitted information been disclosed [the plaintiff] would have been aware of it and behaved differently."  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).  Whether a party relied on a misrepresentation or whether that reliance was justified are almost always questions of fact that are not suitable for resolution as a matter of law on summary judgment.  *See, e.g.*, *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995); *see also Blankenheim v. E.F. Hutton & Co., Inc.*, 217 Cal. App. 3d 1463, 1475 (1990) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.").

Despite Marriott's arguments, Lead Plaintiffs sufficiently created a triable issue on reliance by testifying that resort fee information was significant to their decision making.  Marriott points to Lead Plaintiffs' testimony that they based their decisions to purchase Marriott hotel rooms on factors unrelated to resort fees.  *See* Marriott's MSJ at 11–12; Abdelsayed Dep. Tr. at 80:12–14; 82:11–15 (testifying that, to him, the most important feature of a hotel room was price and that he did not look at what was in the "summary of charges" as long as the total price was within his budget); Hall Dep. Tr. at 95:15–96:12 (testifying that he "most likely" would not have booked Marriott's hotel room had he seen resort fees).  From these statements, Marriott argues that Lead Plaintiffs' lack of reliance is undisputed.  Although this testimony may demonstrate that resort fees were not "the sole

or even the decisive cause" of Plaintiffs' decisions to book their hotel rooms, it does not establish that resort fees were not a "substantial part" in Plaintiffs' decision making. *See Kwikset*, 51 Cal. 4th at 326–27; *CIBC World Markets Corp.*, 157 Cal. App. 4th at 864. Plaintiff Hall testified that had he seen the resort fee disclosures, he "most likely" would not have booked Marriott's hotel room, and Plaintiff Abdelsayed submitted a declaration stating that he relied on Marriott's "buried resort fees," and testified that "[y]ou shouldn't have to have a drop-down menu to see [the resort fee]" and that he wanted to be informed of the resort fee. *See* Hall Dep. Tr. at 95:15–96:12; Dkt. 144, Abdelsayed Decl. ¶¶ 7–8; Dkt. 144, Ex. B at 218:24-219:21, 261:5-9. Plaintiffs' testimony that resort fees mattered to them and that they would have behaved differently with clearer disclosures creates a triable issue that resort fees played a "substantial part" in their purchasing decisions. *See Alliance Mortgage*, 10 Cal. 4th at 1239; *see also Mirkin*, 5 Cal. 4th at 1093. With the above testimony, Plaintiffs have created a genuine factual dispute on reliance that cannot be decided as a matter of law on summary judgment for either side. The Court therefore denies both parties' motions for summary judgment on the CLRA claim, as well as Marriott's motion for summary judgment on the intentional misrepresentation and concealment claims.

## V. CLASS CERTIFICATION

Next, the Court turns to Plaintiffs' motion for class certification. Because the Court has dismissed or granted summary judgment on Plaintiffs' UCL, FAL, unjust enrichment, and negligent misrepresentation claims, it only considers whether the proposed class should be certified with respect to Plaintiffs' surviving CLRA, intentional misrepresentation, and concealment claims. Here, Plaintiffs have requested that the Court certify a nationwide class based on California state law, and thus, the Court first examines whether such a broad application of state law passes constitutional muster. It will then turn to whether Plaintiffs have met the Rule 23 class certification requirements for the proposed California class. *See generally* TAC; Dkt 20 ("Pltfs. Opp. to MTD") at 20–21 (arguing that California law applies).

**A. Legal Standard on Class Certification**

To certify a class, the plaintiffs bear the burden of proving by a preponderance of the evidence that the class meets all four requirements of Federal Rule of Civil Procedure 23(a). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). Rule 23(a) sets out four prerequisites for a certifiable class: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). If the proposed class meets the four prerequisites of Rule 23(a), the Court must then decide whether the class action is maintainable under Rule 23(b). Under Rule 23(b)(3), a class may be certified if the Court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)).

At the class certification stage, the Court must take the substantive allegations of the complaint as true, but it "also is required to consider the nature and range of proof necessary to establish those allegations." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). The Court must engage in a "rigorous analysis" of each Rule 23(a) factor, which often "will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. If the Court concludes that the moving party has carried its Rule 23 burden, then the court is afforded "broad discretion" to certify the class. *Zinser*, 253 F.3d at 1186.

**B. Plaintiffs Have Not Met Their Burden to Show That the Nationwide Class Can be Certified**

In this action, Plaintiffs seek to certify a nationwide class for relief under California intentional misrepresentation and concealment claims. The Court must, therefore, consider the threshold issue of whether Plaintiffs have met their burden to show that nationwide

application of those California state laws is constitutional.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985); *see also generally* TAC; Dkt. 20 ("Pltfs. Opp. to MTD") at 20–21 (arguing that California law applies to Nationwide Class).

Plaintiffs bear the initial burden to show that California law can be constitutionally applied nationwide.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589–90 (9th Cir. 2012) (overruled on other grounds) (citing *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (Cal. 2001)).  Plaintiffs can meet this burden by demonstrating that "California has 'significant contact or significant aggregation of contacts' to the claims of *each class member*."  *See id.* (emphasis added); *see also Shutts*, 472 U.S. at 821–22.  In analyzing whether California has sufficient contacts with each class member, courts have looked to factors such as the location of the defendant's headquarters, the wrongful conduct, and the injury.  *See, e.g.*, *Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *17 (N.D. Cal. Dec. 21, 2010) (describing relevant factors and collecting cases); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (finding sufficient contacts where defendants were headquartered in California and their "misconduct allegedly originated in California").  Without such contacts, application of California law would be unfair and arbitrary—and therefore, unconstitutional.  *Mazza*, 666 F.3d at 590; *see also Shutts*, 472 U.S. at 821–22.

Here, Plaintiffs' request for nationwide certification does not even address the constitutionality of applying California law to out-of-state class members, much less attempt to meet their burden on this issue.  *See generally* Class Cert.  Even if Plaintiffs had attempted to demonstrate sufficient contacts between the state of California and each class member, it is not clear that they could have done so.  Here, the factors that courts generally consider—including the location of the defendant, the wrongful conduct, and the injury—do not suggest any connection between California and the claims of out-of-state class members: (1) Marriott is headquartered in Delaware, not California; (2) Marriott operates hotels all over the country; (3) Plaintiffs do not allege that Marriott originated the allegedly deceptive advertising in California; and (4) class members booked their hotel rooms—and

thereby suffered injury—in their respective states.  *See* TAC ¶¶ 6, 11; *see also* Pltfs. Ex. 10 at Schedules 1–2.  Because there is no evidence before the Court to demonstrate that nationwide application of California common law is constitutional, Plaintiffs have not met their threshold burden.   The Court therefore denies Plaintiffs' motion to certify the nationwide class, leaving only the proposed California class for the Court's consideration.

**C. Plaintiffs Have Satisfied Rule 23(a) With Respect to the California Class**

The Court next turns to whether class certification of Plaintiffs' proposed California class is appropriate under Rule 23.  The Court first considers whether Plaintiffs have met their burden with regard to the numerosity, typicality, adequacy, and commonality requirements of Rule 23(a).

*1. The California Class is Sufficiently Numerous*

First, the Court finds that the proposed California Class is sufficiently numerous.  To establish numerosity, a plaintiff must show that the represented class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Although the numerosity requirement is not tied to a strict numerical threshold, trial courts have generally found that classes of at least 40 members satisfy the requirement.  *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010); *see also West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (class of more than 40 "raises a presumption of impracticability of joinder" and "[i]n analyzing numerosity a court may make common-sense assumptions and reasonable inferences.") (citations and quotations omitted).  Here, Plaintiffs point to the report of their proposed damages expert opining that the total amount of resort fees paid by the California Class over the class period exceeds $37 million.  *See* Class Cert. at 12; Pltfs. Ex. 10 ¶¶ 9–10, Schedules 1–2.  Plaintiffs argue that these amounts allow the Court to infer numerosity.  *See id.*  Marriott does not challenge numerosity in its opposition to class certification, and notes in its supplemental briefing that approximately 2 million consumers constitute "at least 26.92% of the total [nationwide] class," suggesting that the proposed nationwide class likely exceeds six million consumers.  *See* Marriott's

Supp. Br. at 4.  Even if only 1% of these consumers fall within the California Class,[13] the California Class would still include thousands of consumers, making joinder impracticable. Plaintiffs have therefore satisfied the numerosity requirement.

*2.  Lead Plaintiffs are Typical and Adequate Representatives of a Modified Class*

Next, the Court considers whether Lead Plaintiffs are typical and adequate representatives of the putative class.  Here, Marriott identifies two impediments to typicality and adequacy.  First, Marriott argues that Lead Plaintiffs are neither typical nor adequate representatives because a significant portion of the class will be subject to Marriott's affirmative defense of class action waiver and Lead Plaintiffs will not.  Second, Marriott argues that proposed class counsel are inadequate representatives because they may also be class members who have a personal stake in the outcome of the case.  The Court will examine each of these arguments in turn.

While typicality and adequacy are two separate inquiries, their analysis can overlap in certain cases.  *See Woods v. Vector Mktg. Corp.*, 2015 WL 5188682, at *12 (N.D. Cal. Sept. 4, 2015) ("the typicality and adequacy inquiries tend to significantly overlap").  To determine typicality, the Court considers whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The Court considers "whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal citation omitted).  To determine adequacy, the Court considers whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court focuses on two questions: (1) whether "the representative

---

[13] In 2020, California comprised approximately 12% of the United States population.  *See* United States Department of Commerce, Bureau of the Census, *State Population Totals and Components of Change: 2020–2022*, https://www.census.gov/data/tables/time-series/demo/popest/2020s-state-total.html; *see also See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that a court may take judicial notice of "matters of public record" that are not subject to reasonable dispute) (internal quotation marks omitted).

plaintiffs and their counsel have any conflicts of interest with other class members," and (2) whether "the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

First, the Court addresses the concern that the two Lead Plaintiffs, who did not agree to Marriott's class action waiver and thus are not subject to the class action waiver defense, are neither typical nor adequate representatives for class members that may be subject to this defense. *See, e.g.*, *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 Fed. Appx. 579 (9th Cir. 2015) (lead plaintiff that did not sign class action waiver was not typical or adequate representative of class members who had signed class action waivers); *Tan v. Grubhub, Inc.*, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016) (plaintiff who opted out of a class action waiver lacked adequacy and typicality because he "would be unable to credibly make several procedural unconscionability arguments on behalf of unnamed class members[.]"). As discussed above, while Marriott does not have a class action waiver defense against Lead Plaintiffs, *see supra* Section IV.D, Marriott may pursue this affirmative defense at trial against class members that enrolled in Marriott's rewards program after April 24, 2015. *See id.* Marriott estimates that more than 2 million class members, constituting approximately 27% or more of the putative class, will be subject to its class action waiver defense at trial. *See* Marriott's Supp. Br. at 4. Although the class has been narrowed to the state of California, this evidence nonetheless suggests that the affirmative defense may apply to a substantial number of the proposed California class members. In opposing a class action waiver defense, these class members would have potential arguments regarding notice, assent, and enforceability. Lead Plaintiffs would not have these arguments at their disposal and would not be able to argue them on behalf of the class. Because Lead Plaintiffs are not subject to the potentially dispositive affirmative defense of class action waiver, they lack typicality with respect to the portion of the class that will be subject to the defense. This similarly renders Lead Plaintiffs inadequate because they have no legal interest in the validity or enforceability of the class action waiver, creating a conflict of interest between Lead Plaintiffs and the class. Accordingly,

the Court finds that Lead Plaintiffs are not adequate or typical representatives of absent class members that are subject to Marriott's affirmative defense of class action waiver.

While the lack of typicality and adequacy discussed above precludes certifying the class as proposed, the Court can obviate these concerns by modifying the class definition. *See* Pltfs. Supp. Br. at 13–14; *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) (noting district court's "broad authority" to redefine the class); *Avilez*, 596 Fed. Appx. 579 (noting that if class members who signed class action waivers were excluded from the class, then Rule 23(a) would be satisfied).  Plaintiffs propose to remove class members who "enrolled in Marriott's Bonvoy program on or after April 24, 2015." *See* Dkt. 176 at 4.   The Court agrees that excluding these class members resolves the typicality and adequacy concerns described above.   Under this narrowed definition, Defendants will not need to raise the class action waiver defense at trial.   As a result, class members will not be subject to a defense that Lead Plaintiffs cannot vigorously oppose on their behalf.  *See Avilez*, 596 Fed. Appx. 579.   Accordingly, the Court will exercise its discretion to modify the class definition to exclude consumers who enrolled in Marriott's rewards program on or after April 24, 2015.

Second, the Court addresses Marriott's concern that proposed class counsel cannot adequately represent the class because they may be class members.  Marriott notes that two of Plaintiffs' attorneys paid resort fees while staying at Marriott properties.  Marriott argues that an "obvious conflict of interest" exists when an attorney is also a class member and therefore, has a personal stake in the outcome of a litigation. *See* Class Cert. Opp. at 28.[14]

---

[14] The Court notes that the two cases cited by Marriott in support of its argument are inapposite. *See* Class Cert. Opp. at 28; *see also In re California Micro Devices Sec. Litig.*, 168 F.R.D 257, 262 (N.D. Cal. 1996); *Zylstra v Safeway Stores, Inc.,* 578 F.2d 102, 104 (5th Cir. 1978).   In *In re California Micro Devices*, the attorney was proceeding as both class counsel and Lead Plaintiff.  *See* 168 F.R.D at 262.  In *Zylstra*, class counsel and Lead Plaintiff were spouses.  *See* 578 F.2d at 104.  Proposed class counsel here are not proposing to represent the class as plaintiffs and are not related to Lead Plaintiffs, and thus do not possess any of the dire conflicts discussed in those cases.

Given that the class likely encompasses hundreds of thousands of consumers, this possibility is unsurprising, and any such impediment is easily avoidable.  To resolve any potential conflict this might pose, the Court exercises its broad discretion to modify the class definition to explicitly exclude the attorneys in this action.  *See Wang*, 737 F.3d at 546 (noting district court's "broad authority" to redefine the class); *see also Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 39 (D.D.C. 2017) (defining class to exclude "class counsel in this case"); *Hawkins v. S2Verify*, 2016 WL 3999458, at *7 (N.D. Cal. July 26, 2016) (excluding "attorneys appearing in this case").

In light of the above modifications, no remaining concerns undermine Lead Plaintiffs' ability to serve as adequate and typical representatives of the modified putative class.  Here, Lead Plaintiffs and the purported class allege the same losses caused by the same inadequate resort fee disclosures.  *See, e.g.*, Class Cert. at 15–16.  Now that class members subject to Marriott's class action waiver defense have been excluded, Lead Plaintiffs' claims and arguments are coextensive with the class members.  In addition, aside from the issue resolved above, proposed class counsel does not appear to have any conflicts that would disrupt their ability to represent the California class.  *See* Class Cert. at 16–17. Marriott does not argue otherwise.  *See* Class Cert. Opp. at 28.  Lead Plaintiffs, through their counsel, have vigorously prosecuted this action to date, including by sitting for depositions, defending against multiple dispositive motions, and seeking to certify the class. *See* Class Cert. at 16.  Accordingly, the Court finds that Lead Plaintiffs and proposed class counsel are adequate, and that Lead Plaintiffs' claims are typical of the class as modified by the Court.

### 3. Commonality is Satisfied

Finally, the Court considers whether common questions of law and fact exist with respect to the class.  A question of law or fact is common to the class if "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Thus, what matters is not the "raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate

common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted) (emphasis in original).

Here, the key elements of Plaintiffs' CLRA claim are susceptible to common, classwide proof that will allow the validity of the class's claims to be resolved in one stroke. To succeed on their CLRA claim, Plaintiffs must show that Marriott's resort fee disclosures were deceptive, and that such deception would be material to the reasonable consumer. *See, e.g.*, *Yastrab*, 173 F. Supp. 3d at 977. Under the CLRA, the primary evidence of "likelihood of deception" is the advertising itself. *See Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006). Moreover, deceptiveness and materiality are judged by the advertisement's effect on a "reasonable consumer," meaning that a jury will determine whether the advertising would be deceptive and material to an "ordinary consumer acting reasonably under the circumstances." *See id.*; *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). In addition, if materiality is established, the CLRA allows for a classwide presumption of reliance. *Consumer Advocates*, 113 Cal. App. 4th at 1360; *Tobacco II*, 46 Cal. 4th at 327; *see also Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 851 (2009) (noting that fraud and concealment claims allow for a classwide inference of reliance if there are material, uniform misrepresentations).

Whether Marriott's booking process was likely to deceive under the CLRA is a common legal question that can be resolved on a classwide basis. To show that Marriott's booking flow was deceptive, Plaintiffs point to Marriott's universal booking flow—to which all class members were exposed, regardless of where they lived or what hotel they booked—and expert survey evidence showing that approximately half of consumers did not notice Marriott's resort fee disclosures. *See* Dkt. 18-2 ("Marriott's RJN"), Exs. B–F; SUMF at 2–16; Marriott's Ex. F; Pltfs. Ex. 11. Here, the "primary evidence" of deceptiveness is this universal, internet booking process that every class member used. The factfinder will decide, based on this evidence and the expert survey evidence offered by Plaintiffs, whether Marriott's resort fee disclosures were likely to deceive one person—the

hypothetical reasonable consumer. Therefore, common evidence will answer the common question of deceptiveness and no individual determinations will be required.

The factfinder can also determine whether the alleged deception was material to the reasonable consumer on a classwide basis. As classwide evidence that resort fees are a substantial part of a reasonable consumer's purchase decision, Plaintiffs primarily point to Marriott's internal documents where company executives acknowledged that consumers did not like resort fees. *See* Pltfs. Exs. 12, 14, 15 ("Alexander Dep. Tr.") at 25:10–6; 117:17–118:4, 18.[15] Marriott argues that this evidence is insufficient to demonstrate materiality, but this argument goes to the merits rather than to commonality. *See Olean*, 31 F.4th at 666–67 ("a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial"). Regardless of the relative strength or weakness of this evidence, Plaintiffs have pointed to a common set of documents that will either succeed or fail to establish materiality on a classwide basis. If Plaintiffs can establish classwide materiality using the common evidence described above, it follows that classwide reliance can also be resolved in one stroke under the presumption allowed by California law. *See Tobacco II*, 46 Cal. 4th at 327; *see also Kaldenbach*, 178 Cal. App. 4th at 851 (noting classwide reliance presumption for fraud and concealment claims).

---

[15] In their briefing, Plaintiffs also point to their expert survey as evidence capable of demonstrating classwide materiality, but that survey does not contain any conclusions regarding materiality. *See* Class Cert. Reply at 4–5; Pltfs. Ex. 11. Plaintiffs' expert, Dr. Michael Dennis, conducted a consumer survey to determine whether Marriott "misleads consumers into misunderstanding . . . the cost components of the daily room rate." *See* Pltfs. Ex. 11 ("Dennis Report") at ¶ 25. In the survey, consumers were split into two groups: one group that viewed a booking process like Marriott's, and another that viewed a booking process that disclosed the resort fee on the first page of the booking process. *See id.* ¶¶ 56–63. Both groups were asked questions regarding whether they understood what components comprised the total price. *See id.* ¶¶ 56–63, 68. The survey, however, did not pose any questions regarding what consumers found important to their booking decisions and did not otherwise assess how the presence of a resort fee impacted those decisions. *See generally id.* Thus, Plaintiffs' consumer survey is common evidence relevant to the element of deception, but there is nothing to indicate that it is relevant to materiality.

Alternatively, if Plaintiffs are unable to establish classwide materiality using their common evidence, no reliance inquiry will be necessary.

Lastly, whether Marriott intentionally concealed resort fees in its booking flow can be determined in one stroke with evidence common to the entire class. Intent is a required element of Plaintiffs' intentional misrepresentation and concealment claims. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (intentional misrepresentation requires knowledge of falsity and intent to defraud or induce reliance); *see also Burch v. CertainTeed Corp.*, 34 Cal. App. 5th 341, 348 (2019) (fraudulent concealment requires proof that "defendant intentionally concealed or suppressed the fact with the intent to defraud"). Courts routinely conclude that scienter is a common question subject to common proof. *See, e.g.*, *Zakaria v. Gerber Prod. Co.*, 2016 WL 6662723, at *13 (C.D. Cal. Mar. 23, 2016) (noting that scienter element of intentional misrepresentation claim is "susceptible to common proof" because it "refer[s] only to Defendant's conduct"); *see also Allen v. Verizon California, Inc.*, 2010 WL 11583099, at *8 (C.D. Cal. Aug. 12, 2010). Here, the sole, classwide question is whether Marriott intended to deceive consumers when it presented resort fee information. To answer this question, Plaintiffs point to Marriott's internal documents, including, (1) an email stating that resort fees were "all about nickel and diming the guest and being unable to hand the disclosure requirements"; (2) an email noting that consumers "didn't notice" the resort fee disclosures; and (3) an internal presentation noting that clearer resort fee disclosures might have a negative impact on revenue. *See* Pltfs. Exs. 12–14, 18. The factfinder will thus decide the intent element by evaluating common evidence of Marriott's conduct. For the reasons described above, common questions susceptible to common proof abound under Plaintiffs' CLRA and common law fraud claims. Therefore, Plaintiffs have met their burden with regard to commonality.

**D. Plaintiffs Have Not Met Rule 23(b)'s Predominance Requirement**

Having concluded that Plaintiffs have met Rule 23(a) requirements, the Court turns to whether common questions will predominate over individual ones under Rule 23(b)(3).

The Rule 23(b)(3) inquiry looks to whether the putative class is "sufficiently cohesive to warrant adjudication by representation." Fed. R. Civ. P. 23(b)(3); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Where "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S 442, 453–54 (2016) (citing C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)). Plaintiffs bear the burden to demonstrate that common questions will predominate over individual ones under Rule 23(b)(3) by a preponderance of the evidence before the Court may certify a class. *Olean*, 31 F.4th at 665 (adopting preponderance burden of proof). In analyzing the predominance factor, courts consider whether Plaintiffs have demonstrated that "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof," or if "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods, Inc.*, 577 U.S. at 453.

Having determined that several key elements of Plaintiffs' claims—deceptiveness, materiality, reliance, and intent—can be resolved on a classwide basis, the Court turns to the remaining element of damages. Marriott argues that infirmities in Plaintiffs' classwide damages methodology defeats the predominance requirement and precludes class certification. First, Marriott argues that Plaintiffs' proposed class definition is impermissibly broad and includes uninjured class members. Second, it argues that the proposed damages model is incapable of calculating classwide damages such that individualized inquiries of harm will overwhelm the litigation. The Court will examine each of these arguments in turn.

The Court first considers whether the class definition encompasses a potentially significant number of unharmed consumers and, if so, whether parsing out the injured class members from the uninjured would require an overwhelming number of individualized

inquiries. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136–39 (9th Cir. 2016) (addressing claim that class definition was overbroad and contained uninjured members as a Rule 23(b)(3) predominance issue).  "[A] court must consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad." *Olean*, 31 F. 4th at 669 n.14.  When "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Id.* (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). Whether a proposed class that "potentially includes more than a de minimis number of uninjured class members" can be certified under Rule 23 is a case-specific inquiry subject to the district court's rigorous predominance analysis.  *See id.* at 669 & n.13, n.14. Accordingly, the Court performs this inquiry in the specific context of this case alleging inadequate disclosures in Marriott's advertising.

In a case alleging inadequate disclosures, consumers who were not harmed because they knew the truth prior to purchase are not appropriately included in the class.  *See, e.g.*, *Mazza*, 666 F.3d at 596; *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014).  This is because only those consumers who were exposed to the advertising and did not read the disclosures prior to purchase were actually deceived and suffered damages. *See, e.g.*, *id.*  Based on this reasoning, the Ninth Circuit and district courts applying Ninth Circuit precedent have found class definitions fatally overbroad that fail to exclude consumers who received disclosures prior to purchase.  *See, e.g.*, *Mazza*, 666 F.3d at 596 (vacating district court's class certification order where class definition included persons who had actually read Honda's disclosures prior to purchase); *Berger*, 741 F.3d at 1069 (affirming denial of class certification where some class members were informed about the "optional nature of the damages waiver" prior to purchase); *Roley v. Google LLC*, 2020 WL 8675968, at *8 (N.D. Cal. July 20, 2020) (denying certification where some class members saw Google's disclosures prior to purchase); *Circle Click Media LLC v. Regus*

38

*Mgmt. Grp. LLC*, 2016 WL 2593654, at *4 (N.D. Cal. May 5, 2016) (same where some class members were told about the disputed fees prior to purchase).

The evidence before the Court suggests that the class definition encompasses a potentially significant number of unharmed consumers.  Here, Plaintiffs admit that Marriott disclosed the existence of resort fees several times during the booking process but allege that these disclosures were inadequate due to font size, color, and placement.  *See, e.g.*, Class Cert. at 3–4; *see also* Pltfs. Partial MSJ at 5–8, 10–11.  According to Plaintiffs' own allegations, this is an inadequate disclosures case where the relevant information was disclosed but in a manner that Plaintiffs allege would not have been noticed by the reasonable consumer.  *See, e.g.*, Class Cert. at 3–4 (describing "oblique[]" resort fee disclosures at various pages in Marriott's booking process).  Under this liability theory, Plaintiffs propose a class of all consumers who *paid* resort fees but do not distinguish between those who did so knowing about the resort fees and those who were deceived and harmed.  *See id.* at 2.  This definition, therefore, makes no attempt to exclude class members who read Marriott's resort fee disclosures prior to purchase.  *See id.*

While the mere possibility of uninjured class members would likely not defeat predominance, the evidence here suggests that approximately 50% of the class may be uninjured.  *See* Pltfs. Ex. 11 ("Dennis Report") ¶ 68.  In support of their motion for class certification, Plaintiffs submitted a consumer survey that replicated Marriott's booking process and, in part, measured what percentage of consumers understood that a resort fee was included in the total cost of the hotel stay.  *See id.* ¶¶ 23, 25, 56–63.  That survey concluded that 53.2% of consumers understood prior to purchase that a resort fee was included in the total price.  *See id.* ¶ 68.  This evidence indicates that there is a potentially significant number of unharmed class members who fully understood they were paying a

resort fee prior to purchase.[16]   Identifying these consumers would require individualized inquiries about what each class member read prior to purchase which, in a class of thousands, would overwhelm the common questions identified above.

Plaintiffs' proposed damages model also fails for the same reason—because it does not distinguish between injured class members and uninjured class members.  And without a valid, classwide measure of damages, Plaintiffs cannot meet their predominance burden with respect to their proposed class.  In *Comcast Corp. v. Behrend*, the Supreme Court held that a plaintiff's damages model must be capable of showing that their damages resulted from the defendant's allegedly illegal conduct; if it cannot, common questions do not predominate.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).  Here, Plaintiffs' damages expert measured damages by calculating the total amount of resort fees consumers paid Marriott during the class period.  *See* Pltfs. Ex. 10 ("Podlipna Report") ¶¶ 9–10.  But as discussed above, Plaintiffs' evidence suggests the possibility of a significant portion of consumers that understood that a resort fee was included in the price when they booked their hotel rooms.  *See* Dennis Report ¶ 68.  Plaintiffs' damages expert made no attempt to distinguish the consumers who were deceived by Marriott's allegedly inadequate resort fee disclosures from consumers who read the resort fee disclosures, willingly paid, and thus, were not harmed.  *See generally* Podlipna Report.  A model that potentially awards damages over half of the time where no harm exists is not sufficiently linked to Plaintiffs' theory of liability, nor is it capable of measuring the harm Plaintiffs allege.  The Court is not satisfied that a damages model that awards damages to so many potentially uninjured consumers is viable under *Comcast*.   Accordingly, Plaintiffs fail to meet their

---

[16] Although the Court retains the broad discretion to redefine the class, *see Wang*, 737 F.3d at 546, it is not clear how the class could be redefined to identify only those consumers who did not notice Marriott's resort fee disclosures.  The Court is aware of various plaintiffs' unsuccessful attempts to remedy this type of overbreadth issue in other cases, but the Court is not aware of any decision that has attempted to *sua sponte* redefine a class in this fashion.  *See, e.g.*, *Dioquino v. Sempris, LLC*, 2012 WL 6742528, at *5 (C.D. Cal. Apr. 9, 2012) (finding that defining class as consumers who enrolled in a service but did not use it did not adequately exclude potentially unharmed class members).

predominance burden for the additional reason that their damages model is insufficiently linked to their theory of liability under *Comcast*.

For the reasons discussed above, the Court finds that Plaintiffs have not met their burden on predominance by a preponderance of the evidence and declines to certify the proposed California class. Nevertheless, because Plaintiffs alternatively request that the Court certify a liability class, the Court next turns to whether it is appropriate to do so under Rule 23(c)(4).

**E. An Issues Class Under Rule 23(c)(4) is Appropriate**

If the Court denies their request to certify their classes as proposed, Plaintiffs make an alternate request to certify a class for liability issues only under Rule 23(c)(4). *See* Class Cert. at 28–29. Rule 23(c)(4) provides that, "when appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Accordingly, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23[(c)(4)] authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Certification under Rule 23(c)(4) is only appropriate where the issues to be certified meet all of Rule 23's requirements of numerosity, typicality, adequacy, and commonality. *See, e.g.*, *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015). In determining whether certification of an issues class is appropriate, courts should also consider "whether the adjudication of the certified issues would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency." *Valentino*, 97 F.3d at 1229; *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014) (finding certification of an issues class was appropriate to "accurately and efficiently resolve the question of liability, while leaving the potentially difficult issue of individualized damage assessments for a later day."). "The question of whether partial certification is appropriate under Rule 23(c)(4)(A) is closely linked to the question of whether a class action is superior to other available

41

methods for the fair and efficient adjudication of the controversy." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1070 (N.D. Cal. 2007).

The Court finds that it is appropriate to certify a class under Rule 23(c)(4) on the issue of liability. Most critically, all of the essential liability elements of Plaintiffs' CLRA and common law fraud claims can be resolved on a classwide basis using Plaintiffs' common evidence. *See supra* Section V.C.3. Plaintiffs have also met the remainder of the Rule 23(a) requirements, as outlined in the above analysis. *See supra* Section V.C. The Court also finds that resolving the issue of liability in one centralized action would significantly advance judicial economy and the resolution of this case. Given that Marriott's resort fees range from $9 to $95, *see* TAC ¶ 21, the damages for each class member is relatively small, providing little motivation to pursue individual cases. In addition, because there are potentially hundreds of thousands of class members, trying the class members' liability claims separately would not serve judicial economy. Resolving the liability issue for potentially hundreds of thousands of class members in one proceeding would leave only the damages questions for any individual actions that followed. For these reasons, the Court certifies an issues class on liability with respect to Plaintiffs' remaining claims under the CLRA and for intentional misrepresentation and concealment.

## IV.   CONCLUSION AND ORDER

For the reasons set out above, the Court GRANTS IN PART AND DENIES IN PART the parties' motions for summary judgment [Dkts. 140, 143] and GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for class certification [Dkt. 144]. The Court CERTIFIES a class of consumers solely with respect to the issue of liability, which is defined as follows:

> All persons in California—except for persons who enrolled in Marriott's "Bonvoy" rewards program on or after April 24, 2015—who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app and who paid a resort fee, destination fee, amenity fee, or destination amenity fee on or after September 9, 2015 and until the Class is certified excluding Defendant and

Defendant's officers, directors, employees, agents and affiliates, the Court and its staff, and attorneys appearing in this action.

The Court appoints Lead Plaintiffs as class representatives and the Law office of Ronald A. Marron, the Law Office of Robert L. Teel, and Bursor & Fisher, P.A. as class counsel.

Because the parties did not explicitly address the following issues in their briefing, the Court will also allow motions for reconsideration with respect to the following conclusions in this order: (1) Plaintiffs do not have standing to seek an injunction, *see supra* Section III.A; (2) the Court does not have equitable jurisdiction over Plaintiffs' requests for equitable remedies, *see supra* Section III.B; (3) Plaintiffs' negligent misrepresentation claim fails under Plaintiffs' theory of inadequate resort fee disclosures, *see supra* Section IV.B; and (4) Plaintiffs have failed to meet their threshold burden to show that application of California law to the proposed nationwide class is constitutional, *see supra* Section V.B. Should the parties choose to file such motions, opening briefs limited to ten pages are due by April 14, 2023; opposition briefs limited to five pages are due by April 21, 2023.  No reply briefs are to be submitted.  The hearing on these motions is scheduled for April 26, 2023, at 9:00 a.m., but the Court will take any motions for reconsideration on these issues under submission without oral argument.

   **IT IS SO ORDERED**.

Dated:  March 30, 2023

Hon. Jinsook Ohta
United States District Judge

43