1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| TODD HALL and GEORGE ABDELSAYED individually and on behalf of all others similarly situated, *Plaintiffs*, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., a Delaware corporation, <br><br> *Defendant*. | Case No. 3:19-cv-01715-JO-AHG <br><br> **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND DISMISSING ACTION WITH PREJUDICE** <br><br> The Honorable Jinsook Ohta |

11
12
13
14
15
16
17
18
19
20

Plaintiffs Todd Hall and George Abdelsayed, ("Plaintiffs"), individually and on behalf of the Class defined below, move this Court for final approval of the settlement reached with Defendant Marriott International, Inc. ("Marriott") in the above-captioned action. Plaintiffs also move for partial reimbursement of litigation costs and service awards. Neither motion is opposed. A final approval hearing was held July 10, 2024, with counsel for Plaintiffs and Marriott appearing remotely. No class members appeared. For the reasons set forth below, the Motion for Final Approval of Class Action Settlement is **GRANTED**. The Motion for Partial Reimbursement of Litigation Costs and Service Awards is also **GRANTED**.

21
22
23
24
25
26
27
28

1

## I.   BACKGROUND

On September 9, 2019, Plaintiff Todd Hall initiated a putative class action against Marriott alleging it intentionally deceived consumers about the characteristics and total cost of a stay at its Marriott Hotels. ECF No. 1. In response to Defendant's motion to dismiss (ECF No. 11), Plaintiffs filed a first amended complaint adding claims for negligent misrepresentation, concealment, and intentional misrepresentation. ECF No. 15. Marriott again moved to dismiss. ECF No. 18. After full briefing, the Court denied Marriott's motion. ECF No. 31. Plaintiffs filed a second amended complaint adding plaintiffs Julie Drassinower, Kevin Branca, and Jesse Heineken. ECF No. 54. On March 23, 2021, Plaintiffs moved to consolidate with related Case No. 3:21-cv-00402-BEN-JLB. ECF No. 72. On April 27, 2021 the Court granted the motion to consolidate. ECF No. 78.

On May 27, 2021, Plaintiffs filed the operative consolidated third amended complaint, which added Plaintiff Abdelsayed, alleging claims under the CLRA, FAL, UCL, unjust enrichment, negligent misrepresentation, concealment, and intentional misrepresentation. ECF No. 82.

Extensive discovery ensued, including the exchange of multiple sets of written interrogatories and requests for admission, the production of hundreds of thousands of pages of documents, and the issuance of third-party discovery. The parties filed several motions to resolve discovery disputes that arose over the course of the Action. *See, e.g.*, ECF Nos. 84, 93, 101, 106, 107, 116, 122, 126, and 164.

Marriott moved for summary judgment on April 8, 2022. ECF No. 140. Plaintiffs moved for partial summary judgment (ECF No. 143) and class certification (ECF No. 144) on April 15, 2022. Plaintiffs' summary judgment motion asked the Court to hold that Marriott's business practices violated the CLRA, FAL, and UCL and that several of Marriott's affirmative defenses failed as a matter of law or for lack of evidence. ECF No. 143. The certification motion sought to certify Fed. R.

2

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   Civ. Proc. 23(b)(2) and 23(b)(3) classes as well as an issues class under Rule
2   23(c)(4). ECF No. 144.

3       On March 30, 2023, the Court resolved both motions granting in part and
4   denying in part the Parties' motions for summary judgment. ECF Nos. 180 and 188.
5   The Court granted in part Plaintiffs' motion for class certification by certifying an
6   issues-only Class as to liability under Rule 23(c)(4) for Plaintiffs' CLRA and
7   concealment claims. ECF No. 180, 42:15-17 and ECF 188, 6:12-14. The Court
8   denied class certification for Plaintiffs' damages claims. ECF No. 180, 42:9-13. The
9   Court appointed Plaintiffs as Class Representatives and Bursor & Fisher, P.A., the
10  Law Offices of Ronald A. Marron, APLC, and the Law Office of Robert L. Teel as
11  Class Counsel. ECF No. 180, 43:3-4.

12      The Court further held (1) Plaintiffs lack standing to seek injunctive relief,
13  and (2) the Court lacks jurisdiction over Plaintiffs' equitable claims for restitution in
14  connection with their CLRA, FAL, UCL, and unjust enrichment causes of action.
15  ECF No. 180, 9:7-11. As a result of the foregoing, only the Class claims seeking
16  liability, and not damages, under the CLRA and for concealment were allowed to
17  proceed.

18      After a status hearing with the Court on October 4, 2023, the Parties agreed to
19  conduct a full day of mediation before the Hon. Peter D. Lichtman (Ret.) in Los
20  Angeles, California. On November 14, 2023, the Parties participated in a nearly all-
21  day mediation with the Judge Lichtman to attempt to resolve the litigation. The
22  essential terms and conditions for a global resolution of the litigation in accordance
23  with the mediator's proposal were accepted by all parties on November 17, 2023.

24      Thereafter, the parties filed a joint motion (ECF No. 207) and supplemental
25  briefing (ECF Nos. 214, 217, and 218) seeking Court approval of the mediated
26  settlement proposal. On February 21, 2024, the Court denied the motion to approve
27  the settlement and vacate the issues-only class certification order. ECF No. 220.
28  The Parties held two more settlement conference with Magistrate Judge Goddard on

3

February 26, 2024 (ECF No. 227) and March 1, 2024 (ECF No. 229), but the case did not settle and the parties prepared for a jury trial scheduled for April 22, 2024.

On April 19, 2024 the parties agreed to essential binding settlement terms which were filed with the Court. ECF Nos. 273 and 275. The terms of the settlement have been further memorialized in a written and executed Settlement Agreement dated May 10, 2024. On May 17, 2024, the Court issued its Order granting preliminary approval of the proposed Settlement Agreement. ECF No. 282.

In its Order preliminarily approving the Settlement Agreement the Court defined the Class as follows:

> All persons in California—except for persons who enrolled in Marriott's "Bonvoy" rewards program on or after April 24, 2015—who reserved or booked a Marriott managed or franchised hotel room online through the Marriott.com website or Marriott mobile app and who paid a resort fee, destination fee, amenity fee, or destination amenity fee on or after September 9, 2015 and until the Class was certified on March 30, 2023 excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, the Court and its staff, and attorneys appearing in this action.

Excluded from the Class are the Judges to whom the Action has been assigned and any member of the Judges' staffs and immediate families.

The Court reserved on the issue of service awards to the Class representatives and partial reimbursement of litigation costs, but otherwise found the settlement appeared fair, reasonable and adequate, and within the range of reasonableness for preliminary approval. ECF No. 282, 2:3-12.

## II.   SETTLEMENT AGREEMENT TERMS

In the Settlement Agreement, Plaintiffs release their individual claims and their claims for monetary damages and waive their rights under Cal. Civ. Code § 1542. ECF No. 279-3 at 7 ¶ IV.A-B. In exchange, Marriott agrees that within six months after final approval it will: (1) modify and change the calendar view on its Marriott US Websites so the cost identified for each calendar day is at

4

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  least the lowest Total Room Price and not just the lowest available room rate; (2)
2  modify and fix such instances of which Plaintiffs notify it of a Marriott Hotel
3  advertising an amenity as complimentary, free, or otherwise without charge that is
4  also included as a Resort Fee; (3) notify and remind its Marriott Hotels that charge
5  a Resort Fee that under Marriott's resort fee policy no amenity offered as
6  complimentary, free, or otherwise without charge may be included as a Resort Fee
7  amenity; and (4) and instruct its Marriott Hotels that charge a Resort Fee to take such
8  action as may be reasonably necessary to ensure they are not presently offering any
9  complimentary or free amenity as a Resort Fee amenity.  Additionally, within 10
10  days after the anniversary of the date the Court enters judgment granting final
11  approval of the settlement Effective Date, Marriott will serve on Class Counsel a
12  declaration confirming and describing Marriott's compliance with the requirements
13  of the terms of the settlement.  Finally, Marriott agrees to pay each Plaintiff a service
14  award of up to $5,000 ($10,000 in total), as well as to partially reimburse Class
15  Counsel for their litigation costs up to $65,000, both subject to Court approval.
16  *Id.*, ¶¶ III.E-F.  Marriott also agrees not to oppose Plaintiffs' motion for partial
17  reimbursement of the litigation costs and service awards. *Id.*  The settlement
18  agreement provides no monetary relief for class members, but class members do not
19  release or waive their right to seek monetary damages.

20  **III.   DISCUSSION**

21       **A.    Rule 23(a) Requirements**

22       Before approving a class action settlement, the court's "threshold task is to
23  ascertain whether the proposed settlement class satisfies the requirements of Rule
24  23(a) of the Federal Rules of Civil Procedure applicable to class actions, namely:
25  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."
26  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In the settlement
27  context, the court "must pay undiluted, even heightened, attention to class
28  certification requirements." *Id.*  In addition, the court must determine whether class

5

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  counsel is adequate under Rule 23(g). *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d
2  454, 462 (9th Cir. 2000).

### 1.  Numerosity

4  The numerosity requirement is satisfied if the class is "so numerous that
5  joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class greater
6  than forty members often satisfies this requirement[.]" *Walker v. Hewlett-Packard*
7  *Co.*, 295 F.R.D. 472, 482 (S.D. Cal. 2013) (citation omitted).  Additionally, in cases
8  involving injunctive or behavioral relief only, the numerosity requirement may be
9  relaxed. *See Reynoso v. RBC Bearings, Inc.*, Case No. SACV 16-01037 JVS (JCGx),
10  2017 WL 6888305, at *5 (C.D. Cal. Oct. 5, 2017), decertified on other grounds by
11  *Reynoso v. All Power Mfg. Co.*, No. SACV 16-01037 JVS (JCGx), 2018 WL
12  5906645, at *6 (C.D. Cal. Apr. 30, 2018). Here, the court previously found that
13  joinder of the potential class members would be impracticable. ECF No. 180, 30:2-3.
14  The class size here likely encompasses hundreds of thousands of consumers.
15  ECF No.180, 33:1-2.  Accordingly, the numerosity requirement is satisfied.

### 2.  Commonality

17  The commonality requirement is satisfied if "there are questions of law or
18  fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "To satisfy this commonality
19  requirement, plaintiffs need only point to a single issue common to the class."
20  *Vasquez v. Coast Valley Roofing, Inc.,* 670 F. Supp. 114, 1121 (E.D. Cal. 2009).
21  Here, as the Court previously found, common questions susceptible to common
22  proof abound under Plaintiffs' CLRA and common law fraud claims.  ECF No. 180,
23  36:22-25 and Section V.C.3.  Accordingly, the commonality requirement is satisfied.

### 3.  Typicality

25  The typicality requirement is satisfied if "the claims or defenses of the
26  representative parties are typical of the claims or defenses of the class." Fed. R. Civ.
27  P. 23(a)(3). "The test of typicality is whether other members have the same or similar
28  injury, whether the action is based on conduct which is not unique to the named

6

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   plaintiffs, and whether other class members have been injured by the same course of
2   conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal
3   quotation and citation omitted). Here, as the Court previously found, "[l]ead
4   Plaintiffs and the purported class allege the same losses caused by the same
5   inadequate resort fee disclosures," (ECF No. 33:11-12), which is the basis for
6   Plaintiffs' and class members' claims.  Plaintiffs' claims are typical of those of the
7   Class.

8           **4.**    **Adequacy**

9       The final Rule 23(a) requirement is that "the representative parties will fairly
10  and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This
11  requires the Court to address two questions: "(a) do the named plaintiffs and their
12  counsel have any conflicts of interest with other class members and (b) will the
13  named plaintiffs and their counsel prosecute the action vigorously on behalf of the
14  class." *Mego*, 213 F.3d at 462. A court certifying a class must consider: "(i) the work
15  counsel has done in identifying or investigating potential claims in the action; (ii)
16  counsel's experience in handling class actions; (iii) counsel's knowledge of the
17  applicable law; and (iv) the resources that counsel will commit to representing the
18  class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter
19  pertinent to counsel's ability to fairly and adequately represent the interests of the
20  class." Fed. R. Civ. P. 23(g)(1)(B).

21      Here, there is no indication of a conflict of interest between Plaintiffs or their
22  attorneys and absent class members.  ECF 180, 33:2-16.  Although Plaintiffs seek
23  service awards, they waive their claims for monetary damages and give Marriott a
24  general release, whereas class members do not.   Plaintiffs declare they kept
25  themselves informed about the status of proceedings, participated in lengthy
26  mediations, and suffered the same injury as the absent class members.   With respect
27  to Plaintiffs' counsel, the record is clear that the settlement was negotiated by counsel
28  with extensive experience in consumer class action litigation, and that Plaintiffs'

7

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[Proposed] Order Granting Final Approval of Class Action Settlement

1    counsel engaged in substantial motion practice, made extensive discovery
2    requests, and obtained sufficient information and documents to evaluate the
3    strengths and weaknesses of the case.    Accordingly, the adequacy requirement is
4    satisfied.

5    **B.    Rule 23(b)(3) and 23(c)(4)**

6    The Class meets the requirements of Rule 23(a), Rule 23(c)(4), and as it
7    applies to the certified issues-only Class, Rule 23(b)(3). "Under what is known as
8    the broad view, courts apply the Rule 23(b)(3) predominance and superiority prongs
9    after common issues have been identified for class treatment under Rule 23(c)(4).
10   The broad view permits utilizing Rule 23(c)(4) even where predominance has not
11   been satisfied for the cause of action as a whole. *See In re Nassau Cty. Strip Search*
12   *Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (permitting issue certification "regardless
13   of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance
14   requirement"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)
15   ("Even if the common questions do not predominate over the individual questions
16   so that class certification of the entire action is warranted, Rule 23 authorizes the
17   district court in appropriate cases to isolate the common issues under Rule 23(c)(4)
18   [ ] and proceed with class treatment of these particular issues.") *Martin v. Behr*
19   *Dayton Thermal Prods. LLC*, 896 F.3d 405 (6th Cir. 2018). *See also Gunnells v.*
20   *Healthplan Servs.,Inc.*, 348 F.3d 417, 439–45 (4th Cir. 2003) (courts may employ
21   Rule 23(c)(4) to certify a class as to one claim even though all of the plaintiffs'
22   claims, taken together, do not satisfy the predominance requirement).

23   Rule 23(c)(4) provides that, "when appropriate, an action may be brought or
24   maintained as a class action with respect to particular issues." Fed. R. Civ. P.
25   23(c)(4). "[E]ven if the common questions do not predominate over the individual
26   questions so that class certification of the entire action is warranted, Rule 23[(c)(4)]
27   authorizes the district court in appropriate cases to isolate the common issues . . .
28   and proceed with class treatment of these particular issues." *Valentino v. Carter-*

8

1  *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Certification under Rule 23(c)(4)
2  is appropriate where the issues to be certified meet all of Rule 23's requirements of
3  numerosity, typicality, adequacy, and commonality. *Tasion Communications, Inc. v.*
4  *Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015).

5       In determining whether certification of an issues class is appropriate, courts
6  also consider "whether the adjudication of the certified issues would significantly
7  advance the resolution of the underlying case, thereby achieving judicial economy
8  and efficiency." *Valentino*, 97 F.3d at 1229; *see also Jimenez v. Allstate Ins. Co.*,
9  765 F. 3d 1161, 1164 (9th Cir. 2014) (finding certification of an issues class was
10 appropriate to "accurately and efficiently resolve the question of liability, while
11 leaving the potentially difficult issue of individualized damage assessments for a
12 later day."). "The question of whether partial certification is appropriate under Rule
13 23(c)(4)(A) is closely linked to the question of whether a class action is superior to
14 other available methods for the fair and efficient adjudication of the controversy."
15 *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1070
16 (N.D. Cal. 2007). The Court finds that the requirements for predominance and
17 superiority are met for the common liability issues identified for class treatment
18 under Rule 23(c)(4) and that certification of the Class is appropriate.

19      **C.**   **Rule 23(e)(2) Requirements**

20      Rule 23(e)(2) provides that the court may approve a class action settlement
21 "only after a hearing and only on a finding that it is fair, reasonable, and
22 adequate after considering whether: (a) the class representatives and class
23 counsel have adequately represented the class; (b) the proposal was negotiated at
24 arm's length; (c) the relief provided for the class is adequate; [and] (d) the proposal
25 treats class members equitably relative to each other." In making this determination,
26 the court is required to "evaluate the fairness of a settlement as a whole, rather than
27 assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19
28 (9th Cir. 2012).

9

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Because a "settlement arises from a compromise, the question [to be] address[ed]
2    is not whether the final product could be prettier, smarter or snazzier, but whether it is
3    fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027; *see also United States*
4    *v. Armour & Co.*, 402 U.S. 673, 681 (1971) ("Naturally, the agreement reached normally
5    embodies a compromise; in exchange for the saving of cost and elimination of risk, the
6    parties each give up something they might have won had they proceeded with
7    litigation.") The court's primary concern "is the protection of those class members,
8    including the named [p]laintiffs, whose rights may not have been given due regard by
9    the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of*
10   *S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Furthermore, there is a strong
11   judicial policy in favor of settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566,
12   576 (9th Cir. 2004). "In most situations, unless the settlement is clearly inadequate, its
13   acceptance and approval are preferable to lengthy and expensive litigation with
14   uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,
15   526 (C.D. Cal. 2004).

16          **1.    Notice**

17          Class members are entitled to receive the best notice practicable about the
18   settlement. Fed. R. Civ. P. 23(c)(2). "Adequate notice is required for court approval of
19   a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Notice should be
20   "reasonably calculated, under all the circumstances, to apprise interested parties of the
21   pendency of the action and afford them an opportunity to present their objections."
22   *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

23          As supported by the declaration of Class Counsel, on May 17, 2024 the
24   previously approved notice (ECF No. 279-3, pgs. 18-19 and ECF No. 282) was
25   posted on the internet. The notice webpage was maintained by Class Counsel, Bursor
26   & Fisher, P.A., and includes the notice, the settlement agreement, the operative class
27   action complaint, the motion for preliminary approval and related papers, and the
28   preliminary approval order. The notice also includes the date and time of the final

10

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  approval hearing, how to object to the settlement, and information about important
2  dates and deadlines associated with the settlement.

3      The Settlement is not binding on any class members other than Plaintiffs and is
4  not a "proposed settlement" under the Class Action Fairness Act, 28 U.S.C. §§ 1711(6).
5  No written notice of the proposed Settlement on the U.S. Attorney General or any
6  California state official is required under 28 U.S.C. §§ 1715.

7      Class Counsel declares that no objections were received.  No objections have
8  been filed with the Court.  Based on the above, the notice provided to class members
9  is adequate for court approval of a settlement under Rule 23(e).

10          **2.    Arm's Length Negotiations**

11      In *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009), the Ninth
12  Circuit stated, "[w]e put a good deal of stock in the product of an arms-length,
13  non-collusive, negotiated resolution." Plaintiffs argue that the proposed settlement
14  is the product of informed arms-length negotiations because: (1) it was preceded by
15  four years of adversarial litigation involving substantial discovery, including the
16  exchange of multiple sets of written discovery and hundreds of thousands of pages
17  of documents; (2) there was extensive motion practice, including various discovery
18  motions, dueling motions for summary judgment, and a motion for class
19  certification; (3) at the time of settlement, Plaintiffs and their counsel had a full
20  understanding of the strengths and weaknesses of Plaintiffs' claims and Marriott's
21  defenses, and were able to assess whether the change in business practices and
22  behavioral relief would adequately benefit the Class when weighed against the risks
23  of continuing litigation; (4) the settlement was reached after the parties participated
24  in an in-person mediation session before an experienced mediator, and several
25  months of continued settlement negotiations supervised by Magistrate Goddard; and
26  (5) Plaintiffs' counsel are experienced in class action matters.  Additionally, Plaintiffs
27  submit that the $75,000 in requested partial reimbursement of litigation costs
28  and service awards was negotiated separately and only after the parties had reached

1 | agreement on the behavioral relief. ECF No. 279-1, 26:28 and 27:1-4. For these
2 | reasons, the Court finds the settlement to be the product of arm's length negotiations.
3 | *See Mauss v. NuVasive, Inc.*, Case No. 13cv2005 JM (JLB), 2018 WL 6421623, at
4 | *4 (S.D. Cal. Dec. 6, 2018) (finding no collusion based on extensive litigation,
5 | counsel's experience, and participation in mediation).

### 3.   Adequacy of Relief

7 |     In deciding whether the relief provided for the class is adequate, the court takes
8 | into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness
9 | of any proposed method of distributing relief to the class, including the method
10 | of processing class-member claims; (iii) the terms of any proposed award of
11 | attorney's fees, including timing of payment; and (iv) any agreement required to be
12 | identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *see also Rodriguez*, 563
13 | F.3d at 966 (risk, expense, complexity and duration of litigation supports the
14 | adequacy of relief). Plaintiffs argue the costs, risks, and delays associated with a
15 | trial are significant because: (1) Marriott has vigorously and continuously denied
16 | any wrongdoing, and absent settlement, Marriott would continue to defend this action
17 | aggressively; (2) the Ninth Circuit could reverse the court's order granting class
18 | certification; (3) because a number of Plaintiffs' theories of liability were rejected on
19 | summary judgment and proving scienter and liability at trial would be difficult; and
20 | (4) if Plaintiffs prevailed, an appeal would likely follow.

21 |     Additionally, because the Settlement Agreement provides only behavioral
22 | relief that applies generally and to all class members equally there is no need for a
23 | method of distribution. Also, Plaintiffs filed a detailed motion in support of the
24 | Settlement Agreement's terms regarding the partial reimbursement of litigation
25 | costs and service awards which is discussed below.   For these reasons, the relief
26 | appears adequate.

### 4. Equitable Treatment

28 |     Plaintiffs argue the behavioral relief in the settlement will benefit each class

12

1   member equally.  Here, there may be some variation as to whether class members
2   enjoy the benefit of the behavioral relief because arguably some class members may
3   not need to use Marriott's website to book a room again at a Marriott Hotel.  But
4   the relief benefits each class member relatively equally should they ever use
5   Marriott's services in the future.  Additionally, no objections to the settlement were
6   filed.  *See DIRECTV*, 221 F.R.D. at 528-29 ("It is established that the absence of a
7   large number of objections to a proposed class action settlement raises a strong
8   presumption that the terms of a proposed class settlement action are favorable to the
9   class members.").  Also, although the Settlement Agreement authorizes a  service
10  award for the named Plaintiffs, "the Ninth Circuit has recognized that service
11  awards to named plaintiffs in a class action are permissible and do not render
12  a settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, No. C-08-
13  5198 EMC, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (citing *Stanton v.
14  Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).  Accordingly, the relief appears to
15  benefit each class member relatively equally.

16      **D.    Partial Reimbursement of Litigation Costs and Service Awards**

17      Plaintiffs seek approval of $65,000 in partial reimbursement of litigation costs
18  and up to $5,000 for each Plaintiff as a service award.  "While attorneys' fees and
19  costs may be awarded in a certified class action where so authorized by law or the
20  parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to
21  ensure that the award, like the settlement itself, is reasonable, even if the parties
22  have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654
23  F.3d 935, 941 (9th Cir. 2011) (citations omitted).

24          **1.    The Work Performed Was Adequate**

25      Class Counsel declares that reasonable and necessary litigation costs incurred
26  in this action have been paid in an amount of $254,799.48.  Plaintiffs argue that
27  because the $65,000 payment is less than 26 percent of the total litigation costs
28  incurred and paid by Class Counsel, none of the payment is for attorneys' fees and

13

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  that the lawyers will remain completely uncompensated for their time.  Nonetheless,
2  Class Counsel informs the Court the amount of their combined "lodestar" for the
3  work they have performed in this action is at least $2,501,839.50.  "The 'lodestar
4  method' is appropriate in class actions brought under fee-shifting statutes where the
5  relief sought – and obtained – is often primarily injunctive in nature and thus not
6  easily monetized, but where the legislature has authorized the award of fees to
7  ensure compensation for counsel undertaking socially beneficial litigation."
8  *Bluetooth*, 654 F.3d at 941.   Class Counsel also declares recommending the
9  Settlement Agreement despite the negative multiplier of 100 percent on Class
10  Counsel's lodestar because it is in the best interests of the Class.

11      Based on the evidence available in the record, the quality of the representation
12  appears adequate, if not more than adequate. Plaintiffs' attorneys were at least
13  partially successful in avoiding or defending against motions to dismiss and for
14  summary judgment. ECF No. 180.  They also engaged in substantial discovery and
15  defended multiple motions in support of their discovery requests.  *Id.*, 33:17-22.
16  Plaintiffs' attorneys also successfully obtained certification of an issues-only class.
17  *Id.* at 42. Finally, Plaintiffs' attorneys participated in multiple lengthy settlement
18  discussions that were ultimately successful.

19                    **2.    The Litigation Costs Were Reasonable and Necessary**

20      As noted above, Plaintiffs argue Class Counsel is entitled to reimbursement of
21  reasonable and necessary out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris
22  v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover
23  reasonable expenses that would typically be billed to paying clients in non-
24  contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299
25  (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs
26  compensable under Rule 23(h) include "nontaxable costs that are authorized by law
27  or by the parties' agreement." Fed. R. Civ. P. 23(h). *Taylor v. Shutterfly, Inc.*, 5:18-
28  cv-00266-BLF, at *24 (N.D. Cal. Dec. 7, 2021).  Counsel for the class may also move

                                        14

1  for costs if they are a prevailing party. *See* Fed. R. Civ. P. 54(d)(1); Cal Code Civ.
2  Proc. §§ 1032, 1033.5.

3  Plaintiffs request $65,000 in partial reimbursement of the litigation costs
4  incurred and paid by Class Counsel ($254,799.48) which includes $88,599.66 in
5  costs for the Marron Firm, $2,689.15 in costs for the Law Office of Robert L. Teel,
6  and $163,510.69 in costs for Bursor & Fisher, P.A. Class Counsel declares that all
7  of Counsel's expenses were reasonable and necessary for the successful prosecution
8  of this case. The Marron Firm's biggest expenses were expert witness fees
9  ($55,153.75) and deposition transcript costs ($17,908.44). Mr. Teel's biggest
10  expense was for travel ($1,550.39). Bursor & Fisher's biggest expenses were for
11  expert witness fees ($115,599.50) and deposition transcript costs ($28,716.70).
12  These expenses, plus any expenses for filing fees, other transcripts, computerized
13  research, supplies, and postage detailed in Class Counsels' bills are reasonably
14  recoverable.

15  ### 3.    Service Awards

16  In class actions, service awards are fairly typical, discretionary, and "are
17  intended to compensate class representatives for work done on behalf of the class,
18  to make up for financial or reputational risk undertaken in bringing the action,
19  and, sometimes to recognize their willingness to act as a private attorney general."
20  *Rodriguez*, 563 F.3d at 958-59. In deciding whether to approve incentive awards,
21  courts consider: (1) the risk to the class representative in commencing suit, both
22  financial and otherwise; (2) the notoriety and personal difficulties encountered by
23  the class representative; ( 3) the amount of time and effort spent by the
24  class representative; (4) the duration of the litigation and; and (5) the personal benefit
25  (or lack thereof) enjoyed by the class representative as a result of the litigation. *See*,
26  *e.g.*, *Moreno v. Beacon Roofing Supply, Inc.*, No. Case No.: 19cv185-GPC (LL), 2020
27  WL 3960481, at *5-6 (S.D. Cal. July 13, 2020) (*quoting Van Vranken v. Atl. Richfield
28  Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

15

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Plaintiffs argue they are each entitled to a service award because: (1) each
2    Plaintiff devoted between 11 and 52.7 hours to this case; (2) Plaintiffs were faced
3    with personal liability for "irreparable harm" Marriott purportedly claimed it could
4    suffer as a result of their actions in this case, (3) Plaintiffs had a right to seek and
5    obtain compensatory and punitive damages under state law which they released;
6    and (4) Plaintiffs are the only members of the class that executed a release for
7    monetary damages.

8    The Settlement Agreement provides that Marriott will pay up to $5,000 to each
9    Plaintiff as a service award subject to Court approval. ECF No. 279-3, pg. 8.  Here,
10   Plaintiffs waived their right to seek monetary and statutory damages whereas class
11   members have not, and they acted as private attorneys general in protecting the
12   public's interest in the transparency of hotel room pricing.  Plaintiffs declare, and
13   the Court has no reason to disbelieve, that Plaintiffs would not have agreed to the
14   settlement if the rest of the class members had been required to release their claims,
15   and that Plaintiffs felt obligated to protect the rights of the Class members.  Plaintiff
16   Hall also provides evidence showing that because of his involvement in this case, his
17   employer was displeased and upset with him.

18   In addition, Plaintiffs argue the California Attorney General has not taken any
19   enforcement action to hold Marriott accountable for its allegedly fraudulent
20   advertising practices unlike the Attorneys' General of Texas, Colorado,
21   Pennsylvania, and the District of Columbia.   Therefore, they argue private
22   enforcement and the resulting financial burden were necessary to prevent further
23   injury to members of the Class and the public at large.  Plaintiffs argue they have
24   acted as true attorneys general.  Because of the foregoing, the Court finds Plaintiffs are
25   entitled to a service award of $5,000 each.

26   **IV.   OTHER MATTERS**

27   The Parties are hereby directed to implement the Settlement Agreement
28   according to its terms and conditions.  Nothing in this final approval order shall

16

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  preclude any action to enforce or interpret the terms of the Settlement Agreement.
2  Any action to enforce or interpret the terms of the Settlement Agreement shall be
3  brought solely in this Court.

4      The Court expressly retains continuing jurisdiction over the action to consider
5  all further matters arising out of or connected with the settlement and this Order,
6  including the administration, implementation, and enforcement of the Settlement
7  Agreement, and for any other necessary and appropriate purpose.  Further, the Court
8  retains continuing jurisdiction to enter any other necessary or appropriate orders to
9  protect and effectuate the Court's retention of continuing jurisdiction provided that
10 nothing in this paragraph is intended to restrict the ability of the parties to exercise
11 their rights under the Settlement Agreement.

12     The individual claims of the Class Representatives, but not the other class
13 members, against Defendant Marriott International, Inc. in this action shall be
14 dismissed on the merits and with prejudice as to the Class Representatives only.

15 **V.    CONCLUSION**

16     For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action
17 Settlement is **GRANTED**.  Additionally, Plaintiffs' motion for partial reimbursement
18 of $65,000 in litigation costs is **GRANTED**.  Plaintiffs' motion for a service award
19 of $5,000 each (a total of $10,000) is **GRANTED**.

20     The Court retains jurisdiction over this action for purposes of enforcing the
21 parties' Settlement Agreement, but not for the purpose of hearing related individual
22 claims by class members against Marriott for monetary damages, violation of state law,
23 or otherwise. The case is **DISMISSED WITH PREJUDICE** and judgment is hereby
24 entered on the terms set forth above. The Clerk of the Court is directed to close the case.

25 **IT IS SO ORDERED.**

26

27 DATED: _____        _____

28                                JINSOOK OHTA
                                 United States District Court

17

*Hall v. Marriott International, Inc.*, Case No. 3:19-cv-01715-JO-AHG
[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT